ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS (259916)
JUAN CARLOS SANCHEZ (301834)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ZOOM SECURITIES LITIGATION | ) Case No. No. 2:20-cv-02353-JD |
| | ) |
| | ) ADAM M. BUTT'S OPPOSITION TO |
| This Document Relates To: | ) COMPETING MOTIONS FOR |
| | ) APPOINTMENT AS LEAD PLAINTIFF |
| ALL ACTIONS. | ) |
| | ) DATE:     July 16, 2020 |
| | TIME:     10:00 a.m. |
| | CTRM:     11, 19TH FLOOR |
| | JUDGE:    HON. JAMES DONATO |

4846-1640-9536.v2

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ...............................................................................................................1

II.    ARGUMENT .....................................................................................................................2

       A.    The Zoom Investor Group Is a Lawyer-Driven Amalgamation Formed
             Solely to Achieve the Largest Financial Interest Designation................................2

       B.    The Court Should Decline Any Post Hoc Invitation by Counsel to Break
             Up the Group and Appoint Any of Its Members Individually.................................8

       C.    The Remaining Competing Motion Should Be Denied Because Mr. Jarnes
             Claims Smaller Losses than Mr. Butt .....................................................................10

       D.    Mr. Butt Is the Presumptive Lead Plaintiff .............................................................11

III.   CONCLUSION..................................................................................................................12

ADAM M. BUTT'S OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD
PLAINTIFF - No. 2:20-cv-02353-JD                                                                                      - i -
4846-1640-9536.v2

# TABLE OF AUTHORITIES

Page

**CASES**

*Abouzied v. Applied Optoelectronics, Inc.*,
    2018 WL 539362 (S.D. Tex. Jan. 22, 2018) ................................................................. 8, 9

*Apple v. LJ Int'l Inc.*,
    2008 WL 11343371 (C.D. Cal. Feb. 8, 2008) ................................................................... 9

*Bhojwani v. Pistiolis*,
    2007 WL 9228588 (S.D.N.Y. July 31, 2007) ................................................................. 10

*Bodri v. Gopro, Inc.*,
    2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) .................................................................. 3

*Buettgen v. Harless*,
    263 F.R.D. 378 (N.D. Tex. 2009) .................................................................................... 9

*Cohen v. Luckin Coffee Inc.*,
    2020 WL 3127808 (S.D.N.Y. June 12, 2020) ......................................................... 6, 7, 8

*Crihfield v. CytRx Corp.*,
    2016 WL 10587938 (C.D. Cal. Oct. 26, 2016) ................................................................ 5

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005) ...................................................................................................... 10

*Eichenholtz v. Verifone Holdings, Inc.*,
    2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ....................................................... 1, 2, 3, 4

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ..................................................................................... 2, 11

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ............................................................................................ 3

*In re Cloudera, Inc. Sec. Litig.*,
    2019 WL 6842021 (N.D. Cal. Dec. 16, 2019) .............................................................. 6, 8

*In re E.spire Commc'ns, Inc., Sec. Litig.*,
    231 F.R.D. 207 (D. Md. 2000) ........................................................................................ 4

*In re Level 3 Commcn's, Inc. Sec. Litig.*,
    2009 WL 10684924 (D. Colo. May 4, 2009) .................................................................. 8

*In re Netflix, Inc., Sec. Litig.*,
    2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) ................................................................. 3

**Page**

*In re Network Assocs., Inc., Sec. Litig.*,
  76 F. Supp. 2d 1023 (N.D. Cal. 1999) ............................................................................. 3, 4

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015) ............................................................................ 4, 8, 9

*In re Pfizer Inc. Sec. Litig.*,
  233 F.R.D. 334 (S.D.N.Y. 2005) ...................................................................................... 8

*In re Silicon Storage Tech., Inc.*,
  2005 U.S. Dist. LEXIS 45246 (N.D. Cal. May 3, 2005) ................................................. 4

*In re Stitch Fix, Inc. Sec. Litig.*,
  393 F. Supp. 3d 833 (N.D. Cal. 2019) ..................................................................... *passim*

*In re TerraVia Holdings, Inc. Sec. Litig.*,
  No. 3:16-cv-06633-JD (N.D. Cal. Apr. 7, 2017) ........................................................... 2, 5

*Isaacs v. Musk*,
  2018 WL 6182753 (N.D. Cal. Nov. 27, 2018) .............................................................. 3, 9

*Khunt v. Alibaba Grp. Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015) ............................................................................ 5

*Kinney v. Capstone Turbine Corp.*,
  2016 WL 5341948 (C.D. Cal. Feb. 29, 2016) ................................................................ 8

*Lewis v. First Am. Title Ins. Co.*,
  265 F.R.D. 536 (D. Idaho 2010) ..................................................................................... 9

*Makhlouf v. Tailored Brands, Inc.*,
  2017 WL 1092311 (S.D. Tex. Mar. 23, 2017) ............................................................... 8

*Marcus v. J.C. Penney Co., Inc.*,
  2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ............................................................. 9

*McDermid v. Inovio Pharm., Inc.*,
  2020 WL 3288189 (E.D. Pa. June 18, 2020) ........................................................... 7, 8, 9

*Ross v. Abercrombie & Fitch Co.*,
  2007 WL 895073 (S.D. Ohio Mar. 22, 2007) ................................................................ 9

*Takata v. Riot Blockchain, Inc.*,
  2018 WL 5801379 (D.N.J. Nov. 6, 2018) ...................................................................... 9

**Page**

*Tan v. NIO Inc.*,
   2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020) ......................................................................... 7

*Teran v. Subaye, Inc.*,
   2011 WL 4357362 (S.D.N.Y. Sept. 16, 2011) ....................................................................... 8

*Tsirekidze v. Syntax-Brillian Corp.*,
   2008 WL 942273 (D. Ariz. Apr. 7, 2008) ................................................................... 8, 9, 11

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................................................ 5

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(3)(B)(iii) ................................................................................................................ 5
   §78u-4(a)(3)(B)(iii)(I) ............................................................................................................ 1

Federal Rules of Civil Procedure
   Rule 23 ...................................................................................................... 1, 2, 10, 11
   Rule 23(a) .................................................................................................................... 2

## I.   INTRODUCTION

Three motions were filed by investors seeking appointment as lead plaintiff: (1) Adam M. Butt; (2) a group of four individuals lacking any pre-existing relationships: Michael Bens, Bhadresh Shah, Kwan Sin Ng, and Tony D. Pham, dubbing themselves the Zoom Investor Group; and (3) Lawrence Jarnes.  *See* ECF Nos. 28, 38, 34.[1]  The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that the "court shall adopt a presumption that the most adequate plaintiff" is the person that "has the largest financial interest in the relief sought by the class" ***and*** "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Of the three movants, only Mr. Butt satisfies ***both*** prongs of the PSLRA's test.

Despite claiming larger losses, the Zoom Investor Group should not be appointed lead plaintiff because it consists of individuals "who had no pre-existing relationship with one another, and whose relationship and group status were forged only by [its] lawyer[s]." *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019) (Donato, J.) (denying motion by artificial grouping of individuals).  Indeed, "ignoring the basis of the group formation and appointing a group of unrelated investors," like the Zoom Investor Group here, "undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation." *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *8 (N.D. Cal. Aug. 22, 2008); §II.A., *infra*.

While the Zoom Investor Group will likely highlight its Joint Declaration in an attempt to justify its aggregation, the Joint Declaration does nothing to remedy the group's inadequacy. *Compare* ECF No. 39-4 *with Stitch Fix*, 393 F. Supp. 3d at 835-36 ("Nothing in the two joint declarations submitted by the group demonstrates that it is the group members, and not the lawyers, who are driving their lead plaintiff application.").  Indeed, beyond the Joint Declaration's aspirational assurances about the Zoom Investor Group members being able to work together in the future, the Joint Declaration is entirely silent as to ***why*** the group was formed, ***why*** four individual movants – hailing from two different continents and three different states within the United States – are necessary to lead this case, and ***why*** the group believes it is necessary to appoint two law firms as

---

[1]   On June 19, 2020, Mr. Jarnes filed a notice of non-opposition to the competing lead plaintiff motions.  *See* ECF No. 42 at 2.

lead counsel. *See In re TerraVia Holdings, Inc. Sec. Litig.*, No. 3:16-cv-06633-JD, ECF No. 36 (N.D. Cal. Apr. 7, 2017) (Donato, J.) (noting that the Court was "skeptical about the need or value of co-lead counsel or liaison counsel" and ordering the lead plaintiff "to nominate a single lead counsel for the Court's consideration"). "Simply stated, [the Zoom Investor Group's] conclusory declaration has little or no substance." *Eichenholtz*, 2008 WL 3925289, at *8.

By contrast, Mr. Butt, as the movant with the next largest financial interest, satisfies all of the PSLRA's requirements and is not subject to any unique defenses or challenges to his adequacy. Mr. Butt's motion should be granted. The sole remaining movant, Mr. Jarnes, suffered smaller losses than Mr. Butt and his motion should be denied.

## II.  ARGUMENT

To identify the presumptively most adequate plaintiff, the Court "'must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002). It "must then focus its attention on ***that*** plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* at 730 (emphasis in original).[2] "If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id.*

Although the Zoom Investor Group claims to have suffered a larger loss than what Mr. Butt suffered, the Zoom Investor Group fails to meet the Rule 23 adequacy requirements as mandated by the PSLRA.

### A.  The Zoom Investor Group Is a Lawyer-Driven Amalgamation Formed Solely to Achieve the Largest Financial Interest Designation

In determining whether to appoint a group as lead plaintiff, as opposed to a single investor, courts should consider whether "the way in which a group seeking to become lead plaintiff was

---

[2]  Unless otherwise noted herein, all emphasis is added and citations are omitted.

ADAM M. BUTT'S OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD
PLAINTIFF - No. 2:20-cv-02353-JD                                                                                              - 2 -
4846-1640-9536.v2

formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff," and, if so, "the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001). The reason is simple: "'allow[ing] lawyers to designate unrelated plaintiffs as a "group" and aggregate their financial stakes would allow and encourage lawyers to direct the litigation'" – an outcome that would contravene Congress's intention to appoint "a single, strong lead plaintiff to control counsel and the litigation." *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1023, 1025 (N.D. Cal. 1999). Consequently, and as this Court has previously recognized, "the ***clear consensus*** in [this] district is that a group of investors who had no pre-existing relationship with one another, and whose relationship and group status were forged only by a lawyer, is not appropriate to be lead plaintiff based on their aggregated losses." *Stitch Fix*, 393 F. Supp. 3d at 835; *see also Isaacs v. Musk*, 2018 WL 6182753, at *2 (N.D. Cal. Nov. 27, 2018) ("courts have also been skeptical of 'artificial' groups"); *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *4 (N.D. Cal. Apr. 28, 2016) ("Northern District of California courts have generally found that 'appointing a group of unrelated investors undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation.'"); *In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *4 (N.D. Cal. Apr. 27, 2012) ("the courts of this circuit uniformly refuse to aggregate the losses of individual investors with no apparent connection to each other aside from their counsel"); *Eichenholtz*, 2008 WL 3925289, at *7 ("'courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff'").

To show that they are not lawyer-driven artificial amalgamations, courts in this District require groups to:

> "[P]rovide appropriate information about its members, structure, and intended functioning. Such information should include descriptions of its members, including any pre-existing relationships among them; an explanation of how it was formed and how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation."

*Network Assocs.*, 76 F. Supp. 2d at 1026. Here, the Zoom Investor Group's Joint Declaration falls woefully short of this required evidentiary showing.

As an initial matter, the Joint Declaration confirms that the Zoom Investor Group is comprised of strangers lacking any pre-existing relationships. *See* ECF No. 39-4 at ¶6. For instance, the Joint Declaration confirms that Zoom Investor Group members reside not just across the country but across the globe in Georgia, Texas, California, and Singapore. *See id*. at ¶¶2-5. Not only does the Joint Declaration fail to explain how such disparate members found one another, the Joint Declaration does not describe any meaningful communications by the Zoom Investor Group members, other than a statement that they were "aware" of each other and provided with "one another's contact information," presumably by their two law firms. *Id.* Such language evidences that their "lawyers, who are invariably the matchmakers behind [this] marriage[] of convenience, are the true drivers of the litigation." *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621-22 (S.D.N.Y. 2015). Moreover, "[a]ny subsequent relationship that the members of these groups may have developed, after being introduced to each other by their lawyers, is insufficient in the court's view to qualify them as 'most adequate' lead plaintiff." *In re Silicon Storage Tech., Inc.*, 2005 U.S. Dist. LEXIS 45246, at *6-*8, *33 (N.D. Cal. May 3, 2005).

The Joint Declaration is also notably silent as to how the class would benefit from the added expense and logistical challenges of having four individuals serve as lead plaintiff, including expenses related to multiple depositions, additional discovery, and duplicative travel – from as far away as Singapore (which is likely not possible during the global COVID-19 pandemic) – to hearings and/or trial. *See* ECF No. 39-4. Instead, the Joint Declaration offers a single, hollow platitude that the Zoom Investor Group members believe that this action "should be led by investors who are committed to maximizing the recovery on behalf of the Class." *Compare id.* at ¶6 *with Eichenholtz*, 2008 WL 3925289, at *9 (reviewing group's declaration statements and finding that group "neglect[ed] to elucidate").

The Zoom Investor Group members have also shown they are "either 'unable or unwilling to agree on a single counsel to act on its behalf and serve as its voice.'" *In re E.spire Commc'ns, Inc., Sec. Litig.,* 231 F.R.D. 207, 213-14 (D. Md. 2000). Thus, not only does the record not "'contain any

credible explanation for the group's creation,'" the group "'does not explain why it must be represented by two firms, each of which appears independently capable of prosecuting this action.'" *Crihfield v. CytRx Corp.*, 2016 WL 10587938, at *4 (C.D. Cal. Oct. 26, 2016); *TerraVia*, No. 3:16-cv-06633-JD, ECF No. 36 (ordering lead plaintiff "to nominate a single lead counsel for the Court's consideration" because the Court was "skeptical about the need or value of co-lead counsel or liaison counsel").[3]

The Zoom Investor Group's purported mechanism to oversee the litigation further demonstrates its inadequacy. While the Zoom Investor Group members speculate that they "do not anticipate that any disagreements between us will arise," and that they aspirationally hope "to reach consensus with respect to all litigation decisions," they have agreed to resolve any "disagreement by a majority vote, in which each of us possesses a number of votes equal to our losses incurred in connection with our class period purchases of Zoom securities." ECF No. 39-4 at ¶7. This decision-making structure is problematic as the three group members asserting the smallest losses (Mr. Bens, Ms. Ng, and Mr. Shah) would be empowered to override the vote by the member with the largest loss (Mr. Pham). *Id.*; ECF No. 39-1. This would turn the statute on its head, enabling movants with the smallest financial interest to control the lead plaintiff's decisions. 15 U.S.C. §78u-4(a)(3)(B)(iii).

The Court's recent decision in *Stitch Fix* is instructive. There, as here, the Court considered the lead plaintiff motion filed by a group of unrelated individuals who lacked any pre-existing relationships. 393 F. Supp. 3d at 835. In doing so, the Court recognized that "the ***clear consensus*** in our district is that a group of investors who had no pre-existing relationship with one another, and whose relationship and group status were forged only by a lawyer, is not appropriate to be lead plaintiff based on their aggregated losses." *Id.* There, as here, the individual group attempted to dispel the fact that it was lawyer-driven by submitting a joint declaration. *Id.* The Court, however, held that "[n]othing in the two joint declarations submitted by the group demonstrates that it is the group members, and not the lawyers, who are driving their lead plaintiff application," adding that

---

[3] *See also Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 540 (S.D.N.Y. 2015) ("there is no need for co-lead counsel in this case"); *Weltz v. Lee*, 199 F.R.D. 129, 134 (S.D.N.Y. 2001) (finding "that the PSLRA would be better served by the appointment of one law firm to manage the case").

"[t]he declaration allegations are conclusory and cursory, and indicate only that the group members – who reside in Texas, Virginia and Pennsylvania – have exchanged a few calls and emails with each other since being introduced by their common lawyer." *Id.* at 835-36.  Here, the Zoom Investor Group is even less cohesive than the group in *Stitch Fix* given that: 1) the Zoom Investor Group is comprised of four, rather than three, members; 2) the Zoom Investor Group members hail from distinct continents, rather than a single country; (3) the Zoom Investor Group failed to evidence that they had any calls before filing their motion; and (4) the Zoom Investor Group seeks the appointment of two law firms rather than a single law firm to serve as lead counsel.  *See* ECF No. 39-4.  Thus, as in *Stitch Fix*, the Court here should find that "[t]o permit aggregation and lead plaintiff status [of the Zoom Investor Group would] undercut[] the goal of having the plaintiffs and not the lawyers call the shots in securities class actions."  393 F. Supp. 3d at 836.

Similarly instructive is Judge Koh's recent opinion in *In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021 (N.D. Cal. Dec. 16, 2019), where the court declined to appoint two unrelated investors because "plaintiff groups could not be 'the most adequate plaintiffs' where the members were 'unrelated to each other' until introduced by their lawyers." *Id.* at *6.  Judge Koh also dismissed the group's "conclusory declaration," which the court characterized as containing "'little or no substance'" despite including significantly more information than the Zoom Investor Group's Joint Declaration.  *Id.* at *7.  For instance, the *Cloudera* group's joint declaration described "one conference call where the [members] discussed their 'strategy for prosecuting this action' and their 'interests in prosecuting the case in a collaborative, like-minded manner'" and further represented that the members had a preexisting relationship because they jointly served as plaintiffs in a prior class action – two representations entirely absent from the Zoom Investor Group's Joint Declaration here.  *Id.*  Judge Koh nonetheless denied the group's attempt to aggregate their losses given that, as here, "the only connection that the two [members] have to each other is their counsel."  *Id.*

This challenge should come as no surprise to the Zoom Investor Group's proposed lead counsel, since Judge Liman earlier this month refused to appoint as lead plaintiff an analogous artificial amalgamation of individual investors also represented by Pomerantz LLP and The Rosen Law Firm, P.A. in *Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *1 (S.D.N.Y. June 12, 2020).

In *Luckin*, the court held that the group was "a random assemblage of unlike individuals and a company that (with one limited exception) not only had no pre-existing relationship but apparently did not even know of one another before counsel introduced them." *Id.* at *4. Nor was Judge Liman persuaded by the "rote recitation[s]" within the group's joint declaration, including the ***identical*** recitations found in the Zoom Investor Group's Joint Declaration here that the members would "'make all efforts, in good faith, to reach consensus with respect to litigation decisions, and to that end will consult with each other and our counsel as we deem necessary to fulfill our fiduciary obligations to the Class.'" *Compare id. with* ECF No. 39-4 at ¶7. Judge Liman further criticized the group for not providing a plan for communicating with one another across time zones and for failing to provide "evidence that they chose outside counsel, as opposed to counsel choosing them" – deficiencies that the Zoom Investor Group's Joint Declaration here likewise fails to remedy. *Luckin*, 2020 WL 3127808 at *4. Judge Liman thus refused to appoint the group and held that "[f]rom the disparate nature of the Luckin Group, there is every reason to believe that the members agreed to be assembled by counsel and to ratify counsel's representation of them—rather than that they gathered together and engaged in a truly independent selection of counsel." *Id.*

In yet another example, just last week in *McDermid v. Inovio Pharm., Inc.*, 2020 WL 3288189 (E.D. Pa. June 18, 2020), Judge Pappert declined to appoint a group of individuals claiming to have suffered the largest loss (as the Zoom Investor Group does here) despite the fact that two group members had "been friends 'for decades,'" and all members "participated in a conference call to discuss whether to move for appointment as lead plaintiff." *Id.* at *4. The involvement of multiple law firms in constructing the group weighed heavily against its appointment, with Judge Pappert aptly recognizing "that so many law firms midwifed the Inovio Group gives the impression that lawyers created the Group or at least partly assembled its members." *Id.* Accordingly, Judge Pappert appointed the movant with the next largest financial interest who, as Mr. Butt does here, sought approval of a single law firm as lead counsel. *Id.* at *6.[4]

---

[4]   *See also Tan v. NIO Inc.*, 2020 WL 1031489, at *4 & n.5 (E.D.N.Y. Mar. 3, 2020) (denying motion by group of individuals because they failed to show "that they will be able to work cohesively for the benefit of the class," finding the fact that counsel "introduced the members to one another . . . does not work in [the group's] favor," and appointing single movant as lead plaintiff);

ADAM M. BUTT'S OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD
PLAINTIFF - No. 2:20-cv-02353-JD                                                                                                                      - 7 -
4846-1640-9536.v2

Consistent with *Stitch Fix*, *Cloudera*, *Luckin*, *Inovio*, and the clear consensus within this District, the Court should deny the Zoom Investor Group's motion as it is an artificial amalgamation of unrelated investors formed solely by lawyers to achieve the largest financial interest designation.

### B. The Court Should Decline Any Post Hoc Invitation by Counsel to Break Up the Group and Appoint Any of Its Members Individually

The Zoom Investor Group's motion was expressly filed seeking "the entry of an Order: (1) appointing the Zoom Investor Group as Lead Plaintiff." ECF No. 38 at 1. It was ***not*** filed on behalf of the individual group members. *Id.* As such, the Court should deny any subsequent invitation by the Zoom Investor Group members (or their counsel) to consider appointing one or more of them in an individual capacity. *See Inovio*, 2020 WL 3288189, at *5 ("Congress instructs courts to consider timely motions and select a lead plaintiff from among those movants. . . . The Inovio Group 'decided to move together as a group. . . .' That group motion is the one before the Court, and the Court will not retroactively amend it . . . ."); *Stitch Fix*, 393 F. Supp. 3d at 836 (declining to consider the group members' individual losses); *Kinney v. Capstone Turbine Corp.*, 2016 WL 5341948, at *3 n.3 (C.D. Cal. Feb. 29, 2016) ("[U]nder the plain text of the statute, the Court can only consider the individual that has filed the complaint or made the motion. Here, that entity is the Capstone Investor Group, not Van Fossen."); *In re Level 3 Commcn's, Inc. Sec. Litig.,* 2009 WL 10684924, at *5 (D. Colo. May 4, 2009) ("courts confronted by a request to appoint only one individual out of an otherwise inadequate group in order to salvage lead plaintiff status have declined to do so and, instead, considered the qualifications of the movant with the next largest financial interest"); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) ("At one point,

---

*Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (declining to appoint group of four individuals because "[b]ased on the evidence . . . it appears that legal counsel for the group cobbled the movants together") *Makhlouf v. Tailored Brands, Inc.*, 2017 WL 1092311, at *6 (S.D. Tex. Mar. 23, 2017) (declining to aggregate the losses of two unrelated institutional investors, and instead appointing the institution with single largest loss); *Petrobras*, 104 F. Supp. 3d at 621 (finding groups of unrelated institutions "lawyer-driven" and stating that "many courts, including this one, are skeptical of such arrangements when they are the product of an artificial grouping designed merely to qualify as lead plaintiff") (citing cases); *Teran v. Subaye, Inc.*, 2011 WL 4357362, at *3 (S.D.N.Y. Sept. 16, 2011) (declining to aggregate the loss of a group where another movant possessed the single largest financial interest); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (declining to appoint a group of unrelated institutional investors because "[n]othing before the Court indicates that this aggregation is anything other than an attempt to create the highest possible 'financial interest' figure under the PSLRA . . . and I reject it").

the group suggests that we pluck one of its top-two constituents to serve as lead plaintiff . . . . We decline to do so. The Farrukh Group moved for lead plaintiff as a group and will be evaluated as such.").[5]

In fact, any "willingness to abandon the group only suggests how loosely it was put together," and would provide yet another independent basis to find that the Zoom Investor Group is lawyer-driven and lacks cohesion. *Tsirekidze*, 2008 WL 942273, at *4; *Inovio*, 2020 WL 3288189, at *5 (group's "eleventh-hour willingness to discard" individual member evidenced "a lack of cohesion"); *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379, at *5 n.5 (D.N.J. Nov. 6, 2018) (noting that group asserted in a reply brief that one individual "has the largest loss of any individual movant" and finding that "[t]his belated offer to break apart the group and request Lee as lead plaintiff does not assuage the Court's concerns that the attorneys, and not the plaintiffs, have initiated Lee Movants' efforts").[6]

Moreover, Mr. Pham – the Zoom Investor Group member with the single largest alleged loss – is subject to unique defenses. *See Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 557 (D. Idaho 2010) (recognizing that defendants need not show "'that the unique defense will prevail, only that it is meritorious enough to require the plaintiff to devote considerable time to rebut the unique

---

[5] *See also Petrobras*, 104 F. Supp. 3d at 624 n.4 (refusing to appoint group member with the largest individual alleged loss because it "at no time sought to serve as individual lead plaintiff"); *Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at *6 (E.D. Tex. Feb. 28, 2014) ("Because Mr. Webb did not individually submit a motion for lead plaintiff, his consideration for appointment as lead plaintiff rises and falls with the group."); *Abouzied*, 2018 WL 539362, at *5 ("Neither Stephen Rakower nor the Knights has moved for appointment as sole-lead plaintiff. Therefore, the Court will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group."); *Ross v. Abercrombie & Fitch Co.*, 2007 WL 895073, at *4 (S.D. Ohio Mar. 22, 2007) ("There is no requirement in the [PSLRA] that the Court realign a proposed group to cure a deficiency in adequacy of representation.").

[6] *See also Isaacs*, 2018 WL 6182753, at *3 ("The Court acknowledges TIG's suggestion that the group may be broken apart if the Court has concerns about any specific member. But that suggests that the group is artificial and should not have been brought in the first place."); *Apple v. LJ Int'l Inc.*, 2008 WL 11343371, at *4 (C.D. Cal. Feb. 8, 2008) (noting that two individuals within a larger group were "'willing to serve as a lead plaintiff either individually or as part of a group'" but that such "assertions hardly persuade the Court that they, as opposed to counsel, would be directing this litigation" and considering movant with next largest financial interest); *Abouzied*, 2018 WL 539362, at *5 ("courts view with suspicion the hand-picking of group members to serve as sole-lead plaintiff"); *Buettgen v. Harless*, 263 F.R.D. 378, 382 (N.D. Tex. 2009) ("[T]he Buettgen Group's motion is undermined by the group's invitation to the Court to hand-pick one of its constituents to serve as lead plaintiff if the Court deems the Buettgen Group inappropriate.").

1 defense'"). Specifically, Mr. Pham sold *all* of his Zoom shares on December 30, 2019 (*see* ECF
2 Nos. 39-1 at 2; 39-3 at 4) – nearly three months before the market learned "that Zoom's video
3 conferencing software [was] not, in fact, end-to-end encrypted between meeting participants,
4 contrary to the Company's assertions" and other security-related disclosures that caused the
5 Company's stock price to fall nearly 20% between March 27, 2020 and April 2, 2020, and an
6 additional 4.1% on April 6, 2020. ECF No. 1 at ¶55, ¶58, ¶66. To maintain Mr. Pham's financial
7 interest in the relief sought by the class, the Court would have to uphold the two earlier corrective
8 disclosures – the only alleged corrective disclosures during which Mr. Pham held shares: (1) July 8,
9 2019, which allegedly caused a 1.22% stock price drop; and (2) July 11, 2019, which allegedly
10 caused a similar drop of 1.44%). *See* ECF No. 1 at ¶¶35-38. Under *Dura Pharm., Inc. v. Broudo*,
11 544 U.S. 336 (2005), if defendants successfully contend that the July 2019 declines did not cause
12 investors harm, Mr. Pham would be subject to the unique defense that he lacks a recoverable loss
13 due to defendants' fraud, and, therefore, lacks any financial interest in the relief sought by the class.
14 *Id.* at 342 ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak
15 out, the misrepresentation will not have led to any loss"). Mr. Pham's adequacy is further impugned
16 by the fact that his Certification failed to represent that he "[a]dopts" the underlying complaint's
17 allegations or "[s]pecif[y] the allegations [he] intends to assert" as mandated in this District. *See*
18 Civil L.R. 3-7(c); *Bhojwani v. Pistiolis*, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (finding
19 discrepancies in certification "indicate[] a certain carelessness about detail that undermines the
20 adequacy of [the movant] as a lead plaintiff"); ECF No. 39-3 at 2-3.
21 Accordingly, the Court should decline any post hoc invitation to break up the Zoom Investor
22 Group and appoint any of its individual members as lead plaintiff.

23 **C.   The Remaining Competing Motion Should Be Denied Because Mr. Jarnes Claims Smaller Losses than Mr. Butt**
24
25 When, as here, the movant with the largest financial interest does not satisfy the Rule 23
26 requirements, the Court repeats the sequential statutory inquiry "considering the plaintiff with the
27 next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the
28

requirements of Rule 23." *Cavanaugh*, 306 F.3d at 730. Here, Mr. Butt is the movant with the next largest loss:

| Movants | Claimed Loss |
|---|---|
| Mr. Butt | ($209,517) |
| Mr. Jarnes | ($135,452) |

ECF Nos. 34-4, 29-3. Because Mr. Jarnes claims smaller losses than Mr. Butt, his motion should be denied. *See Cavanaugh*, 306 F.3d at 732 (court considers other motions "if and only if" the presumptive lead plaintiff is "found inadequate or atypical"); *see also* ECF No. 42 (Mr. Jarnes recognizing that he "does not posse the largest individual financial interest among the various movants").

### D. Mr. Butt Is the Presumptive Lead Plaintiff

Having suffered nearly $210,000 in losses, evidenced his adequacy with a substantive Declaration and by selecting a single qualified law firm to serve as lead counsel, Mr. Butt is the only movant that satisfies all of the PSLRA's requirements to trigger the most adequate plaintiff presumption. Mr. Butt's Declaration sets forth his ability and willingness to serve as a lead plaintiff, describing his role as Chief Executive Officer of a marketing agency, his years of experience investing in the stock market, and his familiarity overseeing lawyers. *See* ECF No. 29-4. As such, Mr. Butt is the exact type of diligent investor the PSLRA envisioned would serve as lead plaintiff. "[O]ther than pointing out [his] relatively low[er] financial stake in the litigation," the other movants cannot make any legitimate argument against Mr. Butt's appointment as lead plaintiff in this case. *Tsirekidze*, 2008 WL 942273, at *5. Mr. Butt's motion should be granted.

III. CONCLUSION

The Zoom Investor Group has not triggered the PSLRA most adequate plaintiff presumption because it is a lawyer-driven amalgamation. Its motion should be denied.

By contrast, Mr. Butt is the movant with the next largest loss and meets all of the PSLRA's requirements to trigger the presumption. His motion should be granted.

DATED: June 22, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
JUAN CARLOS SANCHEZ

    s/ Danielle S. Myers
DANIELLE S. MYERS

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

ADAM M. BUTT'S OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF - No. 2:20-cv-02353-JD - 12 -
4846-1640-9536.v2

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on June 22, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

    s/ Danielle S. Myers
DANIELLE S. MYERS

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com

4846-1640-9536.v2

# Mailing Information for a Case 3:20-cv-02353-JD Drieu v. Zoom Video Communications, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jenna C Bailey**
  jbailey@cooley.com,jcorrell@cooley.com

- **Patrick Edward Gibbs**
  pgibbs@cooley.com,bgiovannoni@cooley.com

- **Reza John Harris**
  rjharris@cooley.com

- **Benjamin Heikali**
  Bheikali@faruqilaw.com,ealdo@faruqilaw.com,smarton@faruqilaw.com,ecf@faruqilaw.com,bgiacalone@faruqilaw.com,tpeter@faruqilaw.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,tcrockett@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,lpvega@pomlaw.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Jessica Valenzuela Santamaria**
  jsantamaria@cooley.com,galancr@cooley.com

- **Craig Edward TenBroeck**
  ctenbroeck@cooley.com,efiling-notice@ecf.pacerpro.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`