POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant*
*and Proposed Co-Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE ZOOM SECURITIES LITIGATION. | Case No.: 20-cv-02353-JD<br><br>REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF THE ZOOM INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION<br><br>CLASS ACTION<br><br>Date: July 16, 2020<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato<br>Courtroom: 11 – 19th Floor |

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ................................................................................1

II.    ARGUMENT...........................................................................................................4

      A.    The Zoom Investor Group is an Appropriate Group ...................................4

      B.    Appointment of a Lead Plaintiff Group Will Benefit the Class.................6

      C.    Zoom Investor Group Member Dr. Pham is Not Subject to a Unique Defense ........................................................................................................9

      D.    Appointment of Co-Lead Counsel Will Benefit the Class.......................11

III.   CONCLUSION......................................................................................................12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bao v. SolarCity Corp.*,
No. 14-cv-01435-BLF, 2014 U.S. Dist. LEXIS 111869 (N.D. Cal. Aug. 11,
2014) ..................................................................................................................................... 1

*Bruce v. Suntech Power Holdings Co. Ltd.*,
CV 12-04061 RS, 2012 U.S. Dist. LEXIS 167702 (N.D. Cal. Nov. 13, 2012) ................... 2, 5

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018) ................................................................................................ 3, 4, 6

*Dolan v. Axis Capital Holdings Ltd.*,
No. 04-CV-8564, 2005 U.S. Dist. LEXIS 6538 (S.D.N.Y. Apr. 13, 2005) ..................... 3, 6, 8

*Eichenholtz v. Verifone Holdings, Inc.*,
No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22,
2008) ................................................................................................................................... 10

*Ferreira v. Funko, Inc.*,
2:20-cv-02319-VAP-PJWx, 2012 U.S. Dist. LEXIS 106515 (C.D. Cal. June
11, 2020) ........................................................................................................................ 2, 5, 10

*Feyko v. Yuhe Int'l Inc.*,
No. CV 11-05511 DDP, 2012 U.S. Dist. LEXIS 28040 (C.D. Cal. Mar. 2,
2012) ..................................................................................................................................... 6

*Fragala v. 500.com*,
CV 15-01463 MMM (EX), 2015 U.S. Dist. LEXIS 188276 (C.D. Cal. July 7,
2015) ..................................................................................................................................... 6

*In re Grupo Televisa Sec. Litig.*,
1:18-cv-1979 (S.D.N.Y.) ...................................................................................................... 8

*Hessefort v. Super Micro Comput., Inc.*,
317 F. Supp. 3d 1056 (N.D. Cal. 2018) ............................................................................... 1

*Hodges v. Akeena Solar, Inc.*,
263 F.R.D. 528 (N.D. Cal. Oct. 21, 2009) ........................................................................ 2, 7

*Howard v. Arconic Inc.*,
2:17-cv-1057 (W.D. Pa.) ..................................................................................................... 12

*Hufnagle v. Rino Int'l Corp.*,
  Case No. CV 10-8695-VBF(VBKx), 2011 U.S. Dist. LEXIS 19771 (C.D.
  Cal. Feb. 14, 2011).................................................................................................3, 9

*Johnson v. OCZ Tech. Group, Inc.*,
  CV 12-05265 RS, 2013 U.S. Dist. LEXIS 1610 (N.D. Cal. Jan. 4, 2013) .....................2, 4, 5

*Johnson v. Pozen*,
  No. 07-CV-0599, 2008 U.S. Dist. LEXIS 12004 (M.D.N.C. Feb. 15, 2008)......................3, 7

*Klein v. Altria Group, Inc.*,
  3:20-cv-75 (E.D. Va.) ...............................................................................................12

*Koopman v. Fiat Chrysler Automobiles N.V.*,
  15-cv-7199-JMF (S.D.N.Y.)......................................................................................11

*Laborers Local 1298 Pension Fund v. Campbell Soup Co.*,
  No. 00-CV-0152, 2000 U.S. Dist. LEXIS 5481 (D.N.J. Apr. 24, 2000) ...........................3, 7

*Lang v. Tower Group Int'l, Ltd.*,
  No. 13-CV-5852, 2014 U.S. Dist. LEXIS 86496 (S.D.N.Y. June 17, 2014) .................3, 6, 8

*In re Lucent Techs. Sec. Litig.*,
  221 F. Supp. 2d 472 (D.N.J. 2001) ..........................................................................3, 7, 8

*Menaldi v. Och-Ziff Capital Management Group LLC*,
  14-cv-3251-JPO (S.D.N.Y.).......................................................................................11

*Middlesex County Ret. Sys. v. Semtech Corp.*,
  CV 07-7114 CAS (FMOx), 2010 U.S. Dist. LEXIS 145971 (C.D. Cal. Aug.
  27, 2010) ..............................................................................................................3, 10

*Nicolow v. Hewlett Packard Co.*,
  No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ........................................1

*In re Oxford Health Plans, Inc. Secs. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ..................................................................................4, 11

*Petrie v. Electronic Game Card, Inc.*,
  No. 10 CV 252, 2010 WL 2292288 (C.D. Cal. June 4, 2010)...........................................2, 7

*In re Philip Morris International Inc. Sec. Litig.*,
  1:18-cv-8049 (S.D.N.Y.) ............................................................................................12

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ...................................................................................6

*In re Providian Fin. Corp. Sec. Litig.*,
    No. C 01-03952 CRB, 2004 U.S. Dist. LEXIS 31107 (N.D. Cal. Jan. 15,
    2004) ...................................................................................................................... 3, 10

*Robb v. Fitbit Inc.*,
    No. 16-cv-00151-SI, 2016 U.S. Dist. LEXIS 62457 (N.D. Cal. May 10,
    2016) .......................................................................................................................... 2, 5

*Sabbagh v. Cell Therapeutics, Inc.*,
    Nos. C10-414MJP, et al., 2010 WL 3064427 (W.D. Wash. Aug. 2, 2010) ....................... 2, 7

*In re Stitch Fix, Inc. Sec. Litig.*,
    393 F. Supp. 3d 833 (N.D. Cal. 2019) ..................................................................................... 7

*In re Surebeam Corp. Sec. Litig.*,
    No. 03 CV 1721 JM (POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004)........................... 2, 7

*Thomas v. Magnachip Semiconductor Corp.*,
    14-cv-1160-JST (N.D. Cal.)................................................................................................... 11

*Thorpe v. Walter Investment Management*,
    14-cv-20880-UU (S.D. Fla.) .................................................................................................. 11

*In re Tyco Int'l, Ltd. Secs. Litig.*,
    No. 00-MD-1335, 2000 U.S. Dist. LEXIS 13390 (D.N.H. Aug. 17, 2000) ...................... 4, 11

**Statutes**

15 U.S.C. §78u-4(a)(3)(B)(iii) ................................................................................................. 1, 4, 6

The Private Securities Litigation Reform Act of 1995 ..........................................................*passim*

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................................... 1, 9

Lead Plaintiff Movant the Zoom Investor Group[1] respectfully submits this memorandum of law in further support of its motion for appointment as Lead Plaintiff and approval of Co-Lead Counsel (Dkt. No. 38); and in opposition to the competing motion of Adam Butt (Dkt. No. 28).

## I.    PRELIMINARY STATEMENT

The PSLRA instructs the Court to appoint as Lead Plaintiff the movant or group of movants with the greatest financial interest in the outcome of the litigation; **and** who satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Of the two competing motions that remain before the Court, only the Zoom Investor Group satisfies both of these statutory criteria.  **First**, the Zoom Investor Group incurred losses of **nearly $709,000** in connection with its purchases of Zoom securities as a result of the fraud alleged in the Action, more than any three times that of Mr. Butt.  The Zoom Investor Group thus has the largest financial interest within the meaning of the PSLRA of any putative Class member eligible for appointment as Lead Plaintiff.  *See*, *e.g.*, *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) ("[t]he weight of authority puts the most emphasis on the competing movants' estimated losses, using a [LIFO] methodology").  Moreover, one member of the group—Dr. Pham—possesses a significantly larger financial interest than Mr. Butt even considered individually, having incurred a loss of $327,300 compared to Mr. Butt's loss of only $209,500.  **Second**, in addition to its significant financial interest, the Zoom Investor Group has made the requisite *prima facie* showings of adequacy and typicality within the meaning of Rule 23.  *See*, *e.g.*, *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF, 2014 U.S. Dist. LEXIS 111869, at *9 (N.D. Cal. Aug. 11, 2014).

In a last-ditch effort to gain a leadership role in this litigation, Mr. Butt has attacked the cohesiveness of the Zoom Investor Group, purporting to take issue with its composition.  Yet these arguments are at odds with both the record and Ninth Circuit precedent.  The Zoom Investor

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meanings as set forth in the Zoom Investor Group's moving or opposition briefs.  *See* Dkt. Nos. 38, 43.

Group submitted with its motion papers a Joint Declaration, reviewed and executed by the group's members prior to the filing of the Zoom Investor Group's motion, attesting to, *inter alia*, its cohesiveness, its members' understanding of the responsibilities of a lead plaintiff, and their readiness to supervise the group's chosen counsel to prosecute the putative Class's claims. *See* Dkt. No. 39-4. Indeed, in order to further demonstrate its adequacy, the Zoom Investor Group has executed a second such declaration attesting to, *inter alia*, the Zoom Investor Group's understanding of the procedural posture of this litigation, its continued desire to serve as Lead Plaintiff, and the readiness of each of its members to serve as Lead Plaintiff individually if the Court is not inclined to appoint a group, as well as to its members' communications with one another in order to coordinate their leadership of the putative class. *See* Dkt. No. 44-1. Contrary to Mr. Butt's assertion, courts in the Ninth Circuit routinely appoint investor groups under such circumstances. *See*, *e.g.*, *Johnson v. OCZ Tech. Group, Inc.*, CV 12-05265 RS, 2013 U.S. Dist. LEXIS 1610, at *7-*8 (N.D. Cal. Jan. 4, 2013); *Bruce v. Suntech Power Holdings Co. Ltd.*, CV 12-04061 RS, 2012 U.S. Dist. LEXIS 167702, at *7-*9 (N.D. Cal. Nov. 13, 2012); *Robb v. Fitbit Inc.*, No. 16-cv-00151-SI, 2016 U.S. Dist. LEXIS 62457, at *14 (N.D. Cal. May 10, 2016); *Ferreira v. Funko, Inc.*, 2:20-cv-02319-VAP-PJWx, 2012 U.S. Dist. LEXIS 106515 (C.D. Cal. June 11, 2020).

Courts in the Ninth Circuit are particularly inclined to appoint lead plaintiff groups where, as here, one member of the group individually has alleged the largest financial interest in the litigation, finding a diminished concern about improperly motivated aggregation in such circumstances. *See*, *e.g.*, *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. Oct. 21, 2009); *Sabbagh v. Cell Therapeutics, Inc.*, Nos. C10-414MJP *et al.*, 2010 WL 3064427, at *7 (W.D. Wash. Aug. 2, 2010); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM (POR), 2004 WL 5159061, at * 5 (S.D. Cal. Jan. 5, 2004); *Petrie v. Electronic Game Card, Inc.*, No. 10 CV 252, 2010 WL 2292288, at * 2 (C.D. Cal. June 4, 2010).

Not only is appointment of the Zoom Investor Group permissible, the appointment of a group would in fact benefit the proposed Class in this litigation. Courts routinely find that the

appointment of co-lead plaintiffs confers numerous benefits to the class, including, *inter alia*, shared resources, experience and expertise, as well as continuity and stability in the event that a single lead plaintiff subsequently needs to withdraw as a class representative.  In the recent Supreme Court decision *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018), in which the court held that the principle of equitable tolling does not extend to successively-filed class actions, the court also implicitly highlighted the advantages that group leadership of a class would yield in terms of continuity and stability in the event a single lead plaintiff was unable to remain in that role.  *Id.* at 1807 n.3 (finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups").  *See also Lang v. Tower Group Int'l, Ltd.*, No. 13-CV-5852, 2014 U.S. Dist. LEXIS 86496, at *13-14 (S.D.N.Y. June 17, 2014); *Dolan v. Axis Capital Holdings Ltd.*, No. 04-CV-8564, 2005 U.S. Dist. LEXIS 6538, at *15-16 (S.D.N.Y. Apr. 13, 2005); *In re Lucent Techs. Sec. Litig.*, 221 F. Supp. 2d 472, 483 (D.N.J. 2001); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. 00-CV-0152, 2000 U.S. Dist. LEXIS 5481, at *11 (D.N.J. Apr. 24, 2000); *Johnson v. Pozen*, No. 07-CV-0599, 2008 U.S. Dist. LEXIS 12004, at *6-7 (M.D.N.C. Feb. 15, 2008).

Mr. Butt further challenges the suitability of one member of the Zoom Investor Group, Dr. Pham, based on the timing of his purchases relative to the disclosures alleged in the operative complaint.  However, courts in the Ninth Circuit generally reject such arguments, finding movants to be typical and adequate class representatives, and not subject to unique defenses, so long as the movant purchased the subject securities during the Class Period at prices artificially inflated by the alleged fraud and held the securities at issue through at least one disclosure of the alleged fraud.  *See*, *e.g.*, *Hufnagle v. Rino Int'l Corp.*, Case No. CV 10-8695-VBF(VBKx), 2011 U.S. Dist. LEXIS 19771, at *22 (C.D. Cal. Feb. 14, 2011); *In re Providian Fin. Corp. Sec. Litig.*, No. C 01-03952 CRB, 2004 U.S. Dist. LEXIS 31107, at *14-*15 (N.D. Cal. Jan. 15, 2004); *Middlesex County Ret. Sys. v. Semtech Corp.*, CV 07-7114 CAS (FMOx), 2010 U.S. Dist. LEXIS 145971, at *13 (C.D. Cal. Aug. 27, 2010).

Finally, appointment of Pomerantz and Rosen as Co-Lead Counsel would likewise benefit the class, by allowing the Class to benefit from the shared resources and expertise of the two firms. *See*, *e.g.*, *In re Oxford Health Plans, Inc. Secs. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998); *In re Tyco Int'l, Ltd. Secs. Litig.*, No. 00-MD-1335, 2000 U.S. Dist. LEXIS 13390, at *35-36 (D.N.H. Aug. 17, 2000). Indeed, these two firms specifically have a productive history of working together as co-lead counsel, having secured numerous multi-million dollars on behalf of investors in other PSLRA actions. Given the productive working relationships that attorneys at these two firms have established in their prior collaborations, Pomerantz and Rosen will be able to coordinate their efforts efficiently, without performing duplicative work, if appointed as Co-Lead Counsel.

Accordingly, for the reasons set forth herein and in its moving and opposition briefs, the Zoom Investor Group respectfully requests that the Court grant its motion in its entirety and deny the competing motion of Mr. Butt.

## II.    ARGUMENT

### A.    The Zoom Investor Group is an Appropriate Group

Contrary to Mr. Butt's assertions, the Zoom Investor Group is an appropriate movant group, the appointment of which is *expressly* permitted by the PSLRA (*see* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ("the most adequate plaintiff . . . is the person or *group* of persons . . .") (emphasis added)), and the propriety of which was recently endorsed by the Supreme Court in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) (finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups").

Moreover, the Zoom Investor Group submitted with its motion a Joint Declaration attesting to the group members' sophistication, knowledge of the litigation, understanding of the responsibilities of a lead plaintiff, and shared committed to working together as Co-Lead Plaintiffs to protect the interests of the Class. Dkt. No. 39-4. Indeed, its members have participated in a conference call to discuss the status of the motion and the litigation in general and have executed a second such declaration attesting to, *inter alia*, the Zoom Investor Group's understanding of the

procedural posture of this litigation, its continued desire to serve as Lead Plaintiff, and the readiness of each of its members to serve as Lead Plaintiff individually if the Court is not inclined to appoint a group. *See* Dkt. No. 44-1.  Courts in the Ninth Circuit routinely appoint investor groups as lead plaintiffs in such circumstances. *See*, *e.g.*, *OCZ Tech. Group*, 2013 U.S. Dist. LEXIS 1610, at *7-*8 ("Small, cohesive groups similar to the OCZ Investor Group are routinely appointed as Lead Plaintiff in securities actions when they have shown their ability to manage the litigation effectively in the interests of the class without undue influence of counsel."); *Suntech Power*, U.S. Dist. LEXIS 167702, at *7-*9; *Fitbit*, 2016 U.S. Dist. LEXIS 62457, at *14.

The recent Central District of California opinion in *Ferreira v. Funko, Inc.* is instructive. In *Funko*, the court appointed a group similar to the Zoom Investor Group—consisting of three members, and having submitted a Joint Declaration similar in substance to that submitted by the Zoom Investor Group—and rejected attacks on the group's adequacy made by the competing movants in that action, identical in substance to those adduced here by Mr. Butt:

> The Court . . . finds Funko Investor Group capable of performing the lead plaintiff function.  In support of its motion, Funko Investor Group submitted a joint declaration of its members, which describes Zheng, Baker, and Zhang's experience and sophistication as investors; asserts they understand the role and responsibilities of a lead plaintiff, particularly in overseeing their lawyers and efficiently prosecuting the case; and provides a process for decision-making and addressing disagreements within the group.  While this is not a detailed blueprint, ***the Court finds Funko Investor Group's members have demonstrated that they appreciate their duty to manage the litigation firmly and actively.***  The Court notes it retains the right to remove Funko Investor Group as lead plaintiff at any stage should its members prove unequal to the task.

*Funko*, 2012 U.S. Dist. LEXIS 106515, at *17 (emphasis added).  Here, the Zoom Investor Group has submitted *two* declarations (compared to only one submitted by the investor group in *Funko*) attesting to the most salient points noted by the *Funko* court: the experience and sophistication of its members; their understanding of the role and responsibilities of a lead plaintiff; a process for decision-making and disagreements; and, most fundamentally, their "appreciat[ion of] their duty to manage the litigation firmly and actively." *Id.*

REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION - 20-cv-02353-JD

The PSLRA expressly requires "***proof***" that a movant is inadequate of "protect[ing] the interests of the class" or "subject to unique defenses" for that movant to be disqualified from consideration.    15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb) (emphasis added); *Fragala v. 500.com*, CV 15-01463 MMM (EX), 2015 U.S. Dist. LEXIS 188276, at \*33-\*34 (C.D. Cal. July 7, 2015). "[S]peculative assertions are insufficient to rebut the lead plaintiff presumption." *Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP (PJWx), 2012 U.S. Dist. LEXIS 28040, at \*10 n.6 (C.D. Cal. Mar. 2, 2012).  The Zoom Investor Group has now attested twice, under penalty of perjury, that its members understand the responsibilities of Lead Plaintiffs and stand ready to shoulder those responsibilities.  For Mr. Butt to assume without evidence—and indeed, at odds with the record before the Court—that the members of the Zoom Investor Group are somehow passive litigants incapable of or uninterested in supervising their chosen counsel is the very definition of speculation.

### B.    Appointment of a Lead Plaintiff Group Will Benefit the Class

Not only is the appointment of the Zoom Investor Group permissible under the PSLRA, appointment of a group is in the best interests of the Class.  Indeed, courts nationwide have recognized the myriad benefits that appointment of such groups provide to the class. In *China Agritech*, the Supreme Court implicitly highlighted the advantages that group leadership of a class would yield in terms of continuity and stability in the event a single lead plaintiff was unable to remain in that role. *China Agritech*, 138 S. Ct. at 1807 n.3 (finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups").  *See also Lang*, 2014 U.S. Dist. LEXIS 86496, at \*13-\*14 ("A co-lead structure can 'have the salutary effect of providing greater stability in the prosecution of [the litigation] should a decision be reached at some later stage in the litigation that either co-lead plaintiff will not adequately represent the class.'") (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 420 (S.D.N.Y. 2004)); *Dolan*, 2005 U.S. Dist. LEXIS 6538, at \*15-16 (co-lead plaintiffs "will be able to pool financial resources, knowledge, and experiences, and may also reap the 'benefits of joint decision-making' when pressed with difficult choices") (quoting *Pirelli Armstrong Tire Corp.*,

229 F.R.D. at 419); *Lucent Techs.*, 221 F. Supp. 2d at 483 ("[A]dditional representation may benefit the class and provide flexibility, if needed, in the future."); *Campbell Soup Co.*, 2000 U.S. Dist. LEXIS 5481, at *11 (appointing two competing movants as co-lead plaintiffs "since each may bring a unique perspective to the litigation"); *Pozen*, 2008 U.S. Dist. LEXIS 12004, at *6-7 (appointing co-lead plaintiffs where doing so "ensure[d] that a broader range of shareholder interests will be represented").

Moreover, the concerns often raised with respect to improper grouping in PSLRA actions are effectively a non-issue here, because one Zoom Investor Group Member—Dr. Pham—considered individually has a larger loss than any other competing movant before the Court, including Mr. Butt.  *See Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. Oct. 21, 2009) ("it is not necessary for the members of the Akeena Investor Group to aggregate themselves in order to overcome the largest stake requirement – one of its members could meet that requirement by herself."); *Sabbagh*, 2010 WL 3064427, at *7 ("The Court's confidence . . . is further bolstered by the fact that it does not appear that this group was assembled merely for the purpose of aggregating their losses in order to surpass the financial interests of any of the other applicants. In actuality, two of the members . . . have *individual* losses...which exceed the financial interests of all other applicants.") (emphasis in original); *Surebeam Corp.*, 2004 WL 5159061, at * 5 (appointing group as lead plaintiff where one movant within group had largest losses as compared to competing movants: "[i]t makes no practical difference if Spear Capital [movant with largest losses in group] chooses to associate with other shareholders in order to further distance itself from the next proposed lead plaintiff"); *Petrie*, 2010 WL 2292288, at * 2 (appointing group of three individual investors lead plaintiff where constituent member had largest loss as to any other competing individual: "This is not a case where individual investors use aggregation to push ahead of an individual investor whom, taken individually, who have a greater financial loss than them."). [2]

---

[2] Mr. Butt's reliance on *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) is misplaced.  There, as noted in the Zoom Investor Group's opposition brief (Dkt. No.

Here, the Zoom Investor Group constitutes precisely the sort of group the appointment of which courts have found to benefit the class. Collectively, the group incurred nearly $709,000 in losses in connection with the fraud alleged in this litigation, giving the group a massive stake in the outcome of this litigation that will ensure its vigorous prosecution. *See Dolan*, 2005 U.S. Dist. LEXIS 6538, at *15-16. The appointment of multiple investors will also give the class the benefit of "pool[ed] financial resources, knowledge and experiences." *Id.* Likewise, the appointment of a group virtually ensures flexibility, continuity, and stability in the leadership of this Action, because even in the event one of the Co-Lead Plaintiffs subsequently finds himself unable to serve as a class representative, at least one other Co-Lead Plaintiff will likely be able to remain in that role. *See*, *e.g.*, *Lucent Techs.*, 221 F. Supp. 2d at 483; *Lang*, 2014 U.S. Dist. LEXIS 86496, at *13-14.

Indeed, Mr. Butt's counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), can surely attest to the benefits of a group leadership structure in the event that a lead plaintiff is unable to remain in that role. As lead counsel in *In re Grupo Televisa Sec. Litig.*, 1:18-cv-1979 ("*Grupo Televisa*"), Robbins Geller represents lead plaintiff Colleges of Applied Arts and Technology Pension Plan ("CAAT"). Duly appointed pursuant to the PSLRA in May 2018, CAAT served as lead plaintiff in Grupo Televisa for over two years, through the filing of an amended complaint, which survived a motion to dismiss, through discovery, and ultimately reaching the class certification stage of the action. The court denied CAAT's class certification motion in June 2020, however, but for reasons that were unique to CAAT—specifically, the finding that CAAT was not typical of the class because an initially undisclosed short position in the securities at issue had netted CAAT a profit approximately three times its purported loss. *See generally Grupo Televisa*, Dkt. No. 134. Because CAAT was the ***only*** lead plaintiff in the *Grupo Televisa* action, the class certification ruling has placed the class's claims in jeopardy. The *Grupo*

---

43), this Court denied a group of unrelated investors lead plaintiff status where no individual in the movant investor group had the single greatest loss among all lead plaintiff movants. Here, by contrast, Dr. Pham of the Zoom Investor Group has the greatest loss of any individual movant, having lost $327,300 as a result of his transaction in Zoom securities.

*Televisa* court is now in the process of considering whether and/or how the action can proceed under new class leadership—a situation not contemplated in the PSLRA—which in the best-case scenario will significantly delay the action, and in the worst-case scenario will result in the dismissal of the entire action, to the obvious prejudice of the class.  Had a group leadership structure existed in *Grupo Televisa*, however, then the disqualification of only one class representative would not have had the same disruptive effects on the entire litigation—for even if that individual had been removed as a class representative, one or more other group members not subject to the same unique issues would have presumably remained willing and able to serve as lead plaintiffs.

### C.   Zoom Investor Group Member Dr. Pham is Not Subject to a Unique Defense

Mr. Butt asserts that due to the timing of his purchases, one group member, Dr. Pham, is potentially "subject to the unique defense that he lacks a recoverable loss due to defendants' fraud[.]" Dkt. No. 46 at 10.  Specifically, Mr. Butt notes that Dr. Pham held Zoom shares through two corrective disclosures—on July 8, 2019 and July 11, 2019—but sold his Zoom shares prior to the corrective disclosure of March 27, 2020.  Accordingly, Mr. Butt argues that Dr. Pham is subject to a unique defense because "the Court would have to uphold the two earlier corrective disclosures" for Dr. Pham to have a financial interest in this action.  Dkt. No. 46 at 10.

The timing of Dr. Pham's purchases does ***not*** subject him to a unique defense.  First, this purported defense is not unique to Dr. Pham, as the disclosures of July 8, 2019 and July 11, 2019 are during the Class Period alleged in this action.  It is thus a "defense" that is common to class members.  The argument thus fails on this ground alone because to the extent that this is a defense, it is not unique to Dr. Pham.  Second, in cases alleging multiple corrective disclosures, courts routinely find lead plaintiff movants to be typical and adequate within the meaning of Rule 23, and not subject to unique defenses, so long as the movant purchased the subject securities during the Class Period at prices artificially inflated by the alleged fraud and held the securities through at least one disclosure of the alleged fraud—as Dr. Pham did here.  *See*, *e.g.*, *Hufnagle* , 2011

U.S. Dist. LEXIS 19771, at *22 ("Courts have ruled that purchases of stock by the class representatives after negative announcements during the class period or even after the close of the class period do not destroy typicality."); *Providian*, 2004 U.S. Dist. LEXIS 31107, at *14-*15 ("[P]urchases subsequent to a partial or full disclosure of the alleged fraud do not render a proposed class representative atypical because once accurate disclosures are made, the true value of the stock is reflected in the market price."); *Semtech*, 2010 U.S. Dist. LEXIS 145971, at *13 ("the fact of these purchases not give rise to a unique defense that would preoccupy lead plaintiff or its counsel."); *Funko*, 2020 U.S. Dist. LEXIS 106515, at *14-*15 (same).

Accepting Mr. Butt's argument that Dr. Pham is unable to pursue fraud claims against the Defendants due to the timing of certain of his purchases amounts to determining that any Class member similarly situated—*i.e.*, any Zoom investor who purchased shares early in the Class Period, was damaged by preliminary disclosures of the alleged fraud, and subsequently sold all of their Zoom shares before the end of the Class Period—is unable to recover their losses in this litigation. For all intents and purposes, this would effectively exclude a significant portion of Class members very outset of this litigation, and significantly reduce the amount of recoverable damages for the putative class. "[I]t is unclear why a plaintiff would argue for . . . reducing the class size and limiting the potential amount of damages, *unless it was in the best interest of that particular plaintiff only*." *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *6 (N.D. Cal. Aug. 22, 2008) (emphasis added). That Mr. Butt initially endorsed in his motion papers the longer, more inclusive Class encompassing the disclosures of July 2019, and only began to question the potential recoverability of losses incurred in connection with such disclosures in his opposition brief—that is, after he perceived a potential advantage to doing so—suggests that his purported concerns about Dr. Pham being subject to unique defenses may be less than genuine. *See Funko*, 2020 U.S. Dist. LEXIS 106515, at *15 (rejecting similar argument advanced by competing movant for the first time in opposition brief, finding it "inconsistent with [movant's] preferred class period" as endorsed in moving brief).

###### D.    Appointment of Co-Lead Counsel Will Benefit the Class

Mr. Butt also questions the benefit that representation by Co-Lead Counsel will yield to the Class in this action.  Again, Mr. Butt's purported concerns are unpersuasive.  Courts have frequently recognized the benefits of approving more than one firm as co-lead counsel in PSLRA actions.  *See*, *e.g.*, *In re Oxford Health Plans, Inc. Secs. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) (appointing leadership structure consisting of multiple law firms, finding "such a structure will allow for pooling, not only of knowledge and experience, but also of the resources of the plaintiffs' counsel in order to support what could prove to be a costly and time-consuming litigation"); *In re Tyco Int'l, Ltd. Secs. Litig.*, No. 00-MD-1335, 2000 U.S. Dist. LEXIS 13390, at *35-36 (D.N.H. Aug. 17, 2000) (coordinated prosecution of action by multiple law firms "may provide the purported class with the benefits of combined resources or expertise, which may be especially valuable in a complex case").

Here, as their respective firm resumes reflect, Pomerantz and Rosen each has significant experience litigating securities class actions.  *See* Dkt. Nos. 39-5, 39-6.  Appointing the two firms as Co-Lead Counsel will permit Pomerantz and Rosen to pool their resources and experience to the benefit of the putative Class.  In addition, given their experience, the firms will be able to establish a cohesive leadership structure that will enable them to quickly make tactical decisions and assign tasks to the best-suited attorneys.  This will ensure that this litigation is prosecuted expeditiously and efficiently, with no duplication of effort or fees.

Moreover, Pomerantz and Rosen specifically are well-suited to work collaboratively in a co-leadership structure.  These two firms, working together as Co-Lead Counsel in other actions, have achieved numerous multi-million dollar recoveries for investors.  *See Koopman v. Fiat Chrysler Automobiles N.V.*, 15-cv-7199-JMF (S.D.N.Y.) ($110 million settlement); *Thomas v. Magnachip Semiconductor Corp.*, 14-cv-1160-JST (N.D. Cal.) ($30 million settlement); *Menaldi v. Och-Ziff Capital Management Group LLC*, 14-cv-3251-JPO (S.D.N.Y.) ($28.75 million settlement); *Thorpe v. Walter Investment Management*, 14-cv-20880-UU (S.D. Fla.) ($24 million settlement).  As a result of these prior collaborations, the attorneys employed at Pomerantz and

Rosen have developed deep and productive working relationships, which would further benefit the Class in this litigation.

Finally, the Zoom Investor Group respectfully notes that Mr. Butt's counsel, Robbins Geller, routinely enters into co-lead counsel arrangements in PSLRA actions—including with Pomerantz in at least three such actions in the past three years. *See*, *e.g.*, *Howard v. Arconic Inc.*, 2:17-cv-1057 (W.D. Pa.); *In re Philip Morris International Inc. Sec. Litig.*, 1:18-cv-8049 (S.D.N.Y.); *Klein v. Altria Group, Inc.*, 3:20-cv-75 (E.D. Va.).   Given Robbins Geller's demonstrated readiness to collaborate with other firms in PSLRA actions, the Zoom Investor Group respectfully questions the sincerity of Mr. Butt's suggestion that proposing a co-lead counsel structure is evidence of the Zoom Investor Group's inadequacy.

## III.    CONCLUSION

For the foregoing reasons, the Zoom Investor Group respectfully requests that the Court issue an Order: (1) appointing the Zoom Investor Group as Lead Plaintiff for the Class; and (2) approving the Zoom Investor Group's selection of Pomerantz and Rosen as Co-Lead Counsel for the Class.

Dated:  June 29, 2020                              Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(admitted *pro hac vice*)
J. Alexander Hood II
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016

Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
(*pro hac vice application forthcoming*)
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movant
and Proposed Co-Lead Counsel for the Class*

THE ROSEN LAW FIRM, P.A.
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
lrosen@rosenlegal.com

*Counsel for Lead Plaintiff Movant
and Proposed Co-Lead Counsel for the Class*

REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION - 20-cv-02353-JD

## **PROOF OF SERVICE**

I hereby certify that on June 29, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti

REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION - 20-cv-02353-JD