UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ZOOM SECURITIES LITIGATION | Case No. 20-cv-02353-JD<br><br>**ORDER RE LEAD PLAINTIFF AND LEAD COUNSEL**<br><br>Re: Dkt. Nos. 28, 34, 38 |

This is a consolidated shareholder class action alleging securities fraud by Zoom Video Communications, Inc. ("Zoom") and its officers. *See* Dkt. No. 24. Three motions for appointment as lead plaintiff and approval of lead counsel have been filed. Dkt. Nos. 28, 34, 38.[1]

## I. APPOINTMENT OF LEAD PLAINTIFF

The Court has discussed in other orders the three-step process for appointing a lead plaintiff under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B). *See In re Stitch Fix, Inc. Securities Litigation*, 393 F. Supp. 3d. 833 (N.D. Cal. 2019). The first step is for the plaintiff in the first-filed action to "publiciz[e] the pendency of the action, the claims made and the purported class period" in "a widely circulated national business-oriented publication or wire service." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (citing 15 U.S.C. § 78u-4(a)(3)(A)). The notice must "also state that 'any member of the purported class may move the court to serve as lead plaintiff.'" *Id*. There is no dispute that this step was adequately completed by plaintiff Michael Drieu. *See* Dkt. No. 12 (Notice of Publication).

---

[1] One applicant, Lawrence Jarnes, filed a notice of non-opposition, recognizing that other applicants had a greater financial interest in the litigation. Dkt. No. 42.

In the next two steps, the Court considers "potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical." *Cavanaugh*, 306 F.3d at 732. In step two, the Court determines presumptive lead plaintiff status relying on the "presumptive lead plaintiff's complaint and sworn certification." *Id*. at 730. In step three, the other plaintiffs have "an opportunity to rebut the presumptive lead plaintiff's showing" by "present[ing] evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy." *Id*.

### A. The Group Investors

To determine presumptive lead plaintiff status, the Court first determines which prospective lead plaintiff evidences the greatest financial interest in the litigation. The self-styled "Zoom Investor Group" is made up of Michael Bens, Bhadresh Shah, Kwan Sing Ng, and Tony D. Pham, and the group claims an aggregate loss of approximately $708,760. Dkt. No. 39 Exh. A. While the PSLRA expressly contemplates that certain groups of persons may collectively serve as lead plaintiff, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), "the clear consensus in our district is that a group of investors who had no pre-existing relationship with one another, and whose relationship and group status were forged only by a lawyer, is not appropriate to be lead plaintiff based on their aggregated losses." *Stitch Fix*, 393 F. Supp. 3d at 835. The members of the Zoom Investor Group do not claim to have any pre-existing relationship. *See* Dkt. No. 39 Exh. D (Joint Declaration); *see also* Dkt. No. 44 Exh. 1 (Further Joint Declaration). Consequently, the Court will not consider this aggregate loss in determining the presumptive lead plaintiff.

### B. The Individual Investors

The Zoom Investor Group urges that it should still be considered the presumptive lead plaintiff based on the total loss claimed by one of its members, Dr. Tony Pham. Dkt. No. 43 at 5. In the alternative, the Zoom Investor Group urges the appointment of Pham as sole lead plaintiff, *id.* at 8, and has submitted a second joint declaration stating that each member of the group is willing to serve as sole lead plaintiff, Dkt. No. 44 Exh. 1 ¶ 8. A competing candidate, Adam Butt, contends that Pham is not an adequate plaintiff because he is subject to unique defenses due to the timing of his stock sales. Dkt. No. 46 at 8-10; Dkt. No. 47 at 6-7.

The Court "must calculate each potential lead plaintiff's financial interest in the litigation" using a method that is "both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4. Both individuals present their total losses as proxies for their financial stakes. Dkt. No. 29 Exh. C (Butt's total loss was $209,517.12); Dkt. No. 39 Exh. A (Pham's total loss was $327,300). But there is reason to believe that Pham's total loss overstates his financial interest in the relief sought by the class. Pham sold his Zoom stock on December 30, 2019, for $66.99 per share, Dkt. No. 39 Exh. A, far lower than the share price after the alleged partial corrective disclosures over 90 days prior, Dkt. No. 1 ¶ 36 (Zoom's stock price closed at $90.76 per share on July 8, 2019); *id.* ¶ 38 (Zoom's stock price closed at $91.40 per share on July 11, 2019). Because Pham sold his shares over 90 days after the prior alleged corrective disclosure, in which time the stock price fell by around $24 per share, Pham's losses are likely greater than the PSLRA's statutory damages cap. *See* 15 U.S.C. § 78u-4(e). While it is too early in the litigation to estimate with any precision the amount of damages any plaintiff might ultimately recover, the amount of the damages cap can be rationally and consistently determined for each potential lead plaintiff by reference to the statute and historical stock price data. Consequently, the Court will not consider losses that exceed the statutory damages cap, as such losses are not relevant in determining which plaintiff "has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 730. Instead, the Court will compare the potential lead plaintiffs' financial interests in the relief sought by the class by calculating the amounts of their total losses that are recoverable under the PSLRA.

The method of calculating the PSLRA's statutory damages cap depends on whether a plaintiff sold his or her shares more than 90 days after a corrective disclosure alleged in the complaint. For plaintiffs who sell their stock outside of 90 days from the relevant corrective disclosure, damages awards are limited to the difference between the purchase price and the mean trading price of the stock during that 90-day period. 15 U.S.C. § 78u-4(e)(1). For plaintiffs who sell their stock within that 90-day period, damages awards are limited to the difference between the purchase price and the mean trading price of the stock between the date of the disclosure and the date the stock was sold. *Id.* § 78u-4(e)(2).

3

Pham sold his stock more than 90 days after the preceding corrective disclosures alleged in the complaint. Dkt. No. 1 ¶¶ 35-38 (alleging partial corrective disclosures between July 8 and 11, 2019); Dkt. No. 39 Exh. A at 1 (Pham sold his shares on December 30, 2019). The total purchase price for Pham's 10,000 shares of Zoom stock was $997,200. Dkt. No. 39 Exh. A. Historical stock price data show that the mean trading price for Zoom stock in the 90-day period starting July 11, 2019, was $88.48 per share.[2] The product of this mean trading price and Pham's 10,000 shares is $884,800. Therefore, under Section 78u-4(e)(2), Pham can recover no more than $112,400 of his total loss ($997,200 less $884,800).

Butt sold his stock less than 90 days after the March and April 2020 disclosures. *See* Dkt. No. 1 ¶¶ 49-66 (alleging corrective disclosures between March 26 and April 6, 2020); Dkt. No. 29 Exh. C (Butt sold his shares on April 8, 2020). The total purchase price for Butt's 6,261 shares was $979,624.48. Dkt. No. 29 Exh. C. The mean trading price for Zoom stock between April 6 and 8, 2020, was $118.17 per share.[3] The product of this mean trading price and Butt's 6,261 shares is $739,862.37. Therefore, under Section 78u-4(e)(2), the applicable statutory damages cap is $239,762.11 ($979,624.48 less $739,862.37), which is greater than Butt's total loss of $209,517.12. Dkt. No. 29 Exh. C.

### C.     Adam Butt

The amount of Butt's total loss, $209,517.12 -- which is less than his statutory damages cap under Section 78u-4(e)(2) -- exceeds $112,400, the portion of Pham's loss that is recoverable under Section 78u-4(e)(1). Butt "has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 730. Because Butt has provided information satisfying Rule 23(a)'s typicality and adequacy requirements, Dkt. Nos. 28 at 4-5; Dkt. No. 29 Exhs. B-D, he is the presumptively most adequate plaintiff. *Cavanaugh*, 306 F.3d at 730. Despite the Zoom Investor Group's ill-advised attempt to reserve the right to address Butt's typicality and adequacy in their opposition, Dkt. No. 43 at 9, they did not do so in their reply, *see* Dkt. No. 49, and have forfeited the opportunity to dispute his showing of typicality and adequacy. The Court appoints Adam Butt as lead plaintiff of the

---

[2] *See* https://finance.yahoo.com/quote/ZM/history?period1=1562803200&period2=1570665600.
[3] *See* https://finance.yahoo.com/quote/ZM/history?period1=1586131200&period2=1586390400.

4

consolidated action.

## II. APPOINTMENT OF LEAD COUNSEL

Under the PSLRA, the Court must also appoint lead counsel. *Stitch Fix*, 393 F. Supp. 3d at 836-37; 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). "While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff." *Cavanaugh*, 306 F.3d at 734 (citations omitted). Butt has selected the firm of Robbins Geller Rudman & Dowd LLP. Dkt. No. 28 at 1, 5-6. The Court sees no reason to disagree with his selection. Robbins Geller Rudman & Dowd LLP is appointed lead counsel for the putative class in this consolidated action.

## III. CASE SCHEDULE AND NEXT STEPS

The parties are directed to meet and confer to set a schedule for the lead plaintiff's filing of a consolidated complaint and the defendants' response to the complaint. A joint proposed schedule is due by November 16, 2020.

Pursuant to the PSLRA and the Federal Rules of Civil Procedure -- as well as for the sake of clarity and efficient case management -- lead plaintiff is directed to set out in chart form his securities fraud allegations under the following headings on a numbered, statement-by-statement basis: (1) the speaker(s), date(s) and medium; (2) the false and misleading statements; (3) the reasons why the statements were false and misleading when made; and (4) the facts giving rise to a strong inference of scienter. The chart may be attached to or contained in the consolidated complaint, and will be deemed to be a part of the complaint. If lead plaintiff decides to rest on the original complaint, the chart is due by the deadline to file the consolidated complaint.

**IT IS SO ORDERED.**

Dated: November 4, 2020

JAMES DONATO
United States District Judge

5