POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant*
*and Proposed Co-Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE ZOOM SECURITIES LITIGATION. | Case No.: 20-cv-02353-JD<br><br>NOTICE OF MOTION AND MOTION OF THE ZOOM INVESTOR GROUP FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL (DKT. NO. 56); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br><u>CLASS ACTION</u><br><br>Judge:  Hon. James Donato<br>Courtroom:  11 – 19th Floor |

NOTICE OF MOTION AND MOTION OF THE ZOOM INVESTOR GROUP FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL (DKT. NO. 56); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 20-cv-02353-JD

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I.      PRELIMINARY STATEMENT .................................................................................. 2

II.     ARGUMENT ............................................................................................................... 6

        Leave to File a Motion for Reconsideration of the Lead Plaintiff Order Pursuant to Civil
        L.R. 7-9 is Warranted Because the Court Erred in its Application of the PSLRA's
        Damages Cap Provision (15 U.S.C. § 78u-4(e)) in Assessing the Competing Movants'
        Financial Interests ........................................................................................................... 6

III.    CONCLUSION .......................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
  692 F.3d 34 (2d Cir. 2012)......................................................................... 4, 7, 8, 10

*Borteanu v. Nikola Corp. et al.*,
  2:20-cv-01797 (D. Ariz.), Dkt. No 20-4 ................................................................. 5

*Boston Retirement System v. Uber Technologies, Inc. et al.*,
  3:19-cv-06361 (N.D. Cal.), Dkt. No. 59 ................................................................. 5

*City of Grand Rapids General Retirement System et al. v. Bayer Aktiengesellschaft et al.*,
  3:20-cv-04737 (N.D. Cal.), Dkt. No. 44 ................................................................. 5

*Costanzo v. DXC Technology Company et al.*,
  5:19-cv-05794 (N.D. Cal.), Dkt. No. 20 ................................................................. 5

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408. (7th Cir. 2015 ................................................................................... 9

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ................................................................................... 3

*In re HP Inc. Securities Litigation*,
  3:20-cv-01260 (N.D. Cal.), Dkt. No. 33 ................................................................. 5

*In re Veritas Software Corp. Sec. Litig.*,
  496 F.3d 962 (9th Cir. 2007) ................................................................................... 4

*Knight v. CytomX Therapeutics, Inc. et al.*,
  5:20-cv-03432 (N.D. Cal.), Dkt. No. 32 ................................................................. 5

*Kornecki v. Airbus SE et al.*,
  2:20-cv-10084 (D.N.J.), Dkt. No. 10-2 ................................................................... 5

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
  756 F. Supp. 2d 928 (N.D. Ill. 2010) ........................................................... 4, 7, 8, 9

*Ma v. Wells Fargo & Company, et al.*,
  3:20-cv-03697 (N.D. Cal.), Dkt. No. 31 ................................................................. 5

*Reidinger v. Zendesk, Inc. et al.*,
  3:19-cv-06968 (N.D. Cal.), Dkt. No. 42 ................................................................. 5

*Subramanian v. Watford et al.*,
   1:20-cv-02652 (D. Colo.), Dkt. No. 22-3 ................................................................................. 5

*Tollen v. Geron Corporation et al.*,
   3:20-cv-00547 (N.D. Cal.), Dkt. No. 89 .................................................................................. 5

*Vataj v. Johnson et al.*,
   4:19-cv-06996 (N.D. Cal.), Dkt. No. 48 .................................................................................. 5

*Zaidi v. Adamas Pharmaceuticals, Inc. et al.*,
   4:19-cv-08051 (N.D. Cal.), Dkt. No. 56 .................................................................................. 5

### **Statutes**

15 U.S.C. § 78u-4(e) ........................................................................................................ 1, 3, 4, 6

15 U.S.C. § 78u-4(e)(1) ......................................................................................................... 1, 3, 7

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb) .......................................................................................... 6

### **Rules**

Federal Rule of Civil Procedure 23 ............................................................................................... 3

**NOTICE OF MOTION**

TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that the Zoom Investor Group[1] will and hereby does respectfully move this Court pursuant to Civil L.R. 7-9(a) for leave of court to file a motion for reconsideration of this Court's November 4, 2020 Order (i) appointing movant Adam Butt as Lead Plaintiff in the Action and approving Butt's selection of Robbins Geller Rudman & Dowd LLP as Lead Counsel, and (ii) denying the competing motion of the Zoom Investor Group (the "Lead Plaintiff Order") (Dkt. No. 56).

**SUMMARY OF ARGUMENT**

Civil L.R. 7-9(b)(3) permits a party to move for reconsideration of an interlocutory order when, *inter alia*, a court has "fail[ed] . . . to consider material facts or dispositive legal arguments which were presented to the court." Here, the Zoom Investor Group respectfully submits that in determining the respective financial interests of the Zoom Investor Group and Butt in this litigation in order to determine the "most adequate plaintiff" of the Class within the meaning of the PSLRA, the Court overlooked the appropriate application of the PSLRA's statutory damages cap (15 U.S.C. § 78u-4(e)) and erroneously applied a different methodology at odds with the statute. As explained in greater detail below, the PSLRA's damages cap provision prescribes a methodology that calculates damages with reference to "*the* mean trading price" of the security at issue "during *the* 90-day period beginning on *the* date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. § 78u-4(e)(1) (emphases added). The statute thus describes a *single* 90-day period (often referred to as the "lookback" period) commencing on the date of the corrective disclosure that ends the class period at issue, even in cases in which multiple *partial* corrective disclosures are alleged. Here, faced with a Complaint alleging multiple *partial* corrective disclosures, the Court applied

---

[1] Unless otherwise specified, capitalized terms shall have the same meanings as set forth in the Zoom Investor Group's moving, opposition or reply briefs in support of its motion for appointment as Lead Plaintiff and approval of Lead Counsel. *See* Dkt. Nos. 38, 43, 49.

NOTICE OF MOTION AND MOTION OF THE ZOOM INVESTOR GROUP FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL (DKT. NO. 56); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 20-cv-02353-JD

a methodology that calculated damages with reference to *multiple* 90-day periods, each of which respectively began on the dates of the separate *partial* corrective disclosures alleged in the Complaint (Dkt. No. 1).  Because the Court erred in its application of the PSLRA's damages cap provision, the Court thus calculated the respective financial interests of Butt and the Zoom Investor Group on an erroneous basis at odds with the PSLRA's statutory instructions. Significantly, reconsideration of the Court's Order is warranted because Pham never had an opportunity to address the proper calculation of damages pursuant to the PSLRA, because Butt never argued that he had a larger financial interest than Pham or that in applying the PSLRA damages cap, there is more than one relevant 90-day lookback period.  Indeed, the application of multiple 90-day lookback periods is inconsistent with how courts and plaintiffs (including Butt's counsel) nearly universally apply the 90-day lookback.  Accordingly, the Zoom Investor Group respectfully submits that leave to file a motion for reconsideration of the Court's Lead Plaintiff Order is warranted.

This motion is supported by the memorandum of points and authorities submitted herewith, the Declaration of Jennifer Pafiti ("Pafiti Decl."), and all exhibits thereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

The Court's Lead Plaintiff Order adjudicated the respective lead plaintiff motions of Butt (Dkt. No. 28) and the Zoom Investor Group (Dkt. No. 38).  As a threshold matter, the Court declined to consider "the aggregate loss [of the Zoom Investor Group's four members] in determining the presumptive lead plaintiff" and instead assessed the financial interest of one group member individually, Tony D. Pham, relative to that of Butt.  Dkt. No. 56 at 2.

As the Court's Lead Plaintiff Order acknowledges, "[t]o determine presumptive lead plaintiff status, the Court first determines which prospective lead plaintiff evidences the greatest financial interest in the litigation" (Dkt. No. 56 at 2), an assessment that the Court undertook by "compar[ing] the potential lead plaintiffs' financial interests in the relief sought by the class by

calculating the amounts of their total losses that are recoverable under the PSLRA." *Id.* at 3. The Court, quoting the Ninth Circuit decision in *In re Cavanaugh*, explained that in calculating financial interest it must use a method that is "both rational and consistently applied." *Id.* (quoting *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002)). The Court then looked to the PSLRA's statutory damages cap (15 U.S.C. § 78u-4(e)):

> The method of calculating the PSLRA's statutory damages cap depends on whether a plaintiff sold his or her shares more than 90 days after a corrective disclosure alleged in the complaint. For plaintiffs who sell their stock outside of 90 days from the relevant corrective disclosure, damages awards are limited to the difference between the purchase price and the mean trading price of the stock during that 90-day period. 15 U.S.C. § 78u-4(e)(1). For plaintiffs who sell their stock within that 90-day period, damages awards are limited to the difference between the purchase price and the mean trading price of the stock between the date of the disclosure and the date the stock was sold.

Dkt. No. 56 at 3 (citations omitted).

In assessing the movants' respective financial interests, the Court looked to their Zoom stock sales with reference to the stock's average trading price within *each* of the 90-day periods that followed the multiple corrective disclosures alleged in the Complaint. On this basis, the Court concluded that Butt's "total loss, $209,517.12 . . . exceeds $112,400, the portion of Pham's loss that is recoverable under Section 78u-4(e)(1)." *Id.* at 4. Finding that Butt thus possessed the largest financial interest in the litigation within the meaning of the PSLRA and "provided information satisfying Rule 23(a)'s typicality and adequacy requirements," the Court found Butt to be "the presumptively most adequate plaintiff" and appointed him as Lead Plaintiff. *Id.* at 4-5.

The Zoom Investor Group respectfully submits that the Court erred in its application of the PSLRA's damages cap provision. The Court's methodology incorrectly calculated the competing movants' losses with reference to an average price of Zoom stock for each 90-day period that followed the various partial corrective disclosures alleged in the Complaint, and assessed the recoverable damages of the competing movants with reference to those various 90-

day average prices.  The PSLRA's damages cap, however, instructs that damages be calculated with reference to the average price of the subject security during only *one* 90-day period, beginning on the date of the corrective disclosure that ends the relevant class period—*i.e.*, the *final* corrective disclosure, in cases where multiple *partial* corrective disclosures are alleged.  *See*, *e.g.*, *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 936 (N.D. Ill. 2010).  Traditionally, and before the PSLRA's damages cap, courts assessed economic loss in Section 10(b) cases in terms of "out-of-pocket" damages, calculated as the difference between the purchase price paid by an investor and the "true" value of the stock.  *See Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 39 (2d Cir. 2012) (quoting *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 967 n.3 (9th Cir. 2007) and citing S. Rep. No. 104–98, at 20 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 699).  A stock's true value for these purposes was generally assessed with reference to the price of the stock at the end of the relevant class period—*i.e.*, "based on the date the corrective information is disclosed."  *Acticon*, 496 F.3d at 39 (quoting S. Rep. No. 104-98, at 20 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 699).  However, this measure of damages would sometimes yield a windfall to plaintiffs, because a given security's price at the end of a class period often reflected a market overreaction to negative information about the subject company and, as such, was in some circumstances not a proper measure of the security's true price.  *Id.*  Accordingly, for these reasons, Congress included the damages cap provision of 15 U.S.C. § 78u-4(e) in the PSLRA.  Constituting as it does a departure from the traditional rule, aimed to address only the limited situations in which application of the traditional rule would yield a windfall recovery, the damages cap is appropriately construed narrowly—*i.e.*, applied only to the final corrective disclosure, rather than to every corrective disclosure alleged in a given complaint.

Consistent with the reading of the statute, at the lead plaintiff stage movants and courts alike universally rely on loss calculations provided by lead plaintiff movants that calculate financial interest in this manner in cases that have multiple partial corrective disclosures—

NOTICE OF MOTION AND MOTION OF THE ZOOM INVESTOR GROUP FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL (DKT. NO. 56); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 20-cv-02353-JD

including Butt's counsel, Robbins Geller, which routinely presents financial interest in this manner in lead plaintiff motions. *See*, *e.g.*, *Borteanu v. Nikola Corp. et al.*, 2:20-cv-01797 (D. Ariz.), Dkt. No 20-4 (presenting financial interest analysis in PSLRA lead plaintiff motion in action with multiple corrective disclosures at issue); *Subramanian v. Watford et al.*, 1:20-cv-02652 (D. Colo.), Dkt. No. 22-3 (same); *Kornecki v. Airbus SE et al.*, 2:20-cv-10084 (D.N.J.), Dkt. No. 10-2 at *11 (same).

Likewise, parties consistently apply lookback price to only the final corrective disclosure in later stages of these types of cases. A review of the most recent settlement plans of allocation in PSLRA actions within this Judicial District demonstrates that courts in the Northern District of California routinely apply only one PSLRA damages cap, even when partial corrective disclosures are alleged. *See* Pafiti Decl. Exs. 1-33. Likewise, a review of recent PSLRA lead plaintiff orders in this Judicial District indicates that this methodology is likewise used to assess financial interest at the lead plaintiff appointment stage, including in cases in which multiple corrective disclosures are alleged.[2] Finally, this Court itself applied the same methodology in approving a settlement plan of allocation in the action *Aruliah v. Impax Laboratories, Inc. et al.*, 3:14-cv-03673-JD ("*Impax Labs*"), a case in which more than one corrective disclosure was alleged. *See id.*, Dkt. Nos. 63-1 at 8-11 (proposed settlement plan of allocation), 65 (order approving proposed settlement plan of allocation).

Properly calculated pursuant to the methodology prescribed by the PSLRA and as applied by nearly every court throughout the country (and as originally presented by the movants here),

---

[2] *See*, *e.g.*, *City of Grand Rapids General Retirement System et al. v. Bayer Aktiengesellschaft et al.*, 3:20-cv-04737 (N.D. Cal.), Dkt. No. 44; *Ma v. Wells Fargo & Company, et al.*, 3:20-cv-03697 (N.D. Cal.), Dkt. No. 31; *Knight v. CytomX Therapeutics, Inc. et al.*, 5:20-cv-03432 (N.D. Cal.), Dkt. No. 32; *In re HP Inc. Securities Litigation*, 3:20-cv-01260 (N.D. Cal.), Dkt. No. 33; *Tollen v. Geron Corporation et al.*, 3:20-cv-00547 (N.D. Cal.), Dkt. No. 89; *Zaidi v. Adamas Pharmaceuticals, Inc. et al.*, 4:19-cv-08051 (N.D. Cal.), Dkt. No. 56; *Vataj v. Johnson et al.*, 4:19-cv-06996 (N.D. Cal.), Dkt. No. 48; *Reidinger v. Zendesk, Inc. et al.*, 3:19-cv-06968 (N.D. Cal.), Dkt. No. 42; *Boston Retirement System v. Uber Technologies, Inc. et al.*, 3:19-cv-06361 (N.D. Cal.), Dkt. No. 59; *Costanzo v. DXC Technology Company et al.*, 5:19-cv-05794 (N.D. Cal.), Dkt. No. 20.

NOTICE OF MOTION AND MOTION OF THE ZOOM INVESTOR GROUP FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL (DKT. NO. 56); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 20-cv-02353-JD

Pham has incurred a larger recoverable loss in connection with Class Period purchases of Zoom stock than did Butt, meaning that Pham, not Butt, is entitled to the rebuttable presumption that he is the "most adequate plaintiff" of the Class within the meaning of the PSLRA.

The Zoom Investor Group respectfully submits that due to the Court's erroneous application of the PSLRA's damages cap provision, reconsideration of the Court's Lead Plaintiff Order is warranted pursuant to Civil L.R. 7-9.

## II.    ARGUMENT

**Leave to File a Motion for Reconsideration of the Lead Plaintiff Order Pursuant to Civil L.R. 7-9 is Warranted Because the Court Erred in its Application of the PSLRA's Damages Cap Provision (15 U.S.C. § 78u-4(e)) in Assessing the Competing Movants' Financial Interests**

Civil L.R. 7-9(b)(3) provides, in relevant part, that a motion for reconsideration of an interlocutory order is warranted where a court has "fail[ed] to consider material facts or dispositive legal arguments which were presented by the Court before such interlocutory order." Here, the Zoom Investor Group and Butt each moved for appointment as Lead Plaintiff in this Action pursuant to the PSLRA. In doing so, both movants argued, *inter alia*, that they possessed the "largest financial interest" in the Action within the meaning of the PSLRA (15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb)) by virtue of their respective losses in connection with their Class Period investments in Zoom stock. *See* Dkt. Nos. 28, 38. To assess the competing movants' respective financial interests, the Court appropriately looked to the PSLRA's "limitation on damages" provision (15 U.S.C. § 78u-4(e)), which, as set forth in greater detail below, provides instruction as to the appropriate methodology for the calculation of economic loss incurred in connection with transactions in the subject securities. The Zoom Investor Group respectfully submits, however, that the Court erred as a matter of law in its application of the statutory damages cap methodology to the competing movants' transactions in Zoom stock because the Court incorrectly utilized a methodology that involved calculation of the average price of Zoom stock during the

respective 90-day periods that followed *each* corrective disclosure alleged in the Complaint, rather than only the *final* corrective disclosure.

The PSLRA's damages cap provision provides, in relevant part:

> [T]he award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and *the* mean trading price of that security during *the* 90-day period beginning on *the* date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

15 U.S.C. § 78u-4(e)(1) (emphases added).  Thus, by its terms, the statutory damages cap provision contemplates calculation of damages with reference to a *single* mean trading price for a given security within a *single* 90-day period following a *single* corrective disclosure—*i.e.*, the corrective disclosure that concludes a given class period, because that is the point at which the "defendants' fraud no longer affects" the price of the securities at issue.  *See Household Int'l*, No. 02-C-5893 (N.D. Ill. May 28, 2009), Dkt. No. 1622 at 17-18.

The Second Circuit's discussion in *Acticon* of the damages cap and Congress's rationale in including it in the PSLRA is instructive with respect to its proper application:

> Traditionally, economic loss in Section 10(b) cases has been determined by use of the 'out-of-pocket' measure for damages.  Under that measure, 'a defrauded buyer of securities is entitled to recover only the excess of what he paid over the value of what he got.'  In other words, damages 'consist[] of the difference between the price paid and the "value" of the stock when bought.'
>
> . . .
>
> In essence, [the PSLRA's damages cap] 'does not calculate damages based on the single day decline in price, but instead allows the security an opportunity to recover' over a period of 90 days.  'Thus, if the mean trading price of a security during the 90-day period following the correction is greater than the price at which the plaintiff purchased his stock then that plaintiff would recover nothing under the PSLRA's limitation on damages.'  But if the mean trading price during the 90-day period is less than the  plaintiff's purchase price, then the plaintiff may recover out-of-pocket damages up to the difference between her purchase price and the mean trading price.

> The PSLRA's legislative history indicates that Congress imposed this limitation because it believed that '[c]alculating damages based on the date corrective information is disclosed may substantially overestimate plaintiff's actual damages.' S. Rep. No. 104-98, at 20 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 699. It intended the 'bounce back' provision to have the effect of 'limiting damages to those losses caused by the fraud and not by other market conditions.' *Id.* Aside from imposing the 'bounce back' cap on recoverable damages, ***Congress did not otherwise disturb the traditional out-of-pocket method for calculating damages in the PSLRA***.

*Acticon*, 692 F.3d at 39 (internal citations omitted) (emphasis added).

Consistent with Congress's narrow purpose in including the damages cap—namely, to avoid damages windfalls under limited circumstances—the damages cap is thus appropriately applied narrowly, rather than broadly. Accordingly, even in cases in which multiple corrective disclosures are alleged, the proper application of the damages cap entails calculation of the mean price only for the 90-day period following the ***final*** corrective disclosure at issue, and does not involve calculations of average stock prices for the respective 90-day periods following ***each*** of the corrective disclosures at issue. The court's analysis in *Household Int'l* is instructive. There, following a jury verdict in favor of the class and upholding multiple corrective disclosures, defendants argued that the PSLRA damage limitation should be applied to each of the partial disclosures in the case and while the truth was leaking out to the market. *Household Int'l*, No. 02-C5893 (N.D. Ill. May 28, 2009), Dkt. No. 1623 at 14. The plaintiffs, represented by Butt's counsel, Robbins Geller, opposed this interpretation, correctly arguing that under defendants' approach, which was not supported by any case law, the 90-day period would include "a timeframe where the stock was still impacted by the fraud" and thus "would run counter to the purpose of the rule, which is to limit damages to those losses caused by the fraud and not by other market conditions." *Household Int'l*, No. 02-C-5893 (N.D. Ill. May 28, 2009), Dkt. No. 1622 at 17-18. Rather, the plaintiffs argued that the only relevant 90-day period was that commencing with the final corrective disclosure on October 11, 2002, because this was "the date on which the jury found ***defendants' fraud no longer affected Household's stock, and the artificial inflation in the stock was zero***." *Id.* at 17 (emphasis added). The *Household Int'l* court agreed with

NOTICE OF MOTION AND MOTION OF THE ZOOM INVESTOR GROUP FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL (DKT. NO. 56); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 20-cv-02353-JD

plaintiffs that the PSLRA's damages limitation did not apply to partial corrective disclosures and only applied to the final corrective disclosure which fully corrected the stock price. *Household Int'l*, 756 F. Supp. 2d at 936 (concluding that "the 90–day period begins on October 11, 2002" and that there should be "no [damages] limitation for . . . shares sold prior to" this date)., *aff'd in part, rev'd in part and remanded*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408. (7th Cir. 2015).  Given that Butt's counsel correctly argued this matter in the *Household Int'l* case, it is unsurprising that they have not taken a contrary position in this Action by arguing that the PSLRA sanctions multiple 90-day lookback periods.

A hypothetical example illustrates why interpreting the PSLRA's damages cap provision to require calculation of damages with reference to the 90-day average of a stock's price following *each* corrective disclosure at issue, rather than only the final corrective disclosure, would lead to illogical outcomes.  Suppose, in a fraud case involving multiple alleged corrective disclosures, that an investor purchased one share of stock prior to the first partial corrective disclosure at issue and then held that share of stock during both the first and second corrective disclosures alleged.  Further suppose that the 90-day mean trading price following the first corrective event was higher than the purchase price, but the 90-day mean trading price following the second corrective event was well below the purchase price.  If the statute were to be construed as capping the investor's damages at the difference between the purchase price and the 90-day lookback price after *each* of the corrective disclosures, then the investor's single share would somehow be subject to two separate statutory damages caps.  Moreover, this investor, who held stock through both corrective

disclosures and was clearly damaged, would receive no recovery due to the cap created by the first corrective event—a wholly counterintuitive outcome.



The use of multiple 90-day lookback periods would be similarly unworkable if an investor purchased a security and held through two corrective disclosures that occurred within 90 days of each other.  As the Second Circuit noted in *Acticon*, the purpose of the 90-day lookback provision was "to limit[] damages to those losses caused by the fraud and not by other market conditions".  S. Rep. No. 104-98, at 20 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 699.  However, in such a situation, the stock price decline from the second corrective disclosure was clearly "caused by the fraud" and therefore should not be limited by the damages cap.  As such, it is clear from both the statutory language and relevant legislative history that multiple 90-day lookback periods are not contemplated by the PSLRA.

Moreover, applying the damages cap only to the final corrective disclosure alleged at the end of the Class Period in this Action is consistent with the theory of fraud alleged in the Complaints in the two actions that were subsequently consolidated herein.  The Complaint in the action *Drieu v. Zoom Video Communications, Inc. et al.*, 3:20-cv-02353, alleges that while "[t]he truth about deficiencies in Zoom's software encryption began to come to light as early as July

2019", the truth was not fully laid bare until final corrective disclosures on April 6, 2020. *See* Dkt. No. 1 ¶¶ 8, 64-66. Likewise, the Complaint in the second-filed related action *Brams v. Zoom Video Communications, Inc. et al.*, 3:20-cv-02396 ("*Brams*"), contains substantively identical allegations with respect to the disclosures concerning the Company's alleged fraud. *See Brams* Dkt. No. 1 ¶¶7, 82-84. Accordingly, per the Complaints' allegations, the **only** date upon which "information correcting the misstatement or omission that is the basis for the action is disseminated to the market" was April 6, 2020, because prior to that date, per the Complaints' allegations, there had not been a full correction of the alleged misstatements and/or omissions to the market.

The Zoom Investor Group respectfully submits that it is unaware of any authority for the proposition that the PSLRA's damages cap provision requires assessment of a stock's average price within the 90-days following **each** corrective disclosure at issue, rather than after only the **final** corrective disclosure. A review of recent Lead Plaintiff decisions and plans of allocation in PSLRA settlements in the Northern District of California only reinforces this conclusion, even when multiple corrective disclosures are alleged. *See* Pafiti Decl., Exs. 1-33. Indeed, in at least 24 of these settlements, the operative complaint at issue alleged multiple corrective disclosures. *See id.*, Exs. 1-3, 5-10, 12-14, 16-18, 20-21, 25, 27-28, 30-33. Likewise, the Zoom Investor Group further submits that the Court's application of the PSLRA's damages cap methodology in this Action is inconsistent with its own order approving a settlement plan of allocation in *Impax Labs*, which expressly contained multiple corrective disclosures. Indeed, interpreting the PSLRA in this novel way would clearly be to the detriment of the Class. It would necessarily limit the recoverable losses of investors that purchased and sold their securities prior to the final corrective disclosure at a very early stage of the litigation. Acknowledging as much, Butt never argued at any point that he had a larger financial interest than Pham in this Action nor has ever advocated for multiple 90-day lookback periods. He did not do so because his counsel was well aware of

NOTICE OF MOTION AND MOTION OF THE ZOOM INVESTOR GROUP FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL (DKT. NO. 56); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 20-cv-02353-JD

the fact that the use of a single 90-day lookback period is nearly universally applied in courts throughout this country.

The Zoom Investor Group respectfully submits that under the proper application of the PSLRA's damages cap provision, Pham's losses in connection with Class Period purchases of Zoom stock exceed those of Butt. Accordingly, Pham, not Butt, would possess the "largest financial interest" in this litigation, making Pham the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA.

## III.    CONCLUSION

For the foregoing reasons, the Zoom Investor Group respectfully requests that the Court reconsider its Lead Plaintiff Order and reevaluate the respective financial interests of Butt and Pham pursuant to the damages-calculation methodology prescribed by the PSLRA.

Dated:  November 18, 2020               Respectfully submitted,


                                        POMERANTZ LLP

                                        */s/ Jennifer Pafiti*
                                        Jennifer Pafiti (SBN 282790)
                                        1100 Glendon Avenue, 15th Floor
                                        Los Angeles, California 90024
                                        Telephone: (310) 405-7190
                                        jpafiti@pomlaw.com

                                        POMERANTZ LLP
                                        Jeremy A. Lieberman
                                        (admitted *pro hac vice*)
                                        J. Alexander Hood II
                                        (admitted *pro hac vice*)
                                        600 Third Avenue, 20th Floor
                                        New York, NY 10016
                                        Telephone: (212) 661-1100
                                        Facsimile: (212) 661-8665
                                        jalieberman@pomlaw.com
                                        ahood@pomlaw.com

THE ROSEN LAW FIRM, P.A.
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
lrosen@rosenlegal.com

*Counsel for Lead Plaintiff Movant*
*and Proposed Co-Lead Counsel for the Class*

NOTICE OF MOTION AND MOTION OF THE ZOOM INVESTOR GROUP FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL (DKT. NO. 56); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 20-cv-02353-JD

## **PROOF OF SERVICE**

I hereby certify that on November 18, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Jennifer Pafiti
Jennifer Pafiti

NOTICE OF MOTION AND MOTION OF THE ZOOM INVESTOR GROUP FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL (DKT. NO. 56); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 20-cv-02353-JD