# EXHIBIT 4

## GETTING MORE INFORMATION

**21.  Are there more details about the Settlement?**

41.    This Notice summarizes the proposed Settlement.  More details are in the Stipulation.  Lead Counsel's motions in support of final approval of the Settlement, the request for attorneys' fees and litigation expenses, and approval of the proposed Plan of Allocation will be filed with the Court no later than _____, _____  and be available from Lead Counsel, the Claims Administrator, or the Court, pursuant to the instructions below.

42.    You may review the Stipulation or documents filed in the case at the Office of the Clerk of the United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, Room 2112, San Jose, CA 95113 on weekdays (other than court holidays) between 9:00 a.m. and 4:00 p.m. Subscribers to PACER  can also view the papers filed publicly in the Action through the Court's on-line Case Management/Electronic Case Files System at https://www.pacer.gov.

43.    You can also get a copy of the Stipulation and other case documents by calling the Claims Administrator toll free at (___) ____-_____; writing to the Claims Administrator at *Extreme Networks, Inc. Securities Litigation,* c/o _____ _____, ____; or visiting the website dedicated to the Settlement, www._____.com or the website of Lead Counsel, www.labaton.com.  **Please do not call the Court with questions about the Settlement.**

## PLAN OF ALLOCATION OF NET SETTLEMENT FUND

**22.  How will my claim be calculated?**

44.    As discussed above, the Settlement Amount and any interest it earns constitute the Settlement Fund.  The Settlement Fund, after the deduction of Court-approved attorneys' fees and litigation expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court, is the Net Settlement Fund.  If the Settlement is approved by the Court, the Net Settlement Fund will be distributed to eligible Authorized Claimants – *i.e.*, members of the Settlement Class who timely submit valid Claim Forms that are accepted for

payment – in accordance with this proposed Plan of Allocation or such other plan of allocation as the Court may approve. Settlement Class Members who do not timely submit valid Claim Forms will not share in the Net Settlement Fund, but will otherwise be bound by the Settlement. The Court may approve this proposed Plan of Allocation, or modify it, without additional notice to the Settlement Class. Any order modifying the Plan of Allocation will be posted on the settlement website, www._____.com.

45. To design the Plan, Lead Counsel has conferred with Lead Plaintiff's damages expert. The objective of the Plan of Allocation is to distribute the Net Settlement Fund equitably among those Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing. The Plan of Allocation is not intended to estimate, or indicative of, the amounts that Settlement Class Members might have been able to recover after a trial. Nor are the calculations intended to estimate the amounts that will be paid to Authorized Claimants. The Plan of Allocation measures the amount of loss that a Settlement Class Member can claim for purposes of making *pro rata* allocations of the Net Settlement Fund to Authorized Claimants.

46. For losses to be compensable damages under the federal securities laws, the disclosure of the allegedly misrepresented information must be the cause of the change in the price of the securities at issue. In this case, Lead Plaintiff alleged that Defendants issued false statements and omitted material facts during the Class Period that artificially inflated the price of Extreme common stock and call options (and artificially deflated the price of Extreme put options). It is alleged that corrective information released to the market on February 5, 2014 (prior to market open), May 6, 2014 (after market close), October 15, 2014 (prior to market open), and April 9, 2015 (after market close) impacted the market prices of Extreme Securities in a statistically significant manner and removed the alleged artificial inflation (deflation for put options) from the prices on February 5, 2014, May 7-8, 2014, October 16, 2014, and April 10, 2015. Accordingly, in order to have a compensable loss in this Settlement, the Extreme common stock and call options must have been purchased or otherwise acquired during the Class Period and held through at least one of the alleged corrective disclosures listed above and, with respect

to put options, those options must have been sold (written) during the Class Period and not closed through at least one of the alleged corrective disclosures.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

47.     A "Recognized Loss Amount" will be calculated as set forth herein for each purchase of Extreme common stock and call options and each sale of Extreme put options during the Class Period that is listed in the Claim Form and for which adequate documentation is provided.   The sum of a claimant's Recognized Loss Amounts will be the claimant's "Recognized Claim."   To the extent that the calculation of a claimant's Recognized Loss Amount results in a negative number, that number shall be set to zero.

**COMMON STOCK CALCULATIONS**

48.     For each share of common stock purchased or otherwise acquired during the Class Period and sold before the close of trading on April 9, 2015, an "Out of Pocket Loss" will be calculated.  Out of Pocket Loss is defined as the purchase price (excluding all fees, taxes, and commissions) minus the sale price (excluding all fees, taxes, and commissions). To the extent that the calculation of the Out of Pocket Loss results in a negative number, that number shall be set to zero.

49.     **For each share of Extreme common stock purchased or acquired from September 12, 2013 through and including April 9, 2015 and:**

A. Sold before the opening of trading on February 5, 2014, the Recognized Loss Amount for each such share shall be zero.

B. Sold after the opening of trading on February 5, 2014, and before the close of trading on April 9, 2015, the Recognized Loss Amount for each such share shall be *the lesser of*:

   1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below *minus* the dollar artificial inflation applicable to each such share on the date of sale as set forth in **Table 1** below; or

   2. the Out of Pocket Loss.

C. Sold after the close of trading on April 9, 2015, and before the close of trading on July 8, 2015, the Recognized Loss Amount for each such share shall be *the least of*:

1.  the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below; or

2.  the actual purchase/acquisition price of each such share *minus* the average closing price from April 10, 2015, up to the date of sale as set forth in **Table 2**[3] (available at www. _____ ); or

3.  the Out of Pocket Loss.

D.  Held as of the close of trading on July 8, 2015, the Recognized Loss Amount for each such share shall be *the lesser of*:

1.  the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below; or

2.  the actual purchase/acquisition price of each such share *minus* the average closing price of $2.63.

## TABLE 1

**Extreme Networks Common Stock Artificial Inflation
For Purposes of Calculating Purchase and Sale Inflation**

| Transaction Date | Artificial Inflation Per Share |
| --- | --- |
| September 12, 2013 – February 4, 2014 | $3.50 |
| February 5, 2014 – May 6, 2014 | $3.28 |
| May 7, 2014 | $1.87 |
| May 8, 2014 – October 15, 2014 | $1.49 |
| October 16, 2014 – April 9, 2015 | $0.77 |

**CALL AND PUT OPTIONS CALCULATIONS**

50.     Exchange-traded options are traded in units called "contracts," which entitle the holder to buy (in the case of a call option) or sell (in the case of a put option) 100 shares of the

---

[3] Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with this requirement, Recognized Loss Amounts are reduced by taking into account the closing prices of Extreme common stock during the "90-day look-back period," April 10, 2015 through July 8, 2015. The mean (average) closing price for Extreme common stock during this 90-day look-back period was $2.63.

underlying security, which in this case is Extreme common stock. Throughout this Plan of Allocation, all price quotations are per share of the underlying security (i.e., 1/100 of a contract).

51. Each option contract specifies a strike price and an expiration date. Contracts with the same strike price and expiration date are referred to as a "series" and each series represents a different security that trades in the market and has its own market price (and thus artificial inflation or deflation). Under the Plan of Allocation, the dollar artificial inflation per share (i.e., 1/100 of a contract) for each series of Extreme call options and the dollar artificial deflation per share (i.e., 1/100 of a contract) for each series of Extreme put options has been calculated by Lead Plaintiff's damages expert.

52. Transactions in Extreme options that expired before February 5, 2014 have a Recognized Loss Amount of zero under the Plan of Allocation.

53. For each Extreme call option purchased or otherwise acquired during the Class Period and sold before the close of trading on April 9, 2015, and for each Extreme put option sold (written) during the Class Period and purchased before the close of trading on April 9, 2015, an "Out of Pocket Loss" will be calculated. For Extreme call options closed through sale, the Out of Pocket Loss is the purchase/acquisition price (excluding all fees, taxes, and commissions) minus the sale price (excluding all fees, taxes, and commissions). For Extreme call options closed through exercise or expiration, the Out of Pocket Loss is the purchase/acquisition price (excluding all fees, taxes, and commissions) *minus* the value per option on the date of exercise or expiration.[4] For Extreme put options closed through purchase, the Out of Pocket Loss is the purchase/acquisition price (excluding all fees, taxes, and commissions) minus the sale price (excluding all fees, taxes, and commissions). For Extreme put options closed through exercise or expiration, the Out of Pocket Loss is the value per option on the date of exercise or

---

[4] The "value" of the call option on the date of exercise or expiration shall be the closing price of Extreme common stock on the date of exercise or expiration minus the strike price of the option. If this number is less than zero, the value of the call option is zero.

NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT, AND MOTION FOR ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 3:15-CV-04883-BLF

21

expiration[5] *minus* the sale price (excluding all fees, taxes, and commissions). To the extent that the calculation of the Out of Pocket Loss results in a negative number, that number shall be set to zero.

54. **For each Extreme call option purchased or otherwise acquired from September 12, 2013 through and including April 9, 2015, and:**

A. Closed (through sale, exercise, or expiration) before the opening of trading on February 5, 2014, the Recognized Loss Amount for each such share shall be zero.

B. Closed (through sale, exercise, or expiration) after the opening of trading on February 5, 2014, and before the close of trading on April 9, 2015, the Recognized Loss Amount for each such share shall be *the lesser of*:

   1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 3** below *minus* the dollar artificial inflation applicable to each such share on the date of sale as set forth in **Table 3** (available at www. _____); or

   2. the Out of Pocket Loss.

C. Open as of the close of trading on April 9, 2015, the Recognized Loss Amount for each such share shall be *the lesser of*:

   1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 3** (available at www. _____); or

   2. the actual purchase/acquisition price of each such share *minus* the closing on April 10, 2015 (i.e., the "Holding Price") as set forth in **Table 3** (available at www. _____).

55. **For each Extreme put option sold (written) from September 12, 2013 through and including April 9, 2015, and:**

A. Closed (through purchase, exercise, or expiration) before the opening of trading on February 5, 2014, the Recognized Loss Amount for each such share shall be zero.

B. Closed (through purchase, exercise, or expiration) after the opening of trading on February 5, 2014, and before the close of trading on April 9, 2015, the Recognized Loss Amount for each such share shall be *the lesser of*:

---

[5] The "value" of the put option on the date of exercise or expiration shall be the strike price of the option minus the closing price of Extreme common stock on the date of exercise or expiration. If this number is less than zero, the value of the put option is zero.

1. the dollar artificial deflation applicable to each such share on the date of sale (writing) as set forth in **Table 4** (available at www. _____ ) *minus* the dollar artificial deflation applicable to each such share on the date of close as set forth in **Table 4** (available at www. _____); or

2. the Out of Pocket Loss.

C. Open as of the close of trading on April 9, 2015, the Recognized Loss Amount for each such share shall be ***the lesser of***:

1. the dollar artificial deflation applicable to each such share on the date of sale (writing) as set forth in **Table 4** (available at www. _____); or

2. the closing price on April 10, 2015 (i.e., the "Holding Price") as set forth in **Table 4** (available at www. _____) *minus* the sale (writing) price.

56. **Maximum Recovery for Options:** The Settlement proceeds available for Extreme call options purchased during the Class Period and Extreme put options sold (written) during the Class Period shall be limited to a total amount equal to 1% of the Net Settlement Fund.

## ADDITIONAL PROVISIONS OF THE PLAN OF ALLOCATION

57. If a Settlement Class Member has more than one purchase/acquisition or sale of any eligible Extreme Security during the Class Period, all purchases/acquisitions and sales of the like security shall be matched on a FIFO basis. With respect to Extreme common stock and call options, Class Period sales will be matched first against any holdings at the beginning of the Class Period and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period. For Extreme put options, Class Period purchases will be matched first to close out positions open at the beginning of the Class Period, and then against put options sold (written) during the Class Period in chronological order.

58. Purchases/acquisitions and sales of Extreme Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance or operation of law of Extreme Securities during the Class Period shall not be deemed a purchase, acquisition or sale of such securities for the

NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT, AND MOTION FOR ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 3:15-CV-04883-BLF

23