# EXHIBIT 5

determination with respect to a plan of allocation will not affect the Settlement, if approved.

46.    Unless the Court otherwise orders, any Settlement Class Member who fails to submit a Claim Form postmarked on or before _____, 2019 shall be fully and forever barred from receiving payments pursuant to the Settlement, but will in all other respects remain a Settlement Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and the releases given.  This means that each Settlement Class Member releases the Released Plaintiffs' Claims (as defined in ¶ 34 above) against the Defendants' Released Parties (as defined in ¶ 35 above) and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Plaintiffs' Claims against any of the Defendants' Released Parties whether or not such Settlement Class Member submits a Claim Form.

47.    Participants in, and beneficiaries of, a plan covered by ERISA ("ERISA Plan") should NOT include any information relating to their transactions in K12 Securities held through the ERISA Plan in any Claim Form that they may submit in this Action.  They should include ONLY those shares that they purchased or acquired outside of the ERISA Plan.  Claims based on any ERISA Plan's purchases or acquisitions of K12 Securities during the Settlement Class Period may be made by the plan's trustees.  To the extent any of the Defendants or any of the other persons or entities excluded from the Settlement Class are participants in the ERISA Plan, such persons or entities shall not receive, either directly or indirectly, any portion of the recovery that may be obtained from the Settlement by the ERISA Plan.

48.    The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Settlement Class Member.

49.    Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her or its Claim Form.

50.    Only Settlement Class Members, *i.e.*, persons and entities who purchased or otherwise acquired K12 Securities during the Settlement Class Period and were damaged as a result of such purchases or acquisitions will be eligible to share in the distribution of the Net Settlement Fund. Persons and entities that are excluded from the Settlement Class by definition or that exclude themselves from the Settlement Class pursuant to request will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Claim Forms.  The only securities that are included in the Settlement are K12 common stock publicly traded on the NYSE.

## PROPOSED PLAN OF ALLOCATION

51.    The objective of the Plan of Allocation is to equitably distribute the Settlement proceeds to those Settlement Class Members who suffered economic losses as a proximate result of the alleged violations of the federal securities laws, as opposed to losses caused by market, industry, or Company-specific factors or factors unrelated to the alleged violations of law.  The Plan of Allocation is not a formal damage analysis, and the calculations made in accordance with the Plan of Allocation are not intended to be estimates of, or indicative of, the amounts that Class Members might have been able to recover after a trial.  Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement.  The computations under the Plan of Allocation are only a method to weigh, in a fair and equitable manner, the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

52.    The Plan of Allocation generally measures the amount of loss that a Settlement Class Member can claim for purposes of making *pro rata* allocations of the cash in the Net Settlement Fund to Authorized Claimants. The Plan of Allocation is not a formal damage analysis. Recognized Loss Amounts are based primarily on the price declines observed over the period which Lead Plaintiff alleges corrective information was entering the market place.  In this case, Lead Plaintiff alleges that Defendants made false statements and omitted material facts between October 10, 2013 through and including October 27, 2015, which had the effect of artificially inflating the price of K12 common stock.

53.    In order to have recoverable damages, disclosure of the alleged misrepresentations must be the cause of the decline in the price of K12 common stock.  Artificial inflation was removed from the price of K12 common stock as the result of the alleged corrective disclosures that occurred on June 27, 2014, August 14, 2014, October 9, 2014, and October 27, 2015.[5]

54.    To the extent a Claimant does not satisfy one of the conditions set forth in the preceding paragraph, his, her, or its Recognized Loss Amount for those transactions will be zero.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

55.    Based on the formulas set forth below, a "Recognized Loss Amount" shall be calculated for each purchase or acquisition of K12 common stock publicly traded on the NYSE during the Settlement Class Period that is listed in the Proof of Claim Form and for which adequate documentation is provided.  In the calculations below, if a Recognized Loss Amount calculates to a negative number or zero, that Recognized Loss Amount shall be zero.

56.    For each share of K12 publicly traded common stock purchased or otherwise acquired during any of the periods shown below in Table-1, and:

(a)    Sold within the same period, the Recognized Loss Amount per share is zero.

(b)    Sold in a subsequent period, the Recognized Loss Amount per share is the lesser of: (i) the per share decline shown in Table-1; or (ii) the purchase price per share less the sales price per share.

(c)    Retained at the end of October 27, 2015 and sold before January 22, 2016 the claim per share shall be the lesser of: (i) the per share decline shown in Table-1; (ii) the difference between the purchase price and the sale price; and (iii) the difference between the purchase price and the average closing price up to the date of sale as set forth in Table-2 below.

(d)    Held as of the close of trading on January 22, 2016, or sold thereafter, the claim per share shall be the lesser of (i) the per share decline shown in Table-1; (ii) the

---

[5]Any transactions in K12 common stock executed outside of regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next regular trading session.

difference between the purchase price and the sale price; and (iii) the difference between the purchase price and $9.24 per share.[6]

**TABLE-1**

| Purchase Date | Sale Date | | | | Sold On or Retained Beyond 10/27/2015 |
|---|---|---|---|---|---|
| | 10/10/2013-6/26/2014 | 6/27/2014-8/13/2014 | 8/14/2014-10/8/2014 | 10/9/2014-10/26/2015 | |
| 10/10/2013-6/26/2014 | $0.00 | $1.30 | $4.28 | $5.40 | $7.33 |
| 6/27/2014-8/13/2014 | | $0.00 | $2.98 | $4.10 | $6.03 |
| 8/14/2014-10/8/2014 | | | $0.00 | $1.12 | $3.05 |
| 10/9/2014-10/27/2015 | | | | $0.00 | $1.93 |

---

[6] Under Section 21(D)(e)(1) of the Exchange Act, "in any private action arising under this Act in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the statute, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of K12 common stock during the 90-day look-back period. The mean (average) closing price for K12 common stock during this 90-day look-back period was $9.24 as shown in Table-2.

## TABLE-2

**K12 Closing Price and Average Closing Price**
**October 27, 2015 – January 22, 2016**

| Date | Closing Price | Average Closing Price | Date | Closing Price | Average Closing Price |
|---|---|---|---|---|---|
| 10/27/2015 | $10.25 | $10.25 | 12/9/2015 | $9.01 | $9.89 |
| 10/28/2015 | $10.32 | $10.29 | 12/10/2015 | $9.03 | $9.86 |
| 10/29/2015 | $9.95 | $10.17 | 12/11/2015 | $9.05 | $9.84 |
| 10/30/2015 | $9.71 | $10.06 | 12/14/2015 | $8.95 | $9.81 |
| 11/2/2015 | $10.50 | $10.15 | 12/15/2015 | $9.26 | $9.79 |
| 11/3/2015 | $11.00 | $10.29 | 12/16/2015 | $9.39 | $9.78 |
| 11/4/2015 | $10.65 | $10.34 | 12/17/2015 | $9.27 | $9.77 |
| 11/5/2015 | $10.76 | $10.39 | 12/18/2015 | $9.03 | $9.75 |
| 11/6/2015 | $10.91 | $10.45 | 12/21/2015 | $9.31 | $9.74 |
| 11/9/2015 | $10.48 | $10.45 | 12/22/2015 | $9.35 | $9.73 |
| 11/10/2015 | $10.22 | $10.43 | 12/23/2015 | $9.23 | $9.72 |
| 11/11/2015 | $9.86 | $10.38 | 12/24/2015 | $9.40 | $9.71 |
| 11/12/2015 | $9.26 | $10.30 | 12/28/2015 | $9.28 | $9.70 |
| 11/13/2015 | $9.27 | $10.22 | 12/29/2015 | $9.06 | $9.68 |
| 11/16/2015 | $9.44 | $10.17 | 12/30/2015 | $8.88 | $9.67 |
| 11/17/2015 | $9.31 | $10.12 | 12/31/2015 | $8.80 | $9.65 |
| 11/18/2015 | $9.59 | $10.09 | 1/4/2016 | $8.55 | $9.62 |
| 11/19/2015 | $9.50 | $10.05 | 1/5/2016 | $8.30 | $9.60 |
| 11/20/2015 | $9.57 | $10.03 | 1/6/2016 | $8.16 | $9.57 |
| 11/23/2015 | $9.65 | $10.01 | 1/7/2016 | $7.87 | $9.53 |
| 11/24/2015 | $9.64 | $9.99 | 1/8/2016 | $8.12 | $9.51 |
| 11/25/2015 | $10.08 | $10.00 | 1/11/2016 | $7.85 | $9.47 |
| 11/27/2015 | $9.72 | $9.98 | 1/12/2016 | $8.08 | $9.45 |
| 11/30/2015 | $10.14 | $9.99 | 1/13/2016 | $7.32 | $9.41 |
| 12/1/2015 | $10.29 | $10.00 | 1/14/2016 | $7.80 | $9.38 |
| 12/2/2015 | $9.75 | $9.99 | 1/15/2016 | $7.57 | $9.35 |
| 12/3/2015 | $9.66 | $9.98 | 1/19/2016 | $7.50 | $9.31 |
| 12/4/2015 | $9.43 | $9.96 | 1/20/2016 | $7.59 | $9.28 |
| 12/7/2015 | $9.39 | $9.94 | 1/21/2016 | $7.74 | $9.26 |
| 12/8/2015 | $9.18 | $9.92 | 1/22/2016 | $8.07 | $9.24 |

16