# EXHIBIT 7

## Appendix A

## Proposed Plan of Allocation of Net Settlement Fund Among Authorized Claimants

The Plan of Allocation set forth herein is the plan that is being proposed to the Court for approval by Lead Plaintiff after consultation with his damages expert. The Court may approve the Plan of Allocation with or without modification, or approve another plan of allocation, without further notice to the Settlement Class. Any Orders regarding a modification of the Plan of Allocation will be posted on the website for the Settlement, www.LionBiotechnologiesLitigationSettlement.com. The Plan of Allocation is a matter separate and apart from the proposed Settlement, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement. Defendants have had, and will have, no involvement or responsibility for the terms or application of the Plan of Allocation.

The objective of the proposed Plan of Allocation is to equitably distribute the Net Settlement Fund among those Settlement Class Members who suffered economic losses as a result of the alleged violations of the federal securities laws set forth in the Amended Complaint, as opposed to economic losses caused by market or industry factors or company-specific factors unrelated thereto. To that end, Lead Plaintiff's damages expert calculated the estimated amount of alleged artificial inflation in the per share price of Lion common stock, over the course of the Class Period, that was allegedly proximately caused by Defendants' alleged materially false and misleading misrepresentations and omissions. In calculating the estimated artificial inflation allegedly caused by those misrepresentations and omissions, Lead Plaintiff's damages expert considered price changes in Lion common stock in reaction to public disclosures that allegedly corrected the respective alleged misrepresentations and omissions. The calculations made pursuant to the Plan of Allocation, however, do not represent a formal damages analysis that has been adjudicated in the Action and are not intended to measure the amounts that Settlement Class Members would recover after a trial. Nor are these calculations intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

For losses to be compensable damages under the federal securities laws, the disclosure of the allegedly misrepresented information must be the cause of the decline in the price of the security. Accordingly, to have a "Recognized Loss Amount" pursuant to the Plan of Allocation, the Lion common stock must have been purchased or otherwise acquired during the Class Period (i.e., between September 27, 2013 and April 10, 2017, inclusive) and **held through** at least one of the alleged corrective disclosures that removed alleged artificial inflation related to that information. To that end, Lead Plaintiff's damages expert has identified three dates on which alleged corrective disclosures removed alleged artificial inflation from the price of Lion common stock: May 14, 2014, November 12, 2014 and April 10, 2017.[8]

---

[8] On May 14, 2014, Lion disclosed in its Form 10-k for the first quarter of 2014 that it had received a subpoena from the SEC in connection with its investigation into Galena Biopharma, Inc. *See* Amended

18

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

1.      For purposes of determining whether a Claimant has a "Recognized Claim," purchases, acquisitions, and sales of Lion common stock will first be matched on a First In, First Out ("FIFO") basis as set forth in ¶ 6 below.

2.      A "Recognized Loss Amount" will be calculated as set forth below for each share of Lion common stock purchased or otherwise acquired between September 27, 2013 and April 10, 2017, inclusive, that is listed in the Claim Form and for which adequate documentation is provided. To the extent that the calculation of a Claimant's Recognized Loss Amount results in a negative number, that number shall be set to zero. The sum of a Claimant's Recognized Loss Amounts will be the Claimant's "Recognized Claim."

3.      For each share of Lion common stock purchased or otherwise acquired between September 27, 2013 and April 10, 2017, inclusive, and sold on or before July 7, 2017,[9] an "Out of Pocket Loss" will be calculated. Out of Pocket Loss is defined as the per-share purchase/acquisition price (excluding all fees, taxes, and commissions) *minus* the per-share sale price (excluding all fees, taxes, and commissions). To the extent that the calculation of an Out of Pocket Loss results in a negative number, that number shall be set to zero.

4.      A Claimant's Recognized Loss Amount per share of Lion common stock purchased or otherwise acquired during the Class Period will be calculated as follows:

---

Complaint ¶¶ 85, 207. Upon this news, Lion common stock fell $1.00 per share, or 10.9%. *Id*., ¶¶16, 251. Six months later, on November 12, 2014, Lion announced the resignation of Defendant Singh, and the price of Lion common stock declined by $0.75 per share, or over 11%. *Id*., ¶¶19, 89. Finally, on April 10, 2017, the SEC announced enforcement actions against 27 individuals and entities behind various alleged stock promotion schemes that left investors with the impression they were reading independent, unbiased analyses on investing websites while writers were being secretly compensated for touting company stocks. *Id*., ¶92. On the same day, the SEC also published cease-and-desist orders in connection with administrative proceedings against Lion, Singh and Lavos, LLC (i.e., a stock promotion firm controlled and operated by Singh) for violations of the securities laws. *Id*., ¶93. Following this news, Lion's stock fell $0.20 per share, or over 3%, to close at $6.35 per share on April 10, 2017. *Id*., ¶22.

[9]  July 7, 2017 represents the last day of the 90-day period subsequent to the end of the Class Period, i.e., April 10, 2017 (the "90-day look-back period"). The PSLRA imposes a statutory limitation on recoverable damages using the 90-day look-back period. This limitation is incorporated into the calculation of a Settlement Class Member's Recognized Loss Amount. Specifically, a Settlement Class Member's Recognized Loss Amount cannot exceed the difference between the purchase price paid for the Lion common stock and the average price of Lion common stock during the 90-day look-back period if the share was held through July 7, 2017, the end of this period. Losses on Lion common stock purchased/acquired during the period between September 27, 2013 and April 10, 2017 and sold during the 90-day look-back period cannot exceed the difference between the purchase price paid for the Lion common stock and the average price of Lion common stock during the portion of the 90-day look-back period elapsed as of the date of sale (the "90-Day Look-back Value"), as set forth in **Table 2** below.

19

Case 3:17-cv-02086-SI   Document 121   Filed 09/28/18   Page 67 of 96

A. For each share of Lion common stock purchased or otherwise acquired during the Class Period and subsequently sold prior to the opening of trading on May 14, 2014, the Recognized Loss Amount is $0.

B. For each share of Lion common stock purchased or otherwise acquired during the Class Period and subsequently sold after the opening of trading on May 14, 2014 and prior to the close of trading on April 10, 2017, the Recognized Loss Amount shall be *the lesser of*:

    (i) the dollar amount of alleged artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below *minus* the dollar amount of alleged artificial inflation applicable to each such share on the date of sale as set forth in **Table 1** below;[10] or

    (ii) the Out of Pocket Loss.

C. For each share of Lion common stock purchased or otherwise acquired during the Class Period and subsequently sold after the close of trading on April 10, 2017 and prior to the close of trading on July 7, 2017 (i.e., the last day of the 90-day look-back period), the Recognized Loss Amount shall be *the least of*:

    (i) the dollar amount of alleged artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1**;

    (ii) the purchase/acquisition price of each such share (excluding all fees, taxes, and commissions) *minus* the 90-Day Look-back Value as set forth in **Table 2** below; or

    (iii) the Out of Pocket Loss.

---

[10] Given that the allegedly corrective disclosures on May 14, 2014 and April 10, 2017 occurred during trading hours, the following adjustments have been made in order to properly assign artificial inflation at the time of purchase/acquisition and sale on those days:

- Artificial inflation for purchases/acquisitions on May 14, 2014 will be equal to $0.94 plus the purchase/acquisition price *minus* $8.20 (the closing price on May 14, 2014), not to exceed a total of $1.94, and not to fall below $0.94.

- Artificial inflation for sales on May 14, 2014 will be equal to $0.94 plus the sales price *minus* $8.20 (the closing price on May 14, 2014), not to exceed a total of $1.94, and not to fall below $0.94.

- Artificial inflation for purchases/acquisitions on April 10, 2017 will be equal to the purchase/acquisition price *minus* $6.35 (the closing price on April 10, 2017), not to exceed a total of $0.19, and not to fall below $0.05.

- Artificial inflation for sales on April 10, 2017 will be equal to the sales price *minus* $6.35 (the closing price on April 10, 2017), not to exceed a total of $0.19, and not to fall below $0.00.

D.  For each share of Lion common stock purchased or otherwise acquired during the Class Period and still held as of the close of trading on July 7, 2017 (i.e., the last day of the 90-day look-back period), the Recognized Loss Amount shall be ***the lesser of***:

(i)  the dollar amount of alleged artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below; or

(ii)  the purchase/acquisition price of each such share (excluding all fees, taxes, and commissions) *minus* $6.37 (the average closing price of Lion common stock during the 90-day look-back period (i.e., April 10, 2017 through July 7, 2017), as shown on the last line in **Table 2** below).

## ADDITIONAL PROVISIONS

5.  The Net Settlement Fund will be allocated among all Authorized Claimants whose Distribution Amount (defined in ¶10 below) is $10.00 or greater.

6.  If a Class Member has more than one purchase/acquisition or sale of Lion common stock during the Class Period, all purchases/acquisitions and sales shall be matched on a FIFO basis. Class Period sales will be matched first against any holdings at the beginning of the Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.

7.  Purchases/acquisitions and sales of Lion common stock shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance or operation of law of Lion common stock during the Class Period, shall not be deemed a purchase, acquisition or sale of these shares of Lion common stock for the calculation of an Authorized Claimant's Recognized Claim, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of such shares of Lion common stock unless (i) the donor or decedent purchased or otherwise acquired such shares of Lion common stock during the Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares of Lion common stock; and (iii) it is specifically so provided in the instrument of gift or assignment.

8.  The date of covering a "short sale" is deemed to be the date of purchase or acquisition of the Lion common stock. The date of a "short sale" is deemed to be the date of sale of Lion common stock. In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero. In the event that a Claimant has an opening short position in Lion common stock, the earliest purchases or acquisitions during the Class Period shall be matched against such opening short position and not be entitled to a recovery until that short position is fully covered.

9.  Lion common stock is the only security eligible for recovery under the Plan of Allocation. Option contracts to purchase or sell Lion common stock are not securities eligible to participate in the Settlement. With respect to Lion common stock purchased or sold through the exercise of an option, the purchase/sale date of the Lion common stock is the exercise date of the

21