ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
MATTHEW S. MELAMED (260272)
JOHN H. GEORGE (292332)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
mmelamed@rgrdlaw.com
jgeorge@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| In re ZOOM SECURITIES LITIGATION | ) ) | Case No. 3:20-cv-02353-JD |
| This Document Relates To: | ) ) ) | LEAD PLAINTIFF'S OPPOSITION TO ZOOM INVESTOR GROUP'S MOTION FOR RECONSIDERATION OF ORDER |
| ALL ACTIONS. | ) ) ) | APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL |

4818-9198-8442.v1

Reconsideration of the Court's November 4, 2020 Order re Lead Plaintiff and Lead Counsel (ECF No. 56) ("Order") appointing Adam Butt as lead plaintiff is not warranted because neither the Zoom Investor Group nor Tony D. Pham "identif[ied] any new facts or law that might warrant a second look, or a manifest failure by the Court to consider material facts or dispositive legal arguments that had been presented." *Montoya v. City of San Francisco*, 2021 WL 197659, at *2 (N.D. Cal. Jan. 20, 2021).  Even if the Zoom Investor Group had done so, its reconsideration motion should still be denied because: (1) the Zoom Investor Group was never the presumptive lead plaintiff; (2) Mr. Pham never timely moved for appointment as lead plaintiff in his individual capacity (and therefore the Court was not required to even consider his individual loss); and (3) the Private Securities Litigation Reform Act of 1995 ("PSLRA") expressly grants district courts the discretion to make the financial interest determination in a rational and consistent way, and Mr. Pham's reconsideration motion asks the Court to do the opposite.  In short, the Court did not err in holding that "there is reason to believe that Pham's total loss overstates his financial interest in the relief sought by the class" and that Adam Butt "'has the most to gain from the lawsuit.'"  *See* Order at 3-4.[1]  Accordingly, the Zoom Investor Group's motion for reconsideration should be denied.

## I.    The Zoom Investor Group Was Never the Presumptive Lead Plaintiff and Mr. Pham Never Timely Moved for Appointment Individually

In its Order, the Court determined, as an initial matter, that the "members of the Zoom Investor Group do not claim to have any pre-existing relationship" and therefore did "not consider [its] aggregate loss in determining the presumptive lead plaintiff."  Order at 2.  Based on this fact alone, the Court could have denied, and essentially did deny, the Zoom Investor Group's motion in its entirety.  There was, of course, no need to even consider the losses of any of its individual members.  *See In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) ("The group members have not requested individual consideration and have expressly disavowed such an approach. . . . The Stitch Fix Investor Group's motion for appointment as lead plaintiff is denied."); *Kinney v. Capstone Turbine Corp.*, 2016 WL 5341948, at *3 n.3 (C.D. Cal. Feb. 29, 2016) ("[U]nder the plain text of the statute, the Court can only consider the individual that has filed the complaint or

---

[1] Unless otherwise noted, all emphasis is added and citations are omitted.

made the motion.  Here, that entity is the Capstone Investor Group, not Van Fossen."); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at \*4 (D. Ariz. Apr. 7, 2008) ("At one point, the group suggests that we pluck one of its top-two constituents to serve as lead plaintiff . . . . We decline to do so. The Farrukh Group moved for lead plaintiff as a group and will be evaluated as such.").

Moreover, as Mr. Butt noted in opposition to the Zoom Investor Group's motion, the motion was expressly filed seeking "the entry of an Order: (1) appointing the Zoom Investor Group as Lead Plaintiff" (ECF No. 38 at 1) and was pointedly ***not*** filed on behalf of the individual group members. *See* ECF No. 46 at 8-9 (citing numerous cases declining to consider individuals within group).  Just last week, another district court denied a lead plaintiff motion filed by an unaffiliated group and also declined to consider the members individually, noting that "[n]either Sapan nor Awaiada have requested to be considered individually as lead plaintiff and the Court declines so to consider them." *Chauhan v. Intercept Pharm.*, 2021 WL 235890, at \*6 (S.D.N.Y. Jan. 25, 2021).  In that case, the court explained that the "PSLRA requires a purported class member who wishes to be considered for the position of lead plaintiff to make a motion, and to make it within the sixty-day window," and neither individual "moved to be considered individually as an alternative if their group was rejected, which they should have done if they wished to be considered individually and which would have permitted orderly consideration of their applications viewed individually." *Id.*  Here, Mr. Pham did not timely move to be appointed individually and the Court was not required to consider his individual candidacy.

## II.    The PSLRA Grants the Court Discretion to Make the Financial Interest Determination

The PSLRA does not state how financial interest is to be calculated.  Rather, the statute expressly provides that the decision of which movant "has the largest financial interest" is "***in the determination of the court***."  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).  Here, the Court used the statutory damages limitation provision to assess each movant's financial interest based on that movant's transactions.  *See* Order at 4.  As such, it was both "rational and consistently applied," as *Cavanaugh* requires.  *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002).

Yet, in seeking reconsideration, Mr. Pham is now asking the Court to incorrectly equate his financial interest in the relief sought by the class in this case with his ***entire out-of-pocket loss*** – not his potentially recoverable loss.  That is indeed the only way Mr. Pham's "financial interest" could in any way be considered greater than Mr. Butt's financial interest because Mr. Pham sold ***all*** of his Zoom stock before the end of the Class Period, *i.e.*, before the final disclosure giving rise to the action.  Even more absurd, Mr. Pham seeks strict application of the PSLRA damages limitation against Mr. Butt, but not himself.  Such a rule would be neither rational nor consistent.

### III.    The PSLRA Bounce-Back Provision Is Designed to Prevent the Very Windfalls Mr. Pham Is Trying to Obtain

The following facts are undisputed.  Mr. Pham sold his entire stake in Zoom securities on December 30, 2019.  *See* ECF No. 39-1.  The only "date[s] on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market" (15 U.S.C. §78u-4(e)(1)) applicable to Mr. Pham occurred between July 8-11, 2019.  *See* ECF No. 1 at ¶¶35-38. Consequently, this is effectively a single disclosure case for Mr. Pham (but not for the rest of the putative class or Mr. Butt).[2]

As the Court noted, the PSLRA contains a damages limitation provision setting forth the maximum amount an investor can be awarded when, as here, that investor sells stock outside the "90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market."  *See* 15 U.S.C. §78u-4(e)(1); Order at 3.  While Mr. Pham is correct that it is widely accepted that the 90-day bounce-back provision is applied to the final corrective disclosure, Mr. Pham does not challenge that the Court correctly calculated the mean price during the 90-day period following the July 11, 2019 disclosure as $88.48 per share.  Order at 4.  Mr. Pham also does not challenge the fact that the Court correctly performed the mathematical equation determining Mr. Pham's maximum compensable damages pursuant to the PSLRA.  *Id.*  Instead, ***the sole basis for Mr. Pham's reconsideration motion is that***

---

[2]    Importantly, the amended complaint Mr. Butt filed protects Mr. Pham's interests.  *See, e.g.*, ECF No. 63 at ¶¶37, 98-99.

*his market loss should not have been limited at all*.  *See* ECF No. 58 at 1, 4.  That contention does not withstand scrutiny.

As even Mr. Pham recognizes, while perhaps true that the PSLRA lookback provision is generally applied to final disclosures, the purpose behind the provision holds true here: awarding "out-of-pocket" damages "would sometimes yield a windfall to plaintiffs, because a given security's price at the end of a class period often reflected a market overreaction to negative information about the subject company and, as such, was in some circumstances not a proper measure of the security's true price."  ECF No. 58 at 4.  Indeed, as the Supreme Court articulated in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005), "[i]f the purchaser sells later after the truth makes its way into the marketplace, an initially inflated purchase price *might* mean a later loss. But that is far from inevitably so. When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price."  *Id.* at 342-43 (emphasis in original).

Here, Mr. Pham does not explain how the full out-of-pocket loss incurred on his *December* 30, 2019 sales at $66.90 per share was caused by the *July* 8 and 11, 2019 revelations in which Zoom stock declined to $90.76 per share and $91.40 per share, respectively.  *See* Order at 3.  Stated differently, *Mr. Pham does not explain how he can possibly recover an additional $23 per share in losses beyond where the stock declined after the July 2019 partial disclosures*.  For good reason: under Supreme Court precedent, he cannot.  *See Dura*, 544 U.S. 336, 345 (securities laws are not designed "to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause").

Moreover, Mr. Pham's reconsideration motion overlooks the fact that the Court's calculation was actually generous, as Mr. Pham's recoverable loss is more likely less than $90,000.[3]  Thus, even

---

[3]  Mr. Pham purchased 10,000 Zoom shares for a total cost of $997,200.  Multiplying 10,000 shares by $90.76 per share (the lowest price on July 8 or 11) yields $907,600.  $997,200 subtracted by $907,600 equals $89,600 – far less than the Court calculated under the PSLRA damage provision ($112,400).  *See* Order at 4.

assuming *arguendo* that the Court erred in applying the PSLRA lock-back provision to the interim disclosure to better approximate Mr. Pham's financial interest, Mr. Pham ***still*** would not have "'the most to gain from the lawsuit'" because, pursuant to *Dura* itself, "there is reason to believe that Pham's total loss overstates his financial interest in the relief sought by the class." *See* ECF No. 56 at 3-4 (quoting *Cavanaugh*, 306 F.3d at 730).[4]

Nor does the single out-of-district case Mr. Pham cites support his contention that the Court erred by limiting his financial interest to an amount less than his total market loss. In *Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928 (N.D. Ill. 2010) – which the undersigned's partners tried to a jury in 2009 – the court expressly provided that, after a trial on the merits, "for shares purchased during the Damages Period, damages will be the artificial inflation at the time of purchase less the artificial inflation at the time of sale." *Id.* at 936. The court did ***not*** hold, as Mr. Pham suggests, that his ***entire*** out-of-pocket loss is compensable. *Compare id. with* ECF No. 58 at 8-9.

Mr. Pham's citation to *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 39 (2d Cir. 2012), is equally curious as that decision merely held that a rise in the company's stock price to an amount higher than the investor's average purchase price following the company's final disclosure did not, as a matter of law, preclude an inference of loss causation at the pleading stage. *Id. Acticon* says nothing about the calculation of losses at the lead plaintiff stage when an investor, like Mr. Pham, closes his position after the initial disclosure but seeks to inflate his loss estimate by using the lower value of the final disclosure's look-back price which did not cause his harm.

However, a case Mr. Pham did not cite, *In re Hollinger Int'l, Inc. Sec. Litig.*, 2006 WL 1806382, at *14 (N.D. Ill. June 28, 2006), does shed light on the application of the PSLRA damages provision when partial disclosures are alleged. In *Hollinger*, defendants moved to dismiss based on the fact that, among other things, plaintiffs could not establish loss causation. In largely rejecting defendants' contentions, the court nonetheless dismissed one of plaintiffs' allegations as to alleged

---

[4]    As Mr. Butt noted in opposition to the Zoom Investor Group's motion, there is also a concern that defendants would seek to exploit the fact that Mr. Pham sold out before the final disclosure of the alleged wrongdoing to the putative class's detriment.  *See* ECF No. 46 at 9-10.

inflation of circulation figures because the "first disclosure related to the circulation figures occurred on June 15, 2004" and "the PSLRA price of Hollinger stock after the initial June 15, 2004 disclosure was higher than the purchase price of the stock," resulting in no loss for any shareholder. *Id*. While *Hollinger* was a motion to dismiss decision, that court did apply the PSLRA damages provision to a partial disclosure to assess the plaintiff's allegation of loss (and loss causation) exactly as this Court did.

Nor does Mr. Pham's 180 pages of excerpts from securities class action settlement plans of allocation have much relevance to the issue being considered, let alone aid his attempt to persuade the Court that it fundamentally erred by limiting his claimed loss. *See* ECF No. 58-2 through 58-34. Plans of allocation, which often reflect class counsel's attempt to allocate damages based on the strength and weakness of the case, are only required to be "fair and reasonable" and do not have to conform perfectly to look-back calculations or other strict measures. *See In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) ("'[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'"). To the extent they are relevant, plans of allocation in settlements involving a partial disclosure – including one in which Mr. Pham's proposed lead counsel was the lead counsel and the plan of allocation this Court approved in *Aruliah v. Impax Labs., Inc.*, No. 3:14-cv-03673-JD, ECF No. 63-1 at 8-11 (N.D. Cal.) – expressly provide that a class member's recognized loss will be "***the lesser of***" an inflation-based amount ***or*** the out-of-pocket loss. *See, e.g.*, ECF No. 58-4 at 19:11-18 (emphasis in original); ECF No. 58-5 at 4-5 of 8 (same); ECF No. 58-9 at 3-4 of 6 (Mr. Pham's counsel's plan of allocation). Stated differently, these plans of allocation in partial disclosure cases limited class members' recovery as *Dura* itself requires and do not support Mr. Pham's basic contention that his entire market loss should be considered.

## IV.   Conclusion

Mr. Pham offers no rationale for why his full out-of-pocket loss that occurred five months after the partial disclosures should be credited, but Mr. Butt's loss should be limited by the PSLRA damage provision. Mr. Pham also fails to identify any facts or law the Court overlooked in reaching its conclusion that "there is reason to believe that Pham's total loss overstates his financial interest in

the relief sought by the class" and that Adam Butt "'has the most to gain from the lawsuit.'"  Order at 3-4.  As such, Mr. Pham's motion for reconsideration should be denied.

DATED:  February 2, 2021                    Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP


                                                  s/ Danielle S. Myers
                                               DANIELLE S. MYERS

                                            DANIELLE S. MYERS (259916)
                                            JUAN CARLOS SANCHEZ (301834)
                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101
                                            Telephone:  619/231-1058
                                            619/231-7423 (fax)
                                            dmyers@rgrdlaw.com
                                            jsanchez@rgrdlaw.com

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            SHAWN A. WILLIAMS
                                            MATTHEW S. MELAMED
                                            JOHN H. GEORGE
                                            Post Montgomery Center
                                            One Montgomery Street, Suite 1800
                                            San Francisco, CA  94104
                                            Telephone:  415/288-4545
                                            415/288-4534 (fax)
                                            shawnw@rgrdlaw.com
                                            mmelamed@rgrdlaw.com
                                            jgeorge@rgrdlaw.com

                                            Lead Counsel for Lead Plaintiff

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 2, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Danielle S. Myers
DANIELLE S. MYERS

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dmyers@rgrdlaw.com

4818-9198-8442.v1

**Mailing Information for a Case 3:20-cv-02353-JD Drieu v. Zoom Video Communications, Inc. et al**

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jenna C. Bailey**
  jbailey@cooley.com,jcorrell@cooley.com

- **Tijana Martinovic Brien**
  tbrien@cooley.com,emadrigal@cooley.com

- **John Hamilton George**
  jgeorge@rgrdlaw.com

- **Patrick Edward Gibbs**
  pgibbs@cooley.com,bgiovannoni@cooley.com

- **Reza John Harris**
  rjharris@cooley.com

- **Benjamin Heikali**
  Bheikali@faruqilaw.com,ealdo@faruqilaw.com,rglezakos@faruqilaw.com,ecf@faruqilaw.com,tpeter@faruqilaw.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com

- **Phillip C Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,tcrockett@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,lpvega@pomlaw.com

- **Addison Mills Litton**
  alitton@cooley.com,emadrigal@cooley.com

- **Matthew Seth Melamed**
  mmelamed@rgrdlaw.com,smorris@rgrdlaw.com,e_file_SD@rgrdlaw.com,smorris@ecf.courtdrive.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,tcrockett@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomla

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Jessica Valenzuela Santamaria**
  jsantamaria@cooley.com,galancr@cooley.com

- **Craig Edward TenBroeck**
  ctenbroeck@cooley.com,maraujo@cooley.com,efiling-notice@ecf.pacerpro.com

- **Tamar A Weinrib**
  taweinrib@pomlaw.com,egoodman@pomlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,cbarrett@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Armen Zohrabian**
  AZohrabian@rgrdlaw.com,E_File_SD@rgrdlaw.com,azohrabian@ecf.courtdrive.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)