UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ZOOM SECURITIES LITIGATION | Case No. 20-cv-02353-JD<br><br>**ORDER RE RECONSIDERATION**<br>Re: Dkt. No. 58 |

In November 2020, the Zoom Investor Group (Group) filed a request for leave to seek reconsideration of the Court's order appointing lead plaintiff, Dkt. No. 56. Dkt. No. 58. The Court granted leave to file the motion, and called for an opposition brief. Dkt. No. 64. The motion is now fully briefed.

The request for reconsideration is denied. No new law or material facts are presented as a basis for revisiting the lead plaintiff order, and no "manifest failure by the Court to consider material facts or dispositive legal arguments" in the original proceedings has been shown. Civil Local Rule 7-9(b).

While that is enough to deny the request, some additional observations are warranted. The Group did not offer a good reason for the Court to revisit the appointment, or replace Adam Butt with Dr. Tony Pham as lead plaintiff. The Group does not contest that under the Court's approach, which used multiple disclosure dates, Butt has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). It also gives no persuasive reason why this methodology was inappropriate.

Nothing in the plain language of the Private Securities Litigation Reform Act (PSLRA) prohibits the use of multiple disclosure dates to determine a plaintiff's financial stake in the litigation. To the contrary, the PSLRA leaves it entirely to "the determination of the court," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), and the Court has broad discretion to "select accounting methods" for making this determination so long as the methods are "rational and consistently applied," *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002).[1]

The Court's analysis amply satisfied these criteria. The securities laws are not designed "to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005). The Group says, more than once, that the PSLRA damages cap should be calculated based solely on "the *final* corrective disclosure," which is said to be the date that the stock price is no longer artificially inflated by fraud. Dkt. No. 58 at 7 (emphasis in original). The statute makes no such demand, and in any event Pham sold all of his shares months before the last, most significant corrective disclosures about Zoom in March and April, when it was revealed that Zoom's video conferencing software was not end-to-end encrypted. *See, e.g.*, Dkt. No. 1 ¶¶ 8, 49-67; Dkt. No. 39-1, Exh. A at 1. Consequently, "as a matter of pure logic," it is doubtful that Pham could have suffered any losses in connection with Zoom's final disclosure because he sold his shares beforehand. *Dura*, 544 U.S. at 342 (when "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss").

For these reasons, there is no reasonable question about the use of the July 2019 partial corrective disclosure to estimate Pham's compensable financial losses, as this was the last public revelation that could have affected Zoom's stock price before Pham sold his shares. By the same logic, the April 2020 disclosure date was the correct baseline to estimate Butt's losses. And contrary to the Group's suggestion, this was not judicial off-roading into the wilderness. Other

---

[1] While the Court relies solely on the language of the statute and case law, it is worth noting that the legislative history of the PSLRA recognized consideration of multiple disclosure dates. *See* S. Rep. No. 104-98, at 20 (1995) (explaining that the PSLRA's post-disclosure 90-day damages period begins "after dissemination of *any* information correcting the misleading statement" (emphasis added)).

district courts have used a similar approach. *See, e.g.*, *In re Hollinger Int'l, Inc. Sec. Litig.*, No. 04C 0834, 2006 WL 1806382, at *14 (N.D. Ill. June 28, 2006).

The single-disclosure approach urged by the Group is neither rational nor consistent under the circumstances. The Group unreasonably suggests that Butt's damages should be capped as of the final disclosure date in April, while Pham's out-of-pocket losses should not be capped at all. Pham sold his shares five months after the July partial disclosure. *See* Dkt. No. 1 ¶¶ 35-38; Dkt. No. 39-1, Exh. A at 1. During the ninety days after the July disclosure, the average share price was $88.48, and the price never dropped below $72.58 per share.[2] Pham sold his shares months later at $66.99 per share. Dkt. No. 39-1, Exh. A at 1. Estimating his final loss based on additional drops in the share price occurring long after the disclosure would essentially give him exactly the kind of "insurance" against general market conditions that the PSLRA was designed to foreclose. *Dura*, 544 U.S. at 345.

By April 26, 2021, the parties are directed to jointly propose a new schedule for defendants to respond to the consolidated complaint, Dkt. No. 63.

**IT IS SO ORDERED.**

Dated: April 12, 2021

JAMES DONATO
United States District Judge

---

[2] https://finance.yahoo.com/quote/ZM/history?period1=1562803200&period2=1570665600