ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
JOHN H. GEORGE (292332)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
jgeorge@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| In re ZOOM SECURITIES LITIGATION | ) | Case No. 3:20-cv-02353-JD |
| | ) | |
| This Document Relates To: | ) | LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT |
| | ) | |
| ALL ACTIONS. | ) | |
| | ) | |
| | ) | DATE:   August 26, 2021 |
| | | TIME:   10:00 a.m. |
| | | COURTROOM:   11, 19th Floor |
| | | JUDGE:   Hon. James Donato |

4824-0876-3633.v1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND STATEMENT OF FACTS ..........................................................1

II.     LEGAL STANDARD.....................................................................................................2

III.    ARGUMENT ..................................................................................................................3

      A.      The Complaint Pleads Material Falsity.................................................................3

            1.      The Complaint Pleads Material Falsity of Defendants' Claims that Zoom Enabled End-to-End Encryption and Used AES 256-Bit Encryption.....................................................................................................4

            2.      The Complaint Particularly Alleges Material Misrepresentations and Omission in Zoom's Security Guide and Privacy Policy.....................5

      B.      The Alleged Misrepresentations and Omissions Were Material, Defendants' Truth-on-the-Market Defense Is Unavailable on the Motion to Dismiss........................................................................................................6

      C.      The Consolidated Complaint Pleads a Strong Inference of Scienter.....................9

            1.      The Complaint Alleges Defendants' Knowledge or Deliberate Disregard that Zoom Meetings Were Not End-to-End or 256-Bit Encrypted ....................................................................................................9

            2.      The Complaint Details Defendants' Knowledge or Deliberate Disregard that Zoom Was Sharing Users' Personal Data ..........................11

      D.      Defendants' Late Class Period Admissions and Blog Post Revisions Support Falsity and Scienter ...............................................................................11

      E.      FTC Charges and Settlement Corroborate Allegations of Material Falsity and Scienter..................................................................................................12

      F.      The Complaint Adequately Alleges Loss Causation ...........................................13

IV.     CONCLUSION..............................................................................................................15

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Basic v. Levinson*,
    485 U.S. 224 (1988)...................................................................................................................6

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
    2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ....................................................................7, 8

*Brody v. Transitional Hosps. Corp.*,
    280 F.3d 997 (9th Cir. 2002) ....................................................................................................3

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
    399 F.3d 651 (6th Cir. 2005) ..................................................................................................13

*Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*,
    660 F.3d 1170 (9th Cir. 2011), *aff'd*, 568 U.S. 455 (2013) .......................................................7

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)...........................................................................................................13, 14

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ................................................................................................15

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) ....................................................................................................3

*Ganino v. Citizens Utils. Co.*,
    228 F.3d 154 (2d Cir. 2000)......................................................................................................8

*Glazer Cap. Mgmt. LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008) ..................................................................................................13

*In re Allied Nev. Gold Corp. Sec. Litig.*,
    743 Fed. App'x. 887 (9th Cir. 2018) .......................................................................................12

*In re Alphabet, Inc., Sec. Litig.*,
    _ F.4th _, 2021 WL 2448223 (9th Cir. June 16, 2021)...................................................... *passim*

*In re Apple Inc., Sec. Litig.*,
    2020 WL 2857397 (N.D. Cal. June 2, 2020) ............................................................................6

*In re Apple Inc. Sec. Litig.*,
    2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ......................................................................9, 12

**Page**

*In re BofI Holding, Inc., Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) ......................................................................................12, 14, 15

*In re LendingClub Sec. Litig.*,
   254 F. Supp. 3d 1107 (N.D. Cal. 2017) ...........................................................................................6

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) .........................................................................................13

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 1051 (9th Cir. 2012) ...........................................................................................6

*In re Tesla, Inc. Sec. Litig.*,
   477 F. Supp. 3d 903 (N.D. Cal 2020) .........................................................................................13

*In Re Twitter, Inc. Sec. Litig.*,
   2020 WL 4187915 (N.D. Cal. Apr. 17, 2020) ..........................................................................11

*In re VeriFone Holdings, Inc. Sec. Litig.*,
   704 F.3d 694 (9th Cir. 2012) ...........................................................................................3

*Kairalla v. Advanced Med. Optics, Inc.*,
   2008 WL 2879087 (C.D. Cal. June 6, 2008) .............................................................................6

*Kelly v. Elec. Arts, Inc.*,
   2015 WL 1967233 (N.D. Cal. Apr. 30, 2015) ....................................................................5, 6

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ...................................................................................3, 6, 12

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) .........................................................................................13

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ...........................................................................................14

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ............................................................................................9

*No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) ............................................................................................9

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
   730 F.3d 1111 (9th Cir. 2013) .........................................................................................14

**Page**

*Perlman v. Zell*,
938 F. Supp. 1327 (N.D. Ill. 1996), *aff'd*, 185 F.3d 850 (7th Cir. 1999) ...............................10

*Provenz v. Miller*,
102 F. 3d 1478 (9th Cir. 1996) ...........................................................................................8

*Purple Mountain Tr. v. Wells Fargo & Co.*,
432 F. Supp. 3d 1095 (N.D. Cal. 2020) .............................................................................15

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014) ...........................................................................9, 10, 11, 12

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
845 F.3d 1268 (9th Cir. 2017) ............................................................................................3

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ............................................................................................12

*S.E.C. v. Platforms Wireless Int'l Corp.*,
617 F.3d 1072 (9th Cir. 2010) ..........................................................................................11

*Schueneman v. Arena Pharms., Inc.*,
840 F.3d 698 (9th Cir. 2016) ............................................................................................11

*SEC v. Todd*,
642 F.3d 1207 (9th Cir. 2011) ............................................................................................3

*Siracusano v. Matrixx Initiatives, Inc.*,
585 F.3d 1167 (9th Cir. 2009), *aff'd*, 563 U.S. 27 (2011) .......................................................10

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...................................................................................................3, 9

*Wochos v Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ............................................................................................5

*Yourish v. Cal. Amplifier*,
191 F.3d 983 (9th Cir. 1999) ............................................................................................12

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b)......................................................................................................................2, 8
§78u-4(b)(1)(B)............................................................................................................3
§78u-4(b)(2)(A) ...........................................................................................................9

**Page**

Federal Rules of Civil Procedure
    Rule 10b-5.................................................................................................................................2, 13
    Rule 12(b)(6).............................................................................................................................3

17 C.F.R.
    §240.10b-5 ................................................................................................................................2

## I.    INTRODUCTION AND STATEMENT OF FACTS

Plaintiff's[1] Consolidated Class Action Complaint for Violation of the Federal Securities Laws (ECF No. 63) (the "Complaint") alleges a straightforward claim of securities fraud setting forth claims with the necessary detail required by the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Under the backdrop of heightened scrutiny on tech companies' collection of vast amounts of user data, sometimes without adequately securing that data, Zoom seized on its user's need for assurances that their private data would be secure.  To that end, the Company emphasized its commitment and effort to secure private data, claiming it "put a high priority on security and data privacy."  ¶10.[2]  Its Security Guide published during the Class Period (April 18, 2019 through April 6, 2020), specifically stated: "We've designed policies and controls to safeguard the collection, use and disclosure of your information," and "are proud to *exceed industry standards* when it comes to your organizations communications."  ¶43.  Defendants also repeatedly assured that its users could "[s]ecure a meeting with E2E encryption," even highlighting this robust encryption as a necessity for financial and medical customers.  *See* ¶¶29-30, 32, 42. These end-to-end encryption assurances of course had the "industry standard" meaning, *i.e.*, only the people in the meeting had the keys to access messages and meeting content.  *See* ¶¶9(a) n.5, 34(a) n.7, 43, 56.

In connection with data security and privacy, the Company Privacy Policy said: "We *may collec*t . . . Personal Data about you," and: "We *may collect* . . . Facebook[3] profile information (when you use Facebook to login . . . .)"  *See* ¶¶8, 29.  The Complaint alleges that all of these statements were false.  Zoom did not and could not enable end-to-end encryption and was ultimately forced to apologize for misleading the public and "incorrectly suggesting that Zoom meetings were capable of using end-to-end encryption."  ¶¶56, 62-63.  Zoom was not only

[1]    "Plaintiff" is Lead Plaintiff Adam M. Butt.  "Defendants" are Zoom Video Communications, Inc. ("Zoom" or the "Company") and "Individual Defendants" Eric S. Yuan ("Yuan") and Kelly Steckelberg ("Steckelberg").

[2]    All "¶_" citations herein are to the Complaint.

[3]    Facebook, Inc. ("Facebook").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 3:20-cv-02353-JD        - 1 -
4824-0876-3633.v1

*collecting* user personal data, Zoom was also *sharing* that personal data with Facebook including personal data belonging to users who were not on Facebook.  ¶48.  Defendants were called on these "shocking" violations of privacy and quickly announced they would remove the software that was unnecessarily collecting and sharing data with Facebook.  ¶¶48-49.  Stock price declines, investor losses and government investigations followed.  ¶¶97-116.

Despite these facts, which were admitted in the spring of 2020, there is a chasm between Defendants' acknowledgements and apologies for the "confusion *we have caused* by *incorrectly suggesting* that Zoom meetings were capable of using end-to-end encryption," (¶63), and Defendants' Motion to Dismiss the Consolidated Class Action Complaint (ECF No. 78) ("MTD"), which argues that end-to-end encryption did not really mean end-to-end encryption and investors could not have been misled by the admitted misstatements.  *See* MTD at 4.  The chasm extends even further to a virtual rejection of bedrock principles of law, including that when choosing to tout an issue one is duty bound to speak truthfully and completely.  *Id.* at 8.  Instead, Defendants contend they simply had no obligation to inform users that Zoom was sharing their private data with Facebook.  *Id*.  And, despite Defendants' admission that Facebook's software development kit ("SDK") "was collecting device information unnecessary for [Zoom] to provide [its] services," and "therefore [Zoom] decided to remove the Facebook SDK," the Company argues that its Privacy Policy made no misrepresentation or omission at all.  ¶50; MTD at 8.

Finally, unable to credibly challenge the adequacy of the Complaint, Defendants pack the record with documents outside of the pleadings, raising fact questions (mostly implausible) that cannot be decided on a motion to dismiss.

The Complaint satisfies the PSLRA pleading requirement and the MTD should be denied.

## II.    LEGAL STANDARD

To establish a claim of securities fraud under §10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, a plaintiff must allege: (1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) relied upon by plaintiff; (5) a loss causally connected to the alleged fraud; and (6) economic loss or damages.  *Khoja v.*

*Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018).  In assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "consider the complaint in its entirety," "accept all factual allegations . . . as true" and construe those allegations in the light most favorable to the plaintiff.  *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).[4]

## III.    ARGUMENT

### A.    The Complaint Pleads Material Falsity

A complaint sufficiently alleges falsity when it "'specifi[es] each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading.'"  *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012) (quoting 15 U.S.C. §78u-4(b)(1)(B)).  Even a literally true statement "may be misleading if it **omits** material information."  *Khoja*, 899 F.3d at 1008-09; *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (an omission is actionably misleading when it "create[s] an impression of a state of affairs that differs in a material way from the one that actually exists"); *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017).  In other words, "'once defendants [choose] to tout positive information to the market, they [are] bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information.'"  *Khoja*, 899 F.3d at 1009. "[O]nly if the adequacy of the disclosure or the materiality of the statement is 'so obvious that reasonable minds [could] not differ' are these issues 'appropriately resolved as a matter of law.'"[5]  *Fecht v. Price Co.*, 70 F.3d 1078, 1080-81 (9th Cir. 1995); *see also Todd*, 642 F.3d at 1220.

---

[4]    All citations and footnotes omitted unless otherwise indicated.

[5]    Both Yuan and Steckelberg signed the Registration Statement which made the claim that the Company offered robust security capabilities including end-to-end encryption which was repeated throughout the Class Period on its website and blog posts.  Even if the Court found that the Individual Defendants did not specifically make the alleged misstatements on Zoom's website, they each had the power to control those statements and are liable under §20(a).  ¶25; *SEC v. Todd*, 642 F.3d 1207 (9th Cir. 2011).  Defendants do not directly challenge Plaintiff's §20(a) allegations. MTD at 15 n.14.

**1.      The Complaint Pleads Material Falsity of Defendants' Claims that Zoom Enabled End-to-End Encryption and Used AES 256-Bit Encryption**

The Complaint specifically alleges that the Company materially misstated that Zoom Meetings were or could be "end-to-end encrypted" and such "end-to-end encryption" used 256-bit encryption, providing a high level of data security such that only the intended recipients can read the secured message.  ¶¶6, 42-43.  In truth, Zoom Meetings were not capable of end-to-end encryption as defined by industry accepted standards because Zoom maintained the encryption keys allowing it access to video conferences users understood to be protected.  ¶¶9(a) n.5, 34(a), 56.  Defendants admit as much.  ¶56 (Zoom spokesperson: "Currently it is not possible to enable E2E [end-to-end] encryption for Zoom video meetings . . . .").  Nor were Zoom Meetings secured with AES 256-bit encryption as the Company stated.  ¶¶34(a), 71, 94.  Rather, the Company used 128-bit encryption, which is a lower level encryption subjecting user transmissions to substantially greater vulnerabilities than 256-bit encryption, including pressure from Chinese authorities as data flows to or from servers in China.  *See* ¶¶34(a), 71.  Defendants appear to concede that Plaintiff alleges that the representations concerning 256-bit encryption were false but incorrectly argue that the difference between 256-bit encryption and 128-bit encryption is not "material."  MTD at 7-8 n.7 (emphasis in original).  However, Defendants' MTD purports to elevate the standard for pleading falsity to require that Plaintiff plead not only the false statement and the reasons why the statement is false, but also that it is impossible for the alleged misrepresentation to have any "theoretical" modicum of truth.  MTD at 6 (arguing that Plaintiff does not allege the industry accepted definition as the exclusive definition for end-to-end encryption).  Ironically, Zoom, a tech savvy online platform, whose IP is protected by multiple patents filed with the United States' patent office, contends that the industry accepted definition of end-to-end encryption is too "highly technical."  *Id.* at 6-7.  Accordingly, even though end-to-end encryption has an industry accepted definition (*see* ¶9(a) & n.5), Defendants propose the Court inappropriately accept its alternative exculpatory definition.  MTD at 7.  Putting aside that Zoom's Security Guide asserted that it "proud[ly] . . . ***exceed[ed]*** industry standards" (¶43), even if Defendants believed their usage of the phrase end-to-end encryption fit some alternative definition, the market and computer industry

experts roundly concluded that Zoom's end-to-end encryption statements were misleading.  ¶¶56-57.  In March 2020, after a computer science expert implored Zoom to "just c[o]me clean," Yuan admitted that Zoom "incorrectly suggest[ed] that Zoom meetings were capable of using end-to-end encryption consistent with the "commonly-accepted definition."  ¶¶58, 63.

Defendants' reliance on *Wochos v Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021), to support its non-exclusive definition argument is misplaced.  MTD at 6.  In that case, the Ninth Circuit affirmed the district court's finding that plaintiff had failed to allege that Tesla's use of the phrase "'production car' actually mean[t] 'car[s] produced on a fully automated [production] line'" and that the term "would be understood [by the industry or the public] as referring exclusively to the fully automated production of identical vehicles."  *Tesla*, 985 F.3d at 1194 (emphasis omitted).  In *Tesla*, there was no alleged industry accepted definition of "production car" to measure how the public would have understood Tesla's usage of the term.  Here, Defendants cannot reasonably dispute that "end-to-end encryption had an industry accepted definition.  *See* ¶¶9(a) n.5, 72, 184 (end-to-end encryption means that messages are encrypted in ways that only allows the parties to the communication to decrypt it).  Defendants' effort to extend *Tesla*'s logic to this case fails and Defendants' reliance on *Kelly v. Elec. Arts, Inc.*, 2015 WL 1967233 (N.D. Cal. Apr. 30, 2015) (no industry standard definition for the term "de-risk"), is similarly inapt.  MTD at 6.

**2.      The Complaint Particularly Alleges Material Misrepresentations and Omission in Zoom's Security Guide and Privacy Policy**

The Complaint details that Zoom, in its Privacy Policy, the purpose of which is admittedly to inform Zoom users how the Company "collect[s], use[s] ***and disclose***[s] personal data," failed to disclose that that the Company, through its Facebook software development kit, was actually sharing customers' personal data with Facebook.  ¶¶45-46.  Indeed, while Zoom's Privacy Policy informed users that Zoom ***may*** "***collect***" personal data, nothing alerted investors or users that it was in fact collecting users' personal data ***and*** that it was systematically sharing it with Facebook even if they were not Facebook users.  ¶¶47-48.  As reported by the Motherboard website on March 26, 2020, "[t]here is nothing in the privacy policy that addresses that."  ¶¶48-49.  Because of this fact, according to Yuan, the Company "decided to remove the Facebook SDK in [Zoom's] iOS

client and have reconfigured the feature." ¶50. Defendants also failed to disclose it was sharing users' LinkedIn biographies and real names. ¶¶9(c), 47(c).[6]

Defendants do not dispute these material misrepresentations and omissions are particularly pled. Instead, they incorrectly contend that despite assertions in the Privacy Policy: (i) Zoom simply had no duty to disclose that it was sharing users' private data; and (ii) investors would not have read Zoom's Privacy Policy as a promise that it would not do more with users' private data, including sharing it with Facebook. MTD at 8. First, Zoom was far from silent about the strength and scope of its privacy protections and security systems, but rather boasted of its commitment to protecting user privacy and "ensuring [users] have a positive experience." ¶¶28, 41, 43, 50. Its Privacy Policy highlighted its "data handling practices" and "in particular how we collect . . . *and . . . disclose* Personal Data." ¶¶28, 46. The Privacy Policy even offered that if one logs in to Zoom through Facebook, Zoom might "collect" Facebook profile data. *Id.* Because Zoom often touted its privacy commitment and standards, and specifically discussed the collection of personal data, Zoom had a duty to disclose that it was collecting *and sharing* user data with Facebook. ¶¶34(b), 39, 49; *Khoja*, 899 F.3d at 1010; *see In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1118 (N.D. Cal. 2017); *In re Apple Inc., Sec. Litig.*, 2020 WL 2857397, at *11 (N.D. Cal. June 2, 2020) (defendants' statements touting high rates of phone upgrades, required to disclosure that new software, which slowed phone operations, allegedly contributed to the high upgrade rate).

**B.** **The Alleged Misrepresentations and Omissions Were Material, Defendants' Truth-on-the-Market Defense Is Unavailable on the Motion to Dismiss**

Plaintiff alleges that each of the alleged misrepresentations and omissions was material, *i.e.*, significantly affecting the mix of information available to investors. *Basic v. Levinson*, 485 U.S. 224, 232 (1988). Here, due to Defendants' repeated assurances, investors understood the

---

[6]   Defendants argue that without a promise to refrain from the alleged misconduct, even in the context of their affirmative Privacy Policy assurances, their omission that the Company would share their LinkedIn data and identification and reinstall web servers on Macs even after they are deleted, are inactionable. They cite *Kairalla v. Advanced Med. Optics, Inc.*, 2008 WL 2879087 (C.D. Cal. June 6, 2008) and *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 1051 (9th Cir. 2012), but neither supports such a proposition.

Company's claims regarding end-to-end encryption to be important to the Company's security measures. ¶¶47-48. The Company also repeatedly asserted that it was committed to privacy and its policy was "designed . . . to safeguard the . . . use, and disclosure of your information." ¶¶43, 50 ("[o]ur customers' privacy is incredibly important to us"). This information was plainly material to investors *See In re Alphabet, Inc., Sec. Litig.*, _ F.4th _, 2021 WL 2448223, at *10 (9th Cir. June 16, 2021) ("[p]ublic statements by [Company] executives . . . demonstrate the importance of user trust and public perceptions of security and privacy practices for the products and services central to [a Company's] business").

Defendants argue that the alleged misrepresentations are not material because Zoom disclosed that the Company offered cloud recording of Zoom Meetings, which indirectly disclosed that its usage of "end-to-end encryption" was not the industry standard definition, *i.e.*, that **only** the parties to the communication can access it. ¶¶9(a) n.5, 57, 72; MTD at 4; RJN Ex. 9.[7] But, nothing in the disclosures concerning cloud recording even references end-to-end encryption. *See* RJN Exs. 9-10 (simply stating that recordings can be stored in the cloud).[8] To push their version of the facts, Defendants attempt to introduce 21 documents (many from obscure publications) they claim prove that the market knew the truth concerning the alleged misrepresentations. This is no more than an assertion of a "truth-on-the-market" defense that simply "is not available" on a motion to dismiss. *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *6 (N.D. Cal. Aug. 7, 2020) (citing *Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*, 660 F.3d 1170, 1177 (9th Cir. 2011), *aff'd*, 568 U.S. 455 (2013) (materiality is a mixed question of law and fact, proof of which is a matter for trial)). The court in *Uber* recently rejected a similar attempt to establish through the introduction of 26 news articles at the motion to dismiss stage that the risks of investing in Uber

---

[7] All "RJN Ex. _" citations herein are to Defendants' Request for Judicial Notice and Consideration of Documents Incorporated by Reference in Support of Defendants' Motion to Dismiss the Consolidated Class Action Complaint (ECF No. 79).

[8] Defendants' MTD also minimizes that the Company's own 2019 Security Guide is contrary to the arguments advanced in their MTD as it specifically states that E2E encryption only allows intended recipients to read secured messages and ensures that sessions cannot be eavesdropped upon. ¶34(a) n.7.

shares were sufficiently well known to the market to insulate defendants from liability. *Uber*, 2020 WL 4569846, at \*6 (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000) ("'The truth-on-the-market defense is intensely fact-specific and is rarely an appropriate basis for dismissing a §10(b) complaint for failure to plead materiality.'")). Even at summary judgement, defendants carry a very high burden to establish that the so-called truth was available in market with such volume and intensity that "'no rational jury could find' that the market was misled." *Provenz v. Miller*, 102 F. 3d 1478, 1493 (9th Cir. 1996).

Defendants also assert that the Company "clear[ly]" disclosed that it could share personal data with "'affiliated companies,'" "'service vendors'" or "'contractors' one of which [i]s Facebook." MTD at 8. But, Defendants' MTD selectively quotes the claimed disclosures which state only that the Company may share personal data with affiliated companies and third-party service providers "for purposes of data processing or storage," or with business partners, "in order to provide requested Products or transactions," (RJN Ex. 8) neither of which Zoom users were requesting from Facebook. The Company's March 27, 2020 acknowledgement that its SDK "was collecting device information ***unnecessary for us to provide our services***," and "therefore we decided to remove the Facebook SDK" recognized this fact. ¶50.

Finally, the materiality of Defendants' misrepresentations is confirmed by the market and governmental reaction to the true facts concerning the lack of end-to-end encryption and the undisclosed sharing of private data with Facebook. *See Alphabet*, 2021 WL 2448223, at \*10 ("[m]arket reaction, increased regulatory [scrutiny] . . . and media coverage . . . after disclosure all support the materiality"). Here, on March 26, 2020, Motherboard reported that "Zoom [was] not forthcoming with the data collection or the transfer of it to Facebook." ¶49. On March 30, 2020, *The New York Times* reported that the New York Attorney General had launched an investigation into Zoom's security privacy practices. ¶52. On March 31, 2020, *The Intercept* reported that, in fact, according to Zoom's own admission, video conferencing was not end-to-end encrypted. ¶¶56-57. On April 3, 2020, Citizen Lab reported that the Zoom app uses non-industry-standard cryptographic techniques and that its claims of using AES 256-bit were not true. ¶71. The Federal Trade Commission ("FTC") also filed suit against Zoom charging that it falsely represented the

security of its videoconferencing and usage of 256-bit encryption.  ¶¶93-94.  These disclosures caused significant price declines of Zoom stock.  *See* ¶¶97-116; *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 948 (9th Cir. 2003).

### C.   The Consolidated Complaint Pleads a Strong Inference of Scienter

A complaint adequately pleads scienter where it "'state[s] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind'" – *i.e.*, that the defendant "'made false or misleading statements either intentionally or with deliberate recklessness.'"  *Reese v. Malone*, 747 F.3d 557, 568-69 (9th Cir. 2014) (emphasis omitted), *overruled by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align, Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017); 15 U.S.C. §78u-4(b)(2)(A).  *Alphabet*, 2021 WL 2448223, at *8 ("deliberate recklessness" [is defined] as "'"an extreme departure from the standards of ordinary care,' which 'presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it"'") (quoting *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020)).  A "'strong inference'" is one that a reasonable person would deem "cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs*, 551 U.S. at 324.  The key question in evaluating scienter is "whether ***all*** of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Id.* at 322-23 (emphasis in original).  A "'smoking-gun'" is not necessary, and the inference does not need to be the "'most plausible of competing inferences.'"  *Id.* at 324.  Allegations of motive are not required.  *Id.* at 325; *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *12-*13 (N.D. Cal. Nov. 4, 2020).

#### 1.   The Complaint Alleges Defendants' Knowledge or Deliberate Disregard that Zoom Meetings Were Not End-to-End or 256-Bit Encrypted

The Complaint alleges that Defendants knew or deliberately disregarded that statements concerning end-to-end encryption and 256-bit encryption were materially false and misleading.  ¶¶34(a), 47(a).  In fact, Defendants knew that Zoom maintained the cryptographic keys that would allow Zoom to decrypt end-user messages.  ¶¶47(a), 93.  Because Defendants built and deployed the 128-bit encryption across the Zoom Meetings platform, it would be absurd to believe that the

Company was not aware that it was not 256-bit. Defendants argue that Plaintiff's allegations of scienter are too conclusory (MTD at 10 n.10), but do not contest the Company knew that it maintained the cryptographic keys that allowed Zoom to decrypt messages. In fact, Defendants contend that based on the Company's vague reference in its Registration Statement about recording Zoom Meetings and an obscure blog post speculating that Zoom kept a copy of the user's private keys, that Zoom users and ***investors also knew***. *See* MTD at 4; RJN Ex.12. Defendants' apology for suggesting that Zoom Meetings were end-to-end encryption further confirms scienter. ¶63 ("we . . . apologiz[e] for the confusion we have caused by incorrectly suggesting that Zoom meetings were capable of using end-to-end encryption"). Defendants' false characterization of end-to-end encryption was not a mistake akin to negligence, but rather the Company "recognize[d]" that it was using a definition of "end-to-end encryption" that was different than "the commonly accepted definition," and did so anyway. *Id.* Defendants' MTD also ignores that Yuan was a key engineer of the Zoom Meetings platform which he claimed from day one had "security . . . already built in from each layer." ¶41. Yuan is also an author of multiple patents concerning encryption technology, and it would be absurd to believe that it was not reckless to omit the true limited scope of Zoom's purported end-to-end encryption. *See* ¶34(a).[9] Defendants are entirely incorrect that Yuan's expertise and knowledge "say ***nothing*** about Yuan's state of mind" during the time the alleged misrepresentations were made. MTD at 10. *Reese*, 747 F.3d at 572 (finding that because of defendant's role as Senior V.P. and chemical engineering expertise, "the inference that [she] misunderstood the data is simply not plausible"). That it "makes no sense" for Defendants to intentionally mislead the public also fails. MTD at 13. A defendant's intent to defraud is not measured by whether that fraud is intelligently or successfully committed. *See Perlman v. Zell*, 938 F. Supp. 1327, 1344 (N.D. Ill. 1996), *aff'd*, 185 F.3d 850 (7th Cir. 1999).

---

9    Defendants' argument that the absence of allegations of suspicious stock sales negates scienter should be rejected. MTD at 1. As the Ninth Circuit recently confirmed: "This argument fails." *Alphabet*, 2021 WL 2448223, at *13 ("Although such allegations may support an inference of scienter, they are not a sine qua non for raising such an inference.") (citing *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1180-83 (9th Cir. 2009) (rejecting need for stock sales and identifying sufficient scienter allegations without witnesses), *aff'd*, 563 U.S. 27 (2011)).

Because of Defendants' knowledge of the omitted (and admitted) facts, *i.e.*, that Zoom Meetings were ***not*** end-to-end encrypted in the common usage of the term, coupled with their claims that Zoom's "robust security capabilities, including end-to-end encryption" and "customer data privacy is very important," (¶¶27, 30, 32, 39, 41) the danger of misleading investors was, or should have been, obvious. *See Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016)); *In Re Twitter, Inc. Sec. Litig.*, 2020 WL 4187915, at *13 (N.D. Cal. Apr. 17, 2020) (holding defendants should have known the market would have attached significance to a reported performance metric such that and that the danger of misleading investors by omitting information from the challenged statements was "obvious") (quoting *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1094 (9th Cir. 2010) ("'When the defendant is aware of the facts that made the statement misleading, he cannot ignore the facts and plead ignorance of the risk.'").

### 2. The Complaint Details Defendants' Knowledge or Deliberate Disregard that Zoom Was Sharing Users' Personal Data

The Complaint details that Defendants knew or deliberately disregarded that the Company shared personal data with Facebook, even if the user did not log in through a Facebook account or have a Facebook account at all. ¶48. Zoom developed the SDK and presumably knew how it worked and explained that it would ***collect*** user data. Yuan is an engineer and founder of the Company and it would be absurd to believe he was not deliberately reckless in omitting privacy failures from Zoom's Privacy Policy. *See Reese*, 747 F.3d at 576-77 (absurd to suggest Senior Vice President and experienced chemical engineer was without knowledge). Defendants argue that Yuan, the developers of the SDK, which reportedly permitted the collection of data if logged in through a Facebook account, were only made aware of how their software toolkit (which they developed) was functioning on March 25, 2020. MTD at 12. This is entirely implausible and also directly contradicts Defendants' claim that users and investors already knew Zoom could share data with Facebook. *Id.*

### D. Defendants' Late Class Period Admissions and Blog Post Revisions Support Falsity and Scienter

In addition to emphasizing the importance of their security measures to protect personal data, Defendants' admissions, acknowledgements and scrubbing "end-to-end encryption" and

"256-bit AES encryption," from its website, independently and in concert support Plaintiff's allegations. ¶¶79-83. Beginning on April 6, 2020, Zoom deleted references to "end-to-end" before the word encryption on at least six different previously published blog posts on its website. *See* ¶¶79-83. In addition to scrubbing blogs on its website, on April 1, 2020, Yuan apologized for misleading the market. ¶63 ("we want to . . . apologiz[e] for . . . incorrectly suggesting that Zoom meetings were capable of using end-to-end encryption"). He acknowledged that the Company "recognize[s] that there is a discrepancy between the ***commonly accepted*** definition of end-to-end encryption and ***how we were using it***." *Id.* A company spokesperson also admitted that "currently it is ***not possible*** to engage E2E encryption for Zoom meetings." ¶56. Zoom also removed "end-to-end (E2E)" references from its Security Guide. ¶86. Similarly, Defendants' decision to remove the software developer kit because it was collecting and sharing private user data with Facebook is yet an additional fact supporting falsity and scienter. ¶¶50-51. These allegations are consistent with the well settled authority in the Ninth Circuit that falsity and scienter are generally inferred from the same set of facts. *See In re Allied Nev. Gold Corp. Sec. Litig.*, 743 Fed. App'x. 887 (9th Cir. 2018) (citing *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)).[10]

### E.   FTC Charges and Settlement Corroborate Allegations of Material Falsity and Scienter

The Complaint alleges that shortly after the disclosures Zoom Meetings were not end-to-end encrypted as Zoom represented, the FTC filed a complaint (concurrent with a consent order) (the "FTC Complaint") against Zoom alleging material deceptive and unfair privacy and security practices, including deceptive claims that Zoom Meetings were end-to-end encrypted. ¶93.[11] This further supports Plaintiff's claims. *In re BofI Holding, Inc., Sec. Litig.*, 977 F.3d 781, 791 (9th

---

[10]   Defendants argue Yuan's April 1, 2020 blog post was not an admission, relying on *Yourish v. Cal. Amplifier*, 191 F.3d 983, 996-97 (9th Cir. 1999), for the notion that an admission must be of the "'I knew it all along'" variety. *Id.* However, the court in *Apple*, 2020 WL 6482014, at *6 n.4, rejected an identical argument holding that *California Amplifier* "stands for the unremarkable proposition that an admission must suggest facts that render the challenged statements false." *Id.* The same should hold true here.

[11]   The details of the FTC Complaint are alleged at ¶¶93-95, and filed concurrently herewith as Exhibit A to the Declaration of Shawn A, Williams, and properly incorporated by reference. *See Khloja*, 899 F.3d at 1000-03.

Cir. 2020) (allegations of egregious conduct in a judicially noticed lawsuit, if accepted as true, support allegations of falsity); *Alphabet*, 2021 WL 2448223, at \*10 (regulatory, among other market action, may support Rule 10b-5 claims). *See In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903 (N.D. Cal 2020) (considering United States Securities and Exchange Commission complaint as part of plaintiffs securities claim) (citing *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186 (9th Cir. 2015) (considering FTC Complaint). The FTC Complaint also alleged that Zoom, as late as the 2019 Security Guide, claimed that its webinar content and screen sharing were secured using AES 256 and communicated over secured network using 256-bit encryption standard, but in fact Zoom used a lower level of encryption for securing Zoom Meetings (AES 128-bit encryption). Ex. A at 6-7.

Defendants characterize the FTC Complaint as "last ditch" and argue that they never admitted or denied the FTC claims despite settling those claims and consenting to the entry of an order requiring remediation. MTD at 11. However, Zoom ***did admit*** to the underlying facts and the deceptive nature of its statements on end-to-end encryption. ¶¶62-63. *Glazer Cap. Mgmt. LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008) is inapposite here because Plaintiff does not allege Defendants' settlement with the FTC alone creates a strong inference of scienter. In this case however, it does corroborate the other alleged facts and admissions and quick settlements of ancillary lawsuits alleging fraud or deceptive conduct, like the FTC Complaint here, can be indicative of scienter. *See City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 685-86 (6th Cir. 2005); *Tesla*, 477 F. Supp. 3d at 930 (filing of SEC complaints and "Musk's [quick] settlement provides some support for Plaintiff's allegation of scienter").

### F.     The Complaint Adequately Alleges Loss Causation

A complaint adequately pleads loss causation by articulating the causal connection or relationship between the alleged misrepresentation and plaintiff's alleged economic loss. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005). "The burden of pleading loss causation is typically satisfied by allegations that the defendant revealed the truth through 'corrective disclosures' which 'caused the company's stock price to drop and investors to lose money.'" *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016). Pleading loss causation is "not meant to

impose a great burden upon a plaintiff," but to "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharms.*, 544 U.S. at 347; *see BofI*, 977 F.3d at 791; *see also Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1120 (9th Cir. 2013).

Here, the Complaint alleges that disclosures directly contrary to the alleged misrepresentations concerning the Company's "end-to-end encryption" technology, the undisclosed sharing of user data with Facebook and investigations and regulatory action concerning the same each caused the Company's stock price to decline, resulting in investor losses. ¶¶97-116.  For example, on Monday, March 30, 2020, following a Friday, March 27, 2020 blog post by Defendants admitting that the Company was collecting and sharing user data with Facebook, *The New York Times* revealed new information that the New York Attorney General was investigating potential privacy violations committed by Zoom, including surreptitiously sending user data to Facebook.  ¶101. [12]  Zoom's stock price immediately declined nearly $10.00.  ¶102.  Defendants' reliance on *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014) is misplaced.  MTD at 15 n.13.  Here, the alleged loss in connection with the publication of the New York Attorney General's investigation was not based on the announcement of the investigation alone, as in *Loos*, but instead was caused by the ***facts*** underlying the investigation, including the reports of undisclosed data sharing and privacy vulnerabilities in Zoom's platform reported by users, analysts and admissions of the Company.  ¶¶48-53; *BofI*, 977 F.3d at 792 ("[i]f the market treats allegations of a lawsuit [or newspaper article] as sufficiently credible . . . inflation in the stock price [will] dissipate[] as a result").  On March 31, 2020, *The Intercept* published an article titled "ZOOM MEETINGS AREN'T END-TO-END ECRYPTED, DESPITE MISLEADING MARKETING: The video conferencing service can access conversations on its platform" characterizing Defendants' claims as misleading marketing and quoting an additional new disclosure – an admission from a Zoom spokesperson admitting "'[c]urrently, it is not possible to

---

[12]  Defendants argue that after the Motherboard article on March 26, 2020, the stock price went up from its opening price, but fail to acknowledge that the price fell below its opening price during intraday trading.  *See* RJN Ex. 20.

enable E2E [end-to-end] encryption for Zoom video meetings.'" ¶56.  On March 31, 2020, Zoom stock price fell again.  ¶¶103-104; *BofI*, 977 F.3d at 790.  On April 1, 2020, *after market close* Zoom and Yuan disclosed more new information, an apology for "incorrectly suggesting that Zoom meetings were capable of using end-to-end encryption."  ¶¶62-63, 105, 107.  The Company's stock price fell 11% on April 2, 2020, on extremely high trading volume as the market digested Yuan's admission.  ¶¶64,107.  Defendants curiously quibble with the fact that Plaintiff alleges the *facts* concerning intraday price decline ignoring they are relevant to the loss calculus.  *See Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020) (recognizing allegations of intra-day low trading prices and high volume in crediting loss causation allegations).  And, contrary to Defendants' contentions (MTD at 15), Plaintiff does not assert that the April 2, 2020, CNBC and *Variety* articles disclosed new information causing investor losses.  ¶¶107-108.  Rather, they each widely report to investors, specifically, the CNBC audience, Zoom's April 1, 2020 admissions after the market closed.  ¶¶62, 64.  It would be expected that the impact would occur on the next day of trading.  In any event, while "a disclosure followed by an immediate drop in stock price is more likely to have caused the decline . . . timing is not dispositive," of adequate allegations of loss causation.  *BofI*, 977 F. 3d at 790.  Loss causation is alleged.

## IV.    CONCLUSION

For all of the reasons set forth above, the Court should deny Defendants' MTD.  Should the Court find any deficiencies, Plaintiff respectfully requests leave to amend the Complaint to address them.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

DATED:  July 9, 2021                      Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
JOHN H. GEORGE


                              s/ Shawn A. Williams
                         SHAWN A. WILLIAMS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
jgeorge@rgrdlaw.com

Lead Counsel for Lead Plaintiff

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on July 9, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Shawn A. Williams
SHAWN A. WILLIAMS
ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  shawnw@rgrdlaw.com

4824-0876-3633.v1

# Mailing Information for a Case 3:20-cv-02353-JD Drieu v. Zoom Video Communications, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jenna C. Bailey**
  jbailey@cooley.com,jcorrell@cooley.com

- **Tijana Martinovic Brien**
  tbrien@cooley.com,emadrigal@cooley.com

- **John Hamilton George**
  jgeorge@rgrdlaw.com

- **Patrick Edward Gibbs**
  pgibbs@cooley.com,bgiovannoni@cooley.com

- **Reza John Harris**
  rjharris@cooley.com

- **Benjamin Heikali**
  Bheikali@faruqilaw.com,mperetz@faruqilaw.com,rglezakos@faruqilaw.com,ecf@faruqilaw.com,tpeter@faruqilaw.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com

- **Phillip C Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,asoto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.com,asoto@pomlaw.c

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Jessica Valenzuela Santamaria**
  jsantamaria@cooley.com,galancr@cooley.com,emadrigal@cooley.com

- **Craig Edward TenBroeck**
  ctenbroeck@cooley.com,maraujo@cooley.com,efiling-notice@ecf.pacerpro.com

- **Tamar A Weinrib**
  taweinrib@pomlaw.com,egoodman@pomlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Armen Zohrabian**
  AZohrabian@rgrdlaw.com,E_File_SD@rgrdlaw.com,azohrabian@ecf.courtdrive.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)