COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
JESSICA VALENZUELA SANTAMARIA (220934)
(jvs@cooley.com)
TIJANA M. BRIEN (286590)
(tbrien@cooley.com)
JENNA C. BAILEY (319302)
(jbailey@cooley.com)
3175 Hanover Street
Palo Alto, California  94304-1130
Telephone:     +1 650 843 5000
Facsimile:     +1 650 849 7400

CRAIG E. TENBROECK (287848)
(ctenbroeck@cooley.com)
4401 Eastgate Mall
San Diego, California 92121
Telephone:     +1 858 550 6000
Facsimile:     +1 858 550 6420

Attorneys for Defendants
*Zoom Video Communications, Inc., Eric S. Yuan, and*
*Kelly Steckelberg*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re ZOOM SECURITIES LITIGATION | Case No.: 3:20-cv-02353-JD |
|---|---|
| | **DEFENDANTS' REPLY ISO MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT** |
| This Document Relates To: ALL ACTIONS. | |
| | Date:          August 26, 2021 |
| | Time:          10:00 a.m. |
| | Courtroom:   11, 19th Floor |
| | Judge:         Hon. James Donato |

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................................. 1

II.     ARGUMENT ....................................................................................................................... 1

    A.      Plaintiff Fails to Allege Any False or Misleading Statements ................................ 1

        1.      Plaintiff Fails to Allege That E2EE Had One Exclusive Definition ........... 1

        2.      Plaintiff Fails to Allege Any Actionable Misstatements or Omissions Regarding Data Privacy ........................................................... 3

    B.      Plaintiff Fails to Establish "Maker" Liability ........................................................ 5

    C.      Plaintiff Fails to Allege a Strong Inference of Scienter ......................................... 5

        1.      Plaintiff Fails to Plead Scienter as to End-to-End Encryption ................... 5

        2.      Plaintiff Fails to Plead Scienter as to the Privacy Statements .................... 7

        3.      After-the-Fact Statements and Events Do Not Support Scienter ................ 7

        4.      Viewed Holistically, Plaintiff Fails to Plead Scienter ................................ 8

    D.      Plaintiff Fails to Plead Loss Causation .................................................................. 9

III.    CONCLUSION .................................................................................................................. 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Allied Nevada Gold Corp. Sec. Litig.*,
743 F. App'x 887 (9th Cir. 2018) ................................................................................ 8

*In re Alphabet, Inc. Sec. Litig.*,
1 F. 4th 687 (9th Cir. 2021) ................................................................................... 4, 9

*In re Apple Inc., Sec. Litig.*,
2020 WL 2857397 (N.D. Cal. June 2, 2020) ......................................................... 4, 8

*In re Apple Inc. Sec. Litig.*,
2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ............................................................ 8

*Bonanno v. Cellular Biomedicine Grp., Inc.*,
2016 WL 4585753 (N.D. Cal. Sept. 2, 2016) ......................................................... 10

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ................................................................................. 3, 4

*City of Monroe Employees Retirement System v. Bridgestone Corp.*,
399 F.3d 651 (6th Cir. 2005) .................................................................................... 8

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
2021 WL 1091891 (N.D. Cal. Mar. 22, 2021) .......................................................... 4

*In re Cloudera, Inc.*,
2021 WL 2115303 (N.D. Cal. May 25, 2021) ........................................................... 7

*Cunningham v. Identiv, Inc.*,
716 F. App'x 663 (9th Cir. 2018) .............................................................................. 6

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017) ................................................................................... 7

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) ...................................................................................... 8

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011). (*See* Mot. .) ............................................................................. 5

*Khoja v. Orexigen*,
899 F. 3d 988 (9th Cir. 2018) .................................................................................... 3

*In re LendingClub Sec. Litig.*,
254 F. Supp. 3d 1107 (N.D. Cal. 2017) ..................................................................... 4

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**DEFENDANTS' REPLY ISO MTD**
**3:20-CV-02353-JD**

**TABLE OF AUTHORITIES**
(Cont.)

**Page(s)**

*Lopes v. Fitbit, Inc.,*
2020 WL 1465932 (N.D. Cal. Mar. 23, 2020), *aff'd*, 848 F. App'x 278 (9th
Cir. 2021) .......................................................................................................................... 7

*In re Omnicom Grp., Inc. Sec. Litig.,*
597 F.3d 501 (2d Cir. 2010) ............................................................................................ 10

*Perlman v. Zell,*
938 F. Supp. 1327 (N.D. Ill. 1996), *aff'd*, 185 F.3d 850 (7th Cir. 1999) ......................... 6

*Purple Mountain Trust v. Wells Fargo & Co.,*
432 F. Supp. 3d 1095 (N.D. Cal. 2020) ........................................................................... 10

*Reese v. Malone,*
747 F.3d 557 (9th Cir. 2014) ............................................................................................ 8

*In re Rigel Pharms., Inc. Sec. Litig.,*
2009 WL 5125344 (N.D. Cal. Dec. 21, 2009) ................................................................. 10

*In re Rigel Pharms., Inc. Sec. Litig.,*
697 F.3d 869 (9th Cir. 2012) ............................................................................................ 5

*Rok v. Identiv, Inc.,*
2017 WL 35496 (N.D. Cal. Jan. 4, 2017 .......................................................................... 6

*Schueneman v. Arena Pharmaceuticals, Inc.,*
840 F.3d 698 (9th Cir. 2016) ............................................................................................ 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007) .......................................................................................................... 9

*In re Tesla, Inc. Sec. Litig.,*
477 F. Supp. 3d 903 (N.D. Cal. 2020) .............................................................................. 8

*In re Twitter, Inc. Sec. Litig.,*
506 F. Supp. 3d 867 (N.D. Cal. 2010) .............................................................................. 3

*In re Twitter, Inc. Sec. Litig.,*
2020 WL 4187915 (N.D. Cal. Apr. 17, 2020) .................................................................. 6

*In re Verisign, Inc., Derivative Litig.,*
531 F. Supp. 2d 1173 (N.D. Cal. 2007) ............................................................................ 5

*Webb v. SolarCity Corp.,*
884 F.3d 844 (9th Cir. 2018) ............................................................................................ 5

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii

**DEFENDANTS' REPLY ISO MTD**
**3:20-CV-02353-JD**

**TABLE OF AUTHORITIES**
(Cont.)

**Page(s)**

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021)............................................................................................. 1, 2

**Statutes**

15 U.S.C.
   § 78u-4(e)(1)-(3) ...................................................................................................................... 10

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

## I.      INTRODUCTION

Plaintiff's Opposition confirms that his Complaint fails to plead a single actionable mis-statement, a strong inference of scienter, or loss causation under the Exchange Act.

First, Plaintiff fails to plead with particularity that any statements were false or misleading when made.  Regarding "end-to-end encryption" ("E2EE"), Defendants never said that Zoom did not hold the cryptographic key.  Plaintiff's reliance on the "known and accepted" definition of E2EE fails under Ninth Circuit precedent, because he does not allege with particularity that E2EE "would be understood *as referring exclusively*" to his preferred definition.  *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021).  As for Zoom's statements about user privacy, Plaintiff fails to identify a single statement rendered false or misleading by the alleged omission of (1) the Facebook SDK's collection of technical device data, (2) Zoom's LinkedIn profile matching feature, or (3) Zoom's Mac web server, which the Opposition appears to concede as to the latter two.

Second, Plaintiff fails to plead facts giving rise to a "strong inference" that Eric Yuan or Kelly Steckelberg knew or recklessly disregarded that the challenged statements would materially mislead investors.  Plaintiff's conclusory and unspecific references to "Defendants'" or "Zoom's" scienter generally are not enough and the few individual allegations Plaintiff does cite, such as Yuan's involvement in developing Zoom's platform, do not come close to supporting a strong inference of scienter.  Nor do alleged after-the-fact statements and events show that any Defendant intended to mislead investors when they spoke.

Finally, Plaintiff's Opposition abandons most of his "corrective disclosures."  For the few that remain, he fails to demonstrate that there was any newly-disclosed information or a decline in Zoom's stock price.  Thus, he fails to plead the element of loss causation.

For each of these independent reasons, the Complaint should be dismissed with prejudice.

## II.     ARGUMENT

### A.      Plaintiff Fails to Allege Any False or Misleading Statements

#### 1.      Plaintiff Fails to Allege That E2EE Had One Exclusive Definition

Plaintiff does not dispute that under at least one definition of E2EE – which focuses on whether communications remain encrypted between two endpoints, *i.e.* "end to end" – it is

irrelevant whether Zoom held the cryptographic key. The alleged misleading statements were therefore true. (*See* Mot. at 6.) This alone makes clear that Plaintiff fails to plead falsity as to the E2EE statements.

Undeterred, Plaintiff labels Zoom's references to E2EE as false and misleading because, according to Plaintiff, Zoom's access to the cryptographic key was inconsistent with what Plaintiff claims is the "'industry standard' meaning" of E2EE. (Opp. at 1, 4.) But the Complaint alleges no facts supporting Plaintiff's conclusory assertion that his preferred definition is the "known and accepted definition in the tech industry," let alone the definition that Plaintiff or the market understood. Instead he relies entirely on a definition promoted by a single journalist in 2014. (¶ 9(a), n.5.) Nothing in the article suggests that it is using (or establishing) an "industry accepted" definition of E2EE, or that an "industry accepted" definition even existed. Nor does Plaintiff's reliance on articles *published months to years* after the challenged statements, suggest that an "industry accepted" definition existed *at the time* the statements were made.[1] (¶¶ 56-59, 72.)

Moreover, even assuming that Plaintiff's definition was one "known and accepted" (or even an "industry accepted") definition of E2EE, Plaintiff's claim still fails under the Ninth Circuit's analysis in *Tesla*, 985 F.3d at 1194. There, the Ninth Circuit rejected a claim that Tesla misled investors by saying it made "50 production cars" because plaintiffs had failed to plead "sufficient facts to establish that the actual term used had the distinctive, and false, meaning that Plaintiffs claim." *Tesla*, 985 F.3d at 1194. Plaintiff does not meaningfully distinguish *Tesla*. He argues that it is not dispositive because in *Tesla* plaintiffs did not plead "an industry accepted definition," which he claims to have done here. (Opp. at 5.) But the Ninth Circuit's analysis turned on plaintiffs' failure to plead "facts to support their premise that [the phrase] would be understood *as referring exclusively*" to the definition they promoted. 985 F.3d at 1194 (emphasis added). The Complaint here suffers the same flaw, as it lacks facts to support the allegation that E2EE "refer[s] exclusively" to Plaintiff's definition and tacitly concedes that other definitions of the term exist. *Id*. at 1194.

And Plaintiff admits that some of Zoom's features offered E2EE in the way he defines it. (*See, e.g.*, ¶ 34(a).) As such, even if Plaintiff's preferred definition were the only possible definition

---

[1] Even if Plaintiff's definition of E2EE was one "known and accepted" definition of the phrase, this would not foreclose the existence of other "known" or "accepted" definitions.

of E2EE, the sole statement challenged in Zoom's Prospectus,[2] that Zoom offered "end-to-end encryption" as part of its general "technology and infrastructure" would not be false, because it does not suggest that all Zoom products offered E2EE in all circumstances. (Ex. A, Stmt. 1.) For the same reason, the various blog posts Plaintiff challenges are also not false. (*See id.*, Stmts. 3, 6, 8, 10 ("we can highlight the following features as important to businesses . . . [s]ecure with end-to-end AES 256 bit encryption,").)[3]  Setting aside whether these statements said anything about Zoom's encryption capabilities (*see* Mot. at 7, n.6), Plaintiff fails to allege how these statements were false if, as he alleges, Zoom's product offered E2EE in the way he defines it. Because Plaintiff does not plead with specificity that Zoom's statements about E2EE were false or misleading when made, his claims should be dismissed.

### 2.    Plaintiff Fails to Allege Any Actionable Misstatements or Omissions Regarding Data Privacy

Plaintiff's falsity theory around Zoom's Privacy Policy is equally flawed. (*See* Mot. at 8-9.) To start, Plaintiff fails to plead with particularity how Zoom's *user* Privacy Policy touted *any* "positive information to *the market*," such that Zoom was obligated not to "mislead *investors*" and "disclos[e] adverse information" cutting against it. *In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867 (N.D. Cal. 2010) (emphasis added). None of the cases Plaintiff identifies involved consumer-facing documents, like Zoom's Privacy Policy.

Plaintiff also does not plead with particularity *why* the statements in Zoom's Privacy Policy created a duty to share any and all facts around user privacy. *See, e.g., Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 997 (9th Cir. 2002) (Rule 10b-5 "prohibit[s] only misleading and untrue statements, not statements that are incomplete"). As Plaintiff's own authorities show, the information disclosed and the alleged omission must be directly linked. (*See* Opp. at 6.) In *Khoja v. Orexigen*, for example, a company disclosed certain clinical study results and therefore was also obligated to disclose that *those results* were unreliable. 899 F. 3d 988, 1009-10 (9th Cir. 2018);

---

[2] This is also the sole statement allegedly "made" by Yuan or Steckelberg. *See infra* at II.B.

[3] Defendants do not "concede that Plaintiff alleges that the representations concerning 256-bit encryption were false." (*Compare* Opp. at 4 *with* Mot. at 7-8, n. 7.) In any case, the sole "disclosure" regarding 256-bit encryption (the April 3, 2021 Citizen Lab article) confirms that investors did not care, as Zoom's stock price *closed higher* following its "disclosure." (Mot. at 14.)

*see also In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1118 (N.D. Cal. 2017) (company's statements about loan origination volume required disclosure that a large number *of those loans* were made to the company's CEO and his family); *In re Apple Inc., Sec. Litig.*, 2020 WL 2857397, at *11 (N.D. Cal. June 2, 2020) (statements regarding "high upgrade rates" required disclosure of "adverse information" that *those upgrades* were due to slowing phone operations).  No such link exists here.  The Privacy Policy's statements that *Zoom* may collect "Facebook profile information" is markedly different from *Facebook*[4] *allegedly* collecting "mobile OS type and version, the device time zone, device OS, device model and carrier, screen size, processor cores, and disk space."[5]  (*See* ¶ 50.)  And Plaintiff still fails to explain how this (or any other) challenged statement relates to the LinkedIn and Mac web server allegations.  Even if Plaintiff "specif[ied] what information [Zoom] omitted, [he did] not indicate *why* the statement [Zoom] made was misleading," and thus he fails to plead an actionable misstatement or omission.  *See Brody*, 280 F.3d at 1006.

Finally, Zoom's general statements around the user experience or Zoom's commitment to privacy are inactionable.  (*See* Opp. at 6; *see, e.g.*, ¶ 28 ("[Zoom] is committed to protecting your privacy and ensuring you have a positive experience"); ¶43 ("We've designed policies and controls to safeguard the collection, use, and disclosure of your information.").)  The Ninth Circuit recently held that several very similar alleged misstatements—including that (1) "Google was 'committed to protecting our users' data" and (2) Alphabet was "one of the leading companies when it comes to privacy and security of user data" and taking "great pains to make sure that people have great control and notice over their data"—"amount[ed] to vague and generalized corporate commitments, aspirations, or puffery that cannot support statement liability."  *In re Alphabet, Inc. Sec. Litig.*, 1 F. 4th 687, 708 (9th Cir. 2021).[6]  The statements here are no different.

---

[4] Plaintiff apparently does not recall his own Complaint as he now claims, with no support and contrary to his own allegations, that Zoom developed the SDK, not Facebook.  *See infra* at C.2.

[5] Plaintiff accuses Defendants of "selectively quot[ing]" the Privacy Policy (Opp. at 8), but it is Plaintiff who mischaracterizes it.  The policy was clear that Zoom may share data "in order to provide requested *Products*," defined as Zoom's, not Facebook's, "products and services."  Ex. 8.

[6] Plaintiff dedicates pages of his Opposition to attacking Defendants' purported "truth-on-the-market" defense.  (*See* Opp. at 7.)  Plaintiff misunderstands Defendants' argument, which pointed to publicly-available information to show context for how investors would have understood Zoom's references to E2EE, which courts routinely do in assessing the adequacy of falsity allegations.  *See, e.g., City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2021 WL 1091891 (N.D. Cal. Mar. 22, 2021) ("a duty to provide information exists only where statements were made which were misleading *in light of the contex*t surrounding the statements") (emphasis added).

### B.      Plaintiff Fails to Establish "Maker" Liability

Plaintiff essentially concedes that Yuan and Steckelberg did not "make" all but one of the alleged misstatements.  (Opp. at 3, n. 5.)  He does not attempt to allege any involvement by Yuan or Steckelberg in any of the documents that contained the challenged statements (other than the Prospectus, which, as discussed above, is not false or misleading even under Plaintiff's' preferred definition of E2EE).  As a result, they cannot be liable for these alleged misstatements under *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).  (*See* Mot. at 9.)

### C.      Plaintiff Fails to Allege a Strong Inference of Scienter

The scienter "bar . . . is not easy to satisfy," *Webb v. SolarCity Corp.*, 884 F.3d 844, 855 (9th Cir. 2018) and Plaintiff's allegations are sorely lacking.  The Complaint is notable for what it misses: no alleged motive, no suspicious stock sales[7], no confidential witnesses, and no allegations that either Defendant had *contemporaneous* knowledge of information contradicting Zoom's public statements.  Instead, Plaintiff cobbles together conclusory and vague allegations of "Defendants'" or "Zoom's" scienter generally, even as he concedes that group pleading is insufficient.  (*See, e.g.*, Opp. at 9-10; Mot. at 10.)  Having failed to "show[] what *each* defendant knew, when he/she knew it, or how he/she acquired that knowledge," his Complaint must be dismissed.  *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1207 (N.D. Cal. 2007) (emphasis added).[8]

#### 1.      Plaintiff Fails to Plead Scienter as to End-to-End Encryption

Plaintiff claims generally that "Defendants" knew various facts around Zoom's encryption practices, including that Zoom "maintained the cryptographic keys."  (*See* Opp. at 9-10.)  Setting aside whether those facts were sufficiently pled, Plaintiff's scienter argument fails.  To plead scienter, Plaintiff cannot simply allege that Defendants were aware of a fact.  He must also allege specific facts demonstrating that Defendants were aware that this fact rendered their statement false or misleading.  *See, e.g.*, *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 883 (9th Cir. 2012) (it was not enough to allege that defendants had access to clinical trial results or knew that the results combined data from two countries, plaintiff had to allege that "defendants believed that they made

---

[7] While suspicious stock sales may not be required, (*see* Opp. at 10 n. 9) their absence "undermines any inference of scienter."  (Mot. at 12.)

[8] Plaintiff's Opposition does not cite a single allegation in the Complaint that relates to Steckelberg's scienter.  All claims against her must be dismissed.

false or misleading statements relating to a country effect or that Defendants believed they were misrepresenting the statistical significance of their results").

Here, Plaintiff must plead specific facts showing that Defendants knew (or were reckless in not knowing) that Zoom holding the cryptographic key rendered Zoom's use of the term E2EE false and misleading to investors. *See, e.g.*, *Rok v. Identiv, Inc.*, 2017 WL 35496, at *11 (N.D. Cal. Jan. 4, 2017), *aff'd sub nom*, *Cunningham v. Identiv, Inc.*, 716 F. App'x 663 (9th Cir. 2018) ("[t]he scienter that the SAC is required to allege is an intent to defraud investors"). That is, Plaintiff must allege that not only was Plaintiff's preferred definition of E2EE the only definition (which he does not), but also that Defendants knew it was the only definition. He does not.

At most, Plaintiff merely restates the applicable legal standard by asserting that "the danger of misleading investors was, or should have been, obvious." (Opp. at 11.) But Plaintiff fails to allege a single fact (let alone with particularity) demonstrating that Yuan or Steckelberg were aware *at the time* the statements were made that investors would interpret E2EE to *only* mean that the cryptographic key was not held by Zoom.[9] Nor does Plaintiff explain why Yuan or Steckelberg would have committed this alleged investor fraud through marketing and consumer-facing documents that investors typically would not read or care about.[10] (*See* Mot. at 13.) Allegations about Yuan's general knowledge of Zoom's platform or his experience at a different company over a decade ago are also insufficient. (*See* Opp. at 10.) Even if it were plausible to infer from the Complaint's bare-bones allegations that Yuan knew that Zoom held the cryptographic key, he could still believe the statements were not misleading because there is more than one way to interpret E2EE. Without pleading "some additional allegation of specific information conveyed to [Yuan] and related to the fraud," Yuan's "general awareness of the day-to-day workings of the company's

[9] Plaintiff's cases are distinguishable. In *Schueneman v. Arena Pharmaceuticals, Inc.*, the court held that it should have been obvious that defendants' failure to disclose that rat studies showed a drug was carcinogenic, when representing that *all* animal studies supported the drug's safety, would have misled the market. 840 F.3d 698, 705 (9th Cir. 2016). Similarly, in *In re Twitter, Inc. Securities Litigation*, 2020 WL 4187915 (N.D. Cal. Apr. 17, 2020), the court held that it should have been obvious that defendants' failure to disclose a decline in a significant performance metric, when speaking about *that exact metric*, would have misled investors.
[10] Plaintiff's citation to *Perlman v. Zell* is inapposite, as it related to pleading a claim for *mail fraud* and says nothing of whether an intent to mislead investors under Section 10(b) can be inferred from statements in consumer-facing documents not made (1) by defendants or (2) to investors. *See* Opp. at 10. 938 F. Supp. 1327, 1344 (N.D. Ill. 1996), *aff'd*, 185 F.3d 850 (7th Cir. 1999).

business" fails to establish scienter. *See Curry v. Yelp Inc.*, 875 F.3d 1219, 1227 (9th Cir. 2017).

**2.    Plaintiff Fails to Plead Scienter as to the Privacy Statements**

Plaintiff's Opposition concedes through its silence that no particularized facts demonstrate scienter as to the LinkedIn and Mac server allegations (which he previously claimed rendered statements in Zoom's Privacy Policies false and misleading).  (*See* Opp. at 11.)   And having apparently recognized that his allegations about the Facebook SDK warrant dismissal, Plaintiff impermissibly tries to amend his pleading by making the (incorrect and unsupported) claim in the Opposition that "*Zoom* developed the SDK and presumably knew how it worked."  (*Compare* Opp. at 11 (emphasis added), *with* ¶ 34(b) (alleging Facebook developed the SDK); *see also* ¶¶ 47-49.) This, of course, is not allowed.  *See, e.g.*, *In re Cloudera, Inc.*, 2021 WL 2115303, at *8 (N.D. Cal. May 25, 2021) (rejecting "allegations not contained or referenced in the" Complaint).  Nor does Plaintiff allege that Yuan or Steckelberg were involved with or aware of the Facebook SDK, or understood how it worked.  In short, Plaintiff does not plead scienter as to the privacy statements.

**3.    After-the-Fact Statements and Events Do Not Support Scienter**

Unable to identify any *contemporaneous* facts supporting scienter, Plaintiff relies on statements and events that occurred *months to years later*.  But those also fail to establish that Yuan or Steckelberg intended to (or were deliberately reckless in not realizing that they would) mislead *investors*.  For example, Plaintiff claims that Zoom "recognize[d]" that its use of E2EE differed from "the commonly accepted definition" and used it anyway (Opp. at 10), but he mischaracterizes what was said.  An after-the-fact recognition of present-day confusion, made nearly five months after the last alleged statement around E2EE, does not show what was known or intended at the time the challenged statements were made.  *See Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020), *aff'd*, 848 F. App'x 278 (9th Cir. 2021) ("it is clearly insufficient for plaintiffs to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood").  And Yuan did not, as Plaintiff claims, "apologize[] for misleading the market."  (*See* Opp. at 12.) Rather, the cited blog post made clear that Zoom "never intended to deceive any of [its] customers." (*See* Ex. 16.)  This after-the-fact blog post is not, as Plaintiff contends, an "admission" of an intent

to mislead – at most it demonstrates lack of intent.[11]  (*See* Opp. at 10-12.)  Plaintiff also fails to demonstrate how the removal of the phrase "E2EE" from Zoom's blog posts and Security Guide, or its discontinuation of the Facebook SDK, says anything about Defendants' mental state at the time the challenged statements were made.  (*See* Opp. at 11–12.)  Unsurprisingly, Plaintiff cites no support for his theory that taking after-the-fact steps to ensure consumers were *not misled* actually supports an inference of a prior intent *to mislead*.

Finally, Plaintiff points to Zoom's settlement with the FTC in an attempt to "corroborate" his falsity and scienter theories.  (Opp. at 12-13.)  Under that settlement agreement, however, Zoom did not admit any liability or wrongdoing.[12]  (*See* Opp., Ex. A at 18.)  And Plaintiff's cited cases do not support his conclusory assertion that "quick settlements of ancillary lawsuits alleging fraud or deceptive conduct . . . can be indicative of scienter."  (*See* Opp. at 13.)  Unlike the public FTC settlement with Zoom, in *City of Monroe Employees Retirement System v. Bridgestone Corp.*, defendants perpetuated the fraud by entering into secret settlement agreements to hide the property damage and injuries caused by their defective products and which they allegedly concealed from investors.  399 F.3d 651, 685–86 (6th Cir. 2005).  And the *Tesla* settlement with the U.S. Securities and Exchange Commission (which is tasked with *protecting investors*) is a far cry from Zoom's settlement with the FTC (an entity whose mandate does not encompass securities fraud and thus does not implicate investors).  477 F. Supp. 3d 903, 930 (N.D. Cal. 2020); *see ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (scienter requires "an intent to defraud the plaintiffs rather than some other group").

### 4.   Viewed Holistically, Plaintiff Fails to Plead Scienter

Plaintiff's Complaint lacks any cogent or compelling allegations of scienter, as made clear by Plaintiff's own case law.  In *Reese v. Malone*, for example, after a corroded BP pipeline spilled

---

[11] In *Apple*, on the other hand, Apple's CEO later admitted that Apple saw troubling signs of a Chinese economic slowdown in October 2018, contrary to his statement made in November 2019. *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *6 (N.D. Cal. Nov. 4, 2020).  Similarly, in *In re Allied Nevada Gold Corp. Securities Litigation*, 743 F. App'x 887, 888 (9th Cir. 2018), plaintiff provided particularized allegations regarding "serious operating difficulties" and that the company had sought permission "to investigate and possibly remediate" those issues, all the while defendants expressed confidence in their mining operations and made no mention of the remediation request.
[12] Plaintiff misrepresents that "Zoom did admit to the underlying facts and the deceptive nature of its statements" in the FTC Complaint.  (Opp. at 13.)  The only thing he cites is the Complaint's reference to the April 1, 2020 blog post, which is entirely unrelated to the FTC Complaint.

vast amounts of oil, the BP executive responsible for pipeline operations assured investors that the remaining pipelines were not corroded, which turned out to be false. 747 F.3d 557, 564 (9th Cir. 2014). The Court held that, given the public's and government's focus on BP's pipelines after the first spill, the executive "had a clear motive for omitting information about the detection of high corrosion levels" in the other pipeline. *Id.* at 571. Similarly, in *In re Alphabet*, the complaint alleged with particularity that Google's executives received a memorandum detailing a massive cybersecurity breach. 1 F.4th at 695-96. Yet, rather than to disclose it, they "approved a plan to conceal [its] existence . . . and other security vulnerabilities . . . 'to avoid any additional regulatory scrutiny, including having to testify before Congress.'" *Id.*

There are no such allegations here. Plaintiff identifies no motive (or even an explanation) for why Yuan or Steckelberg would mislead investors. There is no alleged "cover-up" to avoid public or regulatory scrutiny. Far from it, because unlike the defendants in Plaintiff's cited cases, Defendants here acted swiftly to ensure nobody was misled. If anything, this conduct confirms the "opposing inference" that Zoom had anything but an intent to mislead. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007). None of Plaintiff's scienter allegations, whether viewed individually or holistically, give rise to an inference of scienter.

### D.   Plaintiff Fails to Plead Loss Causation

Plaintiff's Opposition appears to concede that multiple "corrective disclosures" are deficient, as he does not even attempt to explain how they support loss causation, including:

- **July 8, 2019 *Medium* article**: does not relate back to any alleged misstatement.
- **April 2, 2020 *New York Times* article**: no stock price decline; does not relate back to any alleged misstatement.
- **April 3, 2020 Citizen Lab article**: no stock price decline.
- **April 4, 2020 *WSJ* interview**: no new information.
- **April 6, 2020 Credit Suisse and Fortune analyst reports**: no stock price decline.
- **Zoom's April 6-8, 2020 "scrubbing" of references to E2EE**: no stock price decline; no new information. (*Compare* Mot. at 14-15, *with* Opp. at 14–15.)

For other alleged "disclosures," Plaintiff fails to identify any newly disclosed information.

**March 30, 2020 *New York Times* article**: Plaintiff declares that the stock drop "was caused by the *facts* underlying the investigation." (Opp. at 14.) But other than his conclusory claim that the article included "reports of undisclosed data sharing and privacy vulnerabilities in Zoom's

platform," he does not identify a single *fact* that was not previously disclosed.  (Opp. at 14.)

**March 31, 2020 *The Intercept* article:**  Plaintiff does not dispute that, only months prior, it had been reported that Zoom held the cryptographic key.  (*See* Mot. at 14–15.)  Instead, he claims that this article "characterize[ed] Defendants' claims as misleading marketing and quote[d] an additional new disclosure – an admission from a Zoom spokesperson."  (Opp. at 14.)  But "a negative characterization of already-public information" does not constitute a corrective disclosure.  *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010).[13]

**April 1, 2020 Zoom blog post:**  Plaintiff offers no support for his claim that an alleged "admission" or "apology" can serve as an additional corrective disclosure where the *facts* admitted to or apologized for were already publicly-available.  (*See* Opp. at 14–15.)

**April 2, 2020 CNBC and *Variety* articles:**  Plaintiff concedes that these did not disclose new information to the market but claims that they "widely report[ed]" existing information to "specifically, the CNBC audience."  (Opp. at 15.)  Tellingly, he cites no support for his claim that reporting previously-disclosed facts to some specific audience can serve as a corrective disclosure.

Finally, Plaintiff continues to rely on Zoom's intraday low stock price to show a purported price decline, when Zoom's closing stock price *increased*.  (*See* Opp. at 15.)  However, Plaintiff's reliance on the intraday price is not supported by the single case he cites[14] and is directly contradicted by the PSLRA, which limits any recoverable loss to one of two calculations based on the "mean trading price," defined as "the daily trading price of that security, determined ***as of the close of the market*** each day." 15 U.S.C. § 78u-4(e)(1)-(3) (emphasis added).  Because there was no *closing* stock price decline following the "disclosures," they cannot support loss causation.

## III.   CONCLUSION

For the foregoing reasons and those set forth in the Motion to Dismiss, the Complaint should be dismissed with prejudice.[15]

---

[13] *See also Bonanno v. Cellular Biomedicine Grp., Inc.*, 2016 WL 4585753, at * 5 (N.D. Cal. Sept. 2, 2016) (report that "opined on already public information . . . does not constitute disclosure of 'the truth'").

[14] In *Purple Mountain Trust v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020), while the court mentioned the intraday low price, unlike here, the *closing* price for the two alleged corrective disclosure days was *lower* than the price predating the corrective disclosures.

[15] Plaintiff's inability to state a Section 10(b) claim requires dismissal of his Section 20(a) claim. *In re Rigel Pharms., Inc. Sec. Litig.*, 2009 WL 5125344, at *6-8 (N.D. Cal. Dec. 21, 2009).

Dated:  August 9, 2021

COOLEY LLP


By:    _____/s/ Patrick E. Gibbs_____
                Patrick E. Gibbs

Attorneys for Defendants
*Zoom Video Communications, Inc., Eric S.*
*Yuan, and Kelly Steckelberg*

253580197

**DEFENDANTS' REPLY ISO MTD**
**3:20-CV-02353-JD**