COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
JESSICA VALENZUELA SANTAMARIA (220934)
(jvs@cooley.com)
TIJANA M. BRIEN (286590)
(tbrien@cooley.com)
JENNA C. BAILEY (319302)
(jbailey@cooley.com)
3175 Hanover Street
Palo Alto, California  94304-1130
Telephone:     +1 650 843 5000
Facsimile:     +1 650 849 7400

CRAIG E. TENBROECK (287848)
(ctenbroeck@cooley.com)
4401 Eastgate Mall
San Diego, California  92121
Telephone:     +1 858 550 6000
Facsimile:     +1 858 550 6420

Attorneys for Defendants
*Zoom Video Communications, Inc. and Eric S. Yuan*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re ZOOM SECURITIES LITIGATION | Case No.: 3:20-cv-02353-JD |
|---|---|
| This Document Relates To:<br>ALL ACTIONS. | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR LEAVE OF COURT TO FILE MOTION FOR PARTIAL RECONSIDERATION OF MOTION TO DISMISS ORDER**<br><br>JUDGE:   Hon. James Donato |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**DEFS.' MOT. FOR LEAVE TO FILE MOT. FOR PARTIAL RECONSIDERATION 3:20-CV-02353-JD**

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION .................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

I.  INTRODUCTION ......................................................................................................... 1

II.  FACTUAL BACKGROUND ........................................................................................ 3

    A.  Zoom's Business and Product Offerings........................................................ 3

    B.  Allegations in the Complaint ......................................................................... 3

    C.  Defendants' Motion to Dismiss the Complaint.............................................. 5

    D.  The Court's Ruling on Defendants' Motion to Dismiss ................................ 5

III.  LEGAL STANDARD ................................................................................................... 6

IV.  ARGUMENT ................................................................................................................ 6

    A.  Plaintiff's Own Allegations Undermine the Order's Conclusion That Plaintiff Adequately Pleaded that Statement No. 1 Was False or Misleading........ 7

    B.  The Order's Scienter Analysis Fails to Consider Key Factual Distinctions That Negate any Inference of Scienter, and Instead Support an Inference of Good Faith............................................................................................................ 9

    C.  Defendants Exercised Reasonable Diligence in Moving for Leave to Seek Reconsideration. ........................................................................................... 11

V.  CONCLUSION .......................................................................................................... 12

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amarel v. Connell*,
102 F.3d 1494 (9th Cir. 1996)...................................................................................... 6

*In re Apple Inc. Sec. Litig.*,
2020 WL 6482014 (N.D. Cal. Nov. 4, 2020)............................................................... 11

*Brown v. Wal-Mart Store, Inc.*,
2018 WL 1993434 (N.D. Cal. Apr. 27, 2018) .............................................................. 6

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009)........................................................................................ 7

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014)........................................................................................ 7

*Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*,
2021 WL 4864421 (N.D. Cal. Oct. 19, 2021).............................................................. 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).................................................................................................... 11

*In re Verifone Holdings, Inc. Sec. Litig.*,
704 F.3d 694 (9th Cir. 2012)....................................................................................... 11

*Wochos v. Tesla*,
985 F.3d 1180 (9th Cir. 2021)...................................................................................... 9

*Woods v. August*,
2018 WL 5841311 (N.D. Cal. Nov. 8, 2018) (J. Orrick) ........................................... 12

*Yourish v. Cal. Amplifier*,
191 F.3d 983 (9th Cir. 1999)....................................................................................... 11

*Zagami v. Cellceutix Corp.*,
2016 WL 3199531 (S.D.N.Y. June 8, 2016)................................................................ 9

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)....................................................................................... 11

**Statutes**

15 U.S.C. § 78u–4(b)(2)............................................................................................... 2

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-ii-

**DEFS.' MOT. FOR LEAVE TO FILE MOT.
FOR PARTIAL RECONSIDERATION
3:20-CV-02353-JD**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Civ. L.R.
    7-9 .................................................................................................................... 1, 6, 11, 12
    7-9(b).......................................................................................................................... 12
    7-9(b)(3) ..................................................................................................................... 2, 6

**Other Authorities**

Federal Rule of Civil Procedure 54(b) ................................................................................ 1, 6

FIRM NAME
ATTORNEYS AT LAW
OFFICE ADDRESS

- iii -

DEFS.' MOT. FOR LEAVE TO FILE MOT.
FOR PARTIAL RECONSIDERATION
3:20-CV-02353-JD

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT, on a date to be determined by this Court, Defendants Zoom Video Communications, Inc. ("Zoom" or the "Company") and Eric S. Yuan (collectively, "Defendants") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 54(b) and Civil Local Rule 7-9, for leave to file a motion for partial reconsideration of this Court's Order granting and denying in part Defendants' Motion to Dismiss (Dkt. No. 86) (the "Order").[1]  This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such other matters as may be presented to the Court at the hearing or otherwise.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants respectfully submit that this case presents an extraordinary instance that warrants reconsideration of an interlocutory order.  With fourteen out of fifteen alleged misstatements dismissed, this entire action survives solely based on a single sentence in the general "Technology and Infrastructure" section of Zoom's Prospectus, stating that Zoom "***offer[s] robust security capabilities, including end-to-end encryption*** . . . ."  ("Statement No. 1").  Order at 1 (emphasis in original).  Plaintiff claims that statement was false because Zoom allegedly did not offer end-to-end encryption in connection with its video-conferencing solution, Zoom Meetings. But Plaintiff's own Complaint refutes that Statement No. 1 was false or misleading, since Plaintiff also alleges that Zoom *did* offer end-to-end encryption (as he defines it) as to another part of its communications platform: Zoom's out-of-meeting messaging solution, Zoom Chat.[2]  *See* Dkt. No. 63 (Complaint ("Compp.")) at ¶ 47(a) ("Defendants knew the meaning of end-to-end encryption; and, in fact*, they used the term accurately in other contexts, including in describing Zoom's end-*

---

[1] In the interest of streamlining the Court's review, should the Court grant leave to file such a motion, Defendants concurrently submit the accompanying memorandum of points and authorities as the basis for their motion for reconsideration.  However, should Plaintiff file an opposition to the motion for reconsideration, Defendants would request the opportunity to file a reply.

[2] Defendants have focused this motion for reconsideration on only two elements of the remaining Section 10(b) claim: falsity and scienter, either of which is dispositive, even though the factual issues raised herein apply with equal force to the Order on loss causation.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

DEFS.' MOT. FOR LEAVE TO FILE MOT.
FOR PARTIAL RECONSIDERATION
3:20-CV-02353-JD

*to-end chat encryption* in the Company's security white papers.").

Statement No. 1 did not say that every single one of Zoom's products or features offered end-to-end encryption, nor did it specifically say that Zoom Meetings offered "end-to-end" encryption (as Plaintiff suggests). Indeed, at one point in the Complaint, Plaintiff characterizes Statement No. 1 not as limited to the Zoom Meetings solution, but rather as speaking to "the robust security capabilities of the Company's offerings" (plural), "including Zoom Meetings." Compl. ¶ 27. Plaintiff's allegation, elsewhere in the Complaint, that Zoom Meetings did not offer end-to-end encryption thus does not render Statement No. 1 false.

The Court's February 16, 2022 Order did not consider certain key material facts (all of which were presented in Defendants' briefing) in evaluating Plaintiff's incongruous allegations: (i) Zoom offers several products in addition to Meetings, (ii) Plaintiff only alleges that Zoom misled investors about end-to-end encryption of Zoom Meetings, and (iii) Plaintiff alleges that Zoom accurately described one of its products (Zoom Chat) as offering "end-to-end" encryption. Reconsideration of the Order is thus proper here. *See* Civ. L.R. 7-9(b)(3)

The Court should revisit the Order's scienter finding for similar reasons. The Order held that Plaintiff adequately pleaded scienter based on two April 1, 2020 blog posts (the "April 2020 Blog Posts" or "Blog Posts"). From these Blog Posts, the Order infers that Mr. Yuan must have always known that Statement No. 1 was false. But the Order overlooks two key issues. First, these Blog Posts were published in response to press criticism in March 2020 of certain Zoom Meetings marketing materials directed at users, after Zoom's user base had vastly expanded and changed in composition due to the COVID-19 pandemic. The Blog Posts are entirely unrelated—and make no reference—to the general statement to investors about end-to-end encryption capabilities made over a year earlier in the 2019 Prospectus. Second, the Blog Posts likewise referred exclusively to Zoom Meetings, about which the press criticism had focused. As such, they do not support an inference that Mr. Yuan intended to mislead investors through Statement No. 1, which referred only to Zoom's "Technology and Infrastructure" —much less the required "strong inference." 15 U.S.C. § 78u–4(b)(2).

For these reasons, Defendants respectfully request that the Court grant leave and reconsider

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

**DEFS.' MOT. FOR LEAVE TO FILE MOT.
FOR PARTIAL RECONSIDERATION
3:20-CV-02353-JD**

its Order as to Statement No. 1.

## II. FACTUAL BACKGROUND

### A. Zoom's Business and Product Offerings

Zoom is a leading digital communications platform that offers a suite of products designed to facilitate "frictionless video, voice, chat and content sharing" among users. Compl. at ¶¶ 4–5. Zoom's products include Zoom Meetings, Zoom Chat, Zoom Conference Room Connector, Zoom Phone, Zoom Video Webinars, Zoom for Developers, and Zoom App Marketplace. *Id.* at ¶ 5 n. 2. Zoom conducted an initial public offering ("IPO") and filed its Registration Statement and Prospectus (the "Prospectus") on April 18, 2019. *Id.* at ¶ 5. Following the IPO, the onset of the COVID-19 pandemic sparked a dramatic expansion in the use of Zoom's products beyond its traditional large business and enterprise customers, to now include millions of individual users who were initially not as familiar with Zoom's products and offerings. *Id.* at ¶ 5, Dkt. 78 (Defendants' Motion to Dismiss ("Defs.' Mot. To Dismiss") at 2 (citing Ex. 18 at 3).

### B. Allegations in the Complaint

Plaintiff Adam Butt ("Plaintiff") filed his Consolidated Class Action Complaint on December 23, 2020. *See generally* Compl. The Complaint challenged fifteen statements regarding Zoom's encryption and privacy practices, nearly all of which were made in Zoom's user-facing documents such as user guides, user-support articles, and blog posts. *Id.* Plaintiff challenged only one statement directed at investors: a snippet from Zoom's Prospectus under the heading "Our Technology and Infrastructure" that stated, "[s]ecurity and disaster recovery. We offer robust security capabilities, including end-to-end encryption, secure login, administrative controls and role-based access controls." *Id.* at ¶ 27. Plaintiff alleged that this statement about Zoom's general "offerings" was false because, according to Plaintiff, "Zoom Meetings were not secured with end-to-end encryption." Compl. at ¶ 9(a); *see also id.* at ¶ 6 ("Zoom falsely asserted, among other things, that communications using Zoom Meetings could be secured with end-to-end encryption.").

The Complaint alleged that the type of encryption offered for Zoom Meetings did not qualify as "end-to-end" under what Plaintiff claims is the "known and accepted" definition of the term. *Id.* at ¶¶ 8 n.4, 9(a), 34(a), 47(a), 72. But the Complaint, at its core, does not allege that any

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

DEFS.' MOT. FOR LEAVE TO FILE MOT.
FOR PARTIAL RECONSIDERATION
3:20-CV-02353-JD

of Zoom's other products were falsely described as offering "end-to-end encryption." In fact, Plaintiff alleged that Zoom "accurately" described the encryption for one of Zoom's other products, Zoom's out-of-meeting messaging platform Zoom Chat;[3] stating in the Complaint that "[d]efendants knew the meaning of end-to-end encryption; and, in fact, they used the term accurately in other contexts, including in describing Zoom's end-to-end chat encryption in the Company's security white papers." *Id.* at ¶ 47(a).

In support of both falsity and scienter, the Complaint relied heavily upon two April 1, 2020 Blog Posts published nearly a year after the Prospectus: one attributed to Zoom's Chief Executive Officer Eric Yuan titled "A Message to Our Users," and another attributed to Zoom's Chief Product Officer, Oded Gal. *Id.* at ¶¶ 62–63; *see also* Defs.' Mot. To Dismiss, Ex. 16. According to Plaintiff, these Blog Posts were published in response to a March 31, 2020 article challenging whether Zoom Meetings' encryption was truly "end-to-end" under the allegedly "known and accepted" certain definitions of the term. *Id.* at ¶¶ 13, 56. The April 2020 Blog Posts explained how Zoom was using the term "end-to-end encryption" for Zoom Meetings. Defs.' Mot. To Dismiss, Ex. 16. These Blog Posts, however, in no way contradicted Zoom's statement in its Prospectus, which referred to end-to-end encryption as part of Zoom's overall "technology and infrastructure" and which Plaintiff did not allege related solely to Zoom Meetings. *See* Compl., ¶ 27 (emphasis added) (alleging that Statement No. 1 referred to "the Company's *offerings, including Zoom Meetings*"). The Blog Posts did not refer to the encryption for Zoom Chat, or any other Zoom products, at all. Nor did they reference the Prospectus or call into question any contents in the Prospectus. In fact, the Complaint concedes that the purported "admissions" contained in the April 2020 Blog Posts were expressly limited to Zoom's use of end-to-end encryption with respect to **Zoom Meetings**. *Id.* at ¶ 13 ("April 1, 2020: Defendants published a blog post admitting that Zoom Meetings were *not* end-to-end encrypted and apologizing for 'incorrectly suggesting that Zoom meetings were capable of using end-to-end encryption.'").

---

[3] For avoidance of doubt, Zoom Chat as discussed herein, does not refer to the feature of Zoom Meetings that allows users to send messages to other users during a video meeting. Rather, Zoom Chat is a separate messaging platform that allows users or groups of users to send messages, share files, and otherwise collaborate outside the context of a Zoom Meeting. *See* Defs.' Mot. To Dismiss, Ex. 4 at 2.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4

DEFS.' MOT. FOR LEAVE TO FILE MOT.
FOR PARTIAL RECONSIDERATION
3:20-CV-02353-JD

## C. Defendants' Motion to Dismiss the Complaint

Defendants moved to dismiss the Complaint on May 20, 2021. Defs.' Mot. To Dismiss. Defendants argued that all fifteen statements should be dismissed for failure to adequately plead falsity, scienter, and loss causation. As to the encryption statements, including Statement No. 1, Defendants argued that the statements were not false or misleading because Plaintiff had failed to allege that his preferred definition of "end-to-end encryption," where the cryptographic key could not be maintained by Zoom's servers, was the only possible definition of the term. Defs.' Mot. To Dismiss at 5–7. Defendants also argued that even if "end-to-end encryption" could only be used in the way that Plaintiff defined it, certain challenged statements – including "Zoom's statements in its Prospectus and blog posts that it offered 'end-to-end encryption' as part of its 'technology and infrastructure'" – would still be true under Plaintiff's own allegations. *Id*. at 7; Dkt. 82 (Defendants' Reply Brief ("Defs.' Reply Brief")) at 2–3. As to scienter, Defendants argued that the April 2020 Blog Posts could not establish scienter because they did not "establish the falsity of an earlier statement." Defs.' Mot. To Dismiss at 11. The Blog Post attributed to Mr. Yuan made clear that he and Zoom lacked any intent to deceive, explicitly stating that "we never intended to deceive any of our customers." *Id*.; Defs.' Reply Brief at 7–8. Defendants also argued that even if Mr. Yuan or Zoom had acknowledged some user confusion around end-to-end encryption, months to years after making such statements, this did not establish that Defendants either intended to mislead shareholders or knew that the challenged statements were false when made. *Id*.

## D. The Court's Ruling on Defendants' Motion to Dismiss

On February 16, 2022, the Court issued its order on Defendants' Motion to Dismiss. *See generally* Order. The Order dismissed fourteen out of fifteen alleged misstatements, including all claims against Zoom's Chief Financial Officer Kelly Steckelberg, and Plaintiff's Section 20(a) claim. *Id.* at 2, 8. The Order allowed Statement No. 1 to survive, holding that falsity, scienter, and loss causation had been adequately alleged. *Id.* at 4. The Order held that Statement No. 1 was adequately alleged to be false and/or misleading because Plaintiff had "identified defendants' express acknowledgment that they had 'incorrectly suggest[ed] that Zoom meetings were capable of using end-to-end encryption,' and they had used the term 'end-to-end encryption' differently

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5

DEFS.' MOT. FOR LEAVE TO FILE MOT.
FOR PARTIAL RECONSIDERATION
3:20-CV-02353-JD

from 'the commonly accepted definition.'" *Id.* at 5.  As to scienter, the Order similarly relied on this alleged "acknowledgment" to hold that, coupled with Mr. Yuan's engineering experience, there was "no factual basis here to believe that Yuan's understanding of the term 'end-to-end encryption' may have changed in a relevant way from the time he made the challenged representation in April 2019" to the time of the "acknowledgement." *Id.* at 6.  Finally, the Order held that Plaintiff's loss causation arguments – specifically his reliance on a March 31, 2020 Intercept article and the April 2020 Blog Posts – "g[a]ve the defendant 'notice of plaintiffs' loss causation theory'" and were therefore sufficient. *Id.* at 7.

## III.   LEGAL STANDARD

The Court possesses inherent authority to reconsider its interlocutory orders at any point before it enters a final judgment.  Fed. R. Civ. P. 54(b); *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996).   A motion for reconsideration may be filed only with leave of court. See Civ. L.R. 7-9(a).   Leave to move for reconsideration is proper, among other grounds, upon a showing of a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civ. L.R. 7-9(b)(3); *see also Brown v. Wal-Mart Store, Inc.*, 2018 WL 1993434, at *2 (N.D. Cal. Apr. 27, 2018).  The movant may petition the court for leave to file a motion for reconsideration anytime "before the entry of judgment," so long as the movant "show[s] reasonable diligence in bringing the motion." *Id.* 7-9(a), (b).  These factors are satisfied here.

## IV.   ARGUMENT

The Order's denial of Defendants' motion to dismiss as to Statement No. 1 should be reconsidered because the Order does not address Plaintiff's inconsistent allegations about end-to-end encryption, which are fatal to his claim.  The sole statement remaining is a quote in the "Technology and Infrastructure" section of Zoom's Prospectus to investors: "***Security and disaster recovery.  We offer robust security capabilities, including end-to-end encryption*** . . . ." Order at 4 (emphasis in original).  As to that statement (like the other dismissed statements), Plaintiff has not pleaded the elements of Section 10(b) and the circumstances constituting the alleged fraud "with

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

DEFS.' MOT. FOR LEAVE TO FILE MOT.
FOR PARTIAL RECONSIDERATION
3:20-CV-02353-JD

particularity," as is required. *See Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

Plaintiff summarily alleged that Defendants made "false and misleading statements and omissions concerning . . . the ability to use AES 256-bit end-to-end encryption, ***available in its main product offering Zoom Meetings***," but he did not allege that such encryption was lacking in Zoom's other products (and, in fact, alleged just the opposite). Order at 1 (quoting Compl. ¶ 3) (emphasis added). The Order did not analyze, however, Plaintiff's allegations about the encryption capabilities of Zoom's Chat product, how Plaintiff failed to plead with particularity that the challenged statement in the Prospectus was only about Zoom Meetings' encryption, or how Plaintiffs' allegations about Zoom Chat rendered the challenged statement about Zoom's general encryption capabilities not false or misleading. As such, the Order failed to consider material facts and justifies reconsideration. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009).

### A.    Plaintiff's Own Allegations Undermine the Order's Conclusion That Plaintiff Adequately Pleaded that Statement No. 1 Was False or Misleading

The Court should reconsider its ruling that Plaintiff adequately pleaded falsity as to Statement No. 1 because *Plaintiff's own allegations* are inconsistent with any plausible inference of falsity.[4] The Order held that "Plaintiff has satisfied the falsity element for Statement No. 1 by alleging that defendants represented that Zoom offered 'end-to-end encryption' when in fact it did not." Order at 4. Statement No. 1, however, was a snippet from Zoom's general "Technology and Infrastructure" section. As the Complaint explained, Zoom offered a "suite" of products in addition to Zoom Meetings. Compl. at ¶ 5. But Plaintiff did not plead that Statement No. 1 addressed only the encryption of Zoom Meetings. *See* Compl. ¶ 27 (alleging that Zoom "falsely touted end-to-end encryption as a key aspect of the robust security capabilities of the Company's offerings, including Zoom Meetings"). Even if Plaintiff adequately alleged that Zoom Meetings were not end-to-end

---

[4] To be clear, Defendants do not seek reconsideration based on the Order's rejection of the argument that the term "end-to-end encryption" is subject to differing definitions. This motion is based on Plaintiff failing to allege with particularity that Statement No. 1 was only about Zoom Meetings, and Plaintiff's allegation that some of Zoom's products were end-to-end encrypted *even under Plaintiff's definition*.

Cooley LLP
Attorneys at Law
Palo Alto

7

Defs.' Mot. for Leave to File Mot.
for Partial Reconsideration
3:20-cv-02353-JD

encrypted in the way he defined the term, this was insufficient to render Statement No. 1 false, because Plaintiff would have to allege with particularity that Zoom did not offer end-to-end encryption on *any* of its products at the time the statement was made.

Plaintiff does not do so.  Instead, Plaintiff alleges only that "***Zoom Meetings*** were not in fact secured with end-to-end encryption."  *Id*. at ¶ 47(a) (emphasis altered from original); *id*. ¶ 6 ("…Zoom falsely asserted, among other things, that communications using ***Zoom Meetings*** could be secured with end-to-end encryption") (emphasis added); *id*. ¶ 9(a) (alleging that Defendants failed to disclose the fact that "***Zoom Meetings*** were not secured with end-to-end encryption") (emphasis added); *id*. ¶34(a) ("***Zoom Meetings*** were not in fact secured with end-to-end encryption.") (emphasis added); *id*. ¶47(a) (same).  And in fact, Plaintiff alleged that "Defendants . . . used the term [end-to-end encryption] ***accurately*** in other contexts, ***including in describing Zoom's end-to-end chat encryption in the Company's security white papers***." *Id*. at ¶ 47(a) (emphasis added).  In other words, the Complaint alleges that Zoom offered end-to-end encryption in at least one of its products—an incongruity that Defendants pointed out in their briefing on the motion to dismiss.  *See, e.g*., Defs.' Mot. To Dismiss at 7 n.5 ("Plaintiff does not dispute that some of Zoom's features (such as chat) offered E2E in the way Plaintiff defines it. . . . As a result, Zoom's statements in its Prospectus . . . that it offered 'end-to-end encryption' as part of its 'technology and infrastructure' are true even accepting Plaintiff's use of that term"); Defs.' Reply Brief at 2–3 ("Plaintiff admits that some of Zoom's features offered E2EE in the way he defines it").

Having alleged that Zoom *did* offer end-to-end encryption on its platform, the Complaint is devoid of any allegation (let alone particularized allegations) showing how Zoom's statement about its general end-to-end encryption capabilities was false.  The Complaint alleges only in conclusory fashion that Statement No. 1 "touted end-to-end encryption as a key aspect of the robust security capabilities of the Company's ***offerings***, ***including Zoom Meetings***."  Compl. ¶ 27.  But this is inconsistent with the separate allegation that Zoom Chat was accurately described as end-to-end encrypted. And Statement No. 1 itself does not refer to Zoom Meetings at all; nor does Plaintiff allege that it could be read to *only* refer to Zoom Meetings.

As Defendants' motion to dismiss briefing noted, Statement No. 1 did not suggest that every single one of Zoom's products and services had end-to-end encryption, and thus did not create a misleading impression as to the encryption of Zoom Meetings specifically. *See* Defs.' Reply Brief at 2–3 ("[T]he sole statement challenged in Zoom's Prospectus, that Zoom offered 'end-to-end encryption' as part of its general 'technology and infrastructure' would not be false, because it does not suggest that all Zoom products offered E2EE in all circumstances."). To use a basic analogy, if a car maker "touted" to investors that it offered a range of vehicle features, including four-wheel drive, that statement would be false only if *none* of its vehicles had four-wheel drive. Here, Plaintiff has alleged that at least one of the car maker's vehicles was equipped with four-wheel drive, and by extension, the car maker's claim would not be false—nor would it create a misleading impression that all of the car maker's vehicles, for example a sedan, would have four-wheel drive. *See Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at *10 (S.D.N.Y. June 8, 2016) (drug manufacturer's statement that a drug had "Gram negative coverage" was not false, despite a later disclosure that the drug covered only "some, but not all, Gram-negative bacteria" because that disclosure did "not preclude [the drug] having some degree of Gram-negative coverage"); *Wochos v. Tesla*, 985 F.3d 1180, 1196 (9th Cir. 2021) (agreeing with district court that Tesla's statement that it was making "great progress" on battery production could "be an actionable false statement only if . . . Tesla had been 'making no progress at all'"). Plaintiff's imprecise allegations regarding Zoom's "offerings"—and inconsistent allegations about Zoom's statements regarding end-to-end encryption—do not meet the PSLRA's heightened pleading standard to plead falsity with particularity. Accordingly, Defendants respectfully request the Court reconsider its Order.

**B.    The Order's Scienter Analysis Fails to Consider Key Factual Distinctions That Negate any Inference of Scienter, and Instead Support an Inference of Good Faith**

The Order's holding that Plaintiff adequately pleaded scienter is similarly flawed. In finding that the Complaint adequately pleaded scienter as to Mr. Yuan, the Order relied on the two April 2020 Blog Posts, coupled with Mr. Yuan's background in engineering, to conclude that Mr. Yuan would have known that Statement No. 1 was false when he made it. Again, this holding rests on a failure to recognize a key inconsistency in Plaintiff's allegations.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9

DEFS.' MOT. FOR LEAVE TO FILE MOT.
FOR PARTIAL RECONSIDERATION
3:20-CV-02353-JD

As an initial matter, the Complaint does not contain any allegations linking the April 2020 Blog Posts to the alleged misstatement. Plaintiff alleges that the April 2020 Blog Posts were published in response to a March 31, 2020 article claiming that Zoom's marketing materials had used the term "end-to-end" encryption inaccurately with respect to Zoom Meetings. Compl. at ¶ 56. The March 31, 2020 article said nothing about Zoom's statement to investors in the prospectus a year earlier. *Id.* And Zoom's response in the April 2020 Blog Posts similarly made clear that they were only clarifying those statements made to users about the Zoom Meetings platform – none of which remain in this case. *See, e.g.*, Defs.' Mot. To Dismiss, Ex. 17. In fact, none of the purported "corrective disclosures," including the April 2020 Blog Posts, said anything about statements in Zoom's Prospectus at all, much less the general statement about encryption as part of Zoom's "Technology and Infrastructure." There is no plausible interpretation of the facts set forth above in which the April 2020 Blog Posts could be viewed as a correction of Statement No. 1, much less an admission that Statement No. 1 was knowingly false when made.

As with the falsity analysis, the Order's scienter analysis does not distinguish allegations about the encryption of Zoom Meetings from statements about encryption generally. All of the allegations the Order cites in concluding that the Complaint adequately alleged scienter referred *exclusively* to the concerns raised regarding Zoom ***Meetings***. *See* Compl. at ¶ 13 ("Defendants published a blog post admitting that Zoom **Meetings** were ***not*** end-to-end encrypted and apologizing for 'incorrectly suggesting that Zoom meetings were capable of using end-to-end encryption.'") (emphasis altered from original); *see also* Defs.' Mot. To Dismiss, Ex. 16 (blog post apologizing for confusion among users about whether "Zoom ***meetings*** were capable of using end-to-end encryption") (emphasis added).[5] But as set forth above, Plaintiffs fail to allege that Statement No. 1 was limited or specific to Zoom Meetings. On the contrary, the Complaint admits on its face that Statement No. 1 was about the Company's "offerings" (not any product in particular). This alone precludes a finding of scienter, because the alleged "admission" that Plaintiff and the Order rely upon does not "***suggest facts that render the challenged statement[] false.***"

---

[5] Plaintiff also admitted this limitation in his opposition to Defendants' motion to dismiss, arguing that "Defendants' apology for suggesting that Zoom **Meetings** were end-to-end encryption further confirms scienter." Dkt. No. 80 (Plaintiff's Opposition ("Pl.'s Opp.") at 10 (emphasis added).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10

DEFS.' MOT. FOR LEAVE TO FILE MOT.
FOR PARTIAL RECONSIDERATION
3:20-CV-02353-JD

Pl.'s Opp. at 12 n.10, *citing In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *6 n.1 (N.D. Cal. Nov. 4, 2020) (emphasis added); *see also* Defs.' Mot. To Dismiss at 11 (citing *Yourish v. Cal. Amplifier*, 191 F.3d 983, 996-997 (9th Cir. 1999).

Moreover, to the extent that Statement No. 1 is ambiguous and could be read to refer to Zoom Meetings, this hardly supports a "strong inference" that Defendants intended to deceive investors about Statement No. 1. A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft,* 2021 WL 4864421, at *5 (N.D. Cal. Oct. 19, 2021) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). But here, where the "plausible opposing inference[]" is that Defendants were speaking to a general encryption capability and that capability was present in at least one of Zoom's products, Plaintiffs have failed to allege an inference of scienter that is at least as compelling as the innocent one. *See Tellabs*, 551 U.S. at 323.

Viewed in the correct context, none of the facts relied upon in the Order (or any other fact alleged in the Complaint) support a strong inference that when Statement No. 1 was made, Mr. Yuan acted "either intentionally or with deliberate recklessness." *In re Verifone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)). Accordingly, the Court should reconsider its Order on scienter as to Statement No. 1.

### C.   Defendants Exercised Reasonable Diligence in Moving for Leave to Seek Reconsideration.

Defendants have acted with the "reasonable diligence" required by Local Rule 7-9(a) in bringing this motion. The Order was issued on February 16, 2022 and gave Plaintiff until March 9, 2022 to amend his complaint. Order at 8. Because any amendment would have rendered Defendants' motion moot, and so as not to waste the Court's and Plaintiff's time and resources on a moot motion, Defendants held off on seeking reconsideration until they learned whether or not Plaintiff would amend. When Plaintiff did not amend, Defendants filed the motion three business days later. Courts in the District regularly find that seeking leave to file a motion for

Cooley LLP
Attorneys at Law
Palo Alto

11

Defs.' Mot. for Leave to File Mot.
for Partial Reconsideration
3:20-cv-02353-JD

reconsideration within 4 weeks satisfies Local Rule 7-9(b)'s reasonable diligence requirement. *See Woods v. August*, 2018 WL 5841311, at *1 (N.D. Cal. Nov. 8, 2018) (J. Orrick) (granting request for leave to move for reconsideration on the basis of "manifest failure" filed less than four weeks after the court's order).

## V.   CONCLUSION

For the reasons stated above, the Court should grant Defendants' motion for leave, reconsider its Order, and dismiss Lead Plaintiff's remaining Section 10(b)/Rule 10b-5 claim with respect to Statement No. 1.

Dated: March 14, 2022                              COOLEY LLP

By: _____/s/ Patrick E. Gibbs_____
                    Patrick E. Gibbs

Attorneys for Defendants
*Zoom Video Communications, Inc. and Eric S. Yuan*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12                          DEFS.' MOT. FOR LEAVE TO FILE MOT.
                            FOR PARTIAL RECONSIDERATION
                            3:20-CV-02353-JD