ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
       – and –
ELLEN GUSIKOFF STEWART (144892)
PATTON L. JOHNSON (320631)
HEATHER G. GEIGER (322937)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
pjohnson@rgrdlaw.com
hgeiger@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ZOOM SECURITIES LITIGATION | Case No. 3:20-cv-02353-JD |
| This Document Relates To: | LEAD PLAINTIFF'S NOTICE OF RENEWED UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | |
| | DATE:       None Set |
| | TIME:        None Set |
| | DEPT:       Honorable James Donato |

4907-5141-9176.v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   OVERVIEW OF THE LITIGATION ...................................................................2

III.  THE SETTLEMENT TERMS................................................................................3

IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............5

      A.    Lead Plaintiff and His Counsel Have Adequately Represented the Class..............6

      B.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length
            Negotiations by Informed, Experienced Counsel Who Were Aware of the
            Risks of the Action..............................................................................................7

      C.    The Relief Provided to the Class Is Adequate .....................................................8

            1.    The Substantial Benefits for the Class, Weighed Against the Costs,
                  Risks, and Delay of Further Litigation, Support Preliminary
                  Approval ....................................................................................................8

            2.    The Proposed Method for Distributing Relief Is Effective.......................10

            3.    Attorneys' Fees .......................................................................................10

            4.    Other Agreements Made In Connection With the Global
                  Resolution of the Case ............................................................................11

            5.    The Proposed Plan of Allocation Is Designed to Treat Class
                  Members Equitably..................................................................................12

      D.    The Remaining Ninth Circuit Factors Are Satisfied.............................................13

            1.    Risk of Maintaining Class Action Status Through Trial .........................13

            2.    Experience and Views of Counsel ...........................................................13

V.    CERTIFICATION OF THE CLASS FOR PURPOSES OF THE SETTLEMENT
      IS APPROPRIATE ................................................................................................14

      A.    The Requirements of Rule 23(a) Are Met .........................................................14

            1.    Numerosity Is Satisfied...........................................................................14

            2.    Commonality Is Satisfied........................................................................15

            3.    Typicality Is Satisfied .............................................................................16

            4.    Lead Plaintiff and Lead Counsel Are Adequate ......................................17

      B.    The Requirements of Rule 23(b)(3) Are Also Met..............................................17

1

2                                                                                    **Page**

3   VI.    THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE
         CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE
4        PSLRA, AND DUE PROCESS ..............................................................................19

5   VII.   NORTHERN DISTRICT OF CALIFORNIA PROCEDURAL GUIDANCE .................20

6   VIII.  CONCLUSION................................................................................................................20

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)......................................................................................14, 18

5

6

*Ciuffitelli v. Deloitte & Touche LLP,*
    2019 WL 1441634 (D. Or. Mar. 19, 2019)...............................................................13

7

*Fleming v. Impax Lab'ys.,*
    2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ....................................15, 16, 17, 18

8

9

*Fleming v. Impax Lab'ys Inc.,*
    2022 WL 2789496 (N.D. Cal. July 15, 2022)....................................................11, 13

10

*Ford v. CEC Ent, Inc.,*
    2015 WL 11439032 (S.D. Cal. July 7, 2015) ..........................................................18

11

12

*Franklin v. Kaypro Corp.,*
    884 F.2d 1222 (9th Cir. 1989) .................................................................................5

13

14

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ..............................................................6, 8, 11, 17

15

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ................................................................................16

16

17

*Hatamian v. Advanced Micro Devices, Inc.,*
    2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)................................................15, 18

18

19

*Hayes v. Magnachip Semiconductor Corp.,*
    2016 WL 7406418 (N.D. Cal. Dec. 22, 2016) ........................................................15

20

*Hefler v. Wells Fargo & Co.,*
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ..........................................................4

21

22

*Hefler v. Wells Fargo & Co.,*
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
    *aff'd sub nom. Hefler v. Pekoc,*
    802 F. App'x 285 (9th Cir. 2020) ............................................................. *passim*

23

24

*Hesse v. Sprint Corp.,*
    598 F.3d 581 (9th Cir. 2010) .................................................................................5

25

26

*In re Atmel Corp. Deriv. Litig.,*
    2010 WL 9525643 (N.D. Cal. Mar. 31, 2010).........................................................7

27

28

1

2                                                                                              **Page**

3   *In re Celera Corp. Sec. Litig.*,
        2015 WL 1482303 (N.D. Cal. Mar. 31, 2015)..................................................................8
4
    *In re Cooper Cos. Inc. Sec. Litig.*,
5       254 F.R.D. 628 (C.D. Cal. 2009) ...................................................................................18

6   *In re Hyundai & Kia Fuel Econ. Litig.*,
        926 F.3d 539 (9th Cir. 2019) .................................................................................5, 18
7
    *In re Intuitive Surgical Sec. Litig.*,
8       2016 WL 7425926 (N.D. Cal. Dec. 22, 2016).............................................................16

9   *In re Juniper Networks, Inc. Sec. Litig.*,
        264 F.R.D. 584 (N.D. Cal. 2009)..................................................................................17
10
    *In re Lendingclub Sec. Litig.*,
11      282 F. Supp. 3d 1171 (N.D. Cal. 2017) ........................................................................16

12  *In re LinkedIn User Priv. Litig.*,
        309 F.R.D. 573 (N.D. Cal. 2015)..................................................................................18
13
    *In re MGM Mirage Sec. Litig.*,
14      708 F. App'x 894 (9th Cir. 2017) ..................................................................................19

15  *In re Omnivision Techs., Inc.*,
        559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................................14
16
    *In re Online DVD-Rental Antitrust Litig.*,
17      779 F.3d 934 (9th Cir. 2015) ........................................................................................12

18  *In re Resistors Antitrust Litig.*,
        2020 WL 2791922 (N.D. Cal. Mar. 24, 2020)..............................................................13
19
    *In re VeriSign, Inc. Sec. Litig.*,
20      2005 WL 7877645 (N.D. Cal. Jan. 13, 2005)...........................................................15, 18

21  *In re Vocera Commc'ns, Inc. Sec. Litig.*,
        2016 WL 8201593 (N.D. Cal. July 29, 2016)...............................................................11
22
    *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
23      2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) .........................................................5, 7, 13

24  *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
        2019 WL 2077847 (N.D. Cal. May 10, 2019)...........................................................6, 7, 9
25
    *In re Zynga Inc. Sec. Litig.*,
26      2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)...............................................................12

27

28

**Page**

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017)...................................................................9

*Luna v. Marvell Tech. Grp.*,
   2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ..........................................................9

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*,
   2017 WL 2257130 (E.D. Cal. May 23, 2017) ........................................................15

*Millan v. Cascade Water Servs., Inc.*,
   310 F.R.D. 593 (E.D. Cal. 2015) ...........................................................................15

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)................................................................................................20

*Norris v. Mazzola*,
   2017 WL 6493091 (N.D. Cal. Dec. 19, 2017)........................................................13

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ............................................................................15, 16

*Redwen v. Sino Clean Energy, Inc.*,
   2013 WL 12129279 (C.D. Cal. Mar. 13, 2013)........................................................8

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................5, 9, 19

*Salazar v. Midwest Servicing Grp., Inc.*,
   2018 WL 3031503 (C.D. Cal. June 4, 2018) ...........................................................8

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
   335 F.R.D. 276 (N.D. Cal. 2020)......................................................................15, 17

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ...........................................................................12

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................................11

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993),
   *aff'd* 881 F.3d 1111 (9th Cir. 2018).........................................................................9

*Van Brockhurst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ...................................................................................5

1

2                                                                                              **Page**

3    *Vataj v. Johnson,*
          2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ............................................................12, 13, 18
4

5    *Young v. LG Chem Ltd.,*
          2019 WL 4187396 (9th Cir. Sept. 4, 2019) ..........................................................................5

6    **STATUTES, RULES, AND REGULATIONS**

7    15 U.S.C.
          §78u-4(a)(4) ...................................................................................................4, 11, 15
8         §78j(b) ...............................................................................................................2, 18
          §78t(a) .....................................................................................................................2
9

10   Federal Rules of Civil Procedure
          Rule 23 .......................................................................................................................19
11        Rule 23(a) ...................................................................................................................14
          Rule 23(a)(1) ...............................................................................................................14
12        Rule 23(a)(2) ...............................................................................................................15
          Rule 23(a)(3) ...............................................................................................................16
13        Rule 23(a)(4) ...............................................................................................................17
          Rule 23(b)(3) ..............................................................................................14, 17, 18, 19
14        Rule 23(c)(2)(B) ..........................................................................................................19
          Rule 23(e) .................................................................................................................2, 5
15        Rule 23(e)(1) ............................................................................................................5, 19
          Rule 23(e)(1)(B) ..........................................................................................................14
16        Rule 23(e)(2) ........................................................................................................5, 6, 14
          Rule 23(e)(2)(A) ............................................................................................................6
17        Rule 23(e)(2)(B) ............................................................................................................7
          Rule 23(e)(2)(C)(i) .........................................................................................................8
18        Rule 23(e)(2)(C)(ii) ......................................................................................................10
          Rule 23(e)(2)(C)(iii) .....................................................................................................10
19        Rule 23(e)(2)(D) ..........................................................................................................12
          Rule 23(g) ...................................................................................................................19
20        Rule 23(h)(1) ...............................................................................................................20

21

22   **SECONDARY AUTHORITIES**

23   *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review,*
          Edward Flores and Svetlana Starykh (NERA Jan. 23, 2024) ....................................................9
24

25

26

27

28

## NOTICE OF MOTION AND MOTION

### TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that lead plaintiff Adam M. Butt ("Lead Plaintiff") will and hereby does move for an Order pursuant to Federal Rule of Civil Procedure ("Rule") 23: (1) certifying the proposed class ("Class") for purposes of effectuating the proposed settlement ("Settlement") of the above-captioned action ("Action"); (2) granting preliminary approval of the Settlement on the terms set forth in the Stipulation[1]; (3) authorizing the retention of Gilardi & Co. LLC ("Gilardi") as the administrator for the Settlement ("Claims Administrator"); (4) approving the form and manner of notice of the Settlement to the Class; and (5) setting a hearing date for final approval of the Settlement ("Final Approval Hearing"), as well as the schedule for various deadlines in connection with the Settlement.

This unopposed motion is supported by the below memorandum of points and authorities and Appendix A thereto, the Williams Declaration and exhibits attached thereto, the Stipulation and exhibits thereto, the Declaration of Peter Crudo Regarding Notice and Administration ("Crudo Declaration" or "Crudo Decl."), and the Declaration of Carla Peak Regarding Settlement Notice Plan ("Peak Declaration" or "Peak Decl.") filed herewith.

A proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") with annexed exhibits is also submitted herewith.

---

[1]    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed in the Stipulation of Settlement dated July 17, 2023 ("Stipulation"), a true and correct copy of which is attached as Exhibit 1 to the Declaration of Shawn A. Williams in Support of Lead Plaintiff's Renewed Unopposed Motion for Preliminary Approval of Proposed Settlement (the "Williams Decl."), submitted herewith.  Emphasis is added and citations are omitted throughout unless otherwise noted.

1

**STATEMENT OF ISSUES TO BE DECIDED**

2      1.      Whether the Court will likely be able to certify the Class for purposes of effectuating

3 the Settlement.

4      2.      Whether the Court will likely be able to approve the proposed $150 million

5 Settlement of the Action under Rule 23(e)(2) so that notice of the Settlement's terms and conditions

6 may be provided to members of the Class ("Class Members").

7

8      3.      Whether the proposed form and content of the Notice of Pendency and Proposed

9 Settlement of Class Action ("Notice"), Proof of Claim and Release form ("Proof of Claim" or

10 "Claim Form"), and Summary Notice of Proposed Settlement of Class Action ("Summary Notice"),

11 and the plan for disseminating notice to Class Members, should be approved.

12      4.      Whether the Court should schedule a Final Approval Hearing in connection with the

13 proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's application for an award

14 of attorneys' fees and expenses and an award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3

The Settling Parties have reached a proposed Settlement of this securities class action in

4

exchange for a payment of $150 million for the Class's benefit. Following a June 13, 2024 hearing

5

on Lead Plaintiff's motion, at which the Court directed Lead Plaintiff to lodge a new proposed order

6

and plan for providing notice, Lead Plaintiff now renews his request that the Court preliminarily

7

approve the proposed Settlement.[2]

8

As set forth below, the Settlement is the product of good-faith, arm's-length negotiations

9

between experienced counsel, under the supervision of former U.S. District Judge Layn R. Phillips

10

(Ret.) of Phillips ADR ("Judge Phillips"), a highly respected mediator with extensive experience in

11

complex securities litigation. Lead Plaintiff reached the Settlement only after he had a thorough

12

appreciation for the strengths and weaknesses of the case. As detailed herein, settlement was not

13

reached until Lead Counsel had: (i) drafted and filed a detailed Consolidated Class Action Complaint

14

for Violation of the Federal Securities Laws (ECF 63) ("Complaint"); (ii) partially successfully

15

opposed Defendants' motion to dismiss the Complaint; (iii) successfully opposed Defendants'

16

motion for partial reconsideration of the motion to dismiss order; (iv) obtained and reviewed

17

document discovery from Defendants and third parties; (v) prepared a detailed mediation statement;

18

and (vi) participated in a mediation process with Judge Phillips which extended over a number of

19

months, and resulted in acceptance by both parties of a mediator's proposal. As set forth below, the

20

Settlement is a tremendous result that falls well within the range of possible approval.

21

Lead Plaintiff also requests certification of a class of Persons who purchased or otherwise

22

acquired Zoom common stock or call options on Zoom common stock or sold put options on Zoom

23

common stock between April 18, 2019 and April 6, 2020, inclusive ("Class Period") for settlement

24

purposes and approval of the form and substance of the Notice, Proof of Claim, and Summary

25

Notice, appended as Exhibits A-1, A-2, and A-3, respectively, to the Stipulation. Lead Plaintiff also

26
27
28

---

[2]    Lead Plaintiff was directed to lodge the revised Preliminary Approval Order in the proposed order box rather than refiling his motion in the ordinary course. ECF 122 (15:15-15:23) ("do a short cover thing about notice and . . . just lodge the order there"). As directed, Lead Plaintiff lodged that proposed order and revised notice plan on July 18, 2024.

1   seeks the Court's approval of Gilardi as Claims Administrator and the means and methods for

2   disseminating notice of the Settlement, and a finding that such notice comports with due process, the

3   Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 (the

4   "PSLRA"), 15 U.S.C. §78u-4, *et seq*.

5        The Settlement meets the standards for preliminary approval because it is likely this Court

6   will be able to find that the Settlement is fair, reasonable, and adequate under Rule 23(e).  By

7   granting preliminary approval, Lead Plaintiff will be able to notify the Class and solicit claims,

8   requests for exclusion, and objections, at which point the Court will be able to consider whether to

9   finally approve the Settlement.

10  ## II.       OVERVIEW OF THE LITIGATION

11       The initial complaint was filed on April 7, 2020.  ECF 1.  On November 4, 2020, the Court

12  appointed Adam M. Butt as lead plaintiff and Robbins Geller Rudman & Dowd LLP ("Robbins

13  Geller" or "Lead Counsel") as lead counsel.  ECF 56.  Lead Plaintiff filed the Complaint on

14  December 23, 2020, asserting claims under §§10(b) and 20(a) of the Securities Exchange Act of

15  1934 ("Exchange Act") against all Defendants and former defendant Kelly Steckelberg.  ECF 63.

16       On May 20, 2021, Defendants and Ms. Steckelberg moved to dismiss the Complaint.  ECF

17  78.  Lead Plaintiff opposed Defendants' motion on July 9, 2021 (ECF 80), and Defendants and Ms.

18  Steckelberg filed their reply on August 9, 2021 (ECF 82).  On February 16, 2022, the Court denied

19  in part and granted in part the motion.  ECF 86 ("MTD Order").  Among other things, the MTD

20  Order dismissed Ms. Steckelberg from the Action.  On March 14, 2022, Defendants moved for

21  partial reconsideration of the MTD Order (ECF 90), and Lead Plaintiff opposed the motion.  ECF 92.

22  The Court denied the motion on March 8, 2023.  ECF 95.

23       On May 23, 2022, the Parties, their counsel, and representatives of Defendants' D&O

24  insurance carriers attended an all-day mediation with Judge Phillips.  Prior to the mediation, the

25  Parties submitted mediation statements.  While that mediation took place with good faith

26  negotiations, the Action remained unresolved at that time.  The Parties continued their mediation

27  efforts with the assistance of Judge Phillips while simultaneously litigating the Action.  On March 8,

28  2023, the Court denied the motion for reconsideration of the MTD Order.  Thereafter, the Parties

1    engaged in document discovery, with documents produced by Defendants and third parties. In total,

2    Lead Plaintiff obtained and reviewed over 135,000 pages of documents.

3        Ultimately, in June 2023, following a mediator's proposal from Judge Phillips, the Parties

4    reached an agreement in principle to settle the Action for $150 million.

5        In sum, the Settlement was reached only after extensive motion practice, document

6    discovery, and protracted settlement negotiations. Accordingly, Lead Plaintiff and Lead Counsel

7    were well informed of the strengths and weaknesses of Lead Plaintiff's claims, as well as the risks of

8    continued litigation, and had a strong foundation for negotiating the Settlement.

9    **III.    THE SETTLEMENT TERMS**

10        This Settlement requires Defendants to pay, or cause to be paid, $150 million into the Escrow

11    Account, which amount, plus interest, comprises the Settlement Fund. Stipulation, ¶2.1. Notice to

12    the Class and the cost of settlement administration ("Notice and Administration Expenses") will be

13    funded by the Settlement Fund. *Id.*, ¶2.8. Those funds were deposited into an interest-bearing

14    escrow account for the benefit of the Class on July 27, 2023. Lead Plaintiff proposes a nationally

15    recognized class action settlement administrator to be retained subject to the Court's approval.

16    Gilardi was chosen following a competitive bidding process and careful review of proposals from

17    several reputable settlement administrators. After reviewing the bids from each administrator, Lead

18    Counsel concluded that Gilardi, because of its experience, the merits of the bid, and the quality of its

19    work in prior engagements for Lead Counsel, is best suited to execute the claims administration in

20    this Action. Lead Counsel respectfully requests that the Court approve its selection. Based on the

21    estimates provided by the proposed Claims Administrator, and assuming that no unexpected or

22    extraordinary issues arise, Gilardi expects notice and claims administration costs to be approximately

23    $900,000 through the initial distribution. *See, e.g.*, Crudo Decl., ¶28. The proposed notice plan and

24    plan for claims processing is discussed below in §§IV.C.5 and VI and in the Crudo Declaration.

25        The Notice and Summary Notice provide that Lead Counsel will move for final approval of

26    the Settlement and: (a) an award of attorneys' fees in the amount of no more than 18.75% of the

27    Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Action

28    not in excess of $400,000.00; (c) interest on such fees and expenses at the same rate and for the same

1  period as is earned by the Settlement Fund; and (d) an award to Lead Plaintiff pursuant to 15 U.S.C.

2  §78u-4(a)(4) for his time and expenses incurred in representing the Class.  The Notice explains that

3  such fees and expenses shall be paid from the Settlement Fund.

4       Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved

5  attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount, the

6  Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation (set

7  forth in the Notice) to Authorized Claimants who are entitled to a distribution of at least $10.00.

8  Any amount remaining following the distribution shall be redistributed in an economically feasible

9  manner.  The Plan of Allocation treats all Class Members equitably based on the type of Zoom

10 securities (common stock and call and put options) transacted and the timing and amount of such

11 purchases, acquisitions, and any sales.

12      The Settling Parties have entered into a Supplemental Agreement, which provides that if

13 prior to the Final Approval Hearing, requests for exclusion from the Class by Persons who would

14 otherwise be Class Members, but who timely and validly request exclusion from the Class, exceeds a

15 certain threshold, Defendants shall have the option (but not the obligation) to terminate the

16 Settlement.  Stipulation, ¶7.3.  This type of agreement is standard in securities class actions and has

17 no negative impact on the fairness of the Settlement.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018

18 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by

19 the number of class members who opt out of the Settlement does not by itself render the Settlement

20 unfair.").

21      Next, in exchange for the benefits provided under the Stipulation, Class Members will release

22 "any and all claims, rights, liabilities, and causes of action of every nature and description, including

23 both known claims and Unknown Claims . . . that both (i) arise out of, are based upon, or are related

24 in any way to the allegations, acts, facts, matters, occurrences, disclosures, filings, statements,

25 representations, or omissions that were or could have been alleged by Lead Plaintiff and all other

26 Class Members in the Action . . . , and (ii) concern, arise out of, are based upon, or relate to the

27 purchase or other acquisition of Zoom securities during the Class Period."  Stipulation, ¶1.25.  This

28 release "is limited to claims that relate to both the complaint's factual allegations and to the purchase

1    or ownership of" Zoom securities and therefore "ensure[s] that 'the released claim[s] [are] based on

2    the identical factual predicate as that underlying the claims in the settled class action.'" *In re*

3    *Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2018 WL 6198311, at \*5

4    (N.D. Cal. Nov. 28, 2018) ("*Volkswagen I*") (alterations in original) (quoting *Hesse v. Sprint Corp.*,

5    598 F.3d 581, 590 (9th Cir. 2010)).

6         Lastly, under the terms of the Stipulation, there is no clear sailing agreement, and Defendants

7    have no right to the return of the Settlement Fund for any reason upon the occurrence of the

8    Effective Date.  Stipulation, ¶5.9.  *See also* N.D. Cal. Guid. 1(g) (requiring the disclosure of any

9    reversions).

10  **IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

11

12         Courts recognize that public policy strongly favors settlements to resolve disputes,

13  "'particularly where complex class action litigation is concerned.'" *In re Hyundai & Kia Fuel Econ.*

14  *Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *Young v. LG Chem Ltd.*, 2019 WL 4187396, at \*1 (9th Cir.

15  Sept. 4, 2019) (same).  Moreover, courts should defer to "the private consensual decision of the

16  parties" to settle and advance the "'overriding public interest in settling and quieting litigation.'"

17  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Franklin v. Kaypro Corp.*, 884

18  F.2d 1222, 1229 (9th Cir. 1989) (quoting *Van Brockhurst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

19  Cir. 1976)).

20         Federal Rule of Civil Procedure 23(e) requires judicial approval for settlement of claims

21  brought as a class action.  Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on

22  whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and

23  (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule

24  23(e)(2) provides that a proposed class settlement may be approved "after a hearing and only on

25  finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this

26  assessment, the Court must consider whether Lead Plaintiff and Lead Counsel: (i) "have adequately

27  represented the class;" (ii) "the proposal was negotiated at arm's length;" (iii) "the relief provided for

28  the class is adequate;" and (iv) "the proposal treats class members equitably relative to each other."

1    *Id.* In addition, the Ninth Circuit uses the following factors for preliminary approval, several of

2    which overlap with Rule 23(e)(2):

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely
> duration of further litigation; the risk of maintaining class action status throughout
> the trial; the amount offered in settlement; the extent of discovery completed and the
> stage of the proceedings; the experience and views of counsel; the presence of a
> governmental participant; and the reaction of the class members to the proposed
> settlement.

6    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

7        As discussed below, the proposed Settlement easily satisfies each of the factors identified

8    under Rule 23(e)(2), as well as the applicable Ninth Circuit factors, such that notice of the proposed

9    Settlement should be sent to the Class in advance of the Final Approval Hearing.

10       **A.    Lead Plaintiff and His Counsel Have Adequately Represented the
11              Class**

12       Rule 23(e)(2)'s first two factors "look . . . to the conduct of the litigation and of the

13   negotiations leading up to the proposed settlement." Rule 23(e)(2) Advisory Committee notes to

14   2018 amendment. This Settlement bears all of the hallmarks of a procedurally fair resolution under

15   Rule 23(e)(2).

16       Rule 23(e)(2)(A) asks whether the plaintiff and his counsel have adequately represented the

17   class. This factor overlaps with the Ninth Circuit's factor regarding "the extent of discovery

18   completed and the stage of the proceedings." *Hanlon*, 150 F.3d at 1026. As explained above, Lead

19   Plaintiff and his counsel satisfy this factor as they have diligently prosecuted this Action for over

20   three years. *See supra*, §§I-II. Given Lead Plaintiff's and Lead Counsel's demonstrated prosecution

21   of the Action, it is without question that they have adequately represented the Class. *See In re:

22   Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1

23   (N.D. Cal. May 10, 2019) ("*Volkswagen II*") (finding securities class settlement to be procedurally

24   fair where the "[l]ead [c]ounsel vigorously litigated this action during motion practice and discovery,

25   and the record supports the continuation of that effort during settlement negotiations"); *Hefler v.

26   Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (granting final approval and

27   stating that at preliminary approval "the Court found that Class Counsel had vigorously prosecuted

28   this action through dispositive motion practice, extensive initial discovery, and formal mediation"

1   and that "given this prosecution of the action, counsel 'possessed "sufficient information to make an

2   informed decision about settlement"'"), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir.

3   2020).

4        **B.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length**
             **Negotiations by Informed, Experienced Counsel Who Were Aware of**
5            **the Risks of the Action**

6           The Rule 23(e)(2)(B) factor asks whether "the [settlement] proposal was negotiated at arm's

7   length."  Fed. R. Civ. P. 23(e)(2)(B).  As noted above, the proposed Settlement follows extensive

8   litigation over the course of over three years, during which Lead Counsel obtained and reviewed

9   over 135,000 pages of discovery, opposed a motion to dismiss the Complaint, and opposed

10  Defendants' motion for partial reconsideration.  *Supra*, §§I-II; *see also Volkswagen I*, 2018 WL

11  6198311, at *5 ("Having used discovery and motion practice to obtain information about the case,

12  Plaintiffs were able to assess the merits of the claims and to determine whether Defendants'

13  settlement offers were reasonable.").  The Settlement was achieved only after the parties engaged in

14  an elongated mediation process before former U.S. District Judge Layn R. Phillips of Phillips ADR,

15  which included both in person mediation and conferences over the course of more than a year,

16  resulting in a $150 million mediator's proposal.  As part of the settlement discussions, Lead Counsel

17  and Defendants' Counsel prepared and presented submissions concerning their respective views on

18  the merits of the Action.  *See Volkswagen II*, 2019 WL 2077847, at *1 ("Lead Counsel also attests

19  that both sides engaged in a series of intensive, arm's-length negotiations before they reached an

20  agreement in principle to settle. . . .  There is no reason to doubt the veracity of Lead Counsel's

21  representations.").  The foregoing evinces that the Settlement is "the product of serious, informed,

22  and noncollusive negotiations."  *Volkswagen I*, 2018 WL 6198311, at *4-*5.  *See also Hefler*, 2018

23  WL 6619983, at "*6 ("[T]he Settlement was the product of arm's length negotiations through two

24  full-day mediation sessions and multiple follow-up calls supervised by former U.S. District Judge

25  Layn Phillips."); *In re Atmel Corp. Deriv. Litig.*, 2010 WL 9525643, at *13 (N.D. Cal. Mar. 31,

26  2010) ("Judge Phillips' participation weighs considerably against any inference of a collusive

27  settlement.").

28

C.     **The Relief Provided to the Class Is Adequate**

1.     **The Substantial Benefits for the Class, Weighed Against the Costs, Risks, and Delay of Further Litigation, Support Preliminary Approval**

Rule 23(e)(2)(C)(i) and the Ninth Circuit's factors concerning the "strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation"; and "the amount offered in settlement" (*Hanlon*, 150 F.3d at 1026) are also satisfied because the $150 million recovery provides a significant and immediate benefit to the Class, especially in light of the costs, risks, and delay posed by continued litigation.  Securities cases, like the present one, "'are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'"  *Hefler*, 2018 WL 6619983, at *13.

While Lead Plaintiff remains confident in his ability to ultimately prove the alleged claims, further litigation – including a trial – is always a risky proposition.  *See, e.g.*, *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (A "[s]ettlement [a]greement's elimination of risk, delay, and further expenses weighs in favor of approval.").  Further, complex securities fraud class actions such as this one present myriad risks that a plaintiff must overcome in order to ultimately secure a recovery.  *See, e.g.*, *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12129279, at *5 (C.D. Cal. Mar. 13, 2013) ("Various issues would require extensive discovery and motion and trial practice, including proof of material misrepresentations, scienter and loss causation.  Courts experienced with securities fraud litigation "'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'"").

While Lead Plaintiff would be required to prove all elements of his claims to prevail, Defendants need only succeed on one defense to potentially defeat the entire Action.  In fact, they successfully obtained dismissal of fourteen of the fifteen alleged misstatements asserted in the Complaint.  ECF 86.  Risks of proving falsity, materiality, and scienter on the remaining statement present significant obstacles to Lead Plaintiff's success at summary judgment or trial.  *See, e.g.*, *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) ("As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages

1    at trial. . . . Lead Plaintiff would risk recovering nothing without a settlement."); *Luna v. Marvell*

2    *Tech. Grp.*, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018) (noting the risks of proving scienter,

3    loss causation, and damages at trial). Defendants maintained that there was no single definition of

4    "end to end" encryption at the time the statement was made; there was no intent to defraud or motive

5    to commit fraud; and none of the purported corrective disclosures reveal new information to the

6    market, as Zoom's access to the encryption keys was publicly disclosed on multiple occasions prior

7    to the Class Period. *See* ECF 90. Moreover, given the movement in Zoom's stock price during and

8    following the end of the Class Period, recoverable damages may have been severely limited, if not

9    eliminated altogether.

10        Lead Plaintiff would also need to prevail at summary judgment, pretrial motions, trial, and

11    subsequent appeals, a process that could possibly extend for years. Settlement is favored where, as

12    here, the case is "'complex and likely to be expensive and lengthy to try,'" and presents numerous

13    risks beyond the "'inherent risks of litigation.'" *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295,

14    1301 (S.D. Cal. 2017) (quoting *Rodriguez*, 563 F.3d at 966, and *Torrisi v. Tucson Elec. Power Co.*, 8

15    F.3d 1370, 1376 (9th Cir. 1993)), *aff'd* 881 F.3d 1111 (9th Cir. 2018); *Volkswagen II*, 2019 WL

16    2077847, at *2 ("[E]ven if Plaintiffs had prevailed, their recovery – after class certification, trial, and

17    appeals – would have come years in the future. Taking $48 million now, instead of holding out for

18    the chance of $147 million at some point in the future, is a sensible decision.").

19        The $150 million Settlement balances the risks, costs, and delay inherent in complex cases

20    evenly with respect to all parties. Lead Plaintiff negotiated a Settlement that recovers at least 32% of

21    the estimated reasonably recoverable common stock damages. This result is many multiples of the

22    median ratio of settlements to investor losses in securities cases in 2023. *See* Williams Decl., Ex. 2

23    (Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023*

24    *Full-Year Review* at 26, Fig. 22 (NERA Jan. 23, 2024) (median ratio of settlement to investor losses

25    was 1.8% in 2023)); *see Hefler*, 2018 WL 6619983, at *6 ("[C]ounsel's preliminary approval motion

26    included information regarding the settlement outcomes of similar cases, further indicating that

27    counsel 'had an adequate information base' when negotiating the settlement.").

28

1    Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for

2    preliminary approval.  Considering the risks of continued litigation and the time and expense that

3    would be incurred to prosecute the Action through a trial, the $150 million Settlement is a strong

4    recovery that is in the Class's best interests.

5                **2.    The Proposed Method for Distributing Relief Is Effective**

6    As demonstrated below in §VI, in the Crudo Declaration, and in the Peak Declaration, the

7    methods of proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective.

8    The notice plan includes direct mail notice to all those who can be identified with reasonable effort

9    supplemented by a robust digital media paid search campaign.  In addition, a Settlement-specific

10   website will be created where key documents will be posted, including the Stipulation, Notice, Proof

11   of Claim, and Preliminary Approval Order.  Crudo Decl., ¶¶6-19.

12   The claims process is also effective and includes a standard claim form that requests the

13   information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation

14   ("Plan").  The Plan will govern how Class Members' claims will be calculated and, ultimately, how

15   money will be distributed to Authorized Claimants.  The Plan was prepared with the assistance of

16   Lead Plaintiff's damages consultant and is based primarily on the consultant's estimation of the

17   amount of artificial inflation (or artificial deflation with respect to Zoom put options) in the prices of

18   Zoom securities during the Class Period.   A thorough claim review process, including how

19   deficiencies are addressed, is also explained in the Crudo Declaration.  *Id.*, ¶¶25-27.

20               **3.    Attorneys' Fees**

21   Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees,

22   including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  As discussed above (*supra*, §III),

23   Lead Counsel intends to seek an award of attorneys' fees of 18.75% of the Settlement Amount and

24   expenses in an amount not to exceed $400,000.00, plus interest on both amounts.  Lead Counsel's

25   lodestar to date is approximately $2.4 million.[3]   This fee request reflects the successful result

26

27   ───────────────

[3]    If preliminary approval is granted, Lead Counsel will present its total lodestar in connection with
28   its fee application at the final approval stage, after further detailed review and adjustment of its
     contemporaneous daily time entries to account for billing judgment.

1    achieved for the Class, and falls meaningful below the 25% "benchmark award for attorney fees."

2    *Hanlon*, 150 F.3d at 1029.  In addition, Lead Counsel will request that any award of fees and

3    expenses be paid at the time the Court makes its award.  *See In re Vocera Commc'ns, Inc. Sec. Litig.*,

4    2016 WL 8201593, at *1 (N.D. Cal. July 29, 2016) (fees to be paid "immediately upon entry of this

5    Order").

6          Finally, Lead Plaintiff seeks an award of up to $48,750.00 pursuant to 15 U.S.C. §78u-

7    4(a)(4), as reimbursement for his costs and expenses related to his representation of the Class.

8    "Under the PSLRA, a class representative may seek an award of reasonable costs and expenses,

9    including lost wages, directly relating to the representation of the class."  *Fleming v. Impax Lab'ys*

10   *Inc.*, 2022 WL 2789496, at *10 (N.D. Cal. July 15, 2022); *Staton v. Boeing Co.*, 327 F.3d 938, 977

11   (9th Cir. 2003) (holding that named plaintiffs are eligible for reasonable payments as part of a class

12   action settlement).  Lead Counsel believes this amount is fully supported by the time spent and work

13   undertaken by Lead Plaintiff throughout the Action, which will be set forth in greater detail in

14   connection with Lead Plaintiff's fee and expense motion.

15         Approval of the requested attorneys' fee and expense application is separate from approval of

16   the Settlement, and the Settlement may not be terminated based on any ruling with respect to

17   attorneys' fees.  Stipulation, ¶6.3.

18         **4.    Other Agreements Made In Connection With the Global**
             **Resolution of the Case**
19

20         The Parties have entered into a standard supplemental agreement which provides that if Class

21   Members opt out of the Settlement such that the requests for exclusion from the Class equals or

22   exceeds an agreed-upon threshold, Defendants shall have the option to terminate the Settlement.

23   Stipulation, ¶7.3.  Such agreements are common and do not undermine the propriety of the

24   Settlement.  *See, e.g.*, *Hefler*, 2018 WL 6619983, at *7 ("The existence of a termination option

25   triggered by the number of class members who opt out of the Settlement does not by itself render the

26   Settlement unfair.").  While the Supplemental Agreement is identified in the Stipulation, ¶7.3, and

27

28

LP'S NOTICE OF RENEWED UNOPP MOTION & UNOPP MOTION FOR PRELIM APPROVAL OF
PROP SETTLEMENT & MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 3:20-cv-02353-JD      - 11
4907-5141-9176.v1

the nature of the agreement is explained in the Stipulation and here, the terms are properly kept confidential.[4]

### 5.    The Proposed Plan of Allocation Is Designed to Treat Class Members Equitably

Rule 23(e)(2)(D) asks whether the proposal, here the Plan of Allocation, treats class members equitably relative to each other.  Drafted with the assistance of Lead Plaintiff's damages consultant, the Plan is fair, reasonable, and adequate because it does not treat Lead Plaintiff or any other Class Member preferentially.  *See Vataj v. Johnson*, 2021 WL 1550478, at *10 (N.D. Cal. Apr. 20, 2021); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015).

The Plan, set forth in the Notice (Stipulation, Ex. A-1 at 11-18), is designed to equitably distribute the Net Settlement Fund (*see* Stipulation, ¶1.18) to those Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  In developing the Plan, Lead Plaintiff's damages consultant calculated the potential amount of estimated alleged artificial inflation (or deflation) in Zoom securities proximately caused by Defendants' alleged false and misleading statements and material omissions.  To do this, Lead Plaintiff's damages consultant considered the market and industry adjusted price changes in Zoom securities prices following certain corrective disclosures regarding Zoom and the allegations in the Complaint.  Based on the formula in the Plan, a "Recognized Loss Amount" will be calculated for each transaction in Zoom common stock and options.  The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the security transacted and the relative size of their Recognized Claims.[5]  The amount of the payment will depend on, among other factors, how many Class Members file valid claims, and the aggregate value of the Recognized Claims for each security represented by valid and acceptable Claim Forms.

---

[4]    *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding settlement was not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact threshold, for practical reasons, was kept confidential"); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 329-30 (C.D. Cal. 2016) (considering confidential supplemental agreement).

[5]    As set forth in the Notice, at least 97.5% of the Net Settlement Fund will be allocated to common stock claims, and not more than 2.5% of the Net Settlement Fund will be allocated to options claims.

1  Lead Plaintiff, just like all other Class Members, will be subject to the same formula for

2  distribution of the Settlement. *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18

3  (D. Or. Mar. 19, 2019) (finding "[t]he Proposed Settlement does not provide preferential treatment to

4  Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class

5  Members and Class Representatives equally in that they will receive a *pro rata* distribution based of

6  the Settlement Fund based on their net losses"). Courts have previously found plans that award *pro*

7  *rata* shares to each class member to be fair and reasonable. *See, e.g.*, *Vataj*, 2021 WL 1550478, at

8  *10 ("The Settlement Fund will thus be distributed on a *pro rata* basis according to each class

9  member's recognized loss."); *In re Resistors Antitrust Litig.*, 2020 WL 2791922, at *2-*3 (N.D. Cal.

10  Mar. 24, 2020) (approving plan of allocation using *pro rata* basis of distribution). Accordingly, the

11  Plan is fair, reasonable, and applies in an equitable manner to all Class Members.

12  **D.    The Remaining Ninth Circuit Factors Are Satisfied**

13  **1.    Risk of Maintaining Class Action Status Through Trial**

14  The issue of class certification had yet to be briefed when the Settlement was reached, but

15  Lead Plaintiff believes that Defendants would have opposed Lead Plaintiff's motion to certify the

16  Class. Even if the class was initially certified Defendants could have moved to decertify the Class or

17  further shorten the Class Period. *See, e.g.*, *Fleming*, 2022 WL 2789496, at *6 ("[T]here is always a

18  risk of decertification – especially when, as here, Plaintiffs must overcome causation and damages

19  defenses."). Accordingly, this factor supports preliminary approval.

20  **2.    Experience and Views of Counsel**

21  The opinion of experienced counsel supporting a class settlement after arm's-length

22  negotiations is entitled to considerable weight. *Norris v. Mazzola*, 2017 WL 6493091, at *8 (N.D.

23  Cal. Dec. 19, 2017). "[I]ndeed a presumption of fairness is usually appropriate if class counsel

24  recommends the settlement after arm's-length bargaining." *Volkswagen I*, 2018 WL 6198311, at *5.

25  Lead Counsel here has significant experience in securities and other complex class action litigation

26  and has negotiated numerous other substantial class action settlements throughout the country. *See*

27  www.rgrdlaw.com. And by the time settlement discussions began, Lead Counsel had a firm

28

LP'S NOTICE OF RENEWED UNOPP MOTION & UNOPP MOTION FOR PRELIM APPROVAL OF
PROP SETTLEMENT & MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 3:20-cv-02353-JD    - 13 -
4907-5141-9176.v1

1    understanding of the strengths and weaknesses of the claims, both factually and legally. *Supra*,

2    §§I-II. "There is nothing to counter the presumption that Lead Counsel's recommendation is

3    reasonable." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

4          In sum, each factor identified under Rule 23(e)(2) and by the Ninth Circuit is satisfied.

5    Given the litigation risks involved, the complexity of the underlying issues, and the skill of defense

6    counsel, the $150 million recovery is significant. It could not have been achieved without the full

7    commitment by Lead Plaintiff and his counsel. The Settlement is fair, adequate, and reasonable, and

8    such that notice should be sent to the Class.

9    **V.    CERTIFICATION OF THE CLASS FOR PURPOSES OF THE
              SETTLEMENT IS APPROPRIATE**

10

11         Under the terms of the Settlement, Defendants have agreed, for purposes of settlement, to

12   certification of the following Class: "all Persons that purchased or otherwise acquired Zoom

13   securities between April 18, 2019, and April 6, 2020, inclusive." Stipulation, ¶1.4.[6] The Class is the

14   same that is alleged in the Complaint. *See* Complaint, ¶97.

15         At this stage, the Court should determine whether it "will likely be able" to grant certification

16   to the proposed Class at final approval. Fed. R. Civ. P. 23(e)(1)(B). Lead Plaintiff submits that the

17   Class satisfies the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of

18   representation) as well as the requirements of Rule 23(b)(3). *See Amchem Prods., Inc. v. Windsor*,

19   521 U.S. 591, 614 (1997).

20   **A.    The Requirements of Rule 23(a) Are Met**

21         **1.    Numerosity Is Satisfied**

22         The numerosity requirement is met where the party seeking certification shows the class is

23   "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This does not

24   mean that joinder is impossible, but rather "'only that the court must find that the difficulty or

25   _____

26   [6]    Excluded from the Class are Defendants and their families, the officers and directors of Zoom
     during the Class Period, members of their immediate families, and their legal representatives, heirs,
27   successors or assigns, and any firm, trust, corporation, partnership, or other entity in which any
     Defendant has or had a controlling interest. Also excluded from the Class will be any Person who
28   timely and validly seeks exclusion from the Class.

1  inconvenience of joining all members of the class makes class litigation desirable.'" *McCulloch v.*

2  *Baker Hughes Inteq Drilling Fluids, Inc.*, 2017 WL 2257130, at *7 (E.D. Cal. May 23, 2017)

3  (quoting *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 603 (E.D. Cal. 2015)). "While no

4  specific minimum number of potential class members exists, a 'proposed class of at least forty

5  members presumptively satisfies the numerosity requirement.'" *Hatamian v. Advanced Micro*

6  *Devices, Inc.*, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016). In assessing this requirement

7  here, "'[t]he Court certainly may infer that, when a corporation has millions of shares trading on a

8  national exchange,' the numerosity requirement is met." *Hayes v. Magnachip Semiconductor Corp.*,

9  2016 WL 7406418, at *3 (N.D. Cal. Dec. 22, 2016).

10     Zoom common stock trades globally on the NASDAQ, and as of December 2020, had

11  approximately 48.7 million shares outstanding. Complaint, ¶122. This easily establishes

12  numerosity. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 282-83 (N.D. Cal. 2020)

13  (numerosity satisfied with "over six-hundred thousand outstanding shares of Symantec common

14  stock during the class period").

15          **2.    Commonality Is Satisfied**

16     Rule 23(a)(2) requires a showing that there are "questions of law or fact common to the

17  class." Fed. R. Civ. P. 23(a)(2). "Plaintiffs need not show . . . that 'every question in the case, or

18  even a preponderance of questions, is capable of class wide resolution. So long as there is "even a

19  single common question," a would-be class can satisfy the commonality requirement of Rule

20  23(a)(2).'" *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014). "Commonality exists where 'the

21  circumstances of each particular class member vary but retain a common core of factual or legal

22  issues with the rest of the class.'" *Fleming v. Impax Lab'ys.*, 2021 WL 5447008, at *6 (N.D. Cal.

23  Nov. 22, 2021). "Commonality, like numerosity, is a prerequisite which plaintiffs generally, and

24  which plaintiffs here, satisfy very easily." *In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *5

25  (N.D. Cal. Jan. 13, 2005).

26     Class Members have suffered a common injury – losses on their investments in Zoom

27  securities – and their claims depend upon numerous common issues capable of class-wide resolution,

28  including: (i) whether Defendants' alleged misrepresentations and omissions violated the Exchange

1  Act; (ii) whether Defendants' alleged misrepresentations and omissions were materially false or

2  misleading; (iii) whether Defendants acted knowingly or recklessly (*i.e.*, with scienter); (iv) whether

3  Defendant Yuan controlled Zoom and its alleged violations of the securities laws; (v) whether the

4  market prices of Zoom securities were artificially inflated (or deflated) as a result of Defendants'

5  alleged misrepresentations and omissions; (vi) whether Defendants' alleged misrepresentations and

6  omissions caused Class Members to suffer a compensable loss; and (vii) whether Class Members

7  have sustained damages, and the proper measure of damages. "Although the amount to which each

8  class member is entitled will differ, the issues described above are common to the proposed

9  Settlement Class.  Accordingly, the Court finds that the commonality requirement is met in this

10  case." *Fleming*, 2021 WL 5447008, at *6.

11                            **3.      Typicality Is Satisfied**

12          Rules 23(a)(3) requires that the proposed class representative's claims be "typical" of the

13  claims of the class.  The typicality requirement "imposes only a modest burden." *In re Lendingclub*

14  *Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017).  "The test of typicality is 'whether other

15  members have the same or similar injury, whether the action is based on conduct which is not unique

16  to the named plaintiffs, and whether other class members have been injured by the same course of

17  conduct.'" *Parsons*, 754 F.3d at 685.  "The purpose of the typicality requirement is to 'assure that

18  the interest of the named representative aligns with the interests of the class.'" *In re Intuitive*

19  *Surgical Sec. Litig.*, 2016 WL 7425926, at *5 (N.D. Cal. Dec. 22, 2016) (quoting *Hanon v.*

20  *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "'Under the rule's permissive standards,

21  representative claims are "typical" if they are reasonably coextensive with those of absent class

22  members; they need not be substantially identical.'" *Parsons*, 754 F.3d at 685.

23          Here, Lead Plaintiff's claims are "typical" of other Class Members' claims because they arise

24  out of the same alleged course of conduct and, like other Class Members, they all allege that they

25  purchased Zoom securities during the Class Period at artificially inflated (or deflated, in the case of

26  put options) due to Defendants' material misstatements and omissions, and were damaged when the

27  truth emerged.  Thus, Lead Plaintiff and the Class assert the same legal claims, which relate to the

28

1   adequacy of such public statements and will rely on the same facts and legal theories to establish

2   liability.

3   **4.      Lead Plaintiff and Lead Counsel Are Adequate**

4       Under Rule 23(a)(4), the parties representing the class must "fairly and adequately protect the

5   interests of the class."  The adequacy prerequisite is concerned with two questions: "'"(1) do the

6   named plaintiffs and their counsel have any conflicts of interest with other class members[,] and

7   (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the

8   class?'"  *SEB*, 335 F.R.D. at 284-85 (alteration in original) (quoting *Hanlon*, 150 F.3d at 1020).

9       Lead Plaintiff and Lead Counsel readily satisfy adequacy.  First, based upon his purchase of

10  Zoom securities during the Class Period and the losses suffered as a result of Defendants' alleged

11  misconduct, Lead Plaintiff's interests are directly aligned with – rather than antagonistic to – the

12  interests of other Class Members, who were injured by the same alleged materially false and

13  misleading statements and omissions as Lead Plaintiff.  Second, there is no evidence of conflicts

14  between Lead Plaintiff and the Class.  *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584,

15  590 (N.D. Cal. 2009) (finding that the class representatives were adequate because there was no

16  evidence of conflicts of interest with the class).

17      Lead Plaintiff has also retained counsel who satisfy this adequacy requirement.  "[Robbins

18  Geller] have extensive experience with complex securities litigation, including as lead counsel in

19  PSLRA cases litigated in this district, and have been praised by numerous judges for the quality of

20  the firm's representation in class action litigation."  *Fleming*, 2021 WL 5447008, at *7.  As its

21  actions in this case and others demonstrate, Lead Plaintiff's chosen counsel has committed, and is

22  willing to commit, considerable resources to prosecuting this Action, and has vigorously represented

23  the Class's interests.  Thus, the adequacy requirement is satisfied.

24  **B.      The Requirements of Rule 23(b)(3) Are Also Met**

25      Lead Plaintiff seeks to certify the Class pursuant to Rule 23(b)(3), under which certification

26  is appropriate where: (1) questions of law or fact common to class members predominate over

27  questions affecting only individual members; and (2) a class action is superior to other available

28

1    methods for the fair and efficient adjudication of the controversy.  These requirements are readily

2    satisfied here.

3         The predominance inquiry of Rule 23(b)(3) asks whether "'proposed classes are sufficiently

4    cohesive to warrant adjudication by representation.'"  *Hatamian*, 2016 WL 1042502, at *3.  As the

5    Supreme Court has explained, "[p]redominance is a test readily met in certain cases alleging

6    consumer or securities fraud or violations of the antitrust laws."  *Amchem*, 521 U.S. at 625.

7         Here, the common questions identified above clearly predominate over individual questions

8    because Defendants' alleged fraudulent statements and omissions affected all Class Members in the

9    same manner (*i.e.*, through public statements made to the market and documents publicly filed with

10   the United States Securities and Exchange Commission).  *Vataj*, 2021 WL 1550478, at *6 (finding

11   common questions predominate where same operative facts apply to each class member).  Moreover,

12   virtually all of the elements under §10(b) involve common questions of law and fact that

13   predominate over individualized issues.  *Fleming*, 2021 WL 5447008, at *6; *In re Cooper Cos. Inc.*

14   *Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009).

15        Finally, the superiority element of Rule 23(b)(3) tests whether class treatment is "superior to

16   other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

17   23(b)(3).  In cases like this one, where "'recovery on an individual basis would be dwarfed by the

18   cost of litigating on an individual basis,'" a class action is the superior method of adjudication.[7]  *In*

19   *re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015); *VeriSign*, 2005 WL 7877645, at

20   *9 ("Class actions are particularly well-suited in the context of securities litigation, wherein

21   geographically dispersed shareholders with relatively small holdings would otherwise have difficulty

22   in challenging wealthy corporate defendants.").  Moreover, Lead Plaintiff is not aware of any other

23   pending actions seeking similar relief.

24

25   _____

26   [7]    When a class is seeking certification for purposes of settlement, "the superiority inquiry focuses
     "'on the efficiency and economy elements of the class action so that cases allowed under [Rule
     23(b)(3)] are those that can be adjudicated most profitably on a representative basis.'"" *Ford v. CEC*

27   *Ent, Inc.*, 2015 WL 11439032, at *4 (S.D. Cal. July 7, 2015) (alteration in original); *Hyundai*, 926
     F.3d at 556-57 ("The criteria for class certification are applied differently in litigation classes and

28   settlement classes" and "manageability is not a concern in certifying a settlement class.").

1    In sum, all of the requirements of Rules 23(a) and (b)(3) are satisfied, and there are no issues

2    that would prevent the Court from certifying the Class for Settlement purposes, appointing Lead

3    Plaintiff as class representative, and appointing Lead Counsel as class counsel pursuant to Rule

4    23(g).

5    **VI.    THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO
      THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23,**
6    **THE PSLRA, AND DUE PROCESS**

7    Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable

8    under the circumstances, including individual notice to all members who can be identified through

9    reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1).  Courts evaluating

10   proposed notice documents have held that "'[n]otice is satisfactory if it "generally describes the

11   terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to

12   come forward and be heard."'" *Rodriguez*, 563 F.3d at 962.

13   Here, the Settling Parties propose to send, by email or first class mail, postage prepaid,

14   individual copies of the Summary Notice to all potential Class Members who can reasonably be

15   identified and located.  Crudo Decl., ¶¶6-7; Preliminary Approval Order, ¶10.  In addition, pursuant

16   to the Court's directive, a robust online and digital media campaign directed specifically to likely

17   Class Members has been formulated.  Peak Decl., ¶¶4-6; Preliminary Approval Order, ¶11.  The

18   Summary Notice will be published over a national newswire service.  Preliminary Approval Order,

19   ¶12.  The proposed methods of providing notice satisfy the requirements of Rule 23, the PSLRA,

20   and due process.  *See In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017).

21   The proposed full-length Notice, which will be placed on the Settlement website, provides

22   detailed information in plain English.[8]  The content of the proposed Notice and Summary Notice are

23

24   _____

     [8]    The Notice describes the proposed Settlement and sets forth, among other things: (i) the nature,
25   history, and status of the Action; (ii) the definition of the Class and who is excluded; (iii) the reasons
     the parties have proposed the Settlement; (iv) the amount of the Settlement Fund; (v) the estimated
26   average distribution per damaged common share and options contract; (vi) the Class's claims and
     issues; (vii) the parties' disagreement over damages and liability; (viii) the maximum amount of
27   attorneys' fees and expenses that Lead Counsel intends to seek in connection with final Settlement
     approval; (ix) the plan for allocating the Settlement proceeds to the Class; and (x) the date, time, and
28   place of the Final Approval Hearing.

1    "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of

2    the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover*

3    *Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

4          Also, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served

5    on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

6    Fed. R. Civ. P. 23(h)(1).  The proposed plan satisfies this requirement, Class Members will be

7    informed that Lead Counsel will apply to the Court for an award of attorneys' fees not to exceed

8    18.75% of the Settlement Amount and litigation expenses not to exceed $400,000.00, to be paid

9    from the Settlement Fund, plus the interest earned on both amounts.

10         In sum, the notice program proposed in connection with the Settlement and the form and

11   content of the notices satisfy all applicable requirements of both the Federal Rules of Civil Procedure

12   and the PSLRA.  Accordingly, the Court should also approve the proposed form and method of

13   giving notice to the Class.

14   **VII.    NORTHERN DISTRICT OF CALIFORNIA PROCEDURAL GUIDANCE**

15         The *Procedural Guidance* for class action settlements has been satisfied and weighs in favor

16   of approving the Settlement.  *See* Appendix A.

17   **VIII.   CONCLUSION**

18         For each of the foregoing reasons, the Court should enter the [Proposed] Order Preliminarily

19   Approving Settlement and Providing for Notice, which will: (i) preliminarily approve the Settlement;

20   (ii) preliminarily certify the Class for settlement purposes; (iii) approve the form and manner of

21   providing notice to the Class; and (iv) set a Final Approval Hearing date to consider final approval of

22   the Settlement and related matters.

23   DATED:  March 24, 2025                    Respectfully submitted,

24                                             ROBBINS GELLER RUDMAN
25                                              & DOWD LLP
                                               SHAWN A. WILLIAMS

26

27                                                    s/ Shawn A. Williams
                                               ───────────────────────────
28                                                SHAWN A. WILLIAMS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
ELLEN GUSIKOFF STEWART
PATTON L. JOHNSON
HEATHER G. GEIGER
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
pjohnson@rgrdlaw.com
hgeiger@rgrdlaw.com

Lead Counsel for Lead Plaintiff

# APPENDIX A

## (Compliance with *Procedural Guidance* of Northern District of California)

**A.      Guidance 1: Information about the Settlement**

      **1.      Guidance 1(a): Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.**

None.

      **2.      Guidance 1(b): Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.**

The claims being released closely track the claims alleged.  The Complaint alleges federal securities law claims based on certain alleged misrepresentations and omissions by Defendants in connection with the purchase or acquisition of Zoom securities during the Class Period.  The definition of "Released Claims" is properly limited to claims that "***both*** (i) arise out of, are based upon, or are related in any way to the allegations, acts, facts, matters, occurrences, disclosures, filings, statements, representations, or omissions that were or could have been alleged by Lead Plaintiff and all other Class Members in the Action . . . , ***and*** (ii) concern, arise out of, are based upon, or relate to the purchase or other acquisition of Zoom securities during the Class Period." Stipulation, ¶1.25.  Accordingly, the release is carefully tailored to the claims alleged.  This release is substantially similar to that included in *Volkswagen I*, 2018 WL 6198311, at *3.

      **3.      Guidance 1(c): The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims.**

The Class will receive $150 million in cash, less approved fees and expenses, through the Settlement.  As set forth in the attached supporting memorandum ("Preliminary Approval Memorandum"), had Lead Plaintiff fully prevailed on his claims, estimated reasonably recoverable damages at trial, consistent with the methodology in the Plan of Allocation, would have been approximately $525 million.  There are many factors that contributed to Lead Plaintiff's acceptance

1  of a discount to that damages value, which are more fully explained in §IV.C.1 of the Preliminary

2  Approval Memorandum.

3       **4.      Guidance 1(d): Any other cases that will be affected by the
            settlement, an explanation of what claims will be released in
4           those cases if the settlement is approved, the class definitions in
            those cases, their procedural posture, whether plaintiffs'
5           counsel in those cases participated in the settlement
            negotiations, a brief history of plaintiffs' counsel's discussions
6           with counsel for plaintiffs in those other cases before and
            during the settlement negotiations, an explanation of the level
7           of coordination between the two groups of plaintiffs' counsel,
            and an explanation of the significance of those factors on
8           settlement approval.  If there are no such cases, counsel should
            so state.**

9

10     Counsel believes there are no other cases that will be affected by the Settlement.

11      **5.      Guidance 1(e): The proposed allocation plan for the settlement
            fund.**
12

13     The proposed allocation plan is set forth in detail in the Notice of Pendency and Proposed

14 Settlement of Class Action ("Notice") (Stipulation, Ex. A-1 at 11-18).

15      **6.      Guidance 1(f): If there is a claim form, an estimate of the
            expected claim rate in light of the experience of the selected
16          claims administrator and/or counsel based on comparable
            settlements, the identity of the examples used for the estimate,
17          and the reason for the selection of those examples.**

18     This is a non-reversionary settlement in which the entire Settlement Fund will be paid out.

19 Stipulation, ¶5.9.  Once the Settlement becomes final, nothing is returned to Defendants.  With

20 respect to the number of class members, as well as their identities, these are unknown in securities

21 cases.  *See Vataj*, 2021 WL 1550478, at *11 ("The Court understands that the majority of class

22 members are likely beneficial purchasers whose securities were purchased by brokerage firms,

23 banks, institutions, and other third-party nominees in the name of the nominee, on behalf of the

24 beneficial purchaser.").  Because the number and identity of class members is unknown, both the

25 number and percentage of class members expected to file claims is unknown.  Indeed, the number of

26 claims varies widely from case to case as does the size of each claim.  In a securities class action

27 settlement, class member participation is determined by the number of damaged shares (shares

28

affected by the inflation caused by the alleged misrepresentations and omissions) represented by the claims submitted.  This more accurately reflects how much of the Class is seeking to participate in the Settlement.  Consistent with its experience in securities class actions, and based on the effectiveness of the proposed notice plan, Lead Counsel anticipates that the vast majority of damaged shares will be represented by the claims submitted in this Action.

> **7.    Guidance 1(g): In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate.**

The Settlement is non-reversionary; there will be no reversions.  Stipulation, ¶5.9.

**B.    Guidance 2: Settlement Administration**

> **1.    Guidance 2(a): Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the last two years.**

Lead Plaintiff's request to appoint Gilardi to serve as the Settlement Administrator, including the reasons for Lead Counsel's selection of Gilardi, is addressed in §III of the Preliminary Approval Memorandum.  Lead Counsel states that Gilardi and affiliated entities have been appointed as the notice or claims administrator in 45 matters where Robbins Geller was lead or co-lead counsel in the past two years.  Crudo Decl., ¶5.  The proposed methods of notice are addressed in §IV.C.2 of the Preliminary Approval Memorandum.

> **2.    Guidance 2(b): Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs.**

Gilardi's Information Security Policy Framework is aligned to ISO/IEC 27002:2013 which is reviewed on an annual basis and communicated to all employees through a comprehensive training

program.  Crudo Decl., ¶30.  Gilardi maintains a number of corporate governance policies that reflect the manner in which it does business, including an employee Code of Conduct that outlines the professional, responsible, and ethical guidelines that govern employee conduct.  These policies are available on Gilardi's website.  *Id.*, ¶31.

### C.    Guidance 3: The Proposed Notices to the Class Are Adequate

As set forth in §IV.C.2 of the Preliminary Approval Memorandum, Lead Counsel believes that both the form of notice, which incorporates the suggested language from the *Procedural Guidance* (Stipulation, Ex. A-1 at 11), and the plan for disseminating the notice, satisfy Rule 23, the PSLRA, and due process.

### D.    Guidance 4 and 5: Opt-Outs and Objections

The proposed Notice complies with Rule 23(e)(5) in that it discusses the rights Class Members have concerning the Settlement.  The proposed Notice includes information on a Class Member's right to: (i) request exclusion and the manner for submitting such a request; (ii) object to the Settlement, or any aspect thereof, and the manner for filing an objection; and (iii) participate in the Settlement and instructions on how to complete and submit a Claim Form to the Settlement Administrator.  *See* Stipulation, Ex. A-1 at 6, 8-9.  With respect to exclusion requests, the Notice requires only the information needed to opt out – the securities purchased, acquired, or sold during the Class Period and the price of the securities at each event.  The Notice also provides contact information for Lead Counsel, as well as the postal address for the Court.  Finally, the Notice incorporates the suggested language regarding objections from the *Procedural Guidance*.  *Id.* at 9.

### E.    Guidance 6: Attorneys' Fees and Expenses

Lead Counsel's intended request for attorneys' fees and expenses is set forth in §IV.C.3 of the Preliminary Approval Memorandum.

### F.    Guidance 7: Service Awards

Lead Plaintiff will seek an award not to exceed $48,750.00 for reimbursement of his time and expenses, pursuant to the provisions of 15 U.S.C. §78u-4(a)(4).

### G. Guidance 8: *Cy Pres* Awardees

The Investor Protection Trust is the designated recipient for any *de minimis* balance remaining after all reallocations are completed. *See* Stipulation, ¶5.9.

### H. Guidance 9: Proposed Timeline

Lead Plaintiff proposes the following schedule for notice, Final Approval Hearing, and related dates:

| Event | Deadline for Compliance |
|---|---|
| Deadline to commence mailing the Summary Notice to potential Class Members and posting of the Notice and Proof of Claim (the "Notice Date") | No later than 21 calendar days following entry of the Preliminary Approval Order (Preliminary Approval Order, ¶10) |
| Publication of the Summary Notice and implementation of the online notice plan | No later than 7 calendar days following the Notice Date (Preliminary Approval Order, ¶10) |
| Deadline for filing papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 60 calendar days prior to the objection and opt-out deadline (Preliminary Approval Order, ¶22) |
| Deadline for requests for exclusion or objections | 21 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶¶18-20) |
| Deadline for submission of reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 7 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶22) |
| Proof of Claim submission deadline | 90 calendar days after the Notice Date (Preliminary Approval Order, ¶15(a)) |
| Date for the Final Approval Hearing | At least 100 days after entry of the Preliminary Approval Order (Preliminary Approval Order, ¶2) |

### I. Guidance 10: Class Action Fairness Act

Although the CAFA statute is unclear whether notice is required in a securities class action settlement, Defendants have provided such notice.

J.    **Guidance 11: Comparable Outcomes**

| HCA 11 | |
|---|---|
| *Karsten Schuh v. HCA Holdings, Inc., et al.* | |
| No. 3:11-cv-01033 (M.D. Tennessee, Nashville Division) | |
| Total Settlement Amount | $215,000,000.00 |
| Total Interest Income | $853,900.48 |
| Notice and Claim Packets Mailed/Remailed | 98,305 |
| Number of Packets Returned | 2,220 |
| Undeliverable/Unable to Forward | 2.273% |
| Total Claims Submitted | 87,071 |
| | 89.147% |
| Total Valid Claims | 31,528 |
| | 36.210% |
| Opt-Outs Received | 4 |
| | 0.004% |
| Objections Received | 1 |
| | 0.001% |
| Mean Recovery per Claimant Median | $4,728.91 |
| Recovery per Claimant | $49.65 |
| Largest Recovery per Claimant Smallest | $4,986,673.51 |
| Recovery per Claimant | $10.05 |
| Method of Notice | Direct Mail; Published in Investor's Business Daily and PR Newswire; DTC Legal Notice System |
| Number of Checks Not Cashed | 3,506 |
| Value of Checks Not Cashed and Included in Supplemental Distribution | $1,173,909.03 |
| Administrative Costs (including taxes, tax prep., etc.) | $684,847.39 |
| Attorney Costs | $2,016,508.52 |
| Expert Fees | $1,159,395.07 |
| Attorney Fees | $64,500,000.00 |
| % of Settlement Amount | 30% |
| Multiplier | 4.32 |
| Initial Distribution Date | 04/17/2017 |
| Residual Distribution Dates | 11/08/2017; 12/21/2021 |
| Cy Pres Distribution Charity | $0.00 |
| | N/A |
| Distribution Completed | 08/08/2022 |
| Total Amount Distributed | $148,541,045.97 |
| Percentage of Distribution Factor | 20.299% |
| Number of Payments | 33,746 |
| Method of Payments | Checks and Wires |
| Reverter to Defendants | $0.00 |

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify under penalty of perjury that on March 24, 2025, I authorized the electronic

3

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I

5

hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the

6

non-CM/ECF participants indicated on the attached Manual Notice List.

7

      <u>s/ Shawn A. Williams</u>
SHAWN A. WILLIAMS

8

9

ROBBINS GELLER RUDMAN
     & DOWD LLP

10

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104

11

Telephone: 415/288-4545
415/288-4534 (fax)

12

Email: shawnw@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mailing Information for a Case 3:20-cv-02353-JD Drieu v. Zoom Video Communications, Inc. et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jenna C. Bailey**
  jbailey@cooley.com,jcorrell@cooley.com

- **Ryan Edward Blair**
  rblair@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com,chourani@cooley.com

- **Tijana Brien**
  tbrien@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com,emadrigal@cooley.com

- **Heather G. Geiger**
  hgeiger@rgrdlaw.com,cbarrett@rgrdlaw.com,HSchlesier@ecf.courtdrive.com

- **Patrick Edward Gibbs**
  pgibbs@cooley.com,efilingnotice@cooley.com,jcorrell@cooley.com,efiling-notice@ecf.pacerpro.com

- **Ellen Anne Gusikoff-Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Reza John Harris**
  rjharris@cooley.com

- **Benjamin Heikali**
  bheikali@treehouselaw.com,kphillips@treehouselaw.com,lchapa@treehouselaw.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com

- **Patton L. Johnson**
  pjohnson@rgrdlaw.com,PJohnson2019@ecf.courtdrive.com,tdevries@rgrdlaw.com,sbloyd@rgrdlaw.com

- **Phillip C Kim**
  philkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,shawnw@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,tsayre@pomlaw.com,egoodman@pomlaw.com,jlopiano@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Craig Edward TenBroeck**
  ctenbroeck@cooley.com,maraujo@cooley.com,efiling-notice@ecf.pacerpro.com

- **Tamar A Weinrib**
  taweinrib@pomlaw.com,egoodman@pomlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,smorris@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.courtdrive.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)