1   ROBBINS GELLER RUDMAN
        & DOWD LLP
2   SHAWN A. WILLIAMS (213113)
    Post Montgomery Center
3   One Montgomery Street, Suite 1800
    San Francisco, CA  94104
4   Telephone:  415/288-4545
    415/288-4534 (fax)
5   shawnw@rgrdlaw.com
        – and –
6   DARREN J. ROBBINS (168593)
    ELLEN GUSIKOFF STEWART (144892)
7   PATTON L. JOHNSON (320631)
    HEATHER G. GEIGER (322937)
8   655 West Broadway, Suite 1900
    San Diego, CA  92101-8498
9   Telephone:  619/231-1058
    619/231-7423 (fax)
10  darrenr@rgrdlaw.com
    elleng@rgrdlaw.com
11  pjohnson@rgrdlaw.com
    hgeiger@rgrdlaw.com
12
    Lead Counsel for Lead Plaintiff
13
                    UNITED STATES DISTRICT COURT
14
                  NORTHERN DISTRICT OF CALIFORNIA
15
                       SAN FRANCISCO DIVISION
16

| | |
|---|---|
| In re ZOOM SECURITIES LITIGATION | ) Case No. 3:20-cv-02353-JD |
| | ) |
| | ) LEAD PLAINTIFF'S NOTICE OF MOTION, |
| This Document Relates To: | ) MOTION FOR FINAL APPROVAL OF |
| | ) CLASS ACTION SETTLEMENT AND |
| ALL ACTIONS. | ) APPROVAL OF PLAN OF ALLOCATION, |
| | ) AND MEMORANDUM OF POINTS AND |
| | ) AUTHORITIES IN SUPPORT THEREOF |

DATE:    October 9, 2025
TIME:     10:00 a.m.
JUDGE:   Honorable James Donato
CTRM:   11, 19th Floor

4928-0893-9346.v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   PROCEDURAL AND FACTUAL BACKGROUND.........................................3

III.  STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
      SETTLEMENTS...................................................................................................4

      A.    Class Certification Remains Appropriate ..................................................4

      B.    The Settlement Warrants Final Approval ..................................................4

      C.    The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)................6

            1.    Rule 23(e)(2)(A): Lead Plaintiff and His Counsel Have Adequately
                  Represented the Class ..................................................................6

            2.    Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at
                  Arm's Length After Mediation with an Experienced Mediator..................7

            3.    Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate
                  Considering the Costs, Risk, and Delay of Trial and Appeal .....................7

                  a.    The Risks of Summary Judgment, Trial, and Appeal
                        Support Approval of the Settlement ................................................8

                  b.    The Proposed Settlement Eliminates the Additional Cost
                        and Delay of Continued Litigation .................................................10

            4.    Rule 23(e)(2)(C)(ii): The Proposed Method For Distributing Relief
                  Is Effective .............................................................................10

            5.    Rule 23(e)(2)(C)(iii): Attorneys' Fees ......................................................11

            6.    Rule 23(e)(2)(C)(iv): Other Agreements ...................................................11

            7.    Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class
                  Members Equitably...................................................................12

      D.    The Remaining Ninth Circuit Factors Are Satisfied...........................................13

            1.    Discovery Completed and Stage of the Proceedings ..................................13

            2.    Counsel Views This Good-Faith Settlement as Fair, Reasonable,
                  and Adequate .........................................................................13

            3.    The Positive Reaction of Class Members to the Settlement .......................14

            4.    The Settlement Amount ..............................................................14

            5.    The Risk of Maintaining Class Certification ............................................14

1

2                                                                           **Page**

3
IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION............................15

V.    NOTICE TO THE CLASS SATISFIES DUE PROCESS .................................................16

VI.    CONCLUSION.............................................................................................................17
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ........................................................................................4

5

6

*Cheng Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)................................................................6

7

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) .......................................................................................5, 7

8

9

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .......................................................................................15

10

11

*Davis v. Yelp, Inc.*,
    2022 WL 21748777 (N.D. Cal. Aug. 1, 2022) ..............................................................10

12

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)..........................................................................................................8

13

14

*Fleming v. Impax Lab'ys. Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022)............................................................4, 16

15

16

*Fosbre v. Las Vegas Sands Corp.*,
    2017 WL 55878 (D. Nev. Jan. 3, 2017)..........................................................................9

17

*Foster v. Adams & Assocs., Inc.*,
    2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ...........................................................13, 14

18

19

*Hayes v. MagnaChip Semiconductor Corp.*,
    2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ..............................................................16

20

21

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .................................................................7

22

*Hsu v. Puma Biotechnology, Inc.*,
    No. 8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022) ...........................10

23

24

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2019 WL 2554232 (N.D. Cal. May 3, 2019)...................................................................6

25

26

*In re Google Location Hist. Litig.*,
    2024 WL 1975462 (N.D. Cal. May 3, 2024)......................................................14, 15, 16

27

*In re Lyft, Inc. Sec. Litig.*,
    2022 WL 17740302 (N.D. Cal. Dec. 16, 2022)..............................................................12

28

LP'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & APPROVAL OF PLAN OF
ALLOCATION & MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:20-cv-02353-JD
4928-0893-9346.v1

- iii

Page

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .................................................................................6

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................................12

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ...............................................................................12

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 19, 2009) .......................................................8

*In re Splunk Inc. Sec. Litig.*,
   2024 WL 923777 (N.D. Cal. Mar. 4, 2024)..........................................6, 7, 14, 16

*In re Tesla, Inc. Sec. Litig.*,
   2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) ....................................................8, 10

*In re Tesla, Inc. Sec. Litig.*,
   No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023)................................8

*In re Veritas Software Corp. Sec. Litig.*,
   496 F.3d 962 (9th Cir. 2007) ...............................................................................16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018) .................................................................................4

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   2020 WL 4212811 (N.D. Cal. July 22, 2020).....................................................10

*Jaffe v. Household Int'l, Inc.*,
   No. 1:02-cv-05893, ECF 1611, 2267 (N.D. Ill. Nov. 10, 2016)............................10

*Kastler v. Oh My Green, Inc.*,
   2022 WL 1157491 (N.D. Cal. Apr. 19, 2022) .......................................................5

*Longo v. OSI Sys., Inc.*,
   2022 U.S. Dist. LEXIS 158606 (C.D. Cal. Aug. 31, 2022).............................7, 12

*Luna v. Marvell Tech. Grp.*,
   2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) .....................................................10

*Mauss v. NuVasive, Inc.*,
   2018 WL 6421623 (S.D. Cal. Dec. 6, 2018)........................................................15

LP'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & APPROVAL OF PLAN OF ALLOCATION & MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:20-cv-02353-JD

- iv

4928-0893-9346.v1

1

2                                                                                        **Page**

3

4   *Morrison v. Ross Stores, Inc.*,
        2022 WL 17592437 (N.D. Cal. Feb. 16, 2022) ...........................................................5

5
    *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
6       688 F.2d 615 (9th Cir. 1982) ...........................................................................5, 7

7   *Redwen v. Sino Clean Energy, Inc.*,
        2013 WL 12303367 (C.D. Cal. July 9, 2013) ...........................................................8

8
    *Rodriguez v. Nike Retail Servs., Inc.*,
9       2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ...........................................................13

10  *Rodriguez v. W. Publ'g Corp.*,
        563 F.3d 948 (9th Cir. 2009) ...........................................................7, 8, 13, 16

11
    *Torrisi v. Tucson Elec. Power Co.*,
12      8 F.3d 1370 (9th Cir. 1993) ...........................................................................10

13
    *Vataj v. Johnson*,
14      2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ...........................................................15

15  **STATUTES, RULES, AND REGULATIONS**

16  15 U.S.C.
17      §78u-4(a)(6) ...........................................................................................11

18  Federal Rules of Civil Procedure
        Rule 23 ...............................................................................................16
19      Rule 23(c)(1) .........................................................................................15
        Rule 23(c)(2)(B) ....................................................................................7, 16
20      Rule 23(e)(1)(B) ......................................................................................16
        Rule 23(e)(2) ......................................................................................5, 6, 7
21      Rule 23(e)(2)(A) .......................................................................................6
        Rule 23(e)(2)(C) .......................................................................................7
22      Rule 23(e)(2)(C)(i) ....................................................................................7
        Rule 23(e)(2)(C)(ii) ..................................................................................10
23      Rule 23(e)(2)(C)(iii) .................................................................................11
        Rule 23(e)(2)(C)(iv) ..................................................................................11
24      Rule 23(e)(2)(D) ......................................................................................12

25

26

27

28

1
2                                                                                          **Page**
3
    **SECONDARY AUTHORITIES**
4
    Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024*
5        *Full-Year Review*, (NERA Jan. 22, 2025)
6        ............................................................................................................................14
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE THAT at 10:00 a.m. on October 9, 2025, before the Honorable James Donato, at the United States District Court, Northern District of California, Phillip Burton Federal Building & United States Courthouse, Courtroom 11, 19th floor, 450 Golden Gate Avenue, San Francisco, CA 94102, lead plaintiff Adam Y. Ali ("Lead Plaintiff") will and hereby does respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of a judgment granting final approval of the proposed Settlement and entry of an order granting approval of the proposed Plan of Allocation.

This Motion is based on the following Memorandum of Points and Authorities, as well as the accompanying Declaration of Shawn A. Williams in Support of Final Approval of Class Action Settlement; Approval of Plan of Allocation; and an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Williams Declaration" or "Williams Decl."), with attached exhibits, all prior pleadings and papers in this Action, arguments of counsel, and such additional information or argument as may be required by the Court.

A proposed Final Judgment and Order of Dismissal with Prejudice and proposed Order granting approval of the proposed Plan of Allocation will be submitted with Lead Plaintiff's reply submission on October 2, 2025, after the September 18, 2025 deadline for Class Members to opt out of the Class or object to the Settlement or Plan of Allocation has passed.

LP'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & APPROVAL OF PLAN OF ALLOCATION & MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:20-cv-02353-JD
4928-0893-9346.v1

- 1 -

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the Court should grant final approval of the Settlement.

2.    Whether the Court should approve the Plan of Allocation.

LP'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & APPROVAL OF PLAN OF ALLOCATION & MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:20-cv-02353-JD
4928-0893-9346.v1

- 1 -

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3         The $150 million all-cash Settlement is a tremendous result for the Class.[1]  The exceptional

4    result achieved here after three years of hard-fought litigation is not just multiples greater than the

5    median percentage recovery for securities class action settlements, it represents more than 32% of

6    the estimated damages recoverable at trial.

7         The Settlement was agreed to only after the proceedings had reached a stage where a

8    careful evaluation of the merits was weighed against the benefits of the Settlement to the Class.

9    For example, Lead Plaintiff had, among other things: (i) filed a detailed Consolidated Class Action

10   Complaint for Violation of the Federal Securities Laws ("Complaint") (ECF 63); (ii) successfully

11   partially defeated Defendants' motion to dismiss the Complaint; (iii) opposed and defeated

12   Defendants' motion for partial reconsideration of the motion to dismiss order; (iv) prepared and

13   served initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1)(A); (v) prepared

14   and served discovery to Defendants and non-parties, met and conferred, and briefed a dispute

15   concerning the scope of discovery; (vi) obtained and reviewed over 138,000 pages of documents

16   from Defendants and non-parties; (vii) responded to discovery requests from Defendants; and (viii)

17   engaged in extended negotiations under the supervision of former U.S. District Judge Layn R.

18   Phillips of Phillips ADR Enterprises ("Judge Phillips"), which mediation process included the

19   exchange of detailed mediation statements and culminated in a mediator's proposal that the Parties

20   accepted.  Williams Decl., ¶15.  There is no question that as a result of these extensive efforts,

21   Lead Plaintiff and Lead Counsel had a thorough understanding of the relative strengths and

22   weaknesses of the Class's claims and the propriety of settlement.

23        While Lead Counsel believes the Class's claims have significant merit, from the outset and

24   throughout the Action, Defendants adamantly denied liability and asserted they possessed absolute

25

26   [1]    The terms of the Settlement are set forth in the Stipulation of Settlement dated July 17, 2023
     ("Stipulation") (ECF 127-2).  All capitalized terms not defined herein shall have the same meaning

27   set forth in the Stipulation and in Lead Plaintiff's Notice of Renewed Unopposed Motion and
     Unopposed Motion for Preliminary Approval of Proposed Settlement and Memorandum of Points

28   and Authorities in Support Thereof ("Renewed Preliminary Approval Memorandum") (ECF 127).

1    defenses to the Class's claims.  Indeed, Defendants moved to dismiss Lead Plaintiff's Complaint,

2    arguing that Lead Plaintiff failed to plead: (i) an actionable misrepresentation or omission;

3    (ii) scienter; and (iii) loss causation.  ECF 78.  The Court granted in large part Defendants' motion

4    to dismiss, dismissing former defendant Steckelberg as well as all but one of the fifteen alleged

5    misstatements.  ECF 86.  Defendants undoubtedly aimed to get the final alleged misstatement

6    dismissed at summary judgment or at trial.

7        Lead Plaintiff fully supports the Settlement.  *See* Declaration of Adam Y. Ali ("Ali Decl."),

8    ¶9, attached as Ex. A to the Williams Declaration.  The Class's reaction to date similarly reflects

9    approval of the Settlement.  Robust notice was provided to potential Class Members pursuant to

10   the Order Re Preliminarily Approval and Notice ("Preliminary Approval Order") (ECF 128),

11   commencing June 18, 2025.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination,

12   Publication, Digital Media Campaign, Establishment of Call Center Services and Website, and

13   Requests for Exclusion Received to Date ("Murray Decl."), ¶¶4-13, attached as Ex. C to the

14   Williams Declaration.  While the September 18, 2025 deadline to object to the Settlement and Plan

15   of Allocation has not yet passed, to date no objections have been received.[2]

16       Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which

17   was detailed in the Notice of Pendency and Proposed Settlement of Class Action ("Notice").  The

18   Plan of Allocation governs how claims will be calculated and how Settlement proceeds will be

19   distributed among Authorized Claimants.  The Plan of Allocation is based on the analysis of Lead

20   Plaintiff's damages expert and subjects all Class Members to the same formula for calculating out-

21   of-pocket damages, *i.e.*, the difference between what Class Members paid for their Zoom common

22   stock or options during the Class Period and what they would have paid had the alleged

23   misstatements and omissions not been made.

24       In short, the $150 million Settlement and the Plan of Allocation are fair and reasonable.

25   The Settlement is an exceptional result for the Class, and deserves Court approval.

26

27   _____
     [2]   Lead Counsel will address any timely objections in its reply brief, which is due on October 2,
28   2025.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

The initial complaint was filed on April 7, 2020.  ECF 1.  On November 4, 2020, the Court appointed Adam Ali as lead plaintiff and Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel") as lead counsel.  ECF 56.  Lead Plaintiff filed the Complaint on December 23, 2020, asserting claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against all Defendants and former defendant Kelly Steckelberg.  ECF 63.

On May 20, 2021, Defendants and Ms. Steckelberg moved to dismiss the Complaint.  ECF 78.  Lead Plaintiff opposed Defendants' motion on July 9, 2021 (ECF 80), and Defendants and Ms. Steckelberg filed their reply on August 9, 2021 (ECF 82).  On February 16, 2022, the Court denied in part and granted in part the motion.  ECF 86 ("MTD Order").  The MTD Order dismissed 14 of the 15 alleged misstatements and dismissed Ms. Steckelberg from the Action.  On March 14, 2022, Defendants moved for partial reconsideration of the MTD Order (ECF 90), and Lead Plaintiff opposed the motion.  ECF 92.  The Court denied the motion on March 8, 2023.  ECF 95.

On May 23, 2022, the Parties, their counsel, and representatives of Defendants' D&O insurance carriers attended an all-day mediation with Judge Phillips.  Prior to the mediation, the Parties submitted mediation statements.  That mediation took place and good faith negotiations ensued, but the Parties were not able to resolve the case.  The Parties continued their mediation efforts throughout 2022 and into 2023 with the assistance of Judge Phillips while simultaneously litigating the Action.  On March 8, 2023, the Court denied the motion for reconsideration of the MTD Order.  Thereafter, the Parties engaged in document discovery, with documents produced by Defendants and third parties.  In total, Lead Plaintiff obtained and reviewed over 138,000 pages of documents.  Williams Decl., ¶¶15, 39.

Ultimately, in June 2023, following a mediator's proposal from Judge Phillips, the Parties reached an agreement in principle to settle the Action for $150 million.  The Parties then negotiated

1   the documentation of their agreement, and on October 18, 2023, Lead Plaintiff filed his unopposed

2   motion for preliminary approval of the Settlement.  ECF 112.[3]

3       The Parties appeared before the Court on June 13, 2024, and although the Court denied

4   preliminary approval of the Settlement because it sought a more "robust" digital notice program,

5   it found that "the settlement amount looks okay" (June 13, 2024 Tr. p 3:20), and "[e]verything else

6   is fine" (*id.*, 6:19).  *See also id.* at 4:17 ("it looks actually okay").  *See* ECF 122.

7       On July 18, 2024, Lead Plaintiff submitted his revised notice plan, and, on March 24, 2025,

8   pursuant to the Court's directive on March 10, 2025, Lead Plaintiff refiled his motion for

9   preliminary approval of the Settlement.  The Court granted the motion on May 28, 2025.  ECF

10   128.  Notice was sent to the Class beginning on June 18, 2025.  *See* Murray Decl., ¶4.

11  **III.**    **STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS**

12

13      **A.**    **Class Certification Remains Appropriate**

        In granting preliminary approval, the Court found this case appropriate for class

14   certification for settlement purposes, and appointed Lead Plaintiff as class representative and

15   Robbins Geller as class counsel.  ECF 128, ¶¶4-6.  Because nothing has changed since preliminary

16   approval that would undermine the Court's conclusion, class certification for settlement purposes

17   remains appropriate.  *See Fleming v. Impax Lab'ys. Inc.*, 2022 WL 2789496, at *4 (N.D. Cal. July

18   15, 2022).

19      **B.**    **The Settlement Warrants Final Approval**

20       The Ninth Circuit recognizes a """"strong judicial policy that favors settlements, particularly

21   where complex class action litigation is concerned."""  *Campbell v. Facebook, Inc.*, 951 F.3d 1106,

22   1121 (9th Cir. 2020).[4]  "Deciding whether a settlement is fair is . . . best left to the district judge."

23   *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597,

24

25

---

26  [3]    In accordance with the Stipulation, the Settlement was fully funded by July 27, 2023.  As of 30 days following the date of preliminary approval of the Settlement, June 28, 2025, the Settlement

27  Fund had earned gross interest of $14,715,218.88 for the benefit of the Class.

    [4]    Citations are omitted and emphasis is added throughout unless otherwise indicated.

28

611 (9th Cir. 2018). Courts, however, should not convert settlement approval into an inquiry into the merits, as "'the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties.'" *Kastler v. Oh My Green, Inc.*, 2022 WL 1157491, at *3 (N.D. Cal. Apr. 19, 2022) (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)). Likewise, "[i]n reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class." *Morrison v. Ross Stores, Inc.*, 2022 WL 17592437, at *3 (N.D. Cal. Feb. 16, 2022).

Federal Rule of Civil Procedure ("Rule") 23(e) requires judicial approval for the settlement of claims brought as a class action and provides "the court may approve [a proposed settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is "fair, reasonable, and adequate," the Court must

> consider[] whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Id.*

In addition to the Rule 23(e)(2) considerations, courts in the Ninth Circuit consider the following factors when examining whether a proposed settlement is fair, reasonable, and adequate:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

As the Court previously found in the Preliminary Approval Order, subject to further consideration at the Settlement Hearing, the Settlement was fair, reasonable, and adequate. *See*

ECF 128, ¶1.  The Court's conclusion on preliminary approval is equally true now, as nothing changed between May 28, 2025 and the present.  *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel equally in favor of final approval now.").

### C.    The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)

#### 1.    Rule 23(e)(2)(A): Lead Plaintiff and His Counsel Have Adequately Represented the Class

Lead Plaintiff and Lead Counsel more than adequately represented the Class as required by Rule 23(e)(2)(A).  In the Ninth Circuit, "'adequacy of representation . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *In re Splunk Inc. Sec. Litig.*, 2024 WL 923777, at *12 (N.D. Cal. Mar. 4, 2024) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)). Lead Counsel is highly qualified and experienced in securities litigation, *see* www.rgrdlaw.com, actively pursued the claims of Zoom investors in this Court, and zealously advocated for the Class's best interests throughout the Action.  *See generally* Williams Decl.; *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding this factor satisfied where lead counsel "has significant experience in securities class action lawsuits").  The Settlement is the result of the diligent prosecution of this Action for over three years, including briefing a motion to dismiss and motion for partial reconsideration of the motion to dismiss order, engaging in fact discovery, negotiating discovery disputes, and engaging with experts.  *See, e.g.*, *Rentech*, 2019 WL 5173771, at *5 (finding this factor satisfied where lead counsel vigorously pursued plaintiff's claims through multiple rounds of motions to dismiss and amended complaints).

In addition, Lead Plaintiff and his counsel have no interests antagonistic to those of other Class Members; rather, Lead Plaintiff's claims "arise from the same alleged conduct: the purchase of [Zoom] stock at [impacted] prices based on Defendants' alleged . . . misstatements."  *Id.* Accordingly, Lead Plaintiff shares the common interest in obtaining the largest possible recovery

1   for Lead Plaintiff and the Class.  *See Splunk*, 2024 WL 923777, at \*12-\*13.  This factor weighs in

2   favor of final approval.

3           **2.      Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at**
                        **Arm's Length After Mediation with an Experienced Mediator**
4
5           Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length."  Fed. R. Civ.

6   P. 23(e)(2)(B).  "[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length,

7   non-collusive, negotiated resolution."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.

8   2009).    The parties here reached the Settlement only after extended formal mediation and

9   conferences with the mediator while litigation was proceeding.  Ultimately, the case was resolved

10  in June 2023 in response to a "mediator's proposal."  *See* Williams Decl., ¶¶16, 22.  Given the

11  Parties' litigation efforts, counsel undoubtedly "'had a sound basis for measuring the terms of the

12  settlement.'"  *Longo v. OSI Sys., Inc.*, 2022 U.S. Dist. LEXIS 158606, at \*11 (C.D. Cal. Aug. 31,

13  2022).  These facts demonstrate that the Settlement is the result of arm's-length negotiations and

14  "not the product of fraud or overreaching by, or collusion between, the negotiating parties."

15  *Officers for Just.*, 688 F.2d at 625.

16          **3.      Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate**
                        **Considering the Costs, Risk, and Delay of Trial and Appeal**

17          Pursuant to Rule 23(e)(2)(C), the Court considers "the costs, risks, and delay of trial and

18  appeal," and the relevant overlapping Ninth Circuit factors consider "the strength of the plaintiffs'

19  case" and "the risk, expense, complexity, and likely duration of further litigation."  Fed. R. Civ. P.

20  23(e)(2); *Churchill*, 361 F.3d at 575.  While Lead Plaintiff believes his claims have merit and that

21  the Class would prevail at class certification and on Defendants' likely summary judgment motion,

22  he nevertheless recognizes the numerous risks and uncertainties in proceeding to summary

23  judgment and trial.  In fact, securities class actions "'are highly complex and [litigating] securities

24  class litigation is notably difficult and notoriously uncertain.'"  *Hefler v. Wells Fargo & Co.*, 2018

25  WL 6619983, at \*13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285

26  (9th Cir. 2020).  *See also Splunk*, 2024 WL 923777, at \*13 (risks in establishing falsity, materiality,

27  scienter, and loss causation and damages weigh in favor of approving settlement).  As discussed

28  below, the benefits conferred on Class Members by the $150 million Settlement far outweigh the

costs, risks, and delay of further litigation, and confirm the adequacy and reasonableness of the Settlement.

### a. The Risks of Summary Judgment, Trial, and Appeal Support Approval of the Settlement

To prove liability under §10(b) of the Exchange Act, a plaintiff must establish all elements of the claim, including that the defendants were responsible for materially false and misleading statements. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Lead Plaintiff would be required to prove each of these elements to prevail, whereas Defendants would need only to succeed on one defense to defeat the entire Action. In addition, Lead Plaintiff would have to defeat *all* of Defendants' affirmative defenses. If Defendants prevailed on any of them, the case would end. Although Lead Plaintiff is confident in the strength of the evidence and abilities of Lead Counsel to prove the case, the risk of loss was still real. *See Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation "'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'""). Moreover, "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years." *Rodriguez*, 563 F.3d at 966.

In addition to challenging each element of Lead Plaintiff's claims, Defendants vehemently disputed the scope of discovery, including the relevance of documents sought, the relevant time period of responsive documents, crucial definitions, documents provided to the Federal Trade Commission, and interviews with the SEC. Williams Decl., ¶¶43-47.

The examples of plaintiffs in securities class actions litigating for years only to lose at summary judgment or trial are legion. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (summary judgment granted to defendants after eight years of litigation during which plaintiffs' counsel (Robbins Geller) worked over 100,000 hours representing approximately $40 million (in 2010 dollars)), *aff'd*, 627 F.3d 376 (9th Cir. 2010); *see also In re Tesla, Inc. Sec. Litig.*, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) and *In re Tesla, Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023) (jury verdict in favor of securities fraud defendants even after court had granted summary judgment in favor of plaintiffs on certain

1    critical elements); *Fosbre v. Las Vegas Sands Corp.*, 2017 WL 55878 (D. Nev. Jan. 3, 2017)

2    (summary judgment granted to defendants after more than six years of litigation where plaintiff's

3    counsel (Robbins Geller) incurred over $2.3 million in expenses and worked over 38,600 hours,

4    representing lost lodestar of approximately $21.4 million), *aff'd sub nom. Pompano Beach Police*

5    *& Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018).

6        Defendants have denied, and continue to deny, any liability in the case. They advanced

7    several successful arguments in their motion to dismiss disputing both liability and damages and

8    succeeded in dismissing all but one of the 15 alleged misstatements and one individual defendant.

9    Defendants maintained that there was no single industry-accepted definition of "end-to-end-

10   encryption" and that, in any event, the fact that Zoom offered end-to-end encryption for one of its

11   products rendered the remaining alleged false statement in Zoom's prospectus that Zoom "offer[s]

12   robust security capabilities, including end-to-end encryption" not false and misleading. Williams

13   Decl., ¶59.

14       Defendants likewise argued that Lead Plaintiff could not establish scienter with respect to

15   defendant Yuan, and that the April 2020 Blog Posts would be insufficient to prove any false

16   statements in Zoom's prospectus regarding Zoom's general encryption capability. *Id.*, ¶60.

17       With respect to loss causation and damages, Defendants argued that none of the purported

18   corrective disclosures revealed any new information to the market, as Zoom's access to the

19   encryption key was publicly disclosed on multiple occasions prior to the Class Period. *Id.*, ¶61.

20   Moreover, given the dramatic upward movement in Zoom's stock price following alleged

21   corrective disclosures and during and following the end of the Class Period, recoverable damages

22   might have been severely limited, if not eliminated altogether. *See id.* Lead Counsel anticipates

23   that Defendants would have continued to make these arguments and to continue challenging

24   liability and damages – supported by expert testimony – with respect to the only remaining

25   statement, on summary judgment, at trial, and on appeal.

26       Finally, Lead Plaintiff faced the risk that the jury would not credit the testimony of his

27   experts or would unduly credit the testimony of Defendants' experts. The winner of such a "'battle

28

of [the] experts'" is unpredictable.  *Davis v. Yelp, Inc.*, 2022 WL 21748777, at *4 (N.D. Cal. Aug. 1, 2022).  Settlement at this stage eliminates this risk.

### b.   The Proposed Settlement Eliminates the Additional Cost and Delay of Continued Litigation

Although this case was comprehensively litigated, much work remained and even if Lead Plaintiff prevailed at class certification, on summary judgment, and at trial, it would have taken potentially years to resolve any resulting appeals.  *See, e.g.*, *Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022) (granting final approval of securities class action settlement 7 years after it was filed, 2.5 years after a February 4, 2019 jury verdict in plaintiff's favor following trial); *Jaffe v. Household Int'l, Inc.*, No. 1:02-cv-05893, ECF 1611, 2267 (N.D. Ill. Nov. 10, 2016) (granting final approval of securities class action settlement 14 years after the case was filed and 7 years after a May 7, 2009 jury verdict for plaintiffs).

"By contrast, the Settlement provides . . . timely and certain recovery."  *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022); *see Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018) (noting the risks of proving scienter, loss causation, and damages at trial); *cf. Tesla*, No. 3:18-cv-04865-EMC (N.D. Cal.) (securities class action defendants obtaining jury verdict notwithstanding district judge granting plaintiffs' motion for summary judgment on falsity element).  The Settlement at this juncture results in an immediate, substantial, and tangible recovery, without "the cost, complexity and time of fully litigating the case" – key factors in evaluating the reasonableness of a settlement.  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  The Settlement is a superior option for the Class.

### 4.   Rule 23(e)(2)(C)(ii): The Proposed Method For Distributing Relief Is Effective

Lead Plaintiff and Lead Counsel have also made substantial efforts to notify the Class about the proposed Settlement under Rule 23(e)(2)(C)(ii).  Pursuant to the Preliminary Approval Order, more than 91,200 Summary Notices were emailed or mailed to potential Class Members and nominees; the Summary Notice was transmitted over *Business Wire*; the website created for this Action contains key documents, including the Stipulation, Notice, Proof of Claim, and Preliminary

LP'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & APPROVAL OF PLAN OF ALLOCATION & MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF – 3:20-cv-02353-JD
4928-0893-9346.v1

- 10 -

1    Approval Order, and the Court-approved digital notice program was successfully implemented.

2    *See generally*, Murray Decl.

3    The claims process here is identical to those commonly and effectively used in connection

4    with other securities class action settlements. The standard claim form requests the information

5    necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of

6    Allocation, discussed further in §IV below, will govern how claims will be calculated and,

7    ultimately, how funds will be distributed, *pro rata*, to claimants.[5]

8    **5.    Rule 23(e)(2)(C)(iii): Attorneys' Fees**

9    Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees,

10    including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the Fee

11    Memorandum, Lead Counsel seeks an award of attorneys' fees of 18.75% of the Settlement

12    Amount and expenses of $262,670.49, plus interest on both amounts. This fee request was fully

13    disclosed in the Summary Notice and Notice (Murray Decl., Exs. A (Summary Notice) and B

14    (Notice at ¶2)), approved by Lead Plaintiff (Ali Decl., ¶¶11, 14), is significantly lower than the

15    benchmark for attorneys' fee awards in this Circuit, and is reasonable under the circumstances. 15

16    U.S.C. §78u-4(a)(6). *See* Fee Memorandum, §III.B.

17    **6.    Rule 23(e)(2)(C)(iv): Other Agreements**

18    The Parties have entered into a standard supplemental agreement to the Stipulation of

19    Settlement as explained in the Stipulation (¶7.3) and Lead Plaintiff's Renewed Preliminary

20    Approval Memorandum. ECF 127 at 11-12. The agreement provides that if Class Member opt

21

22    ―――――――――――――
[5]    Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved

23    attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount will be distributed pursuant to the Plan of Allocation. *See* Stipulation, ¶5.4. These distributions shall

24    be repeated until the balance remaining in the Settlement Fund is *de minimis*. *Id.*, ¶5.9. If there are any *de minimis* residual funds that are not feasible or economical to reallocate, Lead Plaintiff

25    proposes that such funds be donated to an appropriate non-profit entity. While the Stipulation identified the Investor Protection Trust as the recipient of any *de minimis* residual funds, that

26    organization has informed Lead Counsel that it is no longer receiving residual settlement funds. Therefore, Lead Counsel requests that any *de minimis* residual funds be donated the Council of

27    Institutional Investors ("CII"). "CII is a leading voice for effective corporate governance, strong shareowner rights and sensible financial regulations that foster fair, vibrant capital markets." *See*

28    cii.org/about.

1    outs exceed a certain threshold, Defendants shall have the option to terminate the Settlement.

2    Stipulation, ¶7.3.   Such agreements are common and do not undermine the propriety of the

3    Settlement.  *See, e.g.*, *In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16,

4    2022) ("The existence of a termination option triggered by the number of class members who opt

5    out of the settlement does not by itself render the settlement unfair.").   While the Supplemental

6    Agreement is identified in the Stipulation, and the nature of the agreement is explained in the

7    Stipulation and here, the termination threshold is properly kept confidential.  *See In re Online*

8    *DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding settlement was not

9    rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact threshold, for

10   practical reasons, was kept confidential").

11            **7.      Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class
                         Members Equitably**

12            Pursuant to Rule 23(e)(2)(D), the Plan of Allocation must "treat[] class members equitably

13   relative to each other."   Fed. R. Civ. P. 23(e)(2)(D).   Assessment of the Settlement's Plan of

14   Allocation "'is governed by the same standards of review applicable to approval of the settlement

15   as a whole: the plan must be fair, reasonable and adequate.'"  *In re Omnivision Techs., Inc.*, 559

16   F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).   The Plan of Allocation details how the Settlement

17   proceeds will be distributed among Authorized Claimants and provides formulas for calculating

18   the recognized claim of each Class Member based on each such Person's transactions in Zoom

19   securities during the Class Period.   It is fair, reasonable, and adequate because all eligible Class

20   Members (including Lead Plaintiff) will be subject to the same formulas for distribution of the

21   Settlement.   *See, e.g.*, *Longo*, 2022 U.S. Dist. LEXIS 158606, at *18 ("Specifically, each

22   authorized claimant's share of the net settlement amount will be based on when the claimant

23   acquired and sold the subject securities.   Accordingly, this factor also weighs in favor of final

24   approval.").

25

26

27

28

1

**D.    The Remaining Ninth Circuit Factors Are Satisfied**

2

**1.    Discovery Completed and Stage of the Proceedings**

3

The Parties reached the Settlement at an advanced stage of the Action, after discovery was

4

underway, and as they were preparing to litigate class certification.  Discovery provided significant

5

insight into the strengths and challenges of the case, and the Parties had a thorough understanding

6

of the arguments, evidence, and potential witnesses that would inform summary judgment and

7

trial.  Williams Decl., ¶¶56-64.  There can be no question that Lead Plaintiff and Lead Counsel

8

had sufficient information to evaluate the case and the merits of the Settlement by the time it was

9

reached.  *See Foster v. Adams & Assocs., Inc.*, 2022 WL 425559, at *6 (N.D. Cal. Feb. 11, 2022)

10

(finding "[p]laintiffs were 'armed with sufficient information about the case' to broker a fair

11

settlement" given extensive discovery, years of litigation, and multiple settlement conferences).

12

This factor strongly weighs in favor of final approval of the Settlement.

13

**2.    Counsel Views This Good-Faith Settlement as Fair,
Reasonable, and Adequate**

14

15

The Ninth Circuit recognizes that parties "'represented by competent counsel are better

16

positioned than courts to produce a settlement that fairly reflects each party's expected outcome

17

in litigation.'"  *Rodriguez*, 563 F.3d at 967.   Thus, courts accord great weight to the

18

recommendations and opinions of experienced counsel.  *See Rodriguez v. Nike Retail Servs., Inc.*,

19

2022 WL 254349, at *4 (N.D. Cal. Jan. 27, 2022) (noting "the experience and views of counsel . . .

20

favors approving the settlement" and highlighting counsel's "thorough understanding of the

21

strengths and weaknesses of th[e] case and their extensive experience litigating prior . . . class

22

action cases").

23

Lead Counsel have extensive experience representing plaintiffs in securities and other

24

complex class action litigation and have negotiated numerous substantial class action settlements

25

across the country, including 5 of the Top 10 PSLRA class action recoveries of 2023 and 8 of the

26

Top 10 PSLRA class action recoveries of 2024.  As a result of this experience, and with the

27

assistance of sophisticated consultants and experts, Lead Counsel possessed a firm understanding

28

of the strengths and weaknesses of the claims by the time the Settlement was reached, and based

1  thereon, Lead Counsel concluded that the Settlement is an outstanding result for the Class. *See In*

2  *re Google Location Hist. Litig.*, 2024 WL 1975462, at *8 (N.D. Cal. May 3, 2024)

3  (recommendation of class counsel with experience in complex class action lawsuits "of a similar

4  size to the instant case" favors approval of the settlement).  Lead Plaintiff, who was active

5  throughout the litigation, authorized Lead Counsel to settle the case and supports the Settlement.

6  Ali Decl., ¶¶9-10.

7      **3.**  **The Positive Reaction of Class Members to the Settlement**

8    While the deadline to object to the Settlement is September 18, 2025, to date, no objections

9  have been received and no Class Member has opted out of the Class.  Lead Plaintiff will address

10  objections by Class Members, if any, in his reply papers.  The Class's overwhelmingly positive

11  reaction to the Settlement to date supports final approval. *See Foster*, 2022 WL 425559, at *6

12  ("[The] Court 'may appropriately infer that a class action settlement is fair, adequate, and

13  reasonable when few class members object to it.'").

14      **4.**  **The Settlement Amount**

15    The $150 million Settlement far exceeds the median securities settlement in terms of both

16  dollar amount and as a percentage of estimated damages.  As noted previously, the Settlement

17  represents more than 32% of the estimated damages recoverable at trial.  This recovery is many

18  multiples of the median percentage recovery (1.6%) for cases like this one with estimated investor

19  losses of between $400 and $599 million from January 2015 through December 2024. *See* Edward

20  Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year*

21  *Review*, at 26, Fig. 23 (NERA Jan. 22, 2025), attached as Ex. D to the Williams Declaration.

22    In light of the uncertainties with continuing this litigation, as detailed herein and in the

23  Williams Declaration, this recovery is not just fair and reasonable, it is outstanding. *Splunk*, 2024

24  WL 923777, at *16-*17 (approving settlement recovering between 5% and 20.5% of the "realistic

25  maximum damages for the Settlement Class").

26      **5.**  **The Risk of Maintaining Class Certification**

27    Class certification was not briefed when the Settlement was reached, but Lead Plaintiff

28  believes that Defendants would have opposed Lead Plaintiff's motion to certify the Class.  Even

1    if the Class was initially certified, Defendants may later have moved to decertify the Class or seek

2    to shorten the Class Period.  Rule 23(c)(1) provides that a class certification order may be altered

3    or amended at any time before a decision on the merits, which is "an inescapable and weighty risk

4    that weighs in favor of a settlement."  *Google*, 2024 WL 1975462, at *6.  This factor weighs in

5    favor of approval.

6           In sum, Lead Plaintiff and Lead Counsel together obtained an excellent result for the Class.

7    The Court should find that the Settlement is fair, reasonable, and adequate, and should grant final

8    approval.

9    **IV.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

10          In addition to seeking final approval of the Settlement, Lead Plaintiff seeks final approval

11   of the Plan of Allocation.  The Plan of Allocation is considered separately from the fairness of the

12   Settlement but is nevertheless governed by the same legal standards: the plan must be fair and

13   reasonable.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also*

14   *Vataj v. Johnson*, 2021 WL 1550478, at *10 (N.D. Cal. Apr. 20, 2021) ("'[C]ourts recognize that

15   an allocation formula need only have a reasonable, rational basis, particularly if recommended by

16   experienced and competent counsel.'") (alteration in original).  As noted, the Plan of Allocation

17   here provides an equitable basis to allocate the Net Settlement Fund among all Authorized

18   Claimants (Class Members who submit an acceptable Proof of Claim and who have a recognized

19   loss under the Plan of Allocation).  Individual claimants' recoveries will depend on when they

20   transacted in Zoom securities during the Class Period, what security they transacted in, and

21   whether and when they sold those securities.  *See* Murray Decl., Ex. B (Notice at 8-11).  Authorized

22   Claimants will recover their proportional "*pro rata*" amount of the Net Settlement Fund as

23   calculated for the type of Zoom security transacted in.  This is the traditional and reasonable

24   approach to allocating securities settlements.  *See, e.g.*, *Mauss v. NuVasive, Inc.*, 2018 WL

25   6421623, at *4 (S.D. Cal. Dec. 6, 2018) ("'A plan of allocation that reimburses class members

26   based on the extent of their injuries is generally reasonable.'").  To date there has been no objection

27   to the Plan of Allocation.  Thus, the Plan of Allocation is fair and reasonable and should be

28   approved.

## V.    NOTICE TO THE CLASS SATISFIES DUE PROCESS

A district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), and "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B).  "'[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice.'"  *Google*, 2024 WL 1975462, at *5.  The notice also must describe "'"the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."'"  *Rodriguez*, 563 F.3d at 962.  The PSLRA further requires that the settlement notice include a statement explaining a plaintiff's recovery "to allow class members to evaluate a proposed settlement."  *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007).

The notice plan satisfied Rule 23, the PSLRA, and due process.  ECF 128 at ¶¶7, 14.  The Claims Administrator has emailed or mailed over 91,200 copies of the Court-approved Summary Notice to potential Class Members and their nominees who could be identified with reasonable effort.  *See* Murray Decl., ¶11.  In addition, the Summary Notice was transmitted over *Business Wire*.  *Id.*, ¶12.  The Claims Administrator also provided all information regarding the Settlement online through the Settlement website, *id.*, ¶15, and implemented the Court-approved digital notice plan.  *Id.*, at ¶13.  The Notice provides the necessary information for Class Members to make an informed decision regarding the proposed Settlement, as required by the PSLRA.  The Notice further explains that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proofs of Claim under the Plan as described in the Notice.  The notice program here fairly apprises Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Rule 23, the PSLRA, and due process.  *See, e.g.*, *Splunk*, 2024 WL 923777, at *11-*12; *Fleming*, 2022 WL 2789496, at *5-*6; *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4 (N.D. Cal. Nov. 21, 2016).

LP'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & APPROVAL OF PLAN OF ALLOCATION & MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF – 3:20-cv-02353-JD
4928-0893-9346.v1

- 16 -

## VI.    CONCLUSION

Lead Plaintiff and Lead Counsel achieved an outstanding settlement for the Class.  Lead Plaintiff therefore respectfully requests that the Court approve the Settlement and Plan of Allocation.

DATED:  July 18, 2025                              Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS


                                             s/ Shawn A. Williams
                                          SHAWN A. WILLIAMS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
DARREN J. ROBBINS
ELLEN GUSIKOFF STEWART
PATTON L. JOHNSON
HEATHER G. GEIGER
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
elleng@rgrdlaw.com
pjohnson@rgrdlaw.com
hgeiger@rgrdlaw.com

Lead Counsel for Lead Plaintiff

LP'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & APPROVAL OF PLAN OF ALLOCATION & MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF – 3:20-cv-02353-JD
4928-0893-9346.v1

- 17 -