1   ROBBINS GELLER RUDMAN
      & DOWD LLP
2   SHAWN A. WILLIAMS (213113)
    Post Montgomery Center
3   One Montgomery Street, Suite 1800
    San Francisco, CA 94104
4   Telephone: 415/288-4545
    415/288-4534 (fax)
5   shawnw@rgrdlaw.com
          – and –
6   DARREN J. ROBBINS (168593)
    ELLEN GUSIKOFF STEWART (144892)
7   PATTON L. JOHNSON (320631)
    HEATHER G. GEIGER (322937)
8   655 West Broadway, Suite 1900
    San Diego, CA 92101-8498
9   Telephone: 619/231-1058
    619/231-7423 (fax)
10  darrenr@rgrdlaw.com
    elleng@rgrdlaw.com
11  pjohnson@rgrdlaw.com
    hgeiger@rgrdlaw.com
12
    Lead Counsel for Lead Plaintiff
13
                      UNITED STATES DISTRICT COURT
14
                     NORTHERN DISTRICT OF CALIFORNIA
15
                         SAN FRANCISCO DIVISION
16

| | |
|---|---|
| In re ZOOM SECURITIES LITIGATION | Case No. 3:20-cv-02353-JD |
| This Document Relates To: | LEAD COUNSEL'S NOTICE OF MOTION, MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4), AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | |
| | DATE: October 9, 2025 |
| | TIME: 10:00 a.m. |
| | JUDGE: Honorable James Donato |
| | CTRM: 11, 19th Floor |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     PROCEDURAL AND FACTUAL BACKGROUND.........................................3

III.    THE REQUESTED FEE IS FAIR AND REASONABLE..................................3

     A.      A Reasonable Percentage of the Fund Is the Appropriate Method for
        Awarding Attorneys' Fees in Common Fund Cases.....................................3

     B.      Factors Considered by Courts in the Ninth Circuit Support Approval of the
        Requested Fee ................................................................................................5

          1.      Lead Counsel Achieved an Excellent Result for the Class.........................7

          2.      The Litigation Was Uncertain and Highly Complex ..................................7

          3.      The Skill Required and Quality of Work.....................................................9

          4.      The Contingent Nature of the Fee and the Financial Burden
        Carried by Lead Counsel ..........................................................................10

          5.      Awards Made in Similar Cases Support the Fee Request..........................11

          6.      The Class's Reaction to Date Supports the Fee Request ...........................12

          7.      A Lodestar Cross-check Confirms that the Requested Fee Is
        Reasonable .................................................................................................13

IV.     LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE
        APPROVED .....................................................................................................15

V.      LEAD PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C.
        §78u-4(a)(4) IS REASONABLE ......................................................................16

VI.     CONCLUSION.................................................................................................17

**TABLE OF AUTHORITIES**

Page

**CASES**

*Andrews v. Plains All Am. Pipeline L.P.*,
  2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ...................................................6, 13

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................................14

*Blum v. Stenson*,
  465 U.S. 886 (1984).............................................................................................3

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).............................................................................................3

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
  2024 WL 5341197 (N.D. Cal. Dec. 4, 2024) .......................................................6

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)..................................................7, 13

*Dicker v. TuSimple Holdings, Inc.*,
  2024 WL 5181968 (S.D. Cal. Dec. 18, 2024)...................................................6, 14

*Farrell v. Bank of Am. Corp., N.A.*,
  827 F. App'x 628 (9th Cir. 2020) ........................................................................13

*Fleming v. Impax Lab'ys Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022) ...................................................7, 14

*Fosbre v. Las Vegas Sands Corp.*,
  2017 WL 55878 (D. Nev. Jan. 3, 2017)..............................................................11

*Glass v. UBS Fin. Servs., Inc.*,
  331 F. App'x 452 (9th Cir. 2009) .........................................................................5

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ..................................................................................15

*Hatamian v. Advanced Micro Devices, Inc.*,
  2018 WL 8950656 (N.D. Cal. Mar. 2, 2018)......................................................12

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)............................................... *passim*

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)..............................................................................................7

**Page**

*In re Alphabet, Inc. Sec. Litig.*,
2024 WL 4354988 (N.D. Cal. Sept. 30, 2024) ...............................................................6

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014) ...............................................................4

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .............................................................13

*In re Amkor Tech. Inc. Sec. Litig.*,
2009 WL 10708030 (D. Ariz. Nov. 19, 2009) ...............................................................4

*In re Apple Inc. Device Performance Litig.*,
2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) .............................................................6, 9

*In re Apple Inc. Sec. Litig.*,
2024 WL 4246282 (N.D. Cal. Sept. 18, 2024) ..........................................................6, 16

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .................................................................9

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .....................................................................................3, 5

*In re Broiler Chicken Antitrust Litig.*,
2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) ...................................................................7

*In re Capacitors Antitrust Litig.*,
2017 WL 9613950 (N.D. Cal. June 27, 2017) ...............................................................4

*In re Capacitors Antitrust Litig.*,
2023 WL 2396782 (N.D. Cal. Mar. 6, 2023) .................................................................6

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) .................................................................6

*In re HP Inkjet Printer Litig.*,
716 F.3d 1173 (9th Cir. 2013) .......................................................................................4

*In re Immune Response Corp. Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007).....................................................................9, 16

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .............................................................11

1

2                                                                              **Page**

3
*In re Korean Air Lines Co., Antitrust Litig.*,
4      2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ..................................................................4

5    *In re Kraft Heinz Sec. Litig.*,
6      2023 WL 11994288 (N.D. Ill. Sept. 19, 2023) ...............................................................16

7    *In re Merck & Co. Inc. Sec., Deriv. & "ERISA" Litig.*,
       2016 WL 11575090 (D.N.J. June 28, 2016) ..................................................................17
8
*In re Mylan N.V. Sec. Litig.*,
9      2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023) ..................................................................8

10   *In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
11     768 F. App'x. 651 (9th Cir. 2019) ...................................................................................3

12   *In re NFL "Sunday Ticket" Antitrust Litig.*,
       2024 WL 3628118 (C.D. Cal. Aug. 1, 2024) ...................................................................8
13
*In re Omnivision Techs., Inc.*,
14     559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................4, 6, 7

15   *In re Oracle Corp. Sec. Litig.*,
16     2009 WL 1709050 (N.D. Cal. June 19, 2009) ...............................................................10

17   *In re Pac. Enters. Sec. Litig.*,
       47 F.3d 373 (9th Cir. 1995) .............................................................................................7
18
*In re Rite Aid Corp. Sec. Litig.*,
19     396 F.3d 294 (3d Cir. 2005)..............................................................................................4

20   *In re Robinhood Outage Litig.*,
21     2023 WL 5321525 (N.D. Cal. July 28, 2023) ..................................................................4

22   *In re Tesla, Inc. Sec. Litig.*,
       2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) ..............................................................8, 11
23
*In re Tesla, Inc. Sec. Litig.*,
24     No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023)..........................................8

25   *In re Twitter Inc. Sec. Litig.*,
       2022 WL 17248115 (N.D. Cal. Nov. 21, 2022) ...............................................................6
26
*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
27     535 F. Supp. 2d 249 (D.N.H. 2007)................................................................................13

28

1

2                                                                                    **Page**

3

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ............................................... *passim*

*In re Wash. Mut., Inc. Sec. Litig*,
    2011 WL 8190466 (W.D. Wash. Nov. 4, 2011) .................................................12

*In re Wells Fargo & Co. Sec. Litig.*,
    2023 WL 11885184 (S.D.N.Y. Sept. 8, 2023) ..................................................16

*Lamartina v. VMware, Inc.*,
    2025 WL 1085566 (N.D. Cal. Mar. 31, 2025) .....................................................5

*Lopez v. Youngblood*,
    2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) .....................................................5

*McDermid v. Inovio Pharms.*,
    No. 2:20-cv-GJP (E.D. Pa. Feb. 1, 2023) ...........................................................17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................12

*Ontiveros v. Zamora*,
    303 F.R.D. 356 (E.D. Cal. 2014) ........................................................................15

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ..............................................................................13

*Purple Mountain Tr. v. Wells Fargo & Co.*,
    2023 WL 11872699 (N.D. Cal. Sept. 26, 2023) ...........................................6, 14

*Redwen v. Sino Clean Energy, Inc.*,
    2013 WL 12303367 (C.D. Cal. July 9, 2013) ....................................................15

*Robbins v. Kroger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ............................................................................9

*Savani v. URS Pro. Sols. LLC*,
    2014 WL 172503 (D.S.C. Jan. 15, 2014) ...........................................................10

*Stanger v. China Elec. Motor, Inc.*,
    812 F.3d 734 (9th Cir. 2016) ..............................................................................10

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..............................................................................16

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                                                                                          **Page**

3

4   *Vincent v. Hughes Air W., Inc.*,
        557 F.2d 759 (9th Cir. 1977) ...................................................................................3

5   *Vincent v. Reser*,
6       2013 WL 621865 ( N.D. Cal. Feb. 19, 2013) .......................................................15

7   *Vinh Nguyen v. Radient Pharms. Corp.*,
        2014 WL 1802293 (C.D. Cal. May 6, 2014) .........................................................8

8   *Vizcaino v. Microsoft Corp.*,
9       290 F.3d 1043 (9th Cir. 2002) ........................................................................4, 5, 14

10  *Wing v. Asarco Inc.*,
        114 F.3d 986 (9th Cir. 1997) ...............................................................................10
11

12  **STATUTES, RULES, AND REGULATIONS**

13  15 U.S.C.
        §78u-4(a)(4) .................................................................................................... *passim*
14      §78u-4(a)(6) .........................................................................................................4

15  **SECONDARY AUTHORITIES**

16
    Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024
17      Full-Year Review* (NERA Jan. 22, 2025)...........................................................5, 7

18

19

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2    TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

3           PLEASE TAKE NOTICE that on October 9, 2025, at 10:00 a.m., before the Honorable

4    James Donato, at the United States District Court, Northern District of California, Phillip Burton

5    Federal Building & United States Courthouse, Courtroom 11, 19th floor, 450 Golden Gate Avenue,

6    San Francisco, CA 94102, Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller"

7    or "Lead Counsel") will and hereby does respectfully move the Court for entry of an order

8    awarding attorneys' fees and providing for payment of litigation expenses and an award pursuant

9    to 15 U.S.C. §78u-4(a)(4) to Lead Plaintiff Adam Y. Ali ("Lead Plaintiff").

10          This Motion is based on the following Memorandum of Points and Authorities, as well as

11   the accompanying Declaration of Shawn A. Williams in Support of Final Approval of Class Action

12   Settlement; Approval of Plan of Allocation; and an Award of Attorneys' Fees and Expenses and

13   Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Williams Declaration" or "Williams

14   Decl."), with attached exhibits, the accompanying the Declaration of Shawn A. Williams Filed on

15   Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of

16   Attorneys' Fees and Expenses ("Robbins Geller Declaration" or "Robbins Geller Decl."), all prior

17   pleadings and papers in this Action, the arguments of counsel, and such additional information or

18   argument as may be required by the Court.

19          A proposed Order will be submitted with Lead Counsel's reply submission on October 2,

20   2025, after the September 18, 2025 deadline for Class Members to object to the motion for fees

21   and expenses has passed.

22

23

24

25

26

27

28

1

## STATEMENT OF ISSUES TO BE DECIDED

2      1.      Whether the Court should approve as fair and reasonable Lead Counsel's
3  application for an attorneys' fee award in the amount of 18.75% of the Settlement Fund (the
4  Settlement Amount, plus all interest accrued thereon).

5      2.      Whether the Court should approve Lead Counsel's request for payment of
6  $262,670.49 in litigation costs and expenses incurred by Lead Counsel in the Action, plus all
7  interest accrued thereon.

8      3.      Whether the Court should award Lead Plaintiff $48,750.00 pursuant to 15 U.S.C.
9  §78u-4(a)(4), for his time and expenses incurred in representing the Class.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

After more than three years of hard-fought litigation, Lead Counsel secured an outstanding

4

Settlement on behalf of the Class.[1]   The $150 million recovery obtained here is exceptional –

5

representing at least 32% of estimated recoverable damages in a case in which the Court dismissed

6

14 of the 15 alleged false statements in response to Defendants' motion to dismiss.

7

Lead Counsel undertook substantial risk litigating this case against a well-financed

8

corporate defendant synonymous with facilitating the continuation of commerce and basic human

9

interaction during the COVID-19 lockdowns.   At all times, Lead Counsel remained dedicated to

10

achieving an outcome in the Class's best interest – and this significant Settlement would not have

11

been achieved without Lead Counsel's tireless pursuit, skill, and advocacy on behalf of the Class.

12

Lead Counsel expended substantial resources on this case and did so without any assurance of

13

recovery.   As explained in the Final Approval Memorandum, the recovery here is many multiples

14

of the median percentage recovery for cases of this size.   As compensation for its efforts, Lead

15

Counsel respectfully requests that the Court approve the 18.75% fee Lead Plaintiff negotiated with

16

Lead Counsel.   *See* Declaration of Adam Y. Ali ("Ali Decl."), ¶6, attached as Ex. A to the Williams

17

Declaration.

18

Lead Counsel's fee request is reasonable, particularly considering counsel's substantial

19

efforts, significant achievement, and the considerable risks they faced in prosecuting this case.

20

This case was pending for over three years prior to settlement, during which Lead Counsel: (a)

21

conducted an extensive investigation; (b) drafted the Complaint; (c) briefed a motion to dismiss

22

and motion for partial reconsideration of the motion to dismiss order; (d) fought for and obtained

23

discovery from Defendants and numerous third-parties; (e) responded to discovery propounded by

24

Defendants; and (f) briefed a discovery dispute.

25

26

[1]    All capitalized terms not defined herein shall have the same meaning set forth in the Stipulation of Settlement, dated July 17, 2023 (ECF 127-2), and in Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, and Memorandum of Points and Authorities in Support Thereof (the "Final Approval Memorandum"), filed herewith.

27

28

1    Lead Counsel seeks approval of a fee award that is well below the Ninth Circuit's 25%

2 benchmark and represents exceptional value for the Class considering the excellent recovery and

3 the risks that Lead Plaintiff and Lead Counsel overcame and continued to face in the Action. *See*

4 Declaration of Professor William B. Rubenstein in Support of Plaintiffs' Motion for Attorney's

5 Fees, ¶8, attached as Ex. B to the Williams Declaration.   Lead Plaintiff is the CEO of an

6 eCommerce company and a sophisticated investor.  He negotiated Lead Counsel's fee percentage

7 and supports this request, which deserves significant weight in the analysis.  *See* §III.B.7, *infra*;

8 Ali Decl., ¶6.   Likewise, Lead Counsel's litigation expenses and charges of $262,670.49 (plus

9 interest accrued thereon) should be awarded in full, as they were reasonably and necessarily

10 incurred in the prosecution of the Litigation.  Robbins Geller Decl., Ex. C.  Finally, Lead Plaintiff

11 requests an award for his time pursuant to 15 U.S.C. §78u-4(a)(4) in connection with his

12 representation of the Class and his significant contribution to this result.

13    In accordance with the Preliminary Approval Order, over 91,200 Summary Notices have

14 been sent to potential Class Members and nominees.   *See* Declaration of Ross D. Murray

15 Regarding Notice Dissemination, Publication, Digital Media Campaign, Establishment of Call

16 Center Services and Website, and Requests for Exclusion Received to Date ("Murray Decl."), ¶11,

17 attached as Ex. C to the Williams Declaration.   The Summary Notice advised potential Class

18 Members that Lead Counsel would apply for: (i) an award of attorneys' fees in an amount not to

19 exceed 18.75% of the Settlement Amount, plus the interest earned thereon; (ii) payment of

20 litigation expenses in an amount not to exceed $400,000, together with interest earned thereon;

21 and (iii) a PSLRA award to Lead Plaintiff not to exceed $48,750.  *See* Murray Decl., Ex. A,

22 Summary Notice.[2]   The deadline set by the Court to object to the requested attorneys' fees and

23 expenses has not yet passed, but to date, no objections have been received.[3]

24

25

---

26    [2]    The digital notice provided identical information.  *See* Murray Decl., ¶13 and Exs. E-F.

27    [3]    The deadline for submitting objections is September 18, 2025.  Should any objections be
28 received, Lead Counsel will address them in its reply papers, due on October 2, 2025.

1    Lead Counsel respectfully submits that the requested fee is fair and reasonable and should
2    be granted.

3    **II.    PROCEDURAL AND FACTUAL BACKGROUND**

4    Lead Counsel has invested substantial time and expenses in the prosecution of the
5    Litigation, all in furtherance of, and resulting in, the $150 million Settlement now before the Court.
6    Consistent with this District's Procedural Guidance for Class Action Settlements ("Northern
7    District Guidelines"), the relevant history and facts are set out in Lead Plaintiff's Final Approval
8    Memorandum and the Williams Declaration and are not repeated here.  *See* Northern District
9    Guidelines, Final Approval, §2 ("If the plaintiffs choose to file two separate motions, they should
10   not repeat the case history and background facts in both motions.").  This motion simply "refer[s]
11   to the history and facts set out in the motion for final approval." *Id.*

12   **III.    THE REQUESTED FEE IS FAIR AND REASONABLE**

13   **A.    A Reasonable Percentage of the Fund Is the Appropriate Method for
14          Awarding Attorneys' Fees in Common Fund Cases**

15   The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common
16   fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's
17   fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The Ninth
18   Circuit similarly holds that "a private plaintiff, or his attorney, whose efforts create, discover,
19   increase or preserve a fund to which others also have a claim is entitled to recover from the fund
20   the costs of his litigation, including attorneys' fees."  *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759,
21   769 (9th Cir. 1977); *accord In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
22   768 F. App'x. 651, 653 (9th Cir. 2019).

23   In *Blum v. Stenson*, the Supreme Court recognized that under the common fund doctrine, a
24   reasonable fee may be based "on a percentage of the fund bestowed on the class."  465 U.S. 886,
25   900 n.16 (1984).  Although courts have discretion to employ either the percentage of recovery or
26   lodestar method (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)),
27   "'[t]he use of the percentage-of-the-fund method in common-fund cases is the prevailing practice
28   in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that

1    a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel.'"[4]  *In*

2    *re Robinhood Outage Litig.*, 2023 WL 5321525, at *5 (N.D. Cal. July 28, 2023) (Donato, J.)

3    (quoting *In re Korean Air Lines Co.*, *Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23,

4    2013)); *see also In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *2 (N.D. Cal. June 27,

5    2017) (Donato, J.) ("The percentage-of-the-fund method is preferred when counsel's efforts have

6    created a common fund for the benefit of the class."); *In re Amkor Tech. Inc. Sec. Litig.*, 2009 WL

7    10708030, at *1 (D. Ariz. Nov. 19, 2009) (percentage-of-recovery method most appropriate to

8    award attorneys' fees in securities class actions); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d

9    1036, 1046 (N.D. Cal. 2008) ("use of the percentage method in common fund cases appears to be

10   dominant").   Thus, the Ninth Circuit has expressly and consistently approved the use of the

11   percentage method in common fund cases.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

12   1047-48 (9th Cir. 2002).

13          The PSLRA likewise contemplates that fees be awarded on a percentage basis, authorizing

14   attorneys' fees and expenses to counsel that do not exceed "a reasonable percentage of the amount

15   of any damages and prejudgment interest actually paid to the class."  15 U.S.C. §78u-4(a)(6); *see*

16   *also In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014)

17   ("'Congress plainly contemplated that percentage-of-recovery would be the primary measure of

18   attorneys' fees awards in federal securities class actions.'"); *In re Rite Aid Corp. Sec. Litig.*, 396

19   F.3d 294, 300 (3d Cir. 2005) ("[T]he percentage-of-recovery method was incorporated in the

20   [PSLRA].").

21          The rationale for compensating counsel on a percentage basis in common fund cases is

22   sound.  "[C]ourts try to . . . [tie] together the interests of class members and class counsel" by

23   "tether[ing] the value of an attorneys' fees award to the value of the class recovery. . . .  The more

24   valuable the class recovery, the greater the fees award.  And vice versa."  *In re HP Inkjet Printer*

25   *Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013).

26

27

28   _____
     [4]    Citations are omitted and emphasis is added throughout unless otherwise indicated.

The percentage-of-recovery method is particularly appropriate in common fund cases like this because "the benefit to the class is easily quantified." *Bluetooth*, 654 F.3d at 942; *see also Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009) (overruling objection based on use of percentage-of-the-fund approach). Conversely, the Ninth Circuit has recognized that the lodestar method creates perverse incentives to "expend more hours than may be necessary on litigating a case." *Vizcaino*, 290 F.3d at 1050, n.5; *Bluetooth*, 654 F.3d at 942; *see also Lopez v. Youngblood*, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("'[I]n practice, the lodestar method is difficult to apply [and] time consuming to administer.'") (quoting *Manual for Complex Litigation (Fourth)* §14.121 (2004)). *See also* Rubenstein Decl., ¶¶3, 48.

## B. Factors Considered by Courts in the Ninth Circuit Support Approval of the Requested Fee

Courts in this Circuit consider 25% of the common fund the benchmark or "starting point" for the award of fees in a common fund settlement and consider several factors to determine whether to adjust a fee award from the benchmark:

> (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check.

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *1 (N.D. Cal. Mar. 17, 2017) ("*Volkswagen* Fee Order") (citing *Vizcaino*, 290 F.3d at 1048-52).

Lead Counsel seeks a fee of 18.75% of the Settlement Fund, which is **one-fourth less** than that 25% benchmark, and presumptively reasonable. *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). In addition, it is well below the median fee of 25% for settlements between $100 million and $500 million during the years 2015-2024. *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* ("NERA Study"), at 30, Fig. 27 (NERA Jan. 22, 2025), attached as Ex. D to the Williams Declaration; Rubenstein Decl., ¶¶7-10. This request is well within the range (or indeed, below) of percentage fees that courts in this Circuit have awarded in other complex class actions. *See, e.g., Lamartina v. VMware,*

1   *Inc.*, 2025 WL 1085566, at *1 (N.D. Cal. Mar. 31, 2025) (awarding fee of 25% of $102,500,000

2   settlement); *Dicker v. TuSimple Holdings, Inc.*, 2024 WL 5181968, at *1 (S.D. Cal. Dec. 18, 2024)

3   (awarding fee of 25% of $189 million settlement); *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2024 WL

4   5341197, at *2 (N.D. Cal. Dec. 4, 2024) (awarding 29% of $200 million settlement fund); *In re*

5   *Apple Inc. Sec. Litig.*, 2024 WL 4246282, at *1 (N.D. Cal. Sept. 18, 2024) (awarding fee of 22%

6   of $490 million settlement); *In re Alphabet, Inc. Sec. Litig.*, 2024 WL 4354988, at *7 (N.D. Cal.

7   Sept. 30, 2024) (awarding fee of 19% of $350 million settlement); *Purple Mountain Tr. v. Wells*

8   *Fargo & Co.*, 2023 WL 11872699, at *4 (N.D. Cal. Sept. 26, 2023) (approving fee of 25% of $300

9   million settlement); *In re Capacitors Antitrust Litig.*, 2023 WL 2396782, at *1-*2 (N.D. Cal. Mar.

10  6, 2023) (approving cumulative 31.01% award of total $604,550,000 settlement); *In re Apple Inc.*

11  *Device Performance Litig.*, 2023 WL 2090981, at *16 (N.D. Cal. Feb. 17, 2023) (awarding 26%

12  fee in $310 million settlement); *In re Twitter Inc. Sec. Litig.*, 2022 WL 17248115, at *2 (N.D. Cal.

13  Nov. 21, 2022) (awarding 22.5% fee on $809,500,000 securities settlement); *Andrews v. Plains*

14  *All Am. Pipeline L.P.*, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) (awarding 32% of $230

15  million settlement); *Hefler*, 2018 WL 6619983, at *16 (awarding 20% of $450 million, net of

16  expenses); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533, at *1 (N.D. Cal.

17  Aug. 3, 2016) (awarding 27.5% of $576,750,000 settlement).  In fact, "in most common fund cases,

18  the award exceeds that benchmark."  *Omnivision*, 559 F. Supp. 2d at 1047.

19          A comparison to other cases, however, is merely the starting point.  In setting a fee award

20  here, the most important facts for this Court are the result and risks of this case, which exceed

21  other cases in many respects.  The outsized monetary result speaks for itself: $150 million,

22  representing nearly a third of estimated recoverable damages.  As for the risks, Lead Counsel here

23  did not have the luxury of piggybacking on a prior admitted fraud or financial restatement.  To the

24  contrary, Lead Counsel successfully litigated this case regarding ***a single actionable statement***,

25  notwithstanding the serious risk of no recovery at all.

26          As discussed below, the various factors to be considered by the Court, including the

27  outstanding result achieved and the substantial risks, support the reasonableness of the requested

28  below-benchmark 18.75% fee award in this case.

### 1.    Lead Counsel Achieved an Excellent Result for the Class

Courts have consistently recognized that the result achieved is "the most critical factor" to consider in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *8 (N.D. Cal. July 15, 2022); *Hefler*, 2018 WL 6619983, at *13. In fact, clients care most about results and would willingly pay, and are financially better off paying, a larger fee for a great result than a lower fee for a poor outcome. *See In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *3 (N.D. Ill. Dec. 1, 2021) ("Clients generally want to incentivize their counsel to pursue every last settlement dollar . . . .").

Here, against substantial risks, Lead Counsel obtained an excellent recovery for the Class, both in terms of overall amount ($150 million) and as a percentage of the estimated recoverable damages (approximately 32%) in this case. While "[a] 10% recovery of estimated damages is a favorable outcome in light of the challenging nature of securities class action cases," *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019), the $150 million recovered here goes well beyond that. To compare, there have been no more than 10 larger PSLRA settlements in the Northern District of California in the last decade. More to the point, the median recovery for securities class actions settled from 2015 through 2024 with estimated investor losses between $400 million and $599 million, was 1.6% of losses. *See* NERA Study at 26, Fig. 23.

The outstanding result obtained for the Class here strongly supports Lead Counsel's fee request. *See* Rubenstein Decl., ¶41.

### 2.    The Litigation Was Uncertain and Highly Complex

The "complexity of the issues and the risks" undertaken are also important factors in determining a fee award. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995). "'[I]n general, securities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'" *Hefler*, 2018 WL 6619983, at *13. For these reasons, in class actions, fee awards often exceed the 25% benchmark. *Omnivision*, 559 F. Supp. 2d at 1047.

Despite its ultimate success, Lead Counsel assumed significant risk at every procedural step of the litigation. *See generally*, Renewed Preliminary Approval Memorandum (ECF 127). Defendants sought outright dismissal or to limit the scope of the case at each stage. In fact, they

knocked out 14 of the 15 alleged misstatements at the motion to dismiss stage, and secured the dismissal of one of the individual defendants.  When the case entered discovery, Zoom's lawyers relentlessly opposed Lead Plaintiff's efforts to obtain relevant documents.  Williams Decl., ¶¶43-53.  Lead Plaintiff was preparing to file his motion for class certification when the Parties reached an agreement to settle the case.  Had the Court granted Lead Plaintiff's class certification motion, Defendants surely would have sought an appeal under Rule 23(f) and if that had not worked, they would have pursued summary judgment following completion of discovery.  *See, e.g.*, *In re Mylan N.V. Sec. Litig.*, 2023 WL 2711552, at \*27-\*34 (S.D.N.Y. Mar. 30, 2023) (granting summary judgment and dismissing securities fraud claims), *aff'd sub nom. Menorah Mivtachim Ins. Ltd. v. Sheehan*, 2024 WL 1613907 (2d Cir. Apr. 15, 2024).

At trial, the case would have turned largely on expert testimony concerning highly technical falsity, scienter, loss causation and damages matters, as well as the credibility of fact witnesses – many of whom would likely be represented by defense counsel and/or were still employed at Zoom.  Defendants needed only to defeat one element of Lead Plaintiff's claims to prevail, and there was a significant risk the jury would agree with Defendants' experts and find no liability, no damages, or award far less than Lead Plaintiff sought to recover.  *See, e.g.*, *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at \*2 (C.D. Cal. May 6, 2014) (noting, in securities class action, that "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law. The outcome of that analysis is inherently difficult to predict and risky"); *see also, e.g.*, *In re Tesla, Inc. Sec. Litig.*, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022); *In re Tesla, Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023) (jury verdict in favor of securities fraud defendants ***even after court granted summary judgment in favor of plaintiffs on certain critical elements***).  And even if Lead Plaintiff survived summary judgment and obtained a favorable verdict at the liability phase of trial, he would ***still*** have faced the risk of partial or complete reversal in post-trial proceedings.  *See, e.g.*, *In re NFL "Sunday Ticket" Antitrust Litig.*, 2024 WL 3628118, at \*1 (C.D. Cal. Aug. 1, 2024) (granting defendants' motion as a matter of law after class action plaintiffs obtained a jury verdict for more than \$4.6 billion after nearly nine years of litigation);

1    *Robbins v. Kroger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81

2    million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *38 (S.D.

3    Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following

4    plaintiffs' verdict), , *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp., Inc.*, 688

5    F.3d 713 (11th Cir. 2021).

6        Throughout the duration of the litigation, Defendants raised numerous challenges disputing

7    the falsity of their alleged misstatements, their scienter, and loss causation. *See In re Immune*

8    *Response Corp. Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("[T]he issue[] of

9    scienter . . . [is] complex and difficult to establish at trial."). Indeed, Defendants argued that there

10   was no single definition of "end-to-end" encryption at the time the allegedly false and misleading

11   statement was made (Williams Decl., ¶¶43, 46-47); that there was insufficient evidence to prove a

12   strong inference that Defendants intended to deceive investors (*id.* at ¶60); that none of the

13   purported corrective disclosures revealed new information to the market (*id.*, at ¶61); and that the

14   recovery of Zoom's stock price following the alleged corrective disclosures and following the end

15   of the Class Period severely limited, if not totally eliminated, the Class's damages. *Id.*

16       Thus, there existed a significant risk that class-wide recoverable damages could have been

17   far less than $150 million, including the risk of no recovery at all. *Volkswagen* Fee Order, 2017

18   WL 1047834, at *2 ("Class Counsel 'recognize there are always uncertainties in litigation[.]' It is

19   possible that 'a litigation Class would receive less or nothing at all, despite the compelling merit

20   of its claims . . . .'") (alteration in original). And any recovery absent the Settlement "'would come

21   years in the future and at far greater expense to the . . . Class.'" *Id.* The $150 million Settlement,

22   achieved in the face of these significant risks, amply supports the requested 18.75% fee award.

23                        **3.    The Skill Required and Quality of Work**

24       The quality of Lead Counsel's representation further supports the reasonableness of the

25   requested fee. Lead Counsel successfully and thoroughly litigated the case. Following resolution

26   of the motion to dismiss, Lead Counsel vigorously pursued discovery from Defendants and third

27   parties, "all of which was of great benefit to the Class." *Apple*, 2023 WL 2090981, at *14. Robbins

28   Geller is a nationally recognized leader in securities class actions and complex litigation. Robbins

Geller Decl., Ex. F.  The firm has a track record of trying cases, or settling cases at a premium.

Clients, including Lead Plaintiff, retain Lead Counsel to benefit from its significant experience

and substantial resources in order to obtain the largest possible recovery for the class in question.

*See* Ali Decl., ¶4.  Here, Lead Counsel's skill and experience brought about an exceptional result,

further supporting the requested fee award.

The standing of opposing counsel should also be weighed because such standing reflects

the challenge faced by Lead Counsel.  *See, e.g.*, *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir.

1997).  It would be an understatement to say that Defendants had experienced and talented trial

lawyers.  Indeed, Zoom put its enormous resources to work by employing one of the most well-

regarded defense firms in the country – Cooley LLP – to litigate the case day-to-day against

Robbins Geller's litigation team.  Lead Plaintiff's ability to obtain a favorable result for the Class

while litigating against this formidable defense firm and its well-heeled clients further evidences

the quality of Lead Counsel's work and weighs in favor of approving the requested fee.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

"It is an established practice to reward attorneys who assume representation on a contingent

basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all."

*Volkswagen* Fee Order, 2017 WL 1047834, at *3.  This "practice encourages the legal profession

to assume such a risk and promotes competent representation for plaintiffs who could not

otherwise hire an attorney."  *Id.*  "This incentive is especially important in securities cases."

*Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016).

"The risk of no recovery in complex cases of this sort is not merely hypothetical."  *Savani*

*v. URS Pro. Sols. LLC*, 2014 WL 172503, at *5 (D.S.C. Jan. 15, 2014).  There have been many

class actions in which counsel for plaintiffs, including Lead Counsel here, took on the risk of

pursuing claims on a contingency basis, expended thousands of hours and millions of dollars, yet

received no remuneration whatsoever despite their diligence and expertise.  *Supra*, §III.B.2.  For

example, in *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*,

627 F.3d 376 (9th Cir. 2010), a case that Robbins Geller prosecuted in this District, the court

granted summary judgment to defendants after eight years of litigation, during which plaintiff's counsel invested and lost over $7 million in out-of-pocket expenses and worked over 100,000 hours, representing a lodestar of approximately $40 million (in 2010 dollars). *See also Fosbre v. Las Vegas Sands Corp.*, 2017 WL 55878 (D. Nev. Jan. 3, 2017) (another Robbins Geller case in which summary judgment was granted to defendants after more than six years of litigation where plaintiff's counsel incurred over $2.3 million in expenses and worked over 38,600 hours, representing lodestar of approximately $21.4 million), *aff'd sub nom. Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018). In a recent PSLRA case which went to trial in this District, the jury reached a defense verdict – despite the Court granting summary judgment in favor of plaintiff on the issue of whether Elon Musk knowingly made false statements, evincing the strength of the claims. *See Tesla*, 2022 WL 1497559 & *Tesla*, ECF 671, 707; *see also In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict).

Here, Lead Counsel has received no compensation throughout the course of the Action, despite investing over 3,500 hours and incurring substantial expenses in prosecuting this case. Additional (uncompensated) work already has been undertaken in connection with the Settlement and at least hundreds of thousands of dollars in additional time will likely be required going forward in connection with the Settlement and claims administration.

Any fee award has always been contingent on the result achieved. Indeed, the only certainty was that there would be no fee without a successful result. Nevertheless, Lead Counsel committed significant resources of both time and money to vigorously prosecute this Action, and successfully brought it to a highly favorable conclusion for the Class's benefit. The contingent nature of counsel's representation thus supports approval of the requested fee.

### 5. Awards Made in Similar Cases Support the Fee Request

Lead Counsel's fee request is also supported by awards made in similar cases. As discussed in §III.B, the 18.75% fee request is below the range of fee percentages awarded in comparable settlements.

1

### 6.    The Class's Reaction to Date Supports the Fee Request

2    Courts within the Ninth Circuit also consider the reaction of the class when deciding

3 whether to award the requested fee.  *See, e.g.*, *Volkswagen* Fee Order, 2017 WL 1047834, at *4

4 (considering that "[o]nly four Class Members out of a class of approximately 475,000 objected to

5 the proposed fee award" to be "a strong, positive response from the class, supporting Class

6 Counsel's requested fees"); *In re Wash. Mut., Inc. Sec. Litig*, 2011 WL 8190466, at *2 (W.D.

7 Wash. Nov. 4, 2011) (noting, in approving fee request, that "no substantive objections to the

8 amount of fees and expenses requested were filed").  While a certain number of objections are to

9 be expected in a large class action such as this, "the absence of a large number of objections to a

10 proposed class action settlement raises a strong presumption that the terms of a proposed class

11 settlement action are favorable to the class members."  *Nat'l Rural Telecomms. Coop. v.

12 DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *Hefler*, 2018 WL 6619983, at *15 ("As

13 with the Settlement itself, the lack of objections from institutional investors 'who presumably had

14 the means, the motive, and the sophistication to raise objections' [to the attorneys' fee] weighs in

15 favor of approval.").

16    Class Members were informed in the Summary Notice and the Notice, and through the

17 digital media campaign, that Lead Counsel would move the Court for an award of attorneys' fees

18 in an amount not to exceed 18.75% of the Settlement Amount and for payment of litigation

19 expenses not to exceed $400,000, plus interest earned thereon.  Class Members were also advised

20 of their right to object to the fee and expense request, and that such objections are to be submitted

21 to the Court no later than September 18, 2025.  While this deadline has not yet passed, to date, not

22 a ***single*** objection has been received.

23    Finally, Lead Plaintiff negotiated the fee percentage sought here.  Ali Decl., ¶¶6, 11.  Lead

24 Plaintiff's approval supports granting the requested fee.  *See Hatamian v. Advanced Micro

25 Devices, Inc.*, 2018 WL 8950656, at *2 (N.D. Cal. Mar. 2, 2018) (approving fee where request

26 "reviewed and approved as fair and reasonable by Class Representatives").

27    In sum, each of the relevant factors supports the award of attorneys' fees of 18.75% of the

28 Settlement Fund.  Accordingly, this fee request is reasonable and should be approved.

### 7.    A Lodestar Cross-check Confirms that the Requested Fee Is Reasonable

While a percentage award naturally provides for a larger attorneys' fee in a higher recovery case, a lodestar cross-check does not.  A lodestar cross-check suffers from two significant shortcomings.  First it is indifferent to the results achieved.  And second, it punishes efficiency and rewards inefficiency.  Rubenstein Decl., §III.

Despite these significant shortcomings, courts may (but are not required to) cross check the proposed award against counsel's lodestar.  *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (refusing to mandate "a [cross-check] requirement"); *Plains All Am.*, 2022 WL 4453864, at *2 (finding cross check unnecessary, given the circumstances); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (noting that "analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit").  When the lodestar is used as a cross check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys."  *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *accord Volkswagen* Fee Order, 2017 WL 1047834, at *5 n.5 (overruling objection that "the information provided in support of Class Counsel's lodestar amount as inadequate" because "'it is well established that "[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records"'") (alterations in original); *Hefler*, 2018 WL 6619983, at *14 (confirming that "'trial courts need not, and indeed should not, become green-eyeshade accountants'" in context of lodestar cross check, and noting that "the Court seeks to 'do rough justice, not to achieve auditing perfection'").

"[C]ourts 'calculate[] the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation.'"  *Rentech, Inc.*, 2019 WL 5173771, at *10 (second alteration in original) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).  As detailed here and in the Robbins Geller Declaration, over 3,500 hours of attorney and para-

1   professional time were expended prosecuting the Action for the benefit of the Class. The hours

2   spent to obtain the results are more than reasonable. And this does not include any additional

3   hours in connection with the administration of the Settlement, which (if past cases are prologue)

4   may reach or even exceed $1 million of additional lodestar. As detailed in the Williams

5   Declaration, there is no question that the hours expended were necessary. And as detailed in the

6   Rubenstein Declaration, the hours expended resulted in an efficient, yet excellent outcome for the

7   Class. Rubenstein Decl., ¶32.

8       Lead Counsel's hourly rates, too, are reasonable. Rubenstein Decl., ¶27. In fact, Lead

9   Counsel's rates have recent judicial approval in this District. *See Purple Mountain Tr.*, 2023 WL

10  11872699, at *5 (this Court approving attorneys' fee with Robbins Geller's prevailing hourly

11  rates); *Fleming*, 2022 WL 2789496, at *9 (Judge Gilliam approving hourly rates of $760 to $1,325

12  for partners, $895 to $1,150 for counsel, and $175 to $520 for associates, and finding Robbins

13  Geller's "billing rates in line with prevailing rates in this district for personnel of comparable

14  experience, skill, and reputation").

15      The last piece of the cross-check analysis is the risk multiplier. Lead Counsel's lodestar,

16  derived by multiplying the hours spent on the Action by each attorney and litigation professional

17  by their current hourly rates, is $2,604,766.50. Accordingly, the requested fee of 18.75%

18  represents a multiplier of just over 10 on Lead Counsel's lodestar.[5] "[C]ourts regularly award

19  lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."

20  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (citing *Vizcaino*, 290 F.3d at

21  1052-54); *TuSimple*, 2024 WL 5181968, at *2 (awarding 25% of $189 million settlement which

22  represented a 7.92 multiplier to the aggregate lodestar). Rubenstein Decl., §III.B-C. Given the

23  risk undertaken by Lead Counsel and the extraordinary results achieved for the Class, a risk

24  multiplier of ten is reasonable here.

25

26  ─────────────────
    [5]   The actual realized multiplier has already, and will continue to, decline over time as Lead
27  Counsel expends additional attorney time to preparing final approval materials and overseeing
    processing of claims by the Claims Administrator and the distribution of the Net Settlement Fund
28  to Class Members with valid claims. No additional counsel fees will be sought for such work.

LEAD COUNSEL'S NOTICE OF MOTION, MOTION FOR AWARD OF ATTYS' FEES & EXPENSES
& AWARD TO LEAD PLAINTIFF, PURSUANT TO 15 U.S.C. §78u-4(a)(4) - 3:20-cv-02353-JD          - 14 -
4903-0031-0099.v1

1     Each of the relevant factors supports the award of attorneys' fees of 18.75% of the

2  Settlement Fund.  Accordingly, this fee request is reasonable and should be approved.

3  **IV.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED**

4

5     Lead Counsel further requests an award of its litigation expenses in the amount of

6  $262,670.49 (less than the $400,000 contained in the Summary Notice).  These expenses were

7  incurred in prosecuting and resolving the Action on behalf of the Class.  Robbins Geller Decl., Ex.

8  C.

9     "Attorneys who create a common fund are entitled to the reimbursement of expenses they

10  advanced for the benefit of the class."  *Vincent v. Reser*, 2013 WL 621865, at *5 ( N.D. Cal. Feb.

11  19, 2013).  In assessing whether counsel's expenses are compensable in a common fund case,

12  courts look to whether the particular costs are the type of "out-of-pocket expenses that 'would

13  normally be charged to a fee paying client.'"  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.

14  1994); *Hefler*, 2018 WL 6619983, at *16.  Here, the costs, charges, and expenses sought by Lead

15  Counsel, *i.e.*, those associated with, among other things, consultants and investigators, document

16  management, travel, mediation, service of process, and online legal and factual research (including

17  transcripts) – are of the type that are routinely charged to hourly paying clients and, therefore,

18  should be reimbursed out of the common fund.  *See, e.g.*, *Vincent*, 2013 WL 621865, at *5

19  (granting award of costs and expenses for "'three experts and the mediator, photocopying and

20  mailing expenses, travel expenses, and other reasonable litigation related expenses'"); *Ontiveros

21  v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (granting expense reimbursement to class counsel

22  and noting "itemized costs relating to . . . expert fees" were "reasonable litigation expenses");

23  *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *9 (C.D. Cal. July 9, 2013)

24  (reimbursing "expenses for mediation fees, copying, telephone calls, expert expenses, research

25  costs, travel, postage, messengers, and filing fees").

26     Because these costs, charges, and expenses were reasonable and necessary, Lead Counsel

27  respectfully request an award in the amount of $262,670.49.  To date, no objections to this request

28  have been filed.

1

**V.    LEAD PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE**

2

3        Lead Plaintiff seeks an award of $48,750 pursuant to 15 U.S.C. §78u-4(a)(4), in connection

4    with his representation of the Class, as detailed in the Ali Decl.  Under the PSLRA, a class

5    representative may seek an award of reasonable costs and expenses directly relating to the

6    representation of the class.  *See* 15 U.S.C. §78u-4(a)(4).  Factors to consider include, "'the actions

7    the plaintiff has taken to protect the interests of the class, the degree to which the class has

8    benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing

9    the litigation'" among others.  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (alteration

10   in original).

11       Consistent with the Northern District Guidelines, Lead Plaintiff has submitted a declaration

12   herewith setting forth the time and effort he spent conducting an investigation into the facts and

13   circumstances giving rise to the litigation, vetting counsel, negotiating an arrangement favorable

14   to the Class, monitoring the Action and directing Lead Counsel upon his appointment as Lead

15   Plaintiff, including overseeing litigation strategy, collecting and reviewing materials for discovery,

16   and overseeing settlement negotiations and case filings with Lead Counsel, all of which provided

17   significant value to the Class.  *See* Ali Decl., ¶¶4-13.  Lead Plaintiff was actively involved through

18   every step of the Action, and accordingly, based upon the time he expended prosecuting this

19   Action, requests an award of $48,750 pursuant to 15 U.S.C. §78u-4(a)(4), in connection with his

20   representation of the Class.  Judge Gonzalez Rogers recently recognized that "[b]ecause the laws

21   are not self-enforcing, it is appropriate to give incentives to those who come forward with little to

22   gain and at personal risk and who work to achieve a settlement that confers substantial benefits on

23   others."  *Apple*, 2024 WL 4246282, at *7 (approving $29,946.40 award to lead plaintiff pursuant

24   to 15 U.S.C. §78u-4(a)(4)); *see also Immune Response*, 497 F. Supp. 2d at 1173-74 (approving a

25   $40,000 §78u-4(a)(4) award to lead plaintiff representing rate based on his compensation as a

26   CEO); *In re Kraft Heinz Sec. Litig.*, 2023 WL 11994288, at *2 (N.D. Ill. Sept. 19, 2023) (granting

27   §78u-4(a)(4) awards of as much as $73,950); *In re Wells Fargo & Co. Sec. Litig.*, 2023 WL

28   11885184, at *2 (S.D.N.Y. Sept. 8, 2023) (granting §78u-4(a)(4) awards of as much as $62,650);

1   *McDermid v. Inovio Pharms.*, No. 2:20-cv-GJP (E.D. Pa. Feb. 1, 2023) (ECF 166) (Order

2   Awarding Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-

3   4(a)(4) at ¶8 (granting §78u-4(a)(4) awards of $77,450 and $75,712.50); *In re Merck & Co. Inc.*

4   *Sec., Deriv. & "ERISA" Litig.*, 2016 WL 11575090, at *5 (D.N.J. June 28, 2016) (granting §78u-

5   4(a)(4) awards of $10,000 and $98,712.50).

6   **VI.    CONCLUSION**

7         Lead Counsel's efforts on behalf of the Class resulted in an outstanding result under any

8   measure.  Based on the foregoing and upon the entire record herein, Lead Plaintiff and Lead

9   Counsel respectfully request that the Court: (i) award Lead Counsel attorneys' fees of 18.75% of

10  the Settlement Amount and payment of $262,670.49 in litigation expenses, plus interest on both

11  amounts at the same rate as earned by the Settlement Fund; and (ii) award $48,750 pursuant to 15

12  U.S.C. §78u-4(a)(4) to Lead Plaintiff.

13   DATED:  July 18, 2025                        Respectfully submitted,

14                                               ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
15                                               SHAWN A. WILLIAMS

16

17                                                      s/ Shawn A. Williams
                                                 SHAWN A. WILLIAMS
18
                                                 Post Montgomery Center
19                                               One Montgomery Street, Suite 1800
                                                 San Francisco, CA  94104
20                                               Telephone:  415/288-4545
                                                 415/288-4534 (fax)
21                                               shawnw@rgrdlaw.com

22

23

24

25

26

27

28

1

2                                                    ROBBINS GELLER RUDMAN
                                                     & DOWD LLP
3                                                    DARREN J. ROBBINS
                                                     ELLEN GUSIKOFF STEWART
4                                                    PATTON L. JOHNSON
                                                     HEATHER G. GEIGER
5                                                    655 West Broadway, Suite 1900
                                                     San Diego, CA  92101-8498
6                                                    Telephone:  619/231-1058
                                                     619/231-7423 (fax)
7                                                    darrenr@rgrdlaw.com
                                                     elleng@rgrdlaw.com
8                                                    pjohnson@rgrdlaw.com
                                                     hgeiger@rgrdlaw.com

9                                                    Lead Counsel for Lead Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28