**Pages 1 - 15**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

```
                              )
IN RE:  ZOOM SECURITIES       )
LITIGATION                    )    NO. C 20-02353 JD
                              )
```

San Francisco, California
Thursday, October 9, 2025

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway - Suite 1900
San Diego, California  92101
BY:  **DARREN J. ROBBINS, ATTORNEY AT LAW**
**ELLEN GUSIKOFF, ATTORNEY AT LAW**

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street - Suite 1800
San Francisco, California  94104
BY:  **SHAWN A. WILLIAMS, ATTORNEY AT LAW**

For Defendant:

COOLEY LLP
375 Hanover Street
Palo Alto, California  94304
BY:  **PATRICK E. GIBBS, ATTORNEY AT LAW**

Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
U.S. District Court - Official Reporter

**Thursday - October 9, 2025**                              **10:26 a.m.**

### P R O C E E D I N G S

---000---

THE CLERK:  Calling civil 20-2353, Drieu versus Zoom Video Communications.

(Pause in the proceedings.)

THE CLERK:  Podium.  Counsel, state your appearances for the record.

MR. ROBBINS:  Your Honor, Darren Robbins on behalf of the lead Plaintiff together with my partner Shawn Williams and Ellen Gusikoff.

MR. GIBBS:  Good morning, Your Honor, Patrick Gibbs from Cooley for the Defendants.

THE COURT:  Okay.  I will take this in two parts.  The first part, which is the part that goes to the class members, all that seems fine.  Notice seems fine.  Everything else seems fine -- one of you should stay up there -- so, I'm going to approve that.

The attorneys' fees are a different matter.  Now, I'm going to set the table by saying of all the firms in this great country, Robbins Geller knows beyond question that I believe in paying Plaintiffs' lawyers.  I can think of at least two cases that involve very sizable awards to Robbins Geller.  One was my *Facebook* biometric case and the other was *Purple Mountain* and *Wells Fargo*.  So, it's not an issue of being stingy.  I'm not.

The problem I have, though, is I don't believe in lottery tickets either.  And the fee award that you are asking for in this case, which is 18.75 percent cut of the total settlement corpus of $150 million, is a lottery ticket.  That's $28 million.  And your lodestar, your actual billable time -- which, you know, I'm sure you extracted every potential penny for that.  I'm not criticizing it -- but what I'm trying to point out is that even under your own -- here is everything we spent broad net, your actual fees came to 2.8 million.  That's a multiplier of almost 11.

I'm not going to do that.  That's just not -- the word "unconscionable" comes to mind more as a conversational term as opposed to a technical term but, I mean, that's just so far beyond the pale.  I love Bob Rubenstein -- Bill Rubenstein.  I like him.  You know, I have met him at MDL conferences.  I have great respect for his work.  That pitch doesn't do it.  Okay.

Twenty-five percent of settlements is a benchmark.  It is not binding.  It is not a rule.  It is a benchmark, but that's why we do the cross-check because cross-checks make sure that, you know, the 25 percent benchmark -- plus or minus 5 percent on either end -- doesn't result in a windfall.  This is a windfall.  That money should go to the class, not to the lawyers.

Now, you will get paid.  And I will even consider, you know, the multiplier I gave in the Wells Fargo/Purple Mountain

case, which was a significantly larger settlement -- significantly larger settlement.  I gave your firm a 2.5 multiplier, 2.5X multiplier.  And that was a real case in terms of being hard fought.

That settled -- and my recollection was that settled very close to the eve of trial, and I remember all the steps leading up to that with discovery issues and motions to dismiss and so on.  So, I just can't do it.  You tell me what you think a reasonable multiplier is that's much less than 11.

**MR. ROBBINS:**  Your Honor, if I may --

**THE COURT:**  Yeah.

**MR. ROBBINS:**  May I address the issues you've raised?

**THE COURT:**  Yes.

**MR. ROBBINS:**  Again, Darren Robbins on behalf of the lead Plaintiff.  And I understand the Court's concerns.  I have read this Court's decisions in cases like *Robinhood* and *Corcept, TerraVia*.

Your Honor has a long history of addressing attorneys' fees and class action settlements in an effort to ensure that they are what they were designed to be as opposed to what they can devolve into.

And so, I have read those decisions.  And, you know, they emanate -- speaking -- moving from the settlement, which your court -- Your Honor has indicated is satisfactory and it certainly is --

THE COURT:  Yeah, it's fine, yeah.

MR. ROBBINS:  As a percentage -- Your Honor, I would suggest as a percentage of the harm, it may be the largest recovery as a percentage of damages ever obtained in this district.  It is certainly in the top ten in absolute dollars.

But, of course, Your Honor, if someone comes to you with a $2 billion recovery and the damages are 200 billion, it's quite less impressive than it might otherwise appear to be.

And as Your Honor pointed out, the *Wells Fargo* case -- *Purple Mountain* -- I will refer to it as Your Honor did -- was an extraordinary result.  But as Your Honor also knows, Wells Fargo is a $250 billion market cap company with 3 billion shares outstanding.

This company during the relevant period had between 120 and 165 million, so, less than 10 percent the size.  And, in fact --

THE COURT:  Well, now the current valuation is well over a billion with a B.

MR. ROBBINS:  This company, 2.4 billion, 300 million shares approximately outstanding.

THE COURT:  But let me just jump in.  As historic as it may be -- and I'm not taking a position on that -- but as historic as you think it may be, I want to reward you.  I will give you 2X.  I will give you 2-and-a-half X.  You might even talk me into 3X.  You are not going to talk me into 8, 9, 10,

11X.  That's just not going to happen; okay.  It's not going to happen.

So, if you want to give me a figure between 1 and 5 for me to think about -- and the higher it goes, the more you are going to have to persuade me it's worth it -- I'm happy to consider it.  I will just pick my own otherwise.  I just wanted to give you a chance to do something that you hate to do, which is bargain against yourself.  But I'm going to require you to do that because your initial offer is declined.

**MR. ROBBINS:**  Okay.  If I can, Your Honor, just talk about two Ninth Circuit cases and Your Honor's decision in *In Re: Capacitors*.  And, of course, Your Honor, has discretion.

**THE COURT:**  I think that's a poor benchmark for you and I will tell you why.  I got that case the week -- the year that I walked in as a United States District Judge in 2014.  I just closed the last constituent cases -- it was an MDL, as you know.  I just closed the last constituent cases three weeks ago.

So, now they weren't very active in the last year or two.  My point is that case has been on my desk every day, all day basically since I became a judge in 2014.  It involved at least three trials.  It involved multiple appeals.  It was a scorched earth, no holds bar, slugfest between the Plaintiffs and a good dozen highly, well-funded firms who were not going to go down unless they went down with someone going with them, swinging.

And so, that case is not even remotely comparable to this case in terms of the amount of work the Plaintiffs' lawyers had to do, the expense that they funded, the risk that they took and the magnitude of the recovery.  That case -- after all that hard work and all that hard fighting, my recollection is -- you can't tie my hands to this -- my recollection is Plaintiffs' lawyers in that case spent tens of millions of their own dollars on it -- was over $500 million.  I think it was $600 million recovery.

So, here is the issue:  That generous fee award that I gave in that case reflected all of that extraordinary hard work.  That was historic.  There is no question in my mind about that.  That was a historically hard fought, well won, successful case for the Plaintiffs.

But there was also a lodestar check there.  They did not get a 5, 6, 7, 8, 9, 10, 11 multiplier.  They didn't.  And you are not either.  So, I really don't need to hear about any Ninth Circuit cases or my legendary work in other departments. I just want to hear from you.  Should it be 2?  Should it be 3? Should it be 4?

**MR. ROBBINS:**  Really, Your Honor, it's the -- what is the measure of success because you make my point, I think.  As you point out, the case has gone on for a decade.  Tireless effort.  Endless back and forth.  And what is the measure? Because the people ultimately who the Court is looking out for

and I am in charge of looking out for is the absent class members; correct?

And, theoretically, if we can return 60 days after filing 99 cents on the dollar of everything they lost, would that not be the hallmark of success?

And so, I understand the point that the Court views it, understandably, as what is the effort, how many years, how much in cash is vested -- and I can address that -- but my point about *In Re: Capacitors* is not the ultimate outcome of that case but rather what Your Honor said when approving the first of the settlements, Your Honor, back in 2017.

2017 Westlaw 961-3950 at star 6, you said the following -- and it's a very important observation that I think reflects the *Vizcaino versus Microsoft* teachings years before, which is a case Your Honor cites and every judge in this district cites in connection with fee jurisprudence -- and what you said is:  "A lodestar cross-check may be used to ensure that the class counsel has done the work necessary to justify the fees sought."

And in citing that you -- in saying that you cited *Microsoft, Vizcaino*, but you also cited a Third Circuit case called *Rite Aid*.  *Rite Aid* is another interesting case in the sense that it is a securities class action.  It is a Third Circuit case penned by the chief judge.  And interesting enough, it reversed the fee award there, which was over 4.

THE COURT: Remember that in the federal courts chief judge is not a merits based position. It is based on seniority and time of service. Go ahead.

MR. ROBBINS: Judge Scirica wrote that opinion. And my point in saying that is the Third Circuit reversed the award of a four multiplier in *Rite Aid*. But what was more interesting is once that case was remanded, the district judge awarded a 6.96 multiplier.

And my point in saying that is that the Ninth Circuit has repeatedly -- and the latest time was just a couple years ago in a case called *Farrell versus Bank of America*, F-A-R-R-E-L-L, it has repeatedly stated that the lodestar cross-check is not a requirement. And it said in the last time --

THE COURT: Let me just jump in. I'm perfectly fine with that. I'm using it here and I'm using it to say that you want a $26 million bonus, and it is not going to happen.

MR. ROBBINS: Why --

THE COURT: I will give you a 2.5, 3, maybe even 3.5. You have got to pitch that for me, which you're not -- last call for that. I'm not going to ask you again. If you don't want to do it, that's fine. I will just pick a number by myself. I wanted to see if you had any input.

It's not going to happen. That is a lottery ticket undeserved recovery in this case. That money should be going to the victims of the one statement that I sustained, the one

statement.  I threw out 13 of your 14 claims.  Only one was left.

So, you know, 95 percent of your initial complaint was dismissed.  I'm not going to do that.  That is an unconscionable recovery proportionate to the work that you did.

Now, I will give you double -- maybe even triple -- which is a fine reward for work, a fine reward.  I will not give you 10X or 11X.

MR. ROBBINS:  Your Honor, what about if -- and we have received 207,000 claims -- we did exactly what Your Honor encouraged -- millions of impressions from banner ads that were sent out to get an incredible response.  And what about if I reported to you that these class members received -- and I can't do it today but if I did -- that these class members received 80, 90 or 100 percent of what they lost, would you still then have the same view?

THE COURT:  The answer is yes and I will tell you why.  First, the claims rate in securities cases -- of which this is one -- is historically much, much higher than it is in consumer cases or even antitrust cases.  The reasons for that is that most of the people who are injured parties are big companies who are looking to get their money back; Schwab, Merrill, all the investment houses.

I know, as all judges do, that those houses actively monitor these cases.  They have dedicated personnel to make

sure that when a settlement of this sort happens -- not just in my case but in every case in district courts of the United States -- they are going to be first in line to make sure that their clients get their money back.

So, you know, my recollection is that the claims rate in securities cases is upwards of 80 percent because it is institutional investors who are on the ball and have the resources to make it happen.

So, you don't get credit for that.  They get credit for that.  They are the ones policing their clients' interest. That claim rate is not driven by your hard work.  That's just sort of the nature of securities cases.

And the second thing is:  Yes, I'm going to give you a tremendously generous reward, but it is not going to be anything close to the 11X return that you are asking for.  This is not a venture capital investment, and I refuse to treat it as one.

**MR. ROBBINS:**  Totally understand, Your Honor, but the number that you got is lodestar that reflects as of July 13; right.  So, it is hundreds of thousands of dollars understated. And what we know from cases like *Purple Mountain*, from cases like *American Realty,* where there are lots of claims that come in -- you can imagine, Your Honor, when you have pools of hundreds of millions of dollars that people with not the best of intentions sometimes try to claim those amounts, people who

have defective data, people who submit claims that might not be legitimate.

**THE COURT:**  Yeah, that's why we pay a fortune to settlement administrators so that they can handle all of that. You don't do it.  They do.

**MR. ROBBINS:**  I don't?

**THE COURT:**  Settlement administrators do all that work.

**MR. ROBBINS:**  Your Honor --

**THE COURT:**  You may come in at some point but, look, you gave me your number -- and, by the way, if you are going to get into the weeds on this, which you seem to want to do, I did not like the fact that your lodestar was buried on page 14 of an ancillary document before I could even find it.  It was not in the main settlement papers.  It was not even in the first 13 pages of your fee motion.

The first time you even mentioned your lodestar was on page 14 of docket number 133, and that's at the bottom of the page.  And I have to tell you when I saw that, I fell out of my chair because you had all this other stuff about 18.75 percent is so modest, and we're really pulling our punches here, and look how generous we are being to the class.

In fact, it was completely the opposite.  You are taking an enormous amount of money out of the victim's pockets that you should not be keeping.

I will give you three times or two times, but I'm not going to give you -- I'm not going to say it again.  Anyway, last call.  Do you want to give me a proposed multiplier or not?

**MR. ROBBINS:**  Well, the ultimate award in *Rite Aid* was after remand a case that you cited *In Re: Capacitors* --

**THE COURT:**  Mr. Robbins, you are not answering my question.  Do you want to give me a proposed multiplier or not?

**MR. ROBBINS:**  Yes, Your Honor.

**THE COURT:**  All right.  What's the number?

**MR. ROBBINS:**  5.5, please, Your Honor.

**THE COURT:**  How did you come up with that?

**MR. ROBBINS:**  It was completely randomly selected in the hope that you would grant something that I feel understates the value of what we achieved here.

**THE COURT:**  That's not true.  The 5.5 multiplier massively overstates -- okay.

**MR. ROBBINS:**  Your Honor.

**THE COURT:**  Mr. Gibbs, anything to add from the Defendants' perspective?

**MR. GIBBS:**  No, Your Honor.

**THE COURT:**  You have no position on multipliers?  Defense bar doesn't care?  You wash your hands of it once the deal is signed.

**MR. GIBBS:**  Well, we make certain commitments when we

settle cases, and it's not --

THE COURT:  All right.  So, you pledge not to argue against --

MR. GIBBS:  Not our issue.

THE COURT:  Okay.

MR. GIBBS:  I certainly have personal opinions.  It's not relevant to this case, though.

THE COURT:  Oh, you might be surprised but I understand.  Okay.  So, why don't you send me a draft order with final approval only.  I will take up the attorneys' fees in a separate order.

MR. ROBBINS:  Your Honor, if I may, my partner Shawn Williams, who prosecuted this case day in and day out would like to address the Court, I think, but --

THE COURT:  I don't really need to have any more pleading for an 11 times multiplier.  It is not going to happen.  So, I don't need that.  I don't need, you know, if I don't like plan A, take plan B.  Get me to 11 times.  It is not going to happen, so I don't need to hear that.

What is new or different about what Mr. Williams is going to say?

MR. ROBBINS:  Your Honor, I would personally like to also address the Section 78u-4 award that the lead Plaintiff has requested.  He put in a declaration --

THE COURT:  I haven't made any decisions about that.

**MR. ROBBINS:**  Okay.

**THE COURT:**  I will put it in my fee order.  You do need to give me the draft final proposed order for the class.  I will take care of the attorneys' fees separately.  All right.  Okay.  Thanks for coming in.

**THE CLERK:**  All rise.  Court is in recess.

(Proceedings adjourned at 10:44 a.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   October 25, 2025

_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter