UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ZOOM SECURITIES LITIGATION | Case No. 20-cv-02353-JD<br><br>**ORDER RE ATTORNEYS' FEES AND COSTS, AND COMPENSATION TO LEAD PLAINTIFF** |

The Court granted final approval of a $150 million-dollar classwide settlement of this securities fraud action against defendants Zoom Video Communications, Inc., and its CEO, Eric Yuan, under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. Dkt. No. 138. The question presented here is whether Robbins Geller Rudman & Dowd LLP (Robbins Geller), lead counsel for the settlement class, is entitled to attorneys' fees in the form of a percentage-of-recovery award of 18.75% of the settlement fund, which would amount to $28,125,000, and be the equivalent of a multiplier of over 10 times the fees lodestar. Dkt. No. 133 (fees and costs motion) at 14.

The factual context of this question is straightforward. The original class action complaint was filed in April 2020. Dkt. No. 1. Plaintiff Adam Ali was appointed lead plaintiff and Robbins Geller lead counsel in November 2020. Dkt. No. 56 at 5.[1] Discovery was stayed under the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4(b)(3)(B), pending resolution of defendants' motion to dismiss. In February 2022, the Court dismissed the securities fraud claims for 14 of the 15 misstatements alleged by lead plaintiff, and dismissed individual defendant Kelly Steckelberg. Dkt. No. 86. The Court denied a subsequent request for

---

[1] The Court refers to lead plaintiff Adam Ali by his current name. *See* Dkt. No. 129 (notice of name change).

reconsideration by defendants. Dkt. No. 95. In July 2023, the parties filed a joint notice of a proposed settlement and a request to stay the case, which was granted. Dkt. Nos. 106, 107. Plaintiffs filed an unopposed motion for preliminary approval of a classwide settlement in October 2023, Dkt. No. 112, which the Court denied for shortcomings in the proposed forms of notice and other concerns. *See* Dkt. No. 122 (hearing transcript); Dkt. No. 123 (minute order). After some nudging by the Court, *see* Dkt. No. 126, plaintiffs filed a revised motion for preliminary approval in March 2025, Dkt. No. 127. The Court granted preliminary approval in May 2025. Dkt. No. 128. The pending request for attorney's fees and costs was filed in July 2025 and taken under submission after the final fairness hearing. Dkt. No. 136. The fees motion is unopposed, and the settlement agreement contains a "clear sailing" provision in which defendants pledged not to contest the fees request. *See* Dkt. No. 127-2 (Stipulation of Settlement), § 6.1 ("Defendants shall take no position on [Lead Counsel's] Fee and Expense Application.").

As this docket history indicates, the case settled fairly quickly and with a minimum of toil. Robbins Geller says that they expended a total of 3,527.30 hours of legal work on the case in total. Dkt. No. 133-1, Ex. A (billing records spreadsheet). This figure appears to be slightly inflated because it includes time for document clerks, summer associates, "shareholder relations" work, and similar timekeeper entries, but the Court will take it as-is for present purposes. The hours were spent on handling the docket proceedings summarized above, and on discovery, which is said to have resulted in approximately 138,000 pages of documents for review. Dkt. No. 132 at 1. Notably absent in the billing records, and in Robbins Geller's description of its work, is any significant amount of time spent on expert witness issues, class certification and summary judgment proceedings, and other typical tasks in a securities class action. *See* Dkt. No. 133-1, Ex. B (noting a total of 4.80 hours spent on "Class Certification & Notice"). As the ECF docket indicates, no motions for class certification, summary judgment, or the exclusion of experts were filed in this case. Robbins Geller also did not indicate that it took, or defended, a single deposition during the litigation. *See* Dkt. No. 132 at 1, 3.

The relatively easy path to settlement here contrasts sharply with another securities class action before the Court in which Robbins Geller was also class counsel. In *Purple Mountain Trust*

2

1  *v. Wells Fargo & Co.,* Case No. 3:18-cv-03948-JD, the Court awarded Robbins Geller attorneys'
2  fees in the amount of $75 million, which was 25% of a classwide settlement of $300,000,000. *See*
3  *Purple Mountain* Dkt. No. 243 at 7. The award was based on a record demonstrating that Robbins
4  Geller had invested over 43,350 attorney hours in prosecuting the case up to the eve of trial, which
5  included handling motions to dismiss, to certify a class, to exclude expert witnesses, and for
6  summary judgment; taking or defending 26 witness depositions; reviewing approximately 3.7
7  million pages of discovery obtained from the bank and dozens of third-party entities; and
8  substantial preparation for trial. *Purple Mountain* Dkt. No. 232 at 1-2. The $300,000,000
9  settlement fund was also said to be one of the larger settlements in the field. *Id*. at 1. Although a
10 sizeable sum, the $75 million award was the equivalent of a reasonable multiplier of 2.5 of the
11 lodestar in the case. *Id*. at 13.

       The record in *Purple Mountain* puts the fees request here into useful perspective. Robbins Geller's lodestar in this case is $2,604,766.50. Dkt. No. 133 at 14; Dkt. No. 133-1, Ex. A. It proposes a fees award of 18.75% of the $150 million settlement fund, which would be $28,125,000 and "represents a multiplier of just over 10 on Lead Counsel's lodestar." Dkt. No. 133 at 14. It urges a percentage-of-recovery award of this magnitude because the result achieved is said to be "excellent," *id*. at 7, and the 18.75% rate should be seen as an "exceptional value for the Class" that falls "well below the Ninth Circuit's 25% benchmark" rate. *Id*. at 2. In effect, Robbins Geller requests fees that would confer a massively greater reward proportionate to its work compared to the substantially larger and more complicated engagement in *Purple Mountain*.

       This request is problematic for several reasons. The Court has "an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth Headset Prods. Liability Litig.,* 654 F.3d 935, 941 (9th Cir. 2011) (citation omitted); *see also In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 929 (9th Cir. 2020) ("Courts must ensure that attorneys' fees awarded pursuant to Federal Rule of Civil Procedure 23(h) are reasonable.") (citation omitted). "This duty exists independent of any objection from a member of the class."

3

*Id.* (citation omitted).[2] The obligation exists "[b]ecause in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage," and the Court "must assume the role of fiduciary for the class plaintiffs." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotation omitted). When, as here, there is "a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *In re Bluetooth Headset*, 654 F.3d at 948 (citation omitted).[3]

These principles apply in full to securities fraud class actions like this one. In another securities class action that "settled early on," our circuit observed that "[d]uring the fee-setting stage of common fund class action suits such as this one, plaintiff's counsel, otherwise a fiduciary for the class, becomes a claimant against the fund created for the benefit of the class." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 989-90, 994 (9th Cir. 2010) (cleaned up). Because "[t]his shift puts plaintiffs' counsel's understandable interest in getting paid the most for its work representing the class at odds with the class's interest in securing the largest possible recovery for its members," the district court must, as a fiduciary for the class, "act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is." *Id.* at 994 (quotations and citation omitted).

The PSLRA states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6). Even so, in securities class actions the Court "may exercise its discretion to choose between the lodestar and percentage method in calculating fees." *In re Mercury Interactive*, 618 F.3d at 992 (citation

---

[2] The record indicates that no objections were made here. *See* Dkt. No. 135 at 1 ("Lead Counsel is pleased to report that no Class Member lodged an objection to the Settlement, the Plan of Allocation, or Lead Counsel's Fee and Expense Application.").

[3] The clear sailing provision does not, in itself, indicate that the settlement was in any way collusive or prejudicial to absent class members, and the overall record amply demonstrated that the settlement was fair and reasonable. The provision is relevant only to the review of the reasonableness of the fees request in the absence of a watchful opponent.

4

omitted).  A district court abuses that discretion "when it uses a mechanical or formulaic approach that results in an unreasonable award." *Id*. (quotations and citation omitted).

The initial problem here is that a 25% benchmark is not where the fees discussion in this case should begin, as Robbins Geller rather formulaically suggests.  Although frequently mentioned in cases, the "25% benchmark rate" is "a starting point" that is not presumptively suitable in every case.  *Vizcaino*, 290 F.3d at 1048.  Skepticism about a 25% benchmark is particularly warranted in "megafund" cases like this one, where the settlement fund exceeds $100 million.  *See In re Optical Disk Drive Prods.*, 959 F.3d at 932 ("[m]ost courts define mega-funds as those in excess of $100 million.") (quotations and citation omitted).  The obvious concern, as the record here demonstrates, is that awarding a 25% benchmark in a megafund case could "yield windfall profits for class counsel in light of the hours spent on the case." *In re Bluetooth Headset*, 654 F.3d at 942.  Consequently, our circuit has expressly cautioned that "the twenty-five percent benchmark referred to in other cases . . . 'is of little assistance' in megafund cases." *In re Optical Disk Drive Prods.*, 959 F.3d at 934 (quoting *Vizcaino*, 290 F.3d at 1047-48).

Another problem is that a lodestar cross-check reveals that an 18.75% award would gift a bonanza to Robbins Geller.  It tried to head off this conclusion by saying that a lodestar cross-check should be disregarded because it "is indifferent to the results achieved" and "punishes efficiency and rewards inefficiency."  Dkt. No. 133 at 13.  It is fair to say, as the California Supreme Court has noted, that "[t]he lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504 (2016) (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).  But when, as here, a fees request is based on a percentage of the settlement fund, the use of a lodestar cross-check brings "an objective measure of the work performed into the calculation of a reasonable attorney fee." *Id*.; *see also Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.").  For this reason, courts are "encouraged" to "perform a cross-check by applying the lodestar method to confirm that

1  the percentage-of-recovery amount is reasonable." *In re Optical Disk Drive Prods.*, 959 F.3d at
2  930.[4]

3        A lodestar cross-check demonstrates that awarding 18.75% of the settlement fund as
4  attorneys' fees would be grossly unreasonable. The lodestar indicates an average hourly rate of
5  $738.45 ($2,604,766.50 ÷ 3,527.3 hours) for the legal work done in this case. *See* Dkt. No. 133-1,
6  Ex. A. An 18.75% award would result in an average hourly rate of $7,973.52 ($28,125,000.00 ÷
7  3,527.3 hours). That is an eye-watering figure. Robbins Geller says that a "multiplier of ten is
8  reasonable here," Dkt. No. 133 at 14, but an hourly rate $7,973.52 has no place in a
9  straightforward securities class action like this one, and arguably no place in any other case. A
10 multiplier of 10 is four times the 2.5 multiplier in *Purple Mountain*, which, as discussed, was a
11 vastly more involved case. It bears mention that multipliers typically range from one to four. *See*
12 *Vizcaino*, 290 F.3d at 1051 n.6.

13       The factors the Court may consider in evaluating a percentage-of-recovery fees award also
14 do not support Robbins Geller's request. *See In re Optical Disk Drive Prods.*, 959 F.3d at 930
15 (citing *Vizcaino*, 290 F.3d at 1048-50). These factors include, but are not limited to: "(1) the
16 extent to which class counsel achieved exceptional results for the class; (2) whether the case was
17 risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash
18 settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel
19 experienced while litigating the case; (6) and whether the case was handled on a contingency
20 basis." *Id*.

21       Robbins Geller did not demonstrate that these factors line up in favor of an 18.75% fees
22 award. The Court does not disagree that the settlement amount was a solid achievement vis-à-vis
23 the overall estimated damages available in the case, *see* Dkt. No. 133 at 7, but nothing in the
24 record indicates that it can fairly be characterized as "exceptional" in light of the long history of

---

[4] There has been some debate about the pros and cons of the lodestar cross-check. This is not the occasion to wade deeply into that discussion, but the Court notes that Professor William B. Rubenstein, the expert witness Robbins Geller proffered in support of its fees proposal here, *see* Dkt. No. 134-2, has stated that the "costs of the lodestar cross-check are likely exaggerated and the value that the cross-check adds underappreciated." 5 William B. Rubenstein, *Newburg & Rubenstein On Class Actions* § 15:86 at 383 (6th ed. 2022).

securities settlements in the federal courts. Robbins Geller routinely described the case as risky, but again nothing in the record shows that it faced risks any greater than those normally present in every litigation. There is no evidence that this case involved a novel or untested legal theory, unusual evidentiary complications, or any other additional challenges outside the norm. The benefit conferred on the class was entirely monetary, and as we have seen, the burdens Robbins Geller faced on the path to settlement were comparatively light as securities class actions go. The case was handled on a contingency basis, as virtually all such cases are, and the financial outlay required was fairly modest given the promptness of reaching a settlement and the scant work in the way of motion practice, expert reports, depositions, and the like. Overall, the discretionary factors used to assess a percentage-of-recovery fees award do not tilt in favor of a massive 18.75% allocation.

What then should be the basis of the fees award? The Court has broad discretion to apply a lodestar or percentage-of-recovery method. *See In re Mercury Interactive*, 618 F.3d at 992. As demonstrated, an 18.75% award will not do in this case. Consequently, the Court will use the lodestar method and apply a very generous multiplier of 4.0, for a total fees award of $10,419,066.00. This equates to an average hourly rate of $2,954 for each Robbins Geller timekeeper in this case, summer associates and document clerks included. The amount of $10,419,066 is a fair and reasonable award in light of the results achieved, and the risks Robbins Geller faced in pursuing the case on a contingency basis. It amply rewards the efficiencies realized by the settlement without conferring a windfall. Costs are awarded in the amount of $262,670.49. *See* Dkt. No. 133-1, Ex. C.

With respect to payment, 75% of the fees award ($7,814,299.50) may be paid to Robbins Geller immediately from the settlement fund upon entry of this order, subject to the terms, conditions, and obligations of the parties' settlement agreement. The remaining 25% ($2,604,766.50) will remain in the settlement fund pending the filing of a post-distribution accounting as provided for in the District's Procedural Guidance for Class Action Settlements, and may be released only at the direction of the Court. The costs awarded (equaling $262,670.49) may be paid immediately from the fund.

The request to award $48,750 to lead plaintiff Adam Y, Ali, Dkt. No. 133 at 16, is denied without prejudice. Ali filed a rather cursory declaration stating that he is the CEO of an e-commerce company and seeks compensation for "75 hours of time expended representing the class." Dkt. No. 134-1 ¶ 13.

A lead plaintiff in a securities class action may "not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery." 15 U.S.C. § 78u-4(a)(2)(A)(vi); *see also id*. § 78u-4(a)(4) ("The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class."); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 960 n.4 (9th Cir. 2009) ("The [PSLRA] prohibits granting incentive awards to class representatives in securities class actions."). The Court may compensate a lead plaintiff only for "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 U.S.C. § 78u-4(a)(4).

Ali came up short on that score. His declaration did not establish that the $48,750 is tied to specific costs and expenses incurred, or wages lost, in representing the class. It also did not provide a factual basis to establish that Ali's time should be compensated at an hourly rate of $650. The $48,750 request is substantially larger than similar requests by lead plaintiffs in other securities cases, with little explanation to justify that. Ali may file by November 21, 2025, an amended request for compensation consistent with this order and the PSLRA.

**IT IS SO ORDERED.**

Dated: November 4, 2025

JAMES DONATO
United States District Judge